UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| MAJED KHALIL, | ) | |
| | ) | Case No. 21-cv-10248-LLS |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| FOX CORPORATION, FOX NEWS | ) | |
| NETWORK LLC, LOU DOBBS, and | ) | |
| SIDNEY POWELL, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## **<u>MEMORANDUM OF LAW IN SUPPORT</u>**
## **<u>OF DEFENDANT SIDNEY POWELL'S</u>**
## **<u>MOTION TO DISMISS</u>**

Howard Kleinhendler
HOWARD KLEINHENDLER ESQUIRE
369 Lexington Ave., 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

*Counsel for Defendant Sidney Powell*

## <u>Table of Contents</u>

INTRODUCTION…………………………………………………………………..…………….1

SUMMARY OF THE COMPLAINT…………………………………………………….…..2

ARGUMENT…………………………………………………………………………………...3

    I.     THIS COURT LACKS PERSONAL JURISDICTION OVER SIDNEY
         POWELL………..………………………………………………………………………...3

        A.     Standard of Review…………………………….………………………………3

        B.     This Court Lacks Jurisdiction Under CPLR § 302(a)(1)…………………..……….4

        C.     The Exercise of Jurisdiction Would Not Comport with Due Process………..……..7

    II.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO NEW YORK'S
         ANTI-SLAPP LAW……………………………………………………………………9

    III.    THE SPEECH AT ISSUE IS PROTECTED AND NOT ACTIONABLE………....…13

        CONCLUSION………………………………….…………………………………19

**Table of Authorities**

**Cases**

*Adelson v. Harris,* 774 F.3d 803 (2d Cir. 2014)……………………………………………………..17

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez,* 171 F.3d 779 (2d Cir. 1999)…..…..3, 8

*Best Van Lines, Inc. v. Walker,* 490 F.3d 239 (2d Cir. 2007)…………………………..…..4, 5, 6, 7

*Bowyer v. Ducey*, United States District Court for the District of Arizona,
Case No. 2-20-cv-02321……………………..………………………………………………………2

*Brian v. Richardson,* 87 N.Y.2d 46 (1995)…………………………………………………..13, 14

*California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)………………….…..17

*Calder v. Jones*, 465 U.S. 783 (1984)……………………………………………………….…….8

*Celle v. Filipino Rep. Enterprises Inc.,* 209 F.3d 163 (2d Cir. 2000)…………………………....13

*Chau v. Lewis,* 771 F.3d 118 (2d Cir. 2014)…………………………………………………....17

*Courtroom TV Network v. Focus Media, Inc.,* 264 A.D.2d 351 (1st Dept. 1999)………...……….6

*Cummings v. City of New York,* 2020 U.S. Dist. LEXIS 31572 (S.D.N.Y. February 4, 2020)….14

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)……………………………………………….…….8

*Davis v. Boeheim,* 24 N.Y.3d 262 (2014)………………………………………………………..14

*DeIuliis v. Engel,* 2021 U.S. Dist. LEXIS 185012 (S.D.N.Y. September 27, 2021)…………… 14

*DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81 (2d Cir. 2001)…………………………..…………3

*Doe v. Delaware State Police,* 939 F. Supp. 2d 313 (S.D.N.Y. 2013)……………………....…….3

*Enigma Software Grp., USA, LLC v. Bleeping Computer LLC,*
194 F. Supp. 3d 263 (S.D.N.Y. 2016)…………………………………….....................…..……14

*Fedak v. Yimby, Inc.,* 2018 U.S. Dist. LEXIS 214384,
2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018)……………………………………………………17

*Feehan v. Wisconsin Elections Comm'n, et al.,* United States District Court for the

Eastern District of Wisconsin, Case No. 2:20-cv-1771……………..…………………………2

*Fischer v. Stiglitz,* 2016 U.S. Dist. LEXIS 74842 (S.D.N.Y. June 8, 2016)…………………..3, 5

*Front, Inc. v. Khalil,* 24 N.Y.3d 713 (2015)………………………………………………....18

*Garrison v. Louisiana,* 379 U.S. 64 (1964)…………………………………………………...15

*Grayson v. Ressler & Ressler,* 2018 U.S. Dist. LEXIS 126479 (S.D.N.Y. July 27, 2018)………..18

*Gross v. New York Times Co.*, 281 A.D.2d 299 (1st Dept. 2001)…………………………....13

*Hariri v. Amper,* 51 A.D.3d 146 (1st Dept. 2008)……………………………………………...10

*Hayashi v. Shunzo Ozawa,* 2019 U.S. Dist. LEXIS 53130 (S.D.N.Y. March 29, 2019)………….17

*Ingraham v. Carroll,* 90 N.Y.2d 592 (1997)……………………………………………………4

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945)…………………………………….…...7

*Jimenez v. United Fed'n of Teachers,* 239 A.D.2d 265 (1st Dept. 1997)………………………10

*Khan v. New York Times Co.*, 269 A.D.2d 74 (1st Dept. 2000)…………………………....13

*Kim v. Dvorak,* 658 N.Y.S.2d 502 (3d Dept. 1997)……………………………………….5, 6

*King v. Whitmer*, United States District Court for the Eastern District of Michigan, Case No. 20-cv 13134………………………………………………….……………..2

*Legros v. Irving,* 38 A.D.2d 53 (1st Dept. 1971)………………………………………….…7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161 (2d Cir. 2013)……..…..3, 4, 8

*Milkovich v. Lorain J. Co.,* 497 U.S. 1 (1990)……………………………………………….13

*Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)………...15

*NAACP v. Button*, 371 U.S. 415 (1963)……………………………………........ 18, 19

*Nat'l Inst. of Family & Life Advocates v. Becerra,* 138 S. Ct. 2361 (2018)………………………17

*N.Y. Times v. Sullivan,* 376 U.S. 254 (1964)………………………………...……9, 10, 14

*Palin v. N.Y. Times, Co.*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020)……………………...…….. 9, 10

*Park Knoll Assoc. v. Schmidt,* 59 N.Y.2d 205 (1983)……………………………….…...18

*Pearson, et al. v. Kemp, et al.,* United States District Court for the Northern
  District of Georgia, Case No. 120-cv-4809…………..…………………………….…....…2

*Pontarelli v. Shapero,* 647 N.Y.S.2d 185 (1st Dept. 1996)………………………….……5, 6

*Prozeralik v. Capital Cities Communs.* Inc., 82 N.Y.2d 466 (1993)…………………………....14

*Rapaport v. Barstool Sports, Inc.,* 2021 U.S. Dist. LEXIS 59797 (S.D.N.Y. March 29, 2021)…16

*Rivera v. Time Warner Inc.*, 56 A.D.3d 298 (1st Dept. 2008)…………………………....10

*Rosenberg v. MetLife, Inc.,* 493 F.3d 290 (2d Cir. 2007)…………………………………....18

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.,* 230 F. Supp. 3d 290 (S.D.N.Y. 2017)………17

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100 (2d Cir. 2006)………..4, 6

*St. Amant v. Thompson,* 390 U.S. 727 (1968)……………………………………………...…12, 13

*Steinhlber v. Alphonse,* 68 N.Y. 2d 283 (1986)………………………………………………16

*Strelsin v. Barrett,* 320 N.Y.S.2d 885 (1st Dept. 1971)…………………………………..…….5

*Sweeney v. Prisoners' Legal Servs. of New York, Inc.,* 84 N.Y.2d 786 (1995)...………………... 13

*Thomas v. Ashcroft,* 470 F.3d 491 (2d Cir. 2006)……………………………………...………..3

*Thomas v. Collins*, 323 U.S. 516 (1945)………………………………………………………18

*Torain v. Liu,* 2007 U.S. Dist. LEXIS 60065, 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007)….…17

*United States v. Alvarez*, 567 U.S. 709 (2012)………………………………………………17

*Watts v. United States,* 394 U.S. 705 (1969)………………………………………………....17

*Wiener v. Weintraub,* 22 N.Y.2d 330 (1968)………………………………………………18

## Other Authorities

Civ. Rights Law 76-a……………………………………………...………...….……9, 10

CPLR § 302……………………………………………………………….……....3, 4, 5, 7

CPLR 3211(g)(1)……………………………………………………………………...10

Federal Rule of Civil Procedure 12(b)(2) ………………………………………...…….3

Federal Rule of Civil Procedure 4(k)(1)(A)……………………………………………...…….....3

https://ag.ny.gov/press-releases........................................................................19

https://ij.org/press-releases/...............................................................................19

https://www.justice.gov/news..............................................................................19

https://oag.ca.gov/media/news............................................................................19

http://www.publiccounsel.org/press_releases.....................................................19

https://video.foxbusiness.com/v/6215520845001/#sp=show-clips.......................16

## **INTRODUCTION**

Plaintiff is a Venezuelan businessman who has nothing to do with New York.  He does not reside here, own real estate here, nor conduct business here.  He brings this defamation suit against the Fox Corporation and Fox News LLC, which operates from its headquarters on Sixth Avenue in Manhattan, and Lou Dobbs, a former Fox broadcaster who worked from Fox's New York facility. And then there is defendant Sidney Powell (hereinafter, "Powell"):  a Texas lawyer, who resides in Texas, is only licensed to practice law in Texas, does not own any real estate in New York, and does not conduct any business in New York.[1]  This court has no jurisdiction over Powell.

In a failed attempt to extend New York's long arm statute over Powell for his claims of defamation, plaintiff fails to recognize that neither of the tortious injury provisions of New York's long arm statute provides jurisdiction, as they expressly except from their coverage claims sounding in defamation.  Plaintiff also fails to establish that Powell transacted business within New York (which she did not), or that she "purposefully availed" herself of the benefits of New York's laws (which she did not).  This matter has no place before this court and should be dismissed for lack of personal jurisdiction over Powell.

Should the court disagree and find that it has personal jurisdiction over Powell, the complaint must be dismissed under New York's anti-SLAPP law which protects Powell's statements referred to by the Plaintiff because they pertain to matters of profound public concern—namely, election integrity and the 2020 general election at large.

---

[1]  *See* Declaration of Sidney Powell, dated January 13, 2022 ("Powell Decl."), submitted with the instant motion.

## SUMMARY OF THE COMPLAINT

Plaintiff Majed Khalil ("Plaintiff") is a Venezuelan businessman.  Compl. at ¶¶ 2, 8.  As far as the Complaint reveals, Plaintiff has no presence, interests in or connection to the State of New York.

Defendant Sidney Powell is a lawyer who resides in Dallas, Texas.  *Id.* at ¶ 12; *see also* Powell Decl. at ¶ 2.  Powell is licensed to practice law only in Texas.  She does not own any real estate in New York or conduct any business in New York.  *Id.* at ¶¶ 2-6.

Following the 2020 U.S. Presidential Election ("2020 Election"), Powell filed a series of lawsuits challenging the election results in Michigan, Arizona, Wisconsin, and Georgia.[2]  *See* Compl. at ¶ 12.  The Complaint alleges that during a December 10, 2020 appearance as a guest on defendant Lou Dobbs' television show on the Fox Business network, Powell disparaged Plaintiff in connection with her discussion of alleged voting irregularities and fraud arising from the use of electronic voting platforms marketed and operated by Dominion Voting Systems ("Dominion") and Smartmatic Corporation ("Smartmatic"). *See, e.g.,* Compl. at ¶¶ 1, 4, 18, 20, 47-44, 86-109, 139-151.  The Complaint alleges that Powell disparaged Plaintiff by falsely connecting him to Dominion and Smartmatic, as well as to their programs and machines, and by falsely alleging his involvement in a scheme to rig the Election.  *Id.*

---

[2] *See King v. Whitmer*, United States District Court for the Eastern District of Michigan, Case No. 20-cv-13134; *Bowyer v. Ducey*, United States District Court for the District of Arizona, Case No. 2:20-cv-02321; *Feehan v. Wisconsin Elections Comm'n, et al.,* United States District Court for the Eastern District of Wisconsin, Case No. 2:20-cv-1771; *Pearson, et al. v. Kemp, et al.,* United States District Court for the Northern District of Georgia, Case No. 1:20-cv-4809.

<u>**ARGUMENT**</u>

**I.    THIS COURT LACKS PERSONAL JURISDICTION OVER SIDNEY POWELL.**

**A.    Standard of Review**

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *DiStefano v. Carozzi N. Am., Inc.,* 286 F.3d 81, 84 (2d Cir. 2001) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez,* 171 F.3d 779, 784 (2d Cir. 1999)). In order to survive such a motion, a plaintiff must make a *prima facie* showing that jurisdiction exists. *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006). In evaluating whether jurisdiction exists, the court must construe all allegations in the light most favorable to the plaintiff. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir. 2013). However, a plaintiff may not rely on "'conclusory non-fact-specific jurisdictional allegations' to overcome a motion to dismiss." *Doe v. Delaware State Police,* 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013). In conducting its inquiry, the Court may also rely on materials that are outside the pleadings, including any affidavits submitted by the parties. *DiStefano,* 286 F.3d at 84.

A federal court may exercise personal jurisdiction to the same extent that the forum state could exercise. *Licci,* 732 F.3d at 168; *see also* Federal Rule of Civil Procedure 4(k)(1)(A). Here, the forum state is New York, and its long-arm statute is CPLR § 302. The court must first inquire if personal jurisdiction is authorized by the applicable long-arm statute, and then must determine whether the exercise of personal jurisdiction comports with constitutional due process principles. *Fischer v. Stiglitz,* 2016 U.S. Dist. LEXIS 74842 at * 7 (S.D.N.Y. June 8, 2016) (quoting *Licci*).

Plaintiff alleges the Powell is subject to jurisdiction under the New York long-arm statute, CPLR § 302, but does not allege under which subsection of the statute jurisdiction exists. Compl.

3

at ¶ 16.  However, as the claims against Powell are only for defamation, neither of the tortious injury provisions of the long-arm statute (§§ 302(a)(2) and 302(a)(3)) provides jurisdiction, as those sections expressly except from their coverage claims sounding in defamation, whether or not such jurisdiction would be consistent with due process.  The defamation exceptions thus present a "gap" between the reach of the New York long-arm statute and the full extent of jurisdiction permissible under the United States Constitution.  *See, e.g., Best Van Lines, Inc. v. Walker,* 490 F.3d 239, 244-45 (2d Cir. 2007) (citing *Ingraham v. Carroll,* 90 N.Y.2d 592, 596-97, 687 N.E.2d 1293, 1294-95 (1997)).

As Powell does not own, use or possess any property in the State, there is no basis for jurisdiction under § 302(a)(4).  Thus, jurisdiction must lie, if at all, under § 302(a)(1).  As demonstrated below, it does not.

### B.    This Court Lacks Jurisdiction Under CPLR § 302(a)(1).

In order to establish jurisdiction under § 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity.  *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006).  With respect to the first factor, courts construe "transacts any business within the state" more narrowly in defamation cases than they do in the context of other litigation. *Best,* 490 F.3d at 248.  Thus, while in other cases, proof of one transaction, or a "single act," in New York is sufficient to invoke long arm jurisdiction even though the defendant never enters New York, the rule is different in defamation actions:

> In defamation cases, by contrast, the "single act" of uttering a defamation, no matter how loudly, is not a "transact[ion of] business" that may provide the foundation for personal jurisdiction.  In other words, when the defamatory publication itself constitutes the alleged "transact[ion of] business" for the purposes of section 302(a)(1), more than the distribution of a libelous statement must be made within the state to establish long-arm jurisdiction over the person distributing it.

*Id.*

Accordingly, a defamation plaintiff must demonstrate that the defendant's contact with New York "'included something more' than the defamation alleged." *Fischer,* 2016 U.S. Dist. LEXIS at \*16 (quoting *Best,* 490 F.3d at 249).  On this basis, New York courts have concluded, *inter alia,* that the sending of allegedly defamatory letters into New York alone did not constitute transaction of business, *Kim v. Dvorak,* 658 N.Y.S.2d 502 (3d Dept. 1997); that the sending of two defamatory letters and one facsimile into New York did not constitute transaction of business, *Pontarelli v. Shapero,* 647 N.Y.S.2d 185 (1st Dept. 1996); and that a television broadcast recorded in California but broadcast in New York did not constitute transaction of business, *Strelsin v. Barrett,* 320 N.Y.S.2d 885 (1st Dept. 1971).

Plaintiff's claims here are based entirely on Powell's single interview on defendant Lou Dobbs' broadcast on December 10, 2020.  Powell is not alleged to have been present in New York for that interview, nor is she alleged to have directed her comments at New York residents.  Even assuming Powell's statements were defamatory, the statements alone do not constitute transaction of business for purposes of § 302(a)(1). *Best,* 490 F.3d at 248.  If such an appearance alone constituted the transaction of business, the exception for defamation claims found in subsections (a)(2) and (a)(3) of the statute would be rendered meaningless.

No doubt recognizing that defamatory statements alone do not support jurisdiction, Plaintiff resorts to a series of irrelevant and spurious allegations.  Plaintiff alleges, for example, that Powell made statements "knowing and intending for them to be broadcast (verbal) and published (written/posted) from New York, by a New York-based organization," and that she "authorized and approved" the broadcast.  Compl. ¶ 16.  But those are just spruced-up allegations that her out-of-forum statements were published in New York, which is jurisdictionally insufficient

under *Best, Kim* and *Pontarelli.*  Allegations that Powell "authorized and approved" publication are not only unsupported by any specific factual allegations, but are also irrelevant.  If publishing the statements oneself is not sufficient, authorizing and approving publication by someone else surely cannot be, either.

Plaintiff alleges that Powell used her alleged "disinformation campaign" to solicit money from individuals – "including those located in New York" – for her legal defense fund and Super PAC. *See, e.g.,* Compl. ¶ 16.  But, again, Plaintiff fails to allege any facts suggesting that Powell directed such activity at New York, either specifically or exclusively, such that she "purposefully availed" herself of the privilege of conducting activities within New York.  *See, e.g., Best,* 490 F.3d at 246 (transaction of business under § 302(a)(1) requires "some act by which defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.").  Nor does Plaintiff allege any connection between the purported solicitations and the injuries they claim to have suffered, all of which relate to the alleged defamatory statements, not any fundraising activities.  *See, e.g., Sole Resort,* 450 F.3d at 103 (two requirements for personal jurisdiction under § 302(a)(1): the defendant must have transacted business within the state, and the claim asserted must arise from that business activity).

The assertion that Powell "took advantage of New York's unique resources" to "disseminate the disinformation campaign and profit from the disinformation campaign," Compl. ¶ 16, is another Hail Mary pass.  In *Courtroom TV Network v. Focus Media, Inc.,* 264 A.D.2d 351 (1st Dept. 1999), the court premised § 302(a)(1) jurisdiction on the defendant's contracting with plaintiff Courtroom TV television network to broadcast defendant's client's advertising tapes. This case is different.  *Courtroom TV* was a *breach of contract action*, not defamation, and the

foreign party had signed a contract with Courtroom TV, a New York business, for the broadcast of over 300 advertisements. *Id.* at 353-54.

Here, Powell never entered a commercial relationship with Plaintiff, so there is no relationship "amount[ing] to doing business in New York."  Nor did Powell transact any business with the Fox defendants.  Rather, the Fox defendants sought out Powell because Powell was in the news, and they are in the news business.

In short, Plaintiff has not identified conduct by Powell that took place in New York; there are no allegations that she contracted to "supply goods or services in the state" as contemplated by § 302(a)(1).  As the *Best* court noted:

> There is a clear distinction between a situation where the only act which occurred in New York was the mere utterance of the libelous material and on the other hand, a situation where purposeful business transactions have taken place in New York giving rise to the cause of action.

*Best,* 490 F.3d at 246 (quoting *Legros v. Irving,* 38 A.D.2d 53, 55-56 (1st Dept. 1971)).  That is precisely the distinction this Court should draw here and conclude that personal jurisdiction does not exist.

### C.     The Exercise of Jurisdiction Would Not Comport with Due Process.

In order to comport with the due process clause of the United States Constitution, the defendant must have "certain minimum contacts' with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  Moreover, the analysis of personal jurisdictional applies *independently to each defendant*:

> Each defendant's contacts with the forum State must be assessed individually[:]  The requirements of *International Shoe* must be met as to each defendant over whom a state court exercises jurisdiction.

*Calder v. Jones*, 465 U.S. 783, 790 (1984) (citations, interior quotation marks, and alterations omitted).   Thus, it is immaterial to personal jurisdiction over Powell whether this Court has personal jurisdiction over the Fox defendants.   In cases where the plaintiff asks the district court to assert specific jurisdiction,[3] "minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there."   *Licci,* 732 F.3d at 170 (quoting *Bank Brussels,* 305 F.3d at 127).

Nothing in the Complaint suggests that Powell could reasonably have foreseen being haled into court in New York.   Plaintiff himself has no alleged presence or business in New York and is a Venezuelan national.   Powell has no alleged presence or business in New York and is indisputably a resident of Texas.   The conduct at issue – her statements during a solitary interview on a television network that is broadcast nationwide – occurred entirely out-of-state, and caused Plaintiff no alleged injury in New York.   There are no allegations that Powell sought out the interview, nor are there any allegations that she otherwise "purposefully availed" herself of the benefits and protections of New York's laws.   The only connection to New York here is that of the Fox defendants, not of Powell or Plaintiff.   If due process requirements are met under such circumstances, then they cease to have any meaning whatsoever.   Personal jurisdiction cannot be exercised over Powell consistent with due process.

---

[3] Personal jurisdiction includes both general and specific jurisdiction, but only specific jurisdiction is even potentially relevant here.   A proper exercise of "general jurisdiction requires affiliations so 'continuous and systematic' as to render the foreign [defendant] essentially at home in the forum State."   *Daimler AG v. Bauman*, 571 U.S. 117, 122, 133 n.11 (2014) (interior quotation marks, alterations, and citation omitted).   Powell is not "at home" in New York, and Plaintiff does not allege otherwise.

## II.     THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO NEW YORK'S ANTI-SLAPP LAW.

Because the Court's jurisdiction over this case is based on diversity, the Court must apply the substantive law of the State of New York in this proceeding. *Palin v. N.Y. Times, Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020). Consequently, Plaintiff's Complaint is subject to New York's anti-SLAPP laws because it alleges defamation claims against Powell regarding "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest," namely the 2020 Presidential Election. CIV. RIGHTS LAW 76-a (1); *Palin*, 510 F. Supp. 3d at 26 ( "a federal court sitting in diversity must apply §76-a because it is a substantive, rather than a procedural, provision"). For the reasons discussed below, Plaintiff's complaint should be dismissed because it violates New York's anti-SLAPP laws.

To survive a motion to dismiss a defamation claim based on New York's anti-SLAPP laws, a plaintiff must show that the complaint properly alleges that the defendant acted with actual malice when making the challenged statement, *i.e.*, that the defendant either knew the statement was false or acted with reckless disregard as to it veracity. CIV. RIGHTS LAW 76-a(2). Since their amendment in 2020, New York's Anti-SLAPP laws have required plaintiffs to meet the "actual malice" requirement regardless of whether the plaintiff qualifies as a public figure under *N.Y. Times v. Sullivan,* 376 U.S. 254 (1964).[4] The purpose of this amendment was to broaden the scope

---

[4] *See* CIV. RIGHTS LAW 76-a. New York's anti-SLAPP law always required a showing of malice, but prior to amendments enacted in November 2020, the law limited the actual malice requirement to cases initiated by plaintiffs involved in public application or permit controversies. *Palin*, 510 F. Supp. 3d at 26. The November 2020 amendments "substantially broadened the reach of the actual malice rule" to apply in any case involving matters of public interest. *Id.* Thus, under this rule a plaintiff may only prevail in an Anti-SLAPP suit if "in addition to all other necessary elements, [the plaintiff] shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with

of New York's anti-SLAPP Law in order to "better advance the purposes that the Legislature originally identified in enacting New York's anti-Slapp law — [namely] to provide the utmost protection for the free exercise or (sic) speech, petition and association rights, particularly where such rights are exercised in a public forum with respect to issues of public concern.'" *Palin*, 510 F. Supp. 3d at 27, quoting Sponsor Memorandum of Senator Hoylman (July 22, 2020) *https://www.nysenate.gov/legislation/ bills/ 2019/s52*.

Thus, in order to sustain his defamation claims against Powell, consistent with New York's anti-SLAPP laws, Plaintiff must show that Powell made each challenged statement with "knowledge of its falsity or with reckless disregard of whether it was false." CIV. RIGHTS LAW 76-a(2); *see also*, *N.Y. Times Co.*, 376 U.S. at 280; *Rivera v. Time Warner Inc.*, 56 A.D.3d 298 (1st Dept. 2008) (reckless disregard is "a high degree of awareness of probable falsity."). Even at the pleading stage, Plaintiff is required "to allege facts sufficient to show actual malice with convincing clarity." *Jimenez v. United Fed'n of Teachers,* 239 A.D.2d 265, 266 (1st Dept. 1997). This, Plaintiff has not done. [5]

In Paragraph 142 of the Complaint, Plaintiff identifies the following statements as those "for which the Plaintiff seeks to hold Defendants liable":[6]

---

reckless disregard of whether it was false." *Palin* at 26. The statute makes no distinction between public-figure plaintiffs and non-public-figure plaintiffs.

[5] To survive a motion to dismiss a SLAPP action, the plaintiff must also demonstrate, in addition to satisfying all other pleading requirements, that the "cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." CPLR 3211(g)(1); *see also Hariri v. Amper*, 51 A.D.3d 146, 150–51 (1st Dept. 2008). Here, Plaintiff's Complaint makes no showing that there is a "substantial basis in law," or a "substantial argument" for changing existing law that would support the defamation causes of actions alleged against Powell. Thus, unless Plaintiff can demonstrate otherwise in his response, the Complaint should be dismissed.

[6] Although the Complaint repeats allegations made by Smartmatic and Dominion in their lawsuits against Ms. Powell, these claims have nothing to do with whether or not Ms. Powell had

a.  Plaintiff "led the effort to rig this election."

b.  Plaintiff "designed and developed the Smartmatic and Dominion programs and machines, that include a controller module that allows people to log in and manipulate the vote, even as it's happening."

c.  Plaintiff was involved in the creation of an election-rigging system "created for the benefit of Venezuela and Hugo Chávez to rig elections to make sure he continued winning," which was then "passed on to Mr. Maduro to do the same" and "exported to other countries . . . [to] essentially sell elections to the highest bidder."

d.  Plaintiff was involved in a "troubling and illegal web of conduct that all of which focused on rigging the election in this country."

e.  Plaintiff participated in "a broadly coordinated effort to – to actually bring down this President by ending his second term before it could begin."

f.  Plaintiff participated in a "cyber Pearl Harbor in the 2020 election."

g.  Plaintiff was part of "a very large foreign intrusion and interference in the, in the election of 2020."

h.  There is "evidence," including "reams and reams of actual documents," demonstrating: "the architecture of [the] relationship among these four individuals [including Plaintiff]," including "communications between them and all different kinds of messages that indicate their involvement in it;" "they [including Plaintiff] executed all of this," "flipped the votes," and designed machines to flip the votes; and that "all of it has been happening just as we've been saying it has been."

i.  There is "tremendous evidence already" supporting the claim that Plaintiff was involved in a "cyber Pearl Harbor" and that Defendant Powell could provide additional "stunning" evidence "tonight."

However, nowhere in the Complaint's 82 pages does Plaintiff plausibly allege that Powell knew that these statements were false. Although Plaintiff makes an attempt to meet this pleading requirement "for the reasons set forth in Paragraph 132," (See, e.g., Complaint ¶157), there is nothing in Paragraph 132 that even remotely suggests that Powell was aware that the challenged statements were not true.

---

knowledge about the alleged falsity of the statements at issue here. Indeed, the statements at issue regarding Plaintiff are not even mentioned in the Smartmatic and Dominion complaints.

Paragraph 132 contains eight bullet points which, as noted, Plaintiff claims allegedly show that Powell knew that the statements at issue were untrue. However, only two of these points even concern Powell. In the first, Plaintiff alleges that on November 10, 2021, Fox broadcaster Laura Ingraham "called out Powell on the air for making false statements about Dominion." The second alleges that on November 19, 2021, Fox broadcaster Tucker Carlson "called out Sidney Powell for failing to produce any evidence to support" her claims.

Aside from the irony of Plaintiff trying to prove his case by relying on broadcasts from a network Plaintiff has accused of being untrustworthy and an employer of liars, these allegations do not even remotely suggest that Powell was aware that the challenged statements were allegedly false. Indeed, there is nothing to even suggest that the issues Fox was referring to concerned Plaintiff.

The other six bullet points in Paragraph 132 are also of no help to Plaintiff. These concern statements by other Fox News broadcasters—again, broadcasters of a network Plaintiff claims cannot be trusted—saying that no information had yet been found supporting President Trump's election results claims. Plaintiff however provides no explanation or allegation as to why these broadcasts show that Powell, for example, knew any alleged statements about Plaintiff's connection to Smartmatic and Dominion were false, even assuming they were false.

In addition to his failure to properly allege Powell's knowledge that the contested statements were false, Plaintiff's Complaint falls far short of meeting the reckless conduct standard set forth by the Supreme Court in *St. Amant v. Thompson,* 390 U.S. 727 (1968):

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that *the defendant in fact entertained serious doubts as to the truth of his publication*. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

*Id.* at 731 (emphasis added); *see also Khan v. New York Times Co.*, 269 A.D.2d 74, 77 (1st Dept. 2000) (quoting *St. Amant*).

The Complaint comes nowhere close to meeting this daunting standard.  It alleges no facts that, if proven by clear and convincing evidence, would show that Powell knew her statements were false (assuming *arguendo* that they were indeed false, which Powell disputes).  Nor has Plaintiff alleged any facts showing that Powell "in fact entertained serious doubts as to the truth of h[er] publication."  Indeed, she believed the allegations then and she believes them now.

One final point: Plaintiff's ubiquitous claim that Powell's statements are unsupported by the evidence does not demonstrate malice; rather it is a legal conclusion itself.  Plaintiffs were required to allege facts that would "permit the conclusion that [Powell] *in fact entertained serious doubts as to the truth of [her] publication*," which they failed to do.  *St. Amant,* 390 U.S. at 731 (emphasis added); *see also, Gross v. New York Times Co.*, 281 A.D.2d 299, 300 (1st Dept. 2001) (citing *Sweeney v. Prisoners' Legal Servs. of New York, Inc.,* 84 N.Y.2d 786, 793 (1995)).  Accordingly, the Complaint should be dismissed under New York's anti- SLAPP laws.

## III.   THE SPEECH AT ISSUE IS PROTECTED AND NOT ACTIONABLE.

To state a claim for defamation under New York law, a plaintiff must allege "1) a written defamatory statement of fact concerning the plaintiff; 2) publication to a third party; 3) fault (either negligence or actual malice depending on the status of the libeled party); 4) falsity of the defamatory statement; and 5) special damages or per se actionability (defamatory on its face)." *Celle v. Filipino Rep. Enterprises Inc.,* 209 F.3d 163, 176 (2d Cir. 2000).

A defendant can only be held liable for defamation based on an assertion of fact. *See Milkovich v. Lorain J. Co.,* 497 U.S. 1, 19-21 (1990); *Brian v. Richardson,* 87 N.Y.2d 46, 51

(1995).  In evaluating whether a statement is an actionable one of fact or a protected expression of

opinion, courts applying New York law look to the following factors:

> (1) whether the specific language in issue has a precise meaning which is readily
> understood; (2) whether the statements are capable of being proven true or false;
> and (3) whether either the full context of the communication in which the statement
> appears or the broader social context and surrounding circumstances are such as to
> signal readers or listeners that what is being read or heard is likely to be opinion,
> not fact.

*DeIuliis v. Engel,* 2021 U.S. Dist. LEXIS 185012 at *12 (S.D.N.Y. September 27, 2021) (quoting

*Brian,* 87 N.Y.2d at 51).

In applying these factors, New York courts have "adopted a holistic approach to this

inquiry." *Enigma Software Grp., USA, LLC v. Bleeping Computer LLC,* 194 F. Supp. 3d 263, 282

(S.D.N.Y. 2016) (quoting *Davis v. Boeheim,* 24 N.Y.3d 262, 270 (2014)).  Thus, New York courts

recognize that even statements of fact that are capable of being proven true or false may

nonetheless be considered unactionable opinion.   "Rather than sifting through a communication

for the purpose of isolating and identifying assertions of fact, the court should look to the over-all

context in which the assertions were made and determine on that basis whether the reasonable

reader would have believed that the challenged statements were conveying facts about the libel

plaintiff." *Cummings v. City of New York,* 2020 U.S. Dist. LEXIS 31572 at *56 (S.D.N.Y.

February 4, 2020) (quoting *Brian,* 87 N.Y.2d at 51).

As well, the United States Supreme Court has recognized the "profound national

commitment to the principle that debate on public issues should be uninhibited, robust, and wide-

open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp

attacks…." *N.Y. Times v. Sullivan,* 376 U.S. at 270; *see also Prozeralik v. Capital Cities*

*Communs. Inc.*, 82 N.Y.2d 466, 474 (1993) (quoting *N.Y. Times*).  As the Supreme Court has also

noted, "speech concerning public affairs is more than self-expression; it is the essence of self-

government."  *Garrison v. Louisiana,* 379 U.S. 64, 74-75 (1964).  Consequently, courts have consistently ruled that political speech "is entitled to the fullest possible measure of constitutional protection."  *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 816 (1984).

Here, the statements at issue fall clearly into the realm of constitutionally protected opinion and debate on matters of profound public concern.  Indeed, much of Plaintiff's Complaint is taken up with a discussion of the 2020 Election and the electoral challenges that followed.  Curiously, although Plaintiff claims that he has no relationship or connection with either Smartmatic of Dominion, *see* Compl. at ¶ 22, he spends a great deal of time detailing as fact the claimed *bona fides* of both those companies.  *See, e.g., id,* at ¶¶ 18-22, 40-42, 45-57.

In any event, the non-actionable nature of the allegedly defamatory statements is easily understood in its full context.  *All* of these statements concern the 2020 presidential election, which was both a bitter and controversial matter of public concern.  As Plaintiff contextualizes his claims:

> To understand how Plaintiff came to be falsely charged with involvement in this non-existent U.S. election rigging conspiracy, it is necessary to review the sequence of events that occurred after Joe Biden won the election for President, and the litany of false claims made by Defendants against Smartmatic and Dominion before they falsely pilloried Plaintiff. Defendant Lou Dobbs, a then-prominent Fox personality, played a critical role in this conspiracy, as he repeatedly hosted Sidney Powell to present and endorse her bogus claims of election fraud orchestrated by Venezuela and Venezuelans, which culminated in the December 10, 2020 broadcast (which was rebroadcast multiple times by Fox and Dobbs) and tweets, in which Plaintiff was targeted by Defendants and ensnared in this fabricated charge of election fraud.

*Id.* at ¶ 3.

Likewise, the tweets from defendant Dobbs' account prefaced the statements about Plaintiff by claiming that "The 2020 Election is a cyber Pearl Harbor: The leftwing establishment have aligned their forces to overthrow the United States #AmericaFirst #Dobbs," and also stated that Plaintiff and others "executed a 9-11 against the United States, with the cooperation and

collusion of the media and the Democratic Party and China.  It is a cyber Pearl Harbor." *Id.* at ¶¶ 128-29.

Furthermore, Powell's statements were clearly made as an attorney-advocate and in support of their legal positions.  She filed numerous challenges to the election results around the country. Compl. at ¶ 12 and n. 2, *supra.*  Powell was introduced on the Dobbs program as a "distinguished attorney and former federal prosecutor."[7]  She appeared over a chyron reading "THE BATTLE FOR THE WHITE HOUSE SIDNEY POWELL ON LEGAL FIGHT AGAINST ELECTORAL FRAUD."

Given that Powell appeared on Fox, it likewise is clear that her statements would be viewed as political support for President Trump.  The Complaint asserts that "Fox Corp.'s most-high-profile division is Fox News, which is in a symbiotic relationship with the President of the United States."  Compl. at ¶ 28.  The Complaint further characterizes the Fox network as the "go-to cable news network for American conservatives."  Compl. at ¶ 23.  The Complaint likewise claims that the "mainstream media" and "prominent Trump appointees" "publicly confirmed that the concerted disinformation campaign was just that …."  *Id.* at ¶ 118.

Thus, statements made by Powell in court filings and on news shows would be understood by readers and listeners as expressions of opinion by an advocate and consequently, are not actionable. "'[A]apparent statements of fact may assume the character of statements of opinion' when considered in light of the broader context in which the statement was published."  *Rapaport v. Barstool Sports, Inc.,* 2021 U.S. Dist. LEXIS 59797 at *31 (S.D.N.Y. March 29, 2021) (quoting *Steinhlber v. Alphonse,* 68 N.Y. 2d 283, 294-95 (1986)).  This is true even with respect to

---

[7]  The entirety of the interview is available at
https://video.foxbusiness.com/v/6215520845001/#sp=show-clips.

allegations of criminal conduct. *See, e.g., Hayashi v. Shunzo Ozawa,* 2019 U.S. Dist. LEXIS 53130 at * 7 (S.D.N.Y. March 29, 2019) (citing *Torain v. Liu,* 2007 U.S. Dist. LEXIS 60065, 2007 WL 2331073, at *3-4 (S.D.N.Y. Aug. 16, 2007), *aff'd,* 279 F. App'x 46 (2d Cir. 2008) (accusation of pedophilia was not defamation when viewed in context it was opinion); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.,* 230 F. Supp. 3d 290, 312-14 (S.D.N.Y. 2017) (same for accusation of "extortion, manipulation, fraud, and deceit); *Fedak v. Yimby, Inc.,* 2018 U.S. Dist. LEXIS 214384, 2018 WL 6697963, at *6-7 (S.D.N.Y. Dec. 20, 2018) (same for fraud accusation); *see also Chau v. Lewis,* 771 F.3d 118, 129 (2d Cir. 2014) ("[T]he epithets . . . 'crooks or morons' . . . are hyperbole and therefore not actionable opinion."); *Adelson v. Harris,* 774 F.3d 803, 807 (2d Cir. 2014) (same for description of money as "dirty" and "tainted").

Further, claims of defamation must be viewed through the lens of the First Amendment regardless of whether they are offensive to some. "Though few might find respondent's statements anything but contemptible, his right to make those statements is protected by the Constitution's guarantee of freedom of speech and expression." *United States v. Alvarez*, 567 U.S. 709, 729-30 (2012). And "[s]peech is not unprotected merely because it is uttered by 'professionals.'" *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371-72 (2018).

Reasonable people understand that the "language of the political arena, like the language used in labor disputes … is often vituperative, abusive, and inexact." *Watts v. United States,* 394 U.S. 705, 708 (1969). Given the highly charged and political context of the statements, it is clear that Powell was describing the evidence on which she based the lawsuits.

Finally, the statements in question are not actionable because they were made in the context of pending and impending litigation. The Supreme Court long ago recognized that "the right to petition extends to all departments of the Government. The right of access to the courts is indeed

but one aspect of the right of petition." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).  First Amendment protections are not limited to filing lawsuits; they extend to activities that precede or are concomitant with the litigation, such as soliciting clients, publicizing the possibility of legal redress, and gaining public support.  *NAACP v. Button*, 371 U.S. 415 (1963).  This is so because "'[f]ree trade in ideas' means free trade in the opportunity to persuade to action, not merely to describe facts." *Id.* at 437 (quoting *Thomas v. Collins*, 323 U.S. 516, 537 (1945)).  First Amendment protections apply with particular force where a party "[r]esort[s] to the courts to seek vindication of constitutional rights" or "employs constitutionally privileged means of expression to secure constitutionally guaranteed civil rights." *Id.* at 443, 441. "The exercise … of First Amendment rights to enforce constitutional rights through litigation, as a matter of law, cannot be deemed malicious." *Id.* at 440.

New York courts have likewise recognized the important protections to be afforded statements made in connection with pending or existing litigation.  First, statements made by attorneys in connection with a proceeding before a court are protected when the statements are material or pertinent to the matters involved.  *See, e.g., Rosenberg v. MetLife, Inc.,* 493 F.3d 290, 291 (2d Cir. 2007) (citing *Park Knoll Assoc. v. Schmidt,* 59 N.Y.2d 205, 209 (1983)).  This privilege applies irrespective of the attorney's motive for making the statements, *id.* (citing *Wiener v. Weintraub,* 22 N.Y.2d 330, 332-33 (1968)), and whether they were made in or out of court. *Grayson v. Ressler & Ressler,* 2018 U.S. Dist. LEXIS 126479 at * 21 (S.D.N.Y. July 27, 2018) (quoting *Front, Inc. v. Khalil,* 24 N.Y.3d 713, 718 (2015)).

Making public announcements as to the status of cases that affect the public interest is an accepted and time-honored means of keeping the public advised about litigation that may have a profound effect on their lives.  Such announcements are routine by lawyers engaged in public

interest litigation, including the U.S. Justice Department, https://www.justice.gov/news, state attorneys general, *e.g.* https://ag.ny.gov/press-releases, https://oag.ca.gov/media/news and public interest organizations, *e.g.* http://www.publiccounsel.org/press_releases, https://ij.org/press-releases/.

Keeping the public informed about ongoing litigation, particularly litigation that affects the public interest, is not merely an accepted and widely practiced strategy in the legal profession, it is an indispensable concomitant of pursuing the case in court. As the Supreme Court recognized in *NAACP v. Button*, "broadly curtailing group activity leading to litigation may easily become a weapon of oppression," 371 U.S. at 436, as it would pose "the gravest danger of smothering all discussion looking to the eventual institution of litigation on behalf of the rights of members of an unpopular minority." *Id.* at 434.

## CONCLUSION

For all the foregoing reasons, Defendant Sidney Powell respectfully requests that the Complaint be dismissed.

Dated: New York, New York
         January 17, 2022

                                        Respectfully submitted,

                                        */s/ Howard Kleinhendler*
                                        Howard Kleinhendler
                                        HOWARD KLEINHENDLER ESQUIRE
                                        369 Lexington Ave., 12th Floor
                                        New York, New York 10017
                                        (917) 793-1188
                                        howard@kleinhendler.com

                                        *Counsel for Defendant Sidney Powell*