UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAJED KHALIL,<br><br>               Plaintiff,<br><br>   v.<br><br>FOX CORPORATION, FOX NEWS<br>NETWORK, LLC, LOU DOBBS and<br>SIDNEY POWELL | Case No. 1:21-cv-10248-LLS |

**PLAINTIFF MAJED KHALIL'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS FOX CORPORATION, FOX NEWS NETWORK LLC, AND
LOU DOBBS' MOTION TO DISMISS**

**BROWN RUDNICK LLP**

Sigmund S. Wissner-Gross, Esq.
Chelsea Mullarney, Esq.
Jessica N. Meyers, Esq.
7 Times Square
New York, New York 10036
Tel.  (212) 209-4800
swissner-gross@brownrudnick.com
cmullarney@brownrudnick.com
jmeyers@brownrudnick.com

Benjamin G. Chew, Esq. (*pro hac vice*
pending)
601 Thirteenth Street NW
Washington, D.C. 20005
Tel.  (202) 536-1785
bchew@brownrudnick.com

Camille Vasquez (*pro hac vice* forthcoming)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Tel. (949) 752-7100
cvasquez@brownrudnick.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 10

ARGUMENT ............................................................................................................................ 28

I.     Legal Elements for Defamation under New York Law ...................................................... 28

II.    The Fox Defendants' Statements Are Actionable for Defamation................................... 29

     A.    The Neutral Report Privilege Does Not Immunize The Fox Defendants From Liability.................................................................................................................... 30

     B.    The Fair Report Privilege Does Not Apply To The Fox Defendants' Statements ............................................................................................................... 35

     C.    The Fox Defendants Statements Are Actionable Statements of Fact, Not Opinions ................................................................................................................. 41

III.   Plaintiff's Defamation Claims Against the Fox Defendants Are Not Subject to Dismissal For Failure To Allege Actual Malice ............................................................... 51

     A.    Plaintiff More Than Sufficiently Alleges Fox Defendants Acted With Actual Malice ..................................................................................................................... 51

     B.    Plaintiff Is Neither a Public Figure, Nor a Limited Purpose Public Figure.......... 61

         1.    Plaintiff Is Not A Public Figure ................................................................. 61

         2.    Plaintiff is not a limited-purpose public figure ......................................... 64

     C.    The New York Anti-SLAPP Statute Does Not Apply ........................................... 66

IV.   Plaintiff Adequately Alleges Fox Corporation Participated in Defamation ..................... 69

     A.    Fox Corporation is Directly Liable for the Defamatory Statements Made Against Plaintiff ................................................................................................... 69

     B.    Fox Corporation is Liable for the acts of Dobbs and Fox News as Agents of Fox Corporation. ................................................................................................... 71

CONCLUSION ......................................................................................................................... 74

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Society of Mech. Engineers, Inc. v. Hydro Level Corp.*,
 456 U.S. 556 (1982) ................................................................................................71

*Amusement Indus., Inc. v. Stern*,
 693 F. Supp. 2d 327 (S.D.N.Y. 2010) ....................................................................72

*Anwar v. Fairfield Greenwich Ltd.*,
 728 F. Supp. 2d 372 (S.D.N.Y. 2010) ....................................................................72

*Atlantic Neurosurgical Specialists, P.A. v. Multiplan, Inc.*,
 Civ. No. 20 Civ. 10685, 2022 WL 158658 (S.D.N.Y. Jan. 18. 2022) .....................4

*Biro v. Conde Nast*,
 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ..........................................................33, 34, 69

*Biro v. Conde Nast*,
 963 F. Supp. 2d 255 (S.D.N.Y. 2013) ..............................................28, 61, 62, 63

*Bowyer v. Ducey*,
 No. 2:20-cv-02321 (D. Az. Dec. 2, 2020) ........................................................39, 48

*Brian v. Richardson*,
 87 N.Y.2d 46 (1995) ........................................................................................33, 49

*Bruno v. New York Daily News Co.*,
 89 A.D.2d 260 (3d Dep't 1982) ..............................................................................55

*Bufalino v. Associated Press*,
 692 F.2d 266 (2d Cir. 1982) ...................................................................................38

*Burton v. Label, LLC*,
 344 F. Supp. 3d 680 (S.D.N.Y. 2018) .....................................................................69

*BYD Co. Ltd. v. VICE Media LLC*,
 531 F. Supp. 3d 810 (S.D.N.Y. 2021) .....................................................................28

*Campo Lindo for Dogs, Inc. v. N. Y. Post Corp.*,
 65 A.D.2d 650 (3d Dep't 1978) ..............................................................................33

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002) .....................................................................................4

*Cholowski v. Civiletti*,
   69 A.D.3d 110 (2d Dep't 2009) ...........................................................................40

*Cianci v. New Times Pub. Co.*,
   639 F.2d 54 (2d Cir. 1980)..................................................................33, 34, 35

*Conti v. Doe*,
   535 F. Supp. 3d 257 (S.D.N.Y. 2021)..................................................................40

*Corporate Training Unlimited, Inc. v. Nat'l Broad. Co.*,
   868 F. Supp. 501 (E.D.N.Y. 1994) ...........................................................37, 38, 40

*Crime Victims Ctr., Inc. v. Logue*,
   181 A.D.3d 556 (2d Dep't 2020) .............................................................54, 60, 61

*Croce v. New York Times Co.*,
   930 F.3d 787 (6th Cir. 2019) ...........................................................................34

*D'Annuzio v. Ayken, Inc.*,
   876 F. Supp. 2d 211 (E.D.N.Y. 2012) .................................................................37

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013)............................................................................57

*Duci v. Daily Gazette Co.*, 102 AD.2d 940 (3d Dep't 1984).........................................33

*Edwards v. National Audubon Soc'y*,
   556 F.2d 113 (2d Cir. 1977)....................................................................... *passim*

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
   194 F. Supp. 3d 263 (S.D.N.Y. 2016).......................................................64, 65, 69

*Feehan v. Wisconsin Elections Comm'n*,
   No. 2:20-cv-1771 (E.D. Wis. Dec. 3, 2020) .........................................................39

*Ford v. Levinson*,
   90 A.D.2d 464 (1st Dep't 1982) ........................................................................37

*Fox News Network, LLC v. US Dominion, Inc.*,
   C.A. No. N21C-03-257, 2022 WL 274235 (Del. Jan. 31, 2022) ...........................................2

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)...................................................................31, 62, 64, 66

*Gilmore v. Jones*,
   370 F. Supp. 3d 630 (W.D. Va. 2019) .................................................................58

*Gottwald v. Sebert*,
   193 A.D.3d 573 (1st Dep't 2021) ................................................................. *passim*

*Greenberg v. Spitzer,*
  155 A.D.3d 27 (2d Dep't 2017) ................................................................37

*Gross v. New York Times Co.,*
  82 N.Y.2d 146 (1993) ................................................................... *passim*

*Harte-Hanks Commc'ns Inc. v. Connaughton,*
  491 U.S. 657 (1989).................................................................................59

*Herring Networks, Inc v. Maddow,*
  8 F. 4th 1148 (9th Cir. 2021) .............................................................49, 51

*Hogan v. Herald Co.,*
  84 A.D.2d 470, *aff'd* 58 N.Y.2d 630 (1982)........................................32, 33

*Holy Spirit Ass'n for the Unification of World Christianity v. N.Y. Times Co.,*
  49 N.Y.2d 63 (1979) ...........................................................................36, 40

*Hutchinson v. Proxmire,*
  443 U.S. 111 (1979)................................................................................59

*Karades v. Ackerly Grp., Inc.,*
  423 F.3d 107 (2d Cir. 2005).................................................................37, 39

*Khan v. Laninver USA, Inc.,*
  No. 18-cv-561-JLS-LGF, 2021 WL 1740293 (W.D.N.Y. Mar. 31, 2021)............................72

*King v. Whitmer,*
  505 F. Supp.3d 720 (E.D. Mich. 2020)...................................................48

*King v. Whitmer,*
  Case No. 2:20-cv-13134 (E.D. Mich. Aug. 25, 2021) ............................39

*King v. Whitmer,*
  No. 20-13134, 2021 WL 3771875 (E.D. Mich. Aug. 25, 2021)...............48

*Lacher v. Engel,*
  33 A.D.3d 10 (1st Dep't 2006) ...............................................................40

*Lerman v. Flynt Distrib. Co.,*
  745 F.2d 123 (2d Cir. 1984)...................................................................64

*Lluberes v. Uncommon Prod., LLC,*
  663 F.3d 6 (1st Cir. 2011)......................................................................63

*Long v. Marubeni America Corp.,*
  406 F. Supp. 2d 285 (S.D.N.Y. 2005).....................................................41

*Mahoney v. State of New York*,
   236 A.D.2d 37 (3d Dep't 1997) .................................................................56

*Manfredonia v. Weiss*,
   37 AD3d 286 [1st Dept 2007] ...................................................................28

*Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*,
   No. 2:16-cv-28, 2017 WL 3393819 (D.Vt. Aug. 4, 2017) ................................69, 70

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020).......................................................49, 50

*Mikovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)............................................................................44, 47

*Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*,
   22 F. Supp. 3d 240 (S.D.N.Y. 2014)...........................................................65

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
   759 F.2d 219 (2d Cir. 1985)....................................................................49

*Nat'l Coalition on Black Civic Participation v. Wohl*,
   512 F. Supp. 3d 500 (S.D.N.Y. 2021).......................................................29, 67

*New York Times v. Sullivan*,
   376 U.S. 254 (1964)............................................................................57

*Orr v. Lynch*,
   60 A.D.2d 949 (3d Dep't), *aff'd*, 45 N.Y.2d 903 (1978) .....................................33

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019) ...................................................................62

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005).......................................................72, 73

*Partridge v. State*,
   173 A.D. 3d 86 (3d Dep't 2019) ................................................................56

*Pearson v. Kemp*,
   No. 1:20-cv-4809 (N.D. Ga. Nov. 25, 2020) ...................................................39

*Ramos v. El Diario Publ. Co.*,
   16 A.D.2d 915 (1st Dep't 1962) ................................................................38

*Rapaport v. Barstool Sports, Inc.*,
   18 Civ. 8783 (NRB), 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) .....................47

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
  42 N.Y.2d 369 (1977) ........................................................................................67

*Rivera v. Greenberg*,
  243 A.D.2d 697 (2d Dep't 1997) ........................................................................37

*Royal Indus. Ltd. v. Kraft Foods, Inc.*,
  926 F. Supp. 407 (S.D.N.Y. 1996)......................................................................72

*In re S. African Apartheid Litig.*,
  617 F. Supp. 2d 228 (S.D.N.Y. 2009)............................................................72, 73

*Salomon v. Burr Manor Ests., Inc.*,
  769 F. Supp. 2d 83 (E.D.N.Y. 2011) ..................................................................72

*Silsdorf v. Levine*,
  59 N.Y.2d 8 (1983)........................................................................................47, 48

*Smartmatic USA Corp. et al. v. Fox Corp., et al.*,
  Index No. 151136/2021 (Sup. Ct. N.Y. Cnty. March 8, 2022)...................... *passim*

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)............................................................................................59

*Steinhilber v. Alphonse*,
  68 NY2d 283 (1986) ...........................................................................................46

*Stern v. News Corp.*,
  No. 08 Civ. 7624 (DAB) (RLE), 2010 WL 5158635 (S.D.N.Y. Oct. 14, 2010) ....................71

*Stern v. News Corp.*,
  No. 1:08-cv-7624, 2010 WL 5158635 (S.D.N.Y. Oct. 14, 2010), *adopted*,
  2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010)) .........................................................71

*STMicroelectronics v. Credit Suisse Grp.*,
  775 F. Supp. 2d 525 (E.D.N.Y. 2011) .................................................................73

*Stone v. Bloomberg L.P.*,
  163 A.D.3d 1028 (2d Dep't 2018) .......................................................................37

*Terwillinger v. Wands*,
  17 N.Y. 54 (1858) ...............................................................................................33

*Trump v. Wisconsin Elections Commission*,
  No. 20-cv-1785 (E.D. Wis. Dec. 2, 2020) ............................................................39

*US Dominion, Inc. et al. v. Fox Corp., et al.*,
  C. A. No. N21C-11-082-EMD (Del. Super. Ct. Nov. 8, 2021) ..............................73

*US Dominion, Inc., et al. v. Fox News Network, LLC, et al.*,
   C.A. No.: N21C-03-257, 2021 WL 5984265 (Del. Super. Ct. Dec. 16, 2021) .............. *passim*

*US Dominion, Inc., et al. v. Powell, et al.*,
   No. 1:21-cv-00040, 2021 WL 3550974 (D.D.C. Aug. 11, 2021)................................... *passim*

*US Dominion, Inc. v. Fox News Network, LLC*,
   C.A. No.: N21C-03-257-EMD, 2022 WL 100820 (Del. Super. Ct. Jan. 10,
   2022) .................................................................................................................................2

*Weinberg v. Feisel*,
   110 Cal. App. 4th 1122 (Cal. App. Ct. 2003) ........................................................69

*Weiner v. Doubleday & Co.*,
   74 N.Y.2d 586 (1989) ...........................................................................................32, 33

*Weyrich v. New Republic, Inc.*,
   235 F.3d 617 (D.C. Cir. 2001).............................................................................9, 49

*Williams v. New York City Housing Auth.*,
   816 F. App'x 532 (2d Cir. 2020) .............................................................................39

*Wolston v. Reader's Digest Ass'n, Inc.*,
   443 U.S. 157 (1979).................................................................................................65

*World Wrestling Fed'n Ent., Inc. v. Bozell*,
   142 F. Supp. 2d 514 (S.D.N.Y. 2001)......................................................................67

## Statutes

N.Y. Civ. Rights Law § 74 ...............................................................................................36

N.Y. Civ. Rights Law § 76-a(2).......................................................................................66

## Other Authorities

CPLR 3211(g).....................................................................................................................29

David Elder, *Defamation: A lawyer's Guide* § 3:3 (2003) ...........................................38

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 29, 62

Fed. R. Civ. P. 15(a) ......................................................................................................74

Fed. R. Evid. 201(b)..........................................................................................................39

Restatement (2d) Torts § 578 (1977)................................................................................33

Rodney Smolla, 1 Law of Defamation § 4:96 (2d ed. 2020 Update) ............................31

Rodney Smolla, 2 Law Defamation § 8:3.........................................................................36

Rodney Smolla, *Law of Defamation* § 8:67.50.............................................................38

Plaintiff Majed Khalil ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion to Dismiss (the "Motion") of Defendants Fox Corporation ("Fox Corp."), Fox News Network LLC ("Fox News" and, with Fox Corp., "Fox"), and Lou Dobbs ("Dobbs" and, with Fox, the "Fox Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The Court should summarily deny the Fox Defendants' Motion, which is entirely without merit. Indeed, *three different courts,* in 157 pages of rulings, have already carefully considered and uniformly rejected the precise arguments advanced by the Fox Defendants here. Moreover, each of these three related defamation actions include the same *December 10, 2020 defamatory statements regarding Plaintiff at issue in this action.* In the most recent ruling, a sixty-one page Decision by Justice David B. Cohen of the New York Supreme Court, issued on March 8, 2022 in Smartmatic's defamation case against the Fox Defendants (and other defendants), the Court rejected all of the same arguments advanced here by the Fox Defendants that their conduct is subject to certain media "defenses" and did not constitute "actual malice," and held as actionable defamatory statements the same December 10, 2020 statements at issue in this action.[1] The same counsel representing the Fox Defendants in this action is representing the Fox Defendants in the

---

[1] *See* Decision and Order, *Smartmatic USA Corp. et al. v. Fox Corp., et al.*, Index No. 151136/2021 (Sup. Ct. N.Y. Cnty. March 8, 2022) ("Smartmatic NY Action") [NYSCEF No. 856] ("Smartmatic NY Op."). A copy of the Smartmatic Opinion is attached as **Exhibit A** to the March 18, 2022 Declaration of Sigmund S. Wissner-Gross ("Wissner-Gross Decl."). In the New York Court's Opinion, it specifically cited statements made by the Fox Defendants on December 10, 2020. *See* Smartmatic NY Op. at 12 (referencing the discussion of the December 10, 2020 statements alleged in ¶¶ 126 and 142 of the Smartmatic Complaint, including statements made on the December 10, 2020 *Lou Dobbs Show* broadcast, and on Twitter and Facebook). The statements made on December 10, 2020, were referenced throughout Smartmatic's Complaint. *See*, *e.g.*, Smartmatic NY Action, Complaint, ¶¶ 126-130, 133(ll)-(qq), 166((v)-(w), 199((o)-(p), and Exhibits 38-39. A copy of the Smartmatic Complaint, without its exhibits, is annexed as **Exhibit F** to the Wissner-Gross Decl. Plaintiff, in his Complaint, incorporated by reference "the factual allegations regarding Defendants' conduct and knowledge, and regarding Smartmatic and Dominion (and their respective affiliates), to the extent not otherwise alleged herein," in Smartmatic's NY Action, and in the Dominion DE Action (against Fox News) (as defined herein) and the DC Action (against Powell) (as defined herein). *See* Complaint ¶ 13.

Smartmatic NY Action.  Prior rulings, which the Fox Defendants conspicuously fail to mention in

their Motion, are to the same effect.  On December 16, 2021, Judge Eric M. Davis of the Delaware

Superior Court, in a related defamation case by Dominion against Fox News, also involving claims

based, *inter alia*, on the same December 10, 2020 statements at issue in this case and other prior

statements made by the Fox Defendants (again, most covered in this action), issued a fifty-two

page ruling rejecting the same arguments as advanced by the Fox Defendants here.[2]  Following

the issuance of Judge Davis' ruling, he denied on January 10, 2022 Fox News' request that he

certify an interlocutory appeal of his ruling, rejecting a second time Fox News' basic arguments;

the Delaware Supreme Court, on January 31, 2022 also denied Fox News' request to certify an

interlocutory appeal.[3]  Similarly, on August 11, 2021, United States District Judge Carl J. Nichols

of the District of Columbia, in a forty-four page ruling denied motions to dismiss by Sidney Powell

(and other defendants) in a related action brought by Dominion which also includes the same

---

[2] *See* Opinion, *US Dominion, Inc., et al. v. Fox News Network, LLC, et al.*, C.A. No.: N21C-03-257-EMD, 2021 WL 5984265 (Del. Super. Ct. Dec. 16, 2021) ("Dominion DE Action") (Attached as **Exhibit B** to the Wissner-Gross Decl.)  ("Dominion DE Op.").  Dominion's Delaware Complaint against Fox News prominently included the same pre-Broadcast Tweet that was issued by the Fox Defendants at 4:56 p.m. on December 10, 2020, quoting the entire Tweet, and focused on the December 10, 2020 *Lou Dobbs Tonight* broadcast as well, relating to Plaintiff, which are discussed below.  *See* Dominion DE Complaint ¶¶ 106-110.  A copy of Dominion's Delaware Complaint against Fox News, without its exhibits, is annexed as **Exhibit G** to the Wissner-Gross Decl.

[3] Of note, Judge Davis dismissed as hyperbolic the argument by Fox News that an immediate appeal was required to "prevent" his Opinion from "threatening" the First Amendment, and Judge Davis urged Fox News to "litigate its defenses to judgment" if it believed that Dominion's allegations lacked merit.  Judge Davis noted, however, that his "Opinion …found Dominion's actual malice allegations under New York law were well-pleaded."  *See US Dominion, Inc. v. Fox News Network, LLC*, C.A. No.: N21C-03-257-EMD, 2022 WL 100820, at *3-4 (Del. Super. Ct. Jan. 10, 2022) (noting further that Dominion's Complaint "stated a defamation claim under any pleading standard, including New York's anti-SLAPP clear and convincing evidence standard"); *Fox News Network, LLC v. US Dominion, Inc.*, C.A. No. N21C-03-257-EMD, 2022 WL 274235, at *2 (Del. Jan. 31, 2022) (agreeing with Superior Court that "interlocutory review is not warranted in this case").  *See* **Exhibits C** and **D** to the Wissner-Gross Decl.  It also should be noted that Dominion, in its January 6, 2022 opposition to Fox News' meritless request for interim certification, debunked the same false counter-narrative advanced by the Fox Defendants here. *See* Dominion "Opposition to [Fox News'] Application for Certification of the Court's December 16, 2021…Order to the Delaware Supreme Court," in the Dominion DE Action at 1 ("Contrary to Fox's central assertion, Dominion did not sue Fox for reporting on anything former President [Trump] said or did, or on any lawsuit he or his campaign filed….Dominion sued Fox for endorsing, promoting and broadcasting devastating lies about Dominion – lies that no lawyer for the President ever put into any court filing.").

December 10, 2020 statements and other defamatory statements that are recited in this action.[4] This Court, too, should summarily reject the Fox Defendants' frivolous and legally-infirm arguments.  Indeed, the grounds for denial of the Fox Defendants' Motion are at least as compelling as, if not even more compelling than, in the Smartmatic NY Action, the Dominion DC Action or the Dominion DE Action, given, *inter alia*, (i)  the Fox Defendants' defamatory statements regarding Plaintiff are predicated on the same underlying fabricated statements already held by three courts as satisfying even the "actual malice" standard, (ii) such courts rejected the same claimed defenses advanced by the Fox Defendants here, and (ii) the wholesale absence of even any claimed connection of Plaintiff to Smartmatic, Dominion or the Election prior to the false statements regarding Plaintiff made on December 10, 2020.

As set forth in the Complaint [ECF No. 1-1] (the "Complaint" or "Compl."), Plaintiff is a private Venezuelan businessman whose name was involuntarily and without warning suddenly thrust on December 10, 2020, into the center of a bogus conspiracy of the Fox Defendants' and Defendant Sidney Powell's ("Powell" and collectively with the Fox Defendants, the "Defendants") own making.   When former President Trump lost the 2020 U.S. Presidential Election (the "Election"), the Fox Defendants started featuring individuals like Defendant Powell who falsely claimed that two election companies – Smartmatic and Dominion – were to blame for this loss. As a steady stream of reliable and, in many cases, official reports rolled in stating that there was absolutely no evidence that anyone, including Smartmatic or Dominion, had interfered in the Election, the Defendants' false claims of election fraud only intensified, culminating in the Fox

---

[4] *See* Memorandum Opinion, *US Dominion, Inc., et al. v. Powell, et al.*, No. 1:21-cv-00040, 2021 WL 3550974 (D.D.C. Aug. 11, 2021) ("Dominion DC Action") (Attached as **Exhibit E** to the Wissner-Gross Decl.) ("Dominion DC Op."). Dominion's DC Complaint against Powell similarly referenced the defamatory statements of December 10, 2020.  *See* Dominion DC Complaint ¶¶ 85 & n. 52, 181(z) & n. 152.  A copy of Dominion's DC Complaint against Powell, without its exhibits, is annexed as **Exhibit H** to the Wissner-Gross Decl.

Defendants falsely naming Plaintiff on December 10, 2020, as "COO" of the efforts to rig the Election and falsely accusing Plaintiff of actively collaborating in the execution of "an electoral 9-11 against the United States." This defamatory, indeed fabricated, claim, like the prior claims of election fraud, was entirely fictional: Plaintiff is a foreign businessman without any connection whatsoever to Smartmatic, Dominion, or the Election. Plaintiff submits that the Defendants' conduct, instead, reflected xenophobia in its worst and most dangerous form; that his name was, regrettably, selected because he was Venezuelan and had a foreign-sounding name which would be a nice addition to the Fox Defendants' already over-the-top bogus claims about the Election designed to drive ire, viewership, and profits.[5]

The Court can quickly dispense with the Fox Defendants' inaccurate preliminary counter-narrative of the facts, which bears no resemblance to the allegations in the Complaint and grossly misstates the actual facts at issue. By the time of the Fox Defendants' defamatory statements regarding Plaintiff on December 10, 2020, Powell's lawsuits had all been dismissed, and the Trump Campaign had formally disassociated itself from Powell (stating on November 22, 2020, that Powell was "not a member of the Trump Legal Team," nor a lawyer "for the President in his personal capacity" (*see* Compl. ¶ 73)[6]). Powell had not made reference to Plaintiff in any of her

---

[5] The Fox Defendants' profit motive in this scam has been referenced by at least one court. As the New York Court observed, citing Smartmatic's Complaint, "in an attempt to boost ratings…defendants Fox Corporation and Fox News Network LLC (collectively "Fox News") fabricated a story that the election was stolen." Smartmatic NY Op. at 3. Several courts have referenced Powell's transparent profit motive as well in advancing this Election scam; this is more fully addressed in Plaintiff's opposition to Powell's motion to dismiss, which is being filed concurrently with Plaintiff's opposition to the Fox Defendants' Motion.

[6] *See* Maggie Haberman & Alan Feuer, *Trump Team Disavows Lawyer Who Peddled Conspiracy Theories on Voting*, N.Y. Times (Nov. 22, 2020), https://www.nytimes.com/2020/11/22/us/politics/sidney-powell-trump.html. (cited in Compl. at 38 n. 85 ) (Annexed as **Exhibit I** to the Wissner-Gross Decl.). The Court may consider, on a motion to dismiss, documents, such as this New York Times articles, that are cited or incorporated by reference in the Plaintiff's Complaint. *See Atlantic Neurosurgical Specialists, P.A. v. Multiplan, Inc.*, Civ. No. 20 Civ. 10685, 2022 WL 158658, at * (S.D.N.Y. Jan. 18, 2022) (Stanton, J.) ("The complaint, for purposes of a motion to dismiss, includes written exhibits attached to it and 'any statements or documents incorporated in it by references.'" (*quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

by-then dismissed lawsuits.   And prior to the Fox Defendants' defamatory Tweet regarding Plaintiff published at 4:56 p.m. on December 10, 2020, where the Fox Defendants falsely identified Plaintiff as the "effective 'COO'" of a "cyber Pearl Harbor" and falsely stated that Plaintiff "executed an electoral 9-11 against the United States" in cahoots with the CEO of Smartmatic and two other individuals and other "collaborators," followed by the defamatory statements regarding Plaintiff on the *Lou Dobbs Tonight* broadcast on December 10, 2020 and the Fox Defendants' post-broadcast statements, there had never been *any suggestion* by anyone that Plaintiff had any connection to Smartmatic, Dominion, or the Election.  Powell did not even reference her dismissed lawsuits during her appearance on Dobbs' December 10, 2020 show, nor did the Fox Defendants reference Powell or her dismissed lawsuits in their 4:56 p.m. Tweet, during the *Lou Dobbs Tonight* broadcast, nor during the Fox Defendants' post-broadcast defamatory statements regarding Plaintiff.

The Fox Defendants were well aware by December 10, 2020 that they were promoting a false narrative:  as set forth in the Complaint, by the time of the 4:56 p.m. Tweet on December 10, 2020, both Dominion and Smartmatic had sent detailed retraction demand letters to the Fox Defendants, Dominion also had repeatedly provided detailed information to the Fox Defendants that their allegations, *inter alia*,  regarding the alleged role of Dominion in "fixing" the Election (and its alleged ties to Smartmatic) were objectively false, and numerous experts and government officials had debunked the false claims that had been made on Fox by Powell, and promoted by the Fox Defendants regarding the Election.[7]   There was, in any event, nothing "objectively

---

[7] That the Fox Defendants' were on notice, prior to the December 10, 2020 defamatory statements that the entire Election fraud story was bogus, Dominion and Smartmatic had no involvement in any plot to "fix" the Election, Smartmatic did not "own" Dominion, there was no foreign plot involving Venezuela to steal the Election, and other lies perpetrated and repeated by Powell and the Fox Defendants were false, is detailed at length in the Smartmatic NY Op., the Dominion DC Op*.,* and the Dominion DE Op.

newsworthy" about the fabricated statements broadcast by the Fox Defendants regarding Plaintiff's alleged ties to the nonexistent Election conspiracy, literally out of the blue, and the Fox Defendants' implication that they were simply reporting on "litigation efforts" by a member of President Trump's legal team is riddled with error and predicated on a host of mistaken assumptions. Nor do the Fox Defendants' efforts to further malign Plaintiff by improperly and misleadingly citing to various articles containing blatantly inaccurate and irrelevant references to Plaintiff help their cause. The Fox Defendants' "blame the victim' strategy does not apply here. Even if such articles are relevant and appropriate to consider on the Motion (they are not), none suggest any connection whatsoever by Plaintiff with Dominion, Smartmatic or the Election, and represent an unfortunate red herring attempt by the Fox Defendants to avoid culpability for their defamatory conduct by falsely attacking Plaintiff on matters that have nothing to do with any claimed ties to Dominion, Smartmatic or the Election.[8]

As set forth further below, there is no basis to immunize *any of the Fox Defendants* for their outrageous defamatory conduct.

*First*, no First Amendment principle or other privilege or immunity protects the Fox Defendants from liability for disseminating defamatory falsehoods concerning the Plaintiff. In "support" of their efforts to claim the statements they broadcast are protected by the First Amendment, the Fox Defendants mischaracterize their role as simply "covering" and "commenting" on Powell's allegations of election fraud and mischaracterize Constitutional and New York law as protecting this type of reporting. But, as both the Delaware Court (presiding over Dominion's lawsuit against Fox News) and the New York Court (presiding over Smartmatic's

---

[8] As explained *infra*, the Fox Defendants' conduct in trying to divert attention from their own misconduct by patching together, out of context and in disregard of controlling procedure on such a Motion, a false and completely irrelevant counter-narrative about Plaintiff, should be summarily rejected by the Court. *See* note 70 *infra*.

lawsuit against the Fox Defendants) have already recognized, New York law does not recognize the "neutral reportage" privilege that the Fox Defendants ask this Court to apply here, and the "fair report" privilege the Fox Defendants attempt to invoke does not apply to the Defendants' defamatory statements.  *Dominion DE Action,* 2021 WL 5984265, at *22-26; Dominion DE Op. at 40-47 (holding that the New York Court of Appeals "has restated its rejection of the neutral reportage doctrine" and rejecting application of the "fair report" privilege); Smartmatic NY Op. at 25 [NYSCEF No. 856].  Moreover, both the Delaware and D.C. courts presiding over Dominion's defamation suits against Fox News and Powell, and the New York Supreme Court presiding over Smartmatic's defamation claims against the Fox Defendants,  have held that the Defendants' false claims of election fraud, at a minimum, are actionable statements of fact or "mixed" opinions, not pure opinions.[9]  The Fox Defendants' failure to reference anywhere in their Motion the related, pending Dominion lawsuits, that squarely rejected the arguments now advanced by the Fox Defendants and issued ***prior to*** the Fox Defendants' filing of the Motion, underscores the frivolous nature of this argument by the Fox Defendants.

*Second*, even if it applies, the "actual malice" standard *does not* warrant dismissal of Plaintiff's claims against the Fox Defendants either in this case, as both the New York Supreme Court and Delaware Superior Court have held, respectively, in Smartmatic's lawsuit against the Fox Defendants and Dominion's lawsuit against Fox News.  As the New York Court observed, the "actual malice" standard "may be established 'where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.  Nor will [a publisher] be likely to prevail when [its] allegations are so inherently improbable that only a reckless [person] would have put them in circulation."  Smartmatic NY Op. at 36-38.

---

[9] *See Dominion DE Action,* 2021 WL 5984265, at *2; Dominion DE Op. at 4; *Dominion DC Action,* 2021 WL 3550974, at *7-9; Dominion DC Op. at 14-18; Smartmatic NY Op. at 45 [NYSCEF No. 856].

Commenting on the Fox Defendants' baseless endorsement and broadcasting of claims of Election fraud, the New York Court observed: "Even assuming that Fox News did not intentionally allow this false narrative to be broadcasted, there is a substantial basis for [Smartmatic's] claim that, at a minimum, Fox News turned a blind eye to a litany of outrageous claims about [Smartmatic], unprecedented in the history of American elections, so inherently improbable that it evinced a reckless disregard for the truth." *Id.* at 38. As the New York Court further observed, "Fox News had reason to suspect that what it was broadcasting was false." Smartmatic NY Op. at 38, 40. The Delaware Superior Court, in rejecting Fox News' motion to dismiss, reached a similar conclusion. *See Dominion DE Action*, 2021 WL 5984265, at *28-29; Dominion DE Op. at 50-51 ("At this stage, the Court finds that the Complaint alleges facts that Fox made the challenged statements with knowledge of their falsity or with reckless disregard of their truth.").

Tellingly, in arguing that Plaintiff's claims should be dismissed for failure to allege actual malice, the Fox Defendants seek to rewrite well-established law to claim that Plaintiff (assuming the New York anti-SLAPP statute does not apply) is a public figure, improperly attempt to inject irrelevant (and inaccurate) hearsay concerning the Plaintiff from outside the Complaint into this analysis, and disregard the relevant allegations of the Complaint, just as they did with the wealth of evidence objectively demonstrating the Election was the most secure ever. The Fox Defendants also, again, fail to address on point rulings in both the Dominion DE Action and Dominion DC Action finding Dominion's allegations of actual malice with respect to Fox News and Powell, which mirror (and in key instances, are identical to) Plaintiff's allegations here, were more than sufficient at the pleading stage to satisfy even the actual malice standard if it applies.[10] Such Courts, as well as the New York Court in its March 8, 2022 ruling, also have rejected the arguments

_____

[10] As noted, the New York Court, more recently, after the filing of the Motion, also sustained Smartmatic's similar allegations of actual malice against the Fox Defendants.

advanced by the Fox Defendants here that false factual statements about the Election merit some special exemption from the general rules governing defamation claims; they do not.[11]  As alleged here, and in the Dominion and Smartmatic Actions, the Fox Defendants were repeatedly admonished prior to their December 10, 2020 statements that their claims of election fraud, including any claimed role of Dominion and Smartmatic in fixing the election results, were false, both in direct, detailed communications from Dominion and Smartmatic and by a series of public reports from election experts and a variety of governmental officials.  Indeed, even former Attorney General William Barr (among other senior Trump government officials) had colorfully dismissed (prior to December 10, 2020) claims of substantial voter fraud in the 2020 U.S. Presidential Election, as completely without merit.[12]   Ignoring these prior, repeated admonishments, the Fox Defendants nonetheless published the defamatory claim that Plaintiff participated in the non-existent election fraud in the 4:56 p.m. Tweet, on the Broadcast and in the post-Broadcast Posts.[13]  This is more than enough to satisfy the actual malice standard, assuming it applies.

*Finally*, Plaintiffs have sufficiently alleged that Fox Corporation was directly involved in the creation and publication of the defamatory statements; but, in any event, Fox News and Dobbs were agents of Fox Corporation and Fox Corporation is liable for the acts of its agents.  The New

---

[11] *See Dominion DC Action*, 2021 3550974, at *7; Dominion DC Op. at 15 ("As an initial matter, there is no blanket immunity for statements that are 'political; in nature:  as the Court of Appeals has put it, the fact that statements were made in a 'political 'context' does not indiscriminately immunize every statement contained therein….[I]t is simply not the law that probably false statements cannot be actionable if made in the context of an election.'") (quoting *Weyrich v. New Republic, Inc.,* 235 F.3d 617, 626 (D.C. Cir. 2001))

[12] *See* Compl. at ¶ 82; Michael Balsamo, *Disputing Trump, Barr Says No Widespread Election Fraud*, Associated Press (Dec. 1, 2020), https://apnews.com/article/barr-no-widespreadelection-fraudb1f1488796c9a98c4b1a9061a6c7f49d (cited in Compl. at 41 n. 91) (Annexed as **Exhibit J** to the Wissner-Gross Decl.).

[13] The "Posts" discussed *infra*, were statements made by the Fox Defendants on Fox sites (Twitter, Facebook) before and/or after the December 10, 2020 Broadcast, all on December 10, 2020.

York Court, instructively, rejected Fox Corporation's request that the claims against it be dismissed.

As United States District Judge Nichols held in denying Powell's motion to dismiss Dominion's defamation claims against her, "[t]his is not a close call." *Dominion DC Action*, 2021 WL 3550974, at *8; Dominion DC Op. at 16.  The same is true here.  This sixth bite at the apple should be rejected.[14]  The Fox Defendants' Motion should be denied in its entirety.

## BACKGROUND

Plaintiff commenced this action in New York Supreme Court on December 1, 2021.  At that time, the related Smartmatic defamation case, commenced by three Smartmatic entities, against the Fox Defendants, Sidney Powell and three other individuals was pending in New York Supreme Court (New York County).[15]  The Smartmatic NY Action included many substantially identical allegations with respect to the Fox Defendants, including detailed allegations regarding the events of December 10, 2020.  The Fox Defendants, in an especially transparent attempt at forum shopping, removed this action to the Southern District of New York on December 2, 2021 just hours shortly before Fox was served, to apparently avoid being assigned to the same New York Supreme Court Justice who, at oral argument several months earlier,[16] had expressed strong skepticism regarding many of the same arguments that the Fox Defendants advance here.  Justice Cohen's ruling, issued on March 8, 2022, rejecting the same arguments advanced by the Fox

---

[14] The five prior "bites" are as follows: (i) Judge Nichols' August 11, 2022 ruling on Powell; (ii) Judge Davis' December 16, 2021 ruling on Fox News; (iii) Judge Davis' January 10, 2022 ruling on Fox News; (iv) the Delaware Supreme Court's January 31, 2022 ruling on Fox News; and (v) Justice Cohen's March 8, 2022 ruling on Fox News, Fox Corporation and Dobbs.

[15] The Smartmatic NY Action had been commenced in New York Supreme Court on February 4, 2021 [NYSCEF Doc. No. 1.]  Oral argument on the Fox Defendants' motion to dismiss the claims asserted against them in the Smartmatic NY Action had been conducted on August 17, 2021, and was *sub judice* at the time Plaintiff's action was filed on December 1, 2021.

[16] The New York Court had conducted oral argument on the Defendants' motions to dismiss on August 17, 2021.

Defendants here, confirms why the Fox Defendants were seeking to flee his Courtroom.   They should not be permitted, however, to escape the consequences of his ruling on the substance of the claims against them, nor of the equally compelling rulings in the related Dominion actions.

As the Fox Defendants were well aware at the time they removed this action, there were at least three other defamation actions related to the claims of election fraud at issue here pending: the Dominion DC Action, Dominion DE Action and the New York Action.   As the pleadings in those actions reflect, all three actions address the same series of misstatements by the Fox Defendants.   All three actions allege that the statements made on December 10, 2020, were defamatory.   In particular, Dominion's Delaware action (against Fox News) and Smartmatic's New York action (against the Fox Defendants) contain detailed allegations that mirror those in this action, including many identical allegations regarding the events of December 10, 2020.[17]   Both the Dominion DE Action and Dominion DC Action are proceeding to discovery.[18]

Plaintiff's Complaint sets forth, in detail, how the Fox Defendants provided a platform for and promoted lies, including Powell's, regarding the results and integrity of the Election from mid-November 2020 until December 10, 2020, including fabricated claims regarding Smartmatic, Dominion, the Election, and finally Plaintiff.   As alleged in the Complaint, Fox maintained tight

---

[17] Dominion's DE Action against Fox News and Smartmatic's NY Action against the Fox Defendants are particularly instructive, since many of the background allegations in Plaintiff's action regarding the events that occurred prior to December 10, 2020, and the events of December 10, 2020, are substantially similar to the allegations set forth in these two related actions.   *Compare generally* Compl. *with* Dominion DE Action, Complaint filed March 26, 2021 and Smartmatic NY Action [NYSCEF No. 1].   *See* reference to discussion of December 10, 2020 in Smartmatic NY Action and Dominion DE Action in footnotes 1-2 *supra* and Complaint ¶¶ 86, 88-102.   Dominion's DC Action against Powell also contains many similar, if not identical allegations, including allegations regarding December 10, 2020.   *See* Dominion DC Action [ECF No. 1].

[18] *See* Dominion DC Action [ECF No. 121]; Dominion DE Action [Bloomberg Law Docket Entry Nos. 141-145, 150-154, 157-158, 161-164, 166-170, 172-176, 178-180, 182-183, 185-191, 193-194, 196, 197, 208-209, 215, 217, 219, 220, 222-229, 237-238, 242-243, 246-248, 262-263, 268-269, 271-275, 277-278, 280-305, 307-313, 315-319, 325-327, 332-339, 345, 352, 358-367, 369-378, 381-386, 392, 394-395, 398-401, 404-418, 424-426, 428, 433-439, 441-450, 452-457, 459-463, 465-470, 472].   In the Smartmatic NY Action, Plaintiff understands that on March 17, 2022, the Fox Defendants filed Answers to the Complaint and have filed a *pro forma* Notice of Appeal to the Appellate Division, First Department.   Plaintiff anticipates such appeal in the Smartmatic NY Action by the Fox Defendants, if perfected, will be unsuccessful.

control of Dobbs' online accounts and his show.  As further alleged in the Complaint, Dobbs presented himself to "readers and viewers as a provider of factual information – **not** opinion, rhetoric or spin."  Compl. ¶ 11.  Fox operated and exercised control over the Instagram account @loudobbstonight, the Facebook account "Lou Dobbs" (which links to the @loudobbstonight Instagram account) and the Twitter account, @LouDobbs, as the official social media accounts for the Fox show *Lou Dobbs Tonight*.  Compl. ¶ 11.  Fox frequently republished shows and segments from *Lou Dobbs Tonight* on the @loudobbstonight Instagram, "Lou Dobbs" Facebook, and @LouDobbs Twitter accounts, as occurred on December 10, 2020, with the Broadcast and Posts. *Id*.  In the Motion, the Fox Defendants do not dispute these allegations, nor, as alleged, that Dobbs acted as an agent for Fox, in addition to his individual culpability.[19]

On November 8, 2020, Powell began appearing on Fox to advance a false narrative about a rigged Presidential Election, declaring that there was "a massive and coordinated efforts to steal this election…to delegitimize and destroy votes for Donald Trump, to manufacture votes for Joe Biden."  Compl. at ¶ 37.  Powell already had begun to spin the "Big Lie," that Dominion was behind this non-existent election fraud, stating that the fraud somehow occurred in Dominion's software:  "That is where fraud took place, where they were flipping votes in the computer system or adding votes that did not exist…That's when they had to stop the vote count and go in and replace votes for Biden and take away Trump votes."  *Id.* at ¶ 38.  Powell, like most alleged con artists, kept embellishing this false story (presenting a series of fake "developments") and the Fox Defendants, well aware that Powell was advancing a fabricated story (and that her "developments" were fake as well), kept giving her a platform to broadcast this false story, and added to the false factual narrative themselves.  The Defendants next advanced an equally false claim that Dominion

---

[19] *See* Compl. ¶ 11 ("At all relevant times, Dobbs also has been an agent for Fox….").

was owned by Smartmatic,[20] though the two companies are, in fact, competitors and have both categorically denied any such ownership and sued both Powell and Fox with respect to this false claim, among others. *Id.* at ¶¶ 37, 42.[21]  Powell expanded her story to claim, falsely, that vote-flipping algorithms in Dominion machines had been created in Venezuela to rig elections for Hugo Chávez, using this expanded false narrative to drive her own fundraising efforts on Fox. *Id.* at ¶ 42.[22]  The Fox Defendants were all too willing to broadcast these increasingly outrageous false claims, even though, in private, Dobbs is reported to have "raised questions about Powell's claims to others," Fox host Tucker Carlson publicly mocked Powell for failing to produce evidence to support her claims, and even White House officials stated that Powell's claims were "nonsense." *Id.* at ¶ 41.[23]  In short, the Fox Defendants knew that Powell was peddling harmful lies and, quite remarkably, continued to publish and, in many instances, embellish upon Powell's lies, even in the face of mounting evidence from Dominion, Smartmatic, and public reports from experts and government officials demonstrating the falsity of these claims.

The Fox Defendants were repeatedly advised by Dominion and by government and expert reports that such claims of election fraud were entirely false.  By November 12, 2020, the Trump Administration's own Cybersecurity & Infrastructure Security Agency ("CISA") confirmed that

---

[20] Both Dominion and Smartmatic repeatedly denied that Smartmatic owns Dominion; and Smartmatic has vigorously denied that it was "created" in Venezuela and has denied that it rigged any elections for Chávez. All objective evidence has supported the position of Dominion and Smartmatic. *See* note 24, *infra*; *see also* Compl. ¶¶ 45-49.

[21] *See* Georgia Secretary of State, *Elections Security Is Our Top Priority: Security Focused Tech Company, Dominion Voting to Implement New Verified Paper Ballot System*, https://sos.ga.gov/securevoting/.   (cited in Compl. at 21 n. 44) (Annexed as **Exhibit K** to the Wissner-Gross Decl.).

[22] *Id.*

[23] *See* Seung Min Kim, Josh Dawsey & Toluse Olorunnipa, *Republicans plunge into open battle over attempts to overturn Trump's loss to Biden*, Wash. Post (Dec. 22, 2020), https://www.washingtonpost.com/politics/trump-republicans-electionfight/ 2020/12/22/fa0c2744-446b-11eb-b0e4-0f182923a025_story.html.  (cited in Compl. at 20 n. 39) (Annexed as **Exhibit L** to the Wissner-Gross Decl.); Phillip Rucker, Ashley Parker, Josh Dawsey & Amy Gardner, *20 days of fantasy and failure: Inside Trump's quest to overturn the election*, Wash. Post (Nov. 28, 2020), https://www.washingtonpost.com/politics/trump-election-overturn/2020/11/28/34f45226-2f47-11eb-96c2-aac3f162215d_story.html.  (cited in Compl. at 20 n. 40) (Annexed as **Exhibit M** to the Wissner-Gross Decl.).

there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised." *Id.* at ¶ 45. Also, by November 12, 2020, Dominion began circulating to Fox reporters and producers, a detailed, regularly-updated email titled "SETTING THE RECORD STRAIGHT: FACTS AND RUMORS," with links to independent sources (such as CISA) rebutting the false claims being made by Powell and Fox about Dominion. *Id.* at ¶¶ 46-47.[24] This email was circulated to Fox reporters and producers, including those who oversaw and managed content for Fox's *Lou Dobbs Tonight*, on November 12, 13 and 14, 2020. *Id.* Similarly, EAC Commissioner and Trump appointee Ben Hovland notified Fox that "this was the most secure election we've ever had." *Id.* at ¶ 48. At this time, other public officials were proclaiming there was no evidence that any voting system had been compromised in any respect, with one expert proclaiming "There is absolutely no evidence, none, that Dominion Voting Machines changed any votes in this election." *Id.* at ¶¶ 45-49.

Nonetheless, on November 12, the Fox Defendants double-downed on the false election fraud claims, with Dobbs hosting a broadcast in which Smartmatic was falsely tied to Dominion, and both were falsely tied, via Smartmatic, to Venezuela and Venezuelan leaders Chávez and Maduro. *Id.* at ¶ 50. For his part, Dobbs was a cheerleader for the bogus election fraud claims, gleefully injecting his own false supplements. For example, on November 12, Dobbs falsely

---

[24] *See* Cybersecurity & Infrastructure Security Agency, Joint Statement From Elections Infrastructure Government Coordinating Council & The Election Infrastructure Sector Coordinating Executive Committees (Nov. 12, 2020), https://www.cisa.gov/news/2020/11/12/joint-statement-electionsinfrastructure-government-coordinating-council-election    (cited in Compl. at 23 nn. 46-48) (Annexed as **Exhibit N** to the Wissner-Gross Decl.); SETTING THE RECORD STRAIGHT: FACTS & RUMORS (Nov. 12, 2020) (cited in Compl. at 23-24 nn. 49, 51) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.); Secretary of State Jocelyn Benson, *Fact Checks*, https://www.michigan.go v/sos/0,4670,7-127-1633 100423 102534 102535---,00.html (cited in Compl. at 23 n. 49) (Annexed as **Exhibit P** to the Wissner-Gross Decl.); Georgia Secretary of State, *With 8,197 Votes Out, Officials Focused on Getting it Right*, https://sos.ga.gov/index.php/elections/with_8197_votes_out_officials_focused_on_getting_it_right.    (Cited in Compl. at 23 n. 50) (Annexed as **Exhibit Q** to the Wissner-Gross Decl.); SETTING THE RECORD STRAIGHT: FACTS & RUMORS (Nov. 12, 13, & 14, 2020) (cited in Compl. at 24 n. 52) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.).

claimed that: "little is known about [the] ownership of Dominion and Smartmatic," beyond the false claims that Smartmatic was formed by three Venezuelans who were close to Chávez in order to fix elections and was owned by Dominion; and Smartmatic and Dominion sent votes out of the U.S. so that the tabulation was not auditable. *Id.* at ¶¶ 50, 54. Then, on November 14, the Fox Defendants published the following false statement on the @loudobbs Twitter account: "Read all about Dominion and Smartmatic voting companies and you'll soon understand how pervasive this Democratic electoral fraud is, and why there's no way in the world the 2020 Presidential election was either free or fair." *Id.* at ¶ 55.

On November 15, Dominion sent a Fox host an email attaching Dominion's November 14 "SETTING THE RECORD STRAIGHT" email, which included corrective facts from earlier Dominion emails, and included additional corrective facts, including "[t]he fact that Dominion is a nonpartisan U.S. company that is not owned by Smartmatic." *Id.* at ¶ 52.[25] Meanwhile, Powell expanded her claims of election fraud to allege that Dominion had bribed Georgia officials, an accusation that was manufactured out of whole cloth in order to discredit Georgia Republican's public rebuke of Powell's claims concerning the integrity of Georgia's Election results. *Id.* at ¶¶ 56-57.[26] The Fox Defendants, of course, endorsed Powell's false claims on a November 15 broadcast, even though three days earlier, Dominion in its SETTING THE RECORD STRAIGHT email had provided a link to the Georgia Secretary of State's website, which had certified that

---

[25] *See* SETTING THE RECORD STRAIGHT: FACTS & RUMORS (Nov. 14, 2020) (cited in Compl. at 25 n. 55) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.).

[26] *See Georgia Secretary of State, Elections Security Is Our Top Priority: Security Focused Tech Company, Dominion Voting to Implement New Verified Paper Ballot System https://sos.ga.gov/securevoting/.* (cited in Compl. at 21 n. 44) (Annexed as **Exhibit K** to the Wissner-Gross Decl.).

"every legal vote was cast and accurately counted" in Georgia, and Georgia's public website reflected that Dominion fairly won the contract in a competitive process.  *Id.* at ¶¶ 46, 56-57.[27]

Both Dominion and Smartmatic continued to try, without success, to warn the Fox Defendants that they were purveying false claims.  Dominion directly reached out to Fox's CEO and President to address the false statements by Fox (and Powell) about Dominion and, on November 17, spoke to Fox's President and informed him of the voluminous facts rebutting the false claims of election fraud the Fox Defendants were peddling.  *Id.* at ¶ 58.  Dominion also continued to send new and updated versions of the "SETTING THE RECORD STRAIGHT" emails to Fox, including over 90 of its reporters, producers and anchors on November 16, 17, 19, and 20. *Id.* at ¶ 59.  Smartmatic, for its part, told Dobbs' coordinating producer at Fox News that Smartmatic only provided technology and software to Los Angeles Country ballot marketing devices for the Election.  *Id.* ¶ 60.[28]  Separate and apart from the information provided by Dominion and Smartmatic, on November 16, fifty-nine specialists in election security publicly stated that they never claimed any technical vulnerabilities impacted the outcome of the Election and there was "no credible evidence" that the Election results were altered through a technical compromise.  *Id.*

But, yet again, Powell was permitted to appear on Dobbs' show on November 16 and, setting the stage for her December 10 appearance, falsely claimed that Smartmatic had been created in Venezuela for purposes of rigging elections for Chávez.  *Id.* at ¶ 61.  Powell also falsely

---

[27] *See* Cybersecurity & Infrastructure Security Agency, Joint Statement From Elections Infrastructure Government Coordinating Council & The Election Infrastructure Sector Coordinating Executive Committees (Nov. 12, 2020), https://www.cisa.gov/news/2020/11/12/joint-statement-electionsinfrastructure-government-coordinating-council-election (cited in Compl. at 23 nn. 46, 48) (Annexed as **Exhibit N** to the Wissner-Gross Decl.); *Id.*

[28] *See* Tony Adams et al., *Scientists Say No Credible Evidence of Computer Fraud in the 2020 Election Outcome, But Policymakers Must Work with Experts to Improve Confidence*, Matt Blaze (Nov. 16, 2020), https://www.mattblaze.org/papers/election2020.pdf. (cited in Compl. at 30 n. 63) (Annexed as **Exhibit R** to the Wissner-Gross Decl.).

claimed to have a "witness" who was present when Smartmatic, allegedly at the direction of the late Chávez, had software and hardware "designed in a way…that the system could change the vote of each voter without being detected." *Id*. Smartmatic, nonetheless, for its part continued to try to persuade the Fox Defendants to stop broadcasting blatant lies about Smartmatic's supposed participation in election fraud, informing Dobbs' coordinating producer on November 17 that Smartmatic did not provide any input to the CISA's conclusion that there was no systematic election fraud. *Id*. ¶ 62.[29] Similarly, on November 17, after the Editorial Board for *The Wall Street Journal* published an article that refuted the false claims concerning Dominion, Dominion sent a link to the article to over 60 Fox producers, anchors, and content managers. *Id*.

Nevertheless, the Fox Defendants persisted in their coverage and endorsement of the "Big Lie." On November 18, Dobbs repeated the false claim that Powell had touted two days earlier about a witness to Smartmatic's fraudulent conduct and went further, falsely claiming that Dominion and Smartmatic "were denied use in the State of Texas." *Id.* at ¶ 63. On November 19, after appearing at the now infamous press conference held with Rudolph Giuliani, Powell was again given airtime on Dobbs' show, where she again falsely stated that Dominion voting machines and Smartmatic software were used to fix the Election, that Smartmatic sent votes to foreign countries for manipulation, and that Smartmatic and Dominion were "inextricably intertwined." *Id*. at ¶ 64. Dobbs even played excerpts of Powell's outlandish statements at the press conference and ended his show by endorsing Powell's statements that Smartmatic and Dominion had stolen the election. *Id*.

---

[29] *See* The Editorial Board, *Rage Against the Voting Machine*, The Wall Street Journal (Nov. 17, 2020), https://www.wsj.com/articles/rage-against-the-voting-machine-11605656036. (cited in Compl. at 32 n. 67) (Annexed as **Exhibit S** to the Wissner-Gross Decl.); "WSJ Editorial Board Debunks Dominion Rumors" Email (Nov. 17, 2020) (cited in Compl. at 32 n. 68) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.).

On November 20, 2020, Dominion sent Fox a letter formally demanding retraction of the false claims that it was party to a scheme to rig the Election.  The demand letter, among other things, identified Powell as a key purveyor of false information (mainly on Dobbs' show), and specifically noted the false allegations that Dominion was involved in changing votes in Venezuela, that Dominion was owned by Smartmatic, and other false attacks made on Dobbs' shows.  *Id.* at ¶ 67.[30]  Dominion again underscored that Dominion was "an American company with no ties to Venezuela" and that Smartmatic had previously filed two lawsuits against Dominion, further evidencing that the two companies are completely separate.  *Id*.  Though Dominion's demand letter was received by Fox, it apparently fell on deaf ears, as the Fox Defendants kept peddling the false claims of Venezuelan interference in the Election.  *Id.* at ¶ 70.

On November 22, prominent Republicans started affirmatively distancing themselves from Powell and her claims of election fraud.  *Id.* at ¶¶ 71-73.[31]  Most notably, the Trump Campaign disavowed Powell, issuing the following formal statement:  "Sidney Powell is practicing law on her own.  She is not a member of the Trump Legal Team.  She is also not a lawyer for the President in his personal capacity."  *Id.* at ¶ 73.[32]  Powell's status as lawyer *non grata* remained unchanged by December 10, 2020, when she appeared on the Dobbs Broadcast.[33]

---

[30] *See* Letter from Dominion to Fox News General Counsel Lily Claffee (Nov. 20, 2020) ("Dominion's First Retraction Demand Letter") (cited in Compl. at 34 n. 72) (Attached as Ex. 11 to the Dominion DE Complaint) (Annexed as **Exhibit T** to the Wissner-Gross Decl.).

[31] *See* Paul Kane & Felicia Sonmez, *Chris Christie Calls the Conduct of Trump's Legal Team a 'National Embarrassment,'* Wash. Post (Nov. 22, 2020), https://www.washingtonpost.com/politics/republicans-christie-trumpconcede/2020/11/22/05c280e6-2cda-11eb-bae0-50bb17126614_story.html. (cited in Compl. at 38 n. 83) (Annexed as **Exhibit U** to the Wissner-Gross Decl.); Maggie Haberman & Alan Feuer, *Trump Team Disavows Lawyer Who Peddled Conspiracy Theories on Voting*, N.Y. Times (Nov. 22, 2020), https://www.nytimes.com/2020/11/22/us/politics/sidney-powell-trump.html. (cited in Compl. at 38 n. 85) (Annexed as **Exhibit I** to the Wissner-Gross Decl.).

[32] *Id.*

[33] The Fox Defendants, in a red herring effort to confuse – and misstate – the factual record, claim that after December 10, 2020, President Trump may have "gravitated" back to Powell after previously disavowing her.  *See* ECF No. 26 at 5, 35.  This supposed potential reconciliation of Trump and Powell after December 10, 2020, however, was not reported until *well after* the December 10 Broadcast, and has no bearing on the fact that, on December 10,

Thereafter, Dominion persisted in its efforts to dissuade the Fox Defendants from using Fox's media platform to endorse the "Big Lie."  Dominion again sent an updated "SETTING THE RECORD STRAIGHT" email with updated facts debunking the false claims that Dominion had been involved in election rigging to more than 90 Fox reporters, producers, anchors and other content managers.  *Id*. at ¶¶ 74, 76, 79, 83.[34]  But, the Fox Defendants did not stop their campaign to willfully promote a false election campaign narrative, enabling Powell to add new, fabricated elements to the election hoax she and the Fox Defendants were promoting.  *Id.* at ¶¶ 77-80.[35]  On November 30, for instance, Powell again appeared on a Fox program, this time falsely claiming that Dominion machines "shaved off" or "trash[ed]" votes for President Trump and "inject[ed]" votes for Biden.  *Id.* ¶ 80.

Finally, on December 10, 2020, shortly before the Fox Defendants made their defamatory statements regarding Plaintiff, Smartmatic's counsel sent via email a twenty-page demand letter to the general counsel of Fox News, making, among others, the following assertions:  (i) Fox had engaged in a "concerted disinformation campaign against Smartmatic;" (ii) Fox falsely told "millions of viewers and readers that Smartmatic was founded by Hugo Chávez, that its software was designed to fix elections, and that Smartmatic conspired with others to defraud the American

---

2020, Powell was not acting as counsel to the Trump Campaign or President Trump personally, and as noted *infra*, the December 10, 2020 broadcast nowhere even references any of Powell's by-then dismissed election cases.

[34] *See* November 26, 2020 Email, FACT SHEET: Dominion Voting Systems in Pennsylvania. (cited in Compl. at 39 n. 88) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.); November 29, 2020 Email, FACT SHEET: Dominion Voting Systems in Arizona (cited in Compl. at 40 n. 89) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.); November 30, 2020 Email, FACT SHEET:  Dominion Voting Systems in Michigan. (cited in Compl. at 40 n. 89) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.); December 3, 2020 Email, FACT SHEET:  Dominion Voting Systems in Georgia. (cited in Compl. at 41 n. 92) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.).

[35] *See* November 29, 2020 Email, FACT SHEET: Dominion Voting Systems in Arizona; November 30, 2020 Email, FACT SHEET:  Dominion Voting Systems in Michigan. (cited in Compl. at 40 n. 89) (Attached as Ex. 5 to the Dominion DE Complaint) (Annexed as **Exhibit O** to the Wissner-Gross Decl.).

people and fix the 2020 U.S. Election by changing, inflating and deleting votes;" (iii) Smartmatic

is not a Venezuelan company, and while it did "election projects" in Venezuela from 2004 to 2017,

it stopped doing business in Venezuela in 2017; (iv) Smartmatic had no ties to George Soros; (v)

Smartmatic had a limited role, in one county (Los Angeles) in the Election; and (vi) Smartmatic

has had no corporate relationship with Dominion. *Id*. at ¶ 87.[36]

Thus, prior to the Fox Defendants' first defamatory statements about the Plaintiff contained

in a pre-Broadcast Tweet at 4:56 p.m. on December 10, 2020, the Fox Defendants had been put on

notice repeatedly, not just from Smartmatic and Dominion, but from public reports from

independent experts and government officials, that there was *no evidence whatsoever* of a

Venezuelan-led cyber attack to rig the Election and ample evidence that this premise, as well as

the other bogus allegations regarding Dominion, Smartmatic and the Election, were 100% false.

In short, prior to December 10, the Fox Defendants knew, at a minimum, that there had not been

a "cyber Pearl Harbor" in the Election, they knew that the lies being broadcast about Dominion

and Smartmatic were false, and they knew that a claimed Venezuelan-led election conspiracy with

deep ties to Smartmatic to fix the Election, among other lies about the Election being aggressively

peddled by the Fox Defendants, were all false; but they also knew that claiming there was a

Venezuelan-orchestrated cyber attack was good for business, and would recapture viewers and

profits that had been lost when Fox announced that Biden had won the Election. *See, e.g., id.* at

¶¶ 36, 113-15, 120-26.

---

[36] Plaintiff has alleged that this letter was sent to Fox's general counsel prior to Powell's appearance on the December
10 Broadcast.  Compl. at. ¶ 87 & n.96.  Plaintiff based such allegation on the fact that the 20-page single spaced
letter from Smartmatic's counsel, while detailing a litany of "broadcasts, articles, and postings regarding
Smartmatic" during the period "November 2020 through today," did not reference the December 10 Broadcast or
Posts.  In their Motion, the Fox Defendants do not dispute that the demand letter was received by Fox News'
general counsel prior to the December 10 Broadcast and Posts. *See* Smartmatic NY Action, NYSCEF No. 79.
(December 10, 2020 Fox Retraction Letter) (*see* Ex. 77 to Smartmatic NY Complaint) (Annexed as **Exhibit V** to
the Wissner-Gross Decl.).

On December 10, 2020, at approximately 4:56 p.m., a Tweet from the @LouDobbs account included a detailed statement, which, for the first time, identified Plaintiff, by name, as a central participant in the supposed election fraud perpetrated by Smartmatic and Dominion. *Id.* at ¶¶ 88-89. This Tweet was issued by the Fox Defendants, as Fox maintained complete control over this account. *See id.* at ¶ 11. The Tweet did not attribute the statements therein to anyone other than Dobbs and, thus, Fox. *Id.* at ¶ 90. The Tweet does not reference Sidney Powell, nor does it reference any lawsuit that had been filed by Sidney Powell. *See id.* at ¶¶ 88-90. This Tweet, which included a two-page type-written document embedded within the Tweet, falsely stated, among other misstatements, that "The 2020 Election is a cyber Pearl Harbor" and falsely identified Plaintiff as a "political leader" and the "effective 'COO' of the election project, under Chávez and Nicolás Maduro," and a "liaison with Hezbollah." *Id.* The Tweet further identified three other individuals, with whom Plaintiff was falsely accused of conspiring with to rig the Election, including an individual identified as the CEO of Smartmatic. The Tweet stated, in part: "These four people [including Plaintiff] and their collaborators executed an electoral 9-11 against the United States, with the cooperation and collusion of the media and the Democrat Party and China. It is a cyber Pearl Harbor." The Tweet also contained specific details allegedly based on "evidence" concerning this purported "election project," including "technical presentations that prove there is an embedded controller in every Dominion machine that allows an election supervisor to move votes from one candidate to another" and "the architecture and systems that show how the machines can be controlled from external sources." *See id.* at ¶ 89. This false and defamatory Tweet was republished by Fox to the over 2 million Twitter followers of @LouDobbs and on Fox's digital platforms. *Id.* at ¶ 92.[37] While the Fox Defendants try to trivialize, or even

---

[37] As alleged in the Complaint, the Tweet contains other false and defamatory statements regarding Plaintiff, and the Court is respectfully referred to the Complaint for a more complete discussion. An analysis of the entire 4:56

ignore, their outrageous defamatory statements in this Tweet – and subsequent defamatory statements on December 10 regarding Plaintiff – as "a few fleeting moments on a single day" (Motion at 12), the undisputed reality is that these objectively false statements regarding Plaintiff were broadcast to a global audience falsely accusing Plaintiff of taking a leading role in a nonexistent conspiracy with Smartmatic and Dominion to fix the Election, causing substantial reputational, business and other injury to Plaintiff. [38]

Shortly after this Tweet, Dobbs hosted his 5 p.m. Broadcast, which was, in many ways, a culmination of the Fox Defendants' fraudulent campaign to fabricate a bogus story of a Venezuelan scheme to rig the Election. Prior to December 10, the "Big Lie" had been built by Defendants on a pyramid of falsehoods, which had been rebutted multiple times by numerous respected government officials and election experts (both within the Trump administration and outside of government) that had repeatedly and categorically stated that there was no evidence the Election had been compromised in any way, and by both Dominion and Smartmatic. *See id.* at ¶ 42.[39] With

---

p.m. Tweet, and the false statements made in the Tweet, is attached as **Exhibit W** to the Wissner-Gross Decl. The Fox Defendants try to make hay of two short Tweets from the @LouDobbs account issued immediately before the pre-broadcast Tweet Plaintiff claims is defamatory. *See* ECF No. 26 at 12-13, 27-28. A 4:47 p.m. Tweet simply lists Powell among four individuals who would appear on Dobbs' show that evening, and references a Texas "Supreme Court case for election integrity," a case that Powell was not involved in. *See id.* at 12-13. A 4:55 p.m. Tweet references "Exposing Dominion" and states that Sidney Powell would "join[]" Dobbs at 5 p.m. to "share new information that could have massive consequences in the Battle for the White House," but makes no reference to Plaintiff, nor to any of the by-then dismissed cases she had been involved in, and does not suggest in any manner what such "new information" would be. *See id.* These two earlier Tweets have no relevance nor bearing on the false statements made in the 4:56 p.m. Tweet, nor to the Fox Defendants' clear liability for the statements made in the 4:56 p.m. Tweet.

[38] The Fox Defendants do not challenge the legal propriety of Plaintiff's *ad damnum request,* other than noting that Plaintiff seeks substantial punitive damages. The Fox Defendants do appear to concede that Plaintiff has alleged defamation *per se*, for which damages is presumed. Since the legal question of Plaintiff's entitlement to damages, and whether damages have been adequately plead, is not before the Court on the Motion, Plaintiff does not address such damages issues, but reserves all rights to with respect to his right to seek and recover substantial damages at trial, including the punitive damages requested in the Complaint.

[39] *See* Georgia Secretary of State, *Elections Security Is Our Top Priority: Security Focused Tech Company, Dominion Voting to Implement New Verified Paper Ballot System*, https://sos.ga.gov/securevoting/. (cited in Compl. at 21 n. 44) (Annexed as **Exhibit K** to the Wissner-Gross Decl.).

the 4:56 p.m. Tweet and the December 10 Broadcast and post-Broadcast Postings, the Fox Defendants put a final brick atop this pyramid of lies.

Dobbs opened the show, which Fox broadcast live on television and satellite radio from New York on the Fox Business Channel, by announcing that Powell was on the show to address what was referred to as a "Pearl Harbor style cyber attack on the 2020 Presidential election." *Id.* at ¶ 94.[40]  Dobbs then put up a graphic entitled "Four Names You Need to Know According to Sidney Powell," which included, as to Plaintiff, the following statement:  "Khalil Majid Majzoub: Rodriquez Frontman." *Id.* at ¶ 94.

Having introduced Powell as a "distinguished attorney,"[41] Dobbs engaged a choreographed exchange, with Dobbs first asking Powell to explain how these "four individuals led the effort to rig this election." *Id.* at ¶ 95.  Powell responded, falsely accusing the four individuals, including Plaintiff, of having "designed and developed the Smartmatic and Dominion programs and machines that include a controller module that allows people to log in and manipulate the vote even as it's happening." *Id.* Powell then proceeded to claim, falsely, that "We're finding more and more evidence of this.  We now have reams and reams of actual documents from Smartmatic and Dominion, including evidence that they planned and executed all of this." *Id.* at ¶ 96.  Later, Dobbs again asked Powell about evidence that she had "compiled:"  "How have you constructed the architecture of this relationship among these four individuals [which included Plaintiff]?" *Id.* at

---

[40] A true and correct transcript of the December 10, 2020 broadcast of *Lou Dobbs Tonight* has been submitted in support of the Fox Defendants' Motion, as Exhibit 1 [ECF No. 27-1] of the Declaration of Devin S. Anderson ("Anderson Decl.") [ECF No. 27].  A copy of a video recording of the broadcast has been submitted by the Fox Defendants as Exhibit 30 to the Anderson Decl.  *See* ECF No. 27-30. Since during the broadcast, at several key choreographed moments, the Fox Defendants placed a graphic with the "FOX" logo entitled "FOUR NAMES YOU NEED TO KNOW" in large font at the top with  "ACCORDING TO SIDNEY POWELL" in smaller font below with Plaintiff's name prominently on the screen, to indicate that Plaintiff was at the center of the alleged, but fictitious Venezuelan-led conspiracy to rig the Election, the Court is respectfully referred to the video recording of the broadcast as well.

[41] Neither Dobbs nor Powell at any point referenced any pending case during her interview, including making no reference to Powell's by-then frivolous dismissed election cases.

¶ 98.  Powell responded, falsely, that they were still reviewing a "massive amount of documents" that consist of "communications between them and um all different kinds of messages that indicate their involvement in it," at which point, right on cue, the Fox Defendants again displayed the graphic showing the "Four Names You Need to Know According to Sidney Powell," including Plaintiff's name, was displayed.  *Id.*  Powell then claimed that "we will be producing more and more [evidence] it will be coming out more by the day." *Id.*

With the "Four Names You Need to Know" graphic still on the screen, because, as Dobbs acknowledged, "these are not names that most of us are familiar with,"[42] Dobbs asked Powell, with respect to Rodriquez, whom Dobbs falsely described as the "ringleader" or "CEO of the enterprise:"  "What is the evidence that this former [Venezuelan] Communications Minister could reach in to the U.S. elector system and raise the havoc and commit the fraud that obviously we have witnessed in 2020?"  *Id.* at ¶ 99.  Powell, in response, falsely claimed that "we've known from early on in our independent investigation that the entire system was created for the benefit of Venezuela and Hugo Chávez to rig elections to make sure he continued winning.  And then it was passed onto Mr. Maduro to do the same.  And we know it was exported to other countries by virtue of some of the Dominion executives that proceeded to go about and essentially sell elections to the highest bidder."  *Id.*  She then described Rodriquez as "one of the leaders of the whole election stealing project" and described the alleged conduct of the four individuals (including Plaintiff), together with the alleged conduct of Dominion and Smartmatic, as an "illegal web of conduct…focused on rigging the election in this country" and claimed that the evidence of this alleged misconduct was "overwhelming" and "troubling."  *Id.*

---

42 *See* ECF No. 27-1 at 4.

After a short break, the Fox Defendants served up more of the same to their viewers.  Dobbs himself embellished upon Powell's false story, underscoring that "it's important as we look at these four names [which included Plaintiff], we're talking about very large, a very large foreign intrusion and interference in the, in the election of 2020."  *Id.* at ¶ 101.  Dobbs then emphasized that, while "[w]e have tremendous evidence already of fraud in this election," the Fox Defendants would welcome Powell providing additional evidence.  *Id.*  In response to Dobbs' invitation, Powell promised to get Dobbs "stunning" evidence that same night.  *Id.*  Of course, Powell never produced any such evidence, because, as multiple officials and experts had already confirmed, and as the Fox Defendants were aware, there was no evidence of any "foreign intrusion" into the Election.  *Id.* at ¶ 102.  The Fox Defendants' claim that "[w]e have tremendous evidence already of fraud in this election," like Powell's claim that she had "reams" of evidence, was false. *Id.* at ¶¶ 102-105.[43]

The foregoing Broadcast was rebroadcast on the Fox Business Channel, and republished on fox.com, foxbusiness.com, Fox Nation and the Twitter account @loudobbs, the "Lou Dobbs" Facebook account, and the Instagram account @loudobbstonight.  *Id.* at ¶ 107.  Each of these additional Postings including additional false statements claiming evidence of a cyber attack on the Election by "foreign adversaries," including the Plaintiff.  *Id.* at ¶¶ 107-08.  At approximately 5:51 p.m., the Fox Defendants issued a Tweet that stated "Cyber Pearl Harbor:  @SidneyPowell reveals groundbreaking new evidence indicating our Presidential election came under massive cyber attack orchestrated with the help of Dominion, Smartmatic, and foreign adversaries. #MAGA#AmericaFirst@Dobbs."  *Id.* at ¶¶ 107, 153.  The same false statement was republished

---

[43] *See also* Smartmatic NY Op. at 12 (summarizing statements made during the December 10, 2020 broadcast); Dominion DE Op. at 26-27 (excerpting statements made on December 10, 2020, and specifically noting that Plaintiff was among the "four individuals" referenced).

through a Facebook post and through the @LouDobbsTonight Instagram account. *Id.* at ¶ 153. These rebroadcasts falsely stated or implied that Plaintiff is a "foreign adversary" who participated in a "massive cyber attack" on the 2020 US Presidential election. They also falsely stated or implied that "groundbreaking new evidence" was "reveal[ed]" indicating that Plaintiff is a "foreign adversary" who participated in a "massive cyber attack" on the 2020 US Presidential election. *Id.* ¶ 154.[44]

At approximately 5:52 p.m. on December 10, 2020, the Broadcast was republished by the Fox Defendants through another Tweet and through the @LouDobbsTonight Instagram account, which each stated: "Evidence of Fraud: @SidneyPowell1 says the FBI and law enforcement aren't interested in electoral fraud witnesses and offers to make public evidence of a cyber-attack on the U.S. election system. #MAGA#AmericaFirst#Dobbs." *Id.* at ¶¶ 107, 165. These Posts also falsely implied that Plaintiff participated in a "cyber-attack on the US election system" and that there is "evidence" of and "witnesses" to Plaintiff's participation in "electoral fraud" and that such evidence and witnesses should be of interest to the FBI. *Id.* at ¶ 166.[45]

At no point prior to, during, or after December 10, 2020, did any of the Defendants contact Plaintiff to inquire about or confirm any of the false claims that were ultimately broadcast to millions of people. *Id.* at ¶ 109. Had any of the Defendants inquired whether Plaintiff was a

---

[44] *See also* Smartmatic NY Op. at 12 ("Dobbs posted his [December 10, 2020] interview with Powell on Twitter and Facebook. In his posts, Dobbs said, inter alia, that Powell had revealed 'groundbreaking new evidence indicating that [the election] came under massive cyber-attacked [sic] orchestrated with the help of Dominion, [Smartmatic], and foreign adversaries.' Doc. 1 at par. 166."). The New York Court underscored that "'[i]t is incongruous that Dobbs emphasized 'evidence' of fraud referred to by Powell while there is no indication that [Tucker] Carlson ever received any substantiation of [Powell's] claims." *Id.* note 10.

[45] As noted *supra*, the December 10 Broadcast is the subject of Dominion's and Smartmatic's defamation claims in the Dominion DE Action, the Dominion DC Action, and the Smartmatic Case (*see* Dominion DC Action [ECF No. 1 at ¶¶ 85, 181(z)]; Dominion DE Action, Complaint at ¶¶ 110, 179(q); Smartmatic NY Action, Complaint [NYSCEF No. 1 at ¶¶ 126-129, 133(ll)]); and the 4:56 Tweet is the subject of Dominion's and Smartmatic claims in the Dominion DE Action and Smartmatic NY Action (*see* Dominion DE Action, Complaint at ¶¶ 107-09, 179(p), (r); Smartmatic NY Action [NYSCEF No. 1 at ¶¶ 133(mm)-(qq)]).

"political figure" or "frontman" for Jorge Rodriquez, whether he had ever had any contact or association with either Smartmatic or Dominion, whether he had any involvement in the Election, whether he had any involvement with the design of election machinery, or whether he was a "liaison with Hezbollah," he would have confirmed that the answer to all of the foregoing was "no." *Id.*

While Fox subsequently aired a three-minute pre-recorded statement on some of its shows featuring, *inter alia*, a guest stating that it was "his" understanding that Dominion and Smartmatic were two separate companies and that Smartmatic did not send U.S. votes to be tabulated in foreign countries, Fox's on-air talent did not adopt this guest's statements as their own nor retract any of the statements Defendants had made on Dobbs' December 10 broadcast. *Id.* at ¶ 110.  As to Plaintiff, Fox's on-air talent were completely silent. *Id.*  In early January 2021, though, Dobbs finally admitted that he and Fox had not found any "verifiable tangible support" of election fraud. *Id.* at ¶ 112.  Plaintiff alleges that Defendants had, however, known since the beginning of their disinformation campaign, based, among other things, on the official reports and statements available to the public, that there was no objective, reliable evidence of election fraud. *Id.*  The Fox Defendants and Powell had been aware that there was not objective evidence of election fraud from the inception of their fabricated campaign to manufacture false claims of election fraud, culminating in the false and defamatory charges made regarding Plaintiff on December 10, 2020. *Id.* at ¶ 112.  On February 5, 2021, Fox cancelled *Lou Dobbs Tonight*.  Compl. ¶ 11.

## ARGUMENT

### I.      Legal Elements for Defamation under New York Law

As the New York Court in the Smartmatic NY Action held, "[i]n order to state a claim for defamation, a plaintiff must allege (1) a false statement that is (2) published to a third party without privilege or authorization (3) constituting fault as judged by, at a minimum, a negligence standard and that (4) causes special harm, unless the statement constitutes defamation per se, in which case damages are presumed.  (*Manfredonia v. Weiss*, 37 AD3d 286, 286 [1st Dept 2007], quoting *Sydney v. MacFadden  Newspaper Publ. Corp.*, 242 N.Y. 208, 211-212 [1926]."  Smartmatic NY Op. at 31.  While the statement must be "of or concerning plaintiff" (*BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 820-21 (S.D.N.Y. 2021)), here the defamatory statements actually reference Plaintiff by name and otherwise in context falsely identify Plaintiff as a central figure in the alleged plot to fix the Election, and easily satisfying such standard.  *Id.*  (citing cases for the proposition, *inter alia*, that headlines that directly name defamation plaintiffs are sufficiently "of and concerning" the plaintiff).  If a New York defamation action falls within the New York anti-SLAPP statute, a plaintiff must establish "actual malice" to prevail.  Smartmatic NY Op. at 32-35. If the defamation action does not fall within the New York anti-SLAPP action, a plaintiff must establish "actual malice" if it is determined that the plaintiff is public figure or a limited public figure.  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 Fed. App'x (2d Cir. 2015); *Gottwald v. Sebert*, 193 A.D.3d 573, 576 (1st Dep't 2021).

While as discussed in Point III *infra*, Plaintiff submits that as to Plaintiff's claims, the New York anti-SLAPP statute should not apply, and that Plaintiff is neither a public figure nor a limited purpose public figure, in the event this Court determines that the New York anti-SLAPP statute applies, Plaintiff's claims easily satisfy the "actual malice" standard, for the same reasons as set

28

forth in the Smartmatic NY Action ruling, the Dominion DE Action ruling and the Dominion DC Action ruling.  Indeed, given that the defamatory statements regarding Plaintiff were predicated on the identical defamatory statements regarding Smartmatic, Dominion and the Election already sustained by three different courts in detailed rulings,[46] Plaintiff's claims of actual malice are actually more compelling than the defamatory statements at issue in the three other related defamation actions.

Further, there is no requirement that Plaintiff, to defeat the Motion, show "evidentiary facts" to support his claims, nor does Plaintiff have to make showing by "clear and convincing evidence" to defeat the Motion, even assuming, *arguendo*, New York's anti-SLAPP statute applies. Smartmatic NY Op. at 37.  Moreover, as this Court has recognized, the general principles that apply with respect to Fed. R. Civ P. 12(b)(6) control, not CPLR 3211(g) even in the event this Court concludes that the anti-SLAPP statute applies.  *See Nat'l Coalition on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 518 (S.D.N.Y. 2021) (applying 12(b)(6) standard after rejecting application of anti-SLAPP statute).

Finally, since the Fox Defendants have accused Plaintiff of election fraud, which is a serious crime, defamation *per se* has been alleged, and damages are presumed.  *See* Smartmatic NY Op. at 37, 41.

## II.   The Fox Defendants' Statements Are Actionable for Defamation

In arguing that their statements concerning the Plaintiff, even if otherwise actionable, are protected by the First Amendment, the Fox Defendants attempt to muddy the waters concerning the contours of First Amendment privileges and immunities. S*ee* ECF No. 26 at 18-30.  They also advance arguments that have been explicitly rejected by the DC Court, the Delaware Superior

---

[46] Further, as noted, both the Delaware Superior Court and Supreme Court declined to certify the Superior Court's denial of Fox News' motion to dismiss for interlocutory review.  See note 3, *supra*.

Court, and the New York Supreme Court involving the same basic set of facts and issues.  In particular, the Fox Defendants claim the First Amendment protects their coverage of what they incorrectly identify as "newsworthy" allegations by distorting and improperly conflating the "neutral report" and "fair report" privileges and First Amendment principles protecting opinions beyond recognition.  *See id.*  It also ignores that the Fox Defendants made their own affirmative defamatory statements (*e.g.,* in the 4:56 p.m. Tweet on December 10, 2020, during the Broadcast, and after the Broadcast).  The Fox Defendants, of course, engage in these obfuscations because the Delaware Superior Court, applying New York law, had already rejected (prior to the filing of the Motion) these *exact same arguments* when Fox News sought dismissal of Dominion's defamation claims against it based on, among others, the *exact same statements* made on the December 10, 2020 *Lou Dobbs Tonight* Broadcast and related social media posts.  *See Dominion DE Action*, 2021 WL 5984265, at *5, 14-15, 22-28; Dominion DE Op. at 40-47.  The New York Supreme Court, which also quoted the statements made on December 10, 2020 (Smartmatic NY Op. at 12), declined to accept this argument as well.  There is, quite simply, no recognized privilege or immunity that protects the Fox Defendants from liability for the defamatory statements they broadcast to millions of people.

### A.    *The Neutral Report Privilege Does Not Immunize The Fox Defendants From Liability*

As the Delaware Superior Court recognized in Dominion's defamation suit against Fox News, both the U.S. Supreme Court and the New York Court of Appeals have affirmatively declined to adopt the blanket protection for claimed "newsworthy" allegations that the Fox Defendants advocate for in their Motion.  Indeed, as the Delaware Superior Court noted, "the New York Court of Appeals has restated its rejection of the neutral reportage doctrine," and observed that Dominion's allegations, in any event, "support the reasonable inference that Fox's reporting

was not accurate or dispassionate." *Dominion DE Action,* 2021 WL 5984265, at \*14-15, 22, 24; Dominion DE Op. at 25-27, 41, 43 (rejecting application of "neutral reportage" doctrine to defamatory December 10, 2020 statements and prior defamatory statements).[47]   The New York Supreme Court reached the same conclusion, in rejecting similar arguments by the Fox Defendants.   *See* Smartmatic NY Op. at 25, 35-41, 43-46 (denying Fox Defendants' motion to dismiss, and underscoring Smartmatic's argument that the neutral reporting privilege is "not recognized in New York" and even if, *arguendo*, it were, the Fox Defendants failed to establish the Smartmatic is a public figure nor that such reporting was either accurate or without bias.).   *See also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 346 (1974) (rejecting content-based newsworthiness test).   Some of the lower federal courts have, nonetheless, adopted a "neutral report" doctrine, which immunizes defamatory charges made by a third party when the very making of the defamatory statement is newsworthy.   *See* Rodney Smolla, 1 Law of Defamation § 4:96 (2d ed. 2020 Update).   The Fox Defendants cite to *Edwards v. National Audubon Soc'y*, 556 F.2d 113 (2d Cir. 1977) in support of their argument that this "neutral report" doctrine immunizes them from liability for covering the defamatory allegations concerning the Plaintiff made by Defendant Powell on their news program.   *See* ECF No. 26 at 18-19, 22, 28-29.   The problem with this argument is that, as noted, New York's highest court has repeatedly "rejected"

---

[47] For example, the Delaware Superior Court cited the same "SETTING THE RECORD STRAIGHT" emails referenced in Plaintiff's Complaint and discussed supra, that put Fox News on notice that it was actively purveying a fraudulent story:   "After Fox began connecting Dominion to election fraud claims, Dominion sent Fox executives and television anchors its 'SETTING THE RECORD STAIGHT' emails.   Dominion's emails, which contained analysis from election and related experts, tended to disprove the election fraud claims.   Nevertheless, Fox and its news personnel continued to report Dominion's purported connection to the election fraud claims without also reporting on Dominion's emails.   When Fox guests spread or reiterated disinformation about Dominion, Fox did not use the information Dominion provided to correct its guests or to reorient its viewers. Instead, Fox and its personnel pressed their view that considerable evidence connected Dominion to an illegal fraud conspiracy."   *Dominion DE Action*, 2021 WL 5984265, at \*24; Dominion DE Op. at 43.

the neutral report privilege, which was stated only in *dicta* in *Edwards*.[48]  *See Dominion DE Action*,

2021 WL 5984265, at *23; Dominion DE Op. at 41.  As the Delaware Superior Court held in its

ruling, in *Hogan v. Herald Co.*, New York's appellate court held that "the rule of *Edwards v.*

*National Audubon Society* does not apply in this department," and the New York Court of Appeals

affirmed.  *Hogan v. Herald Co.*, 84 A.D.2d 470, 479 (4th Dep't), *aff'd* 58 N.Y.2d 630 (1982); *see*

*also Dominion DE Action,* 2021 WL 5984265, at *23; Dominion DE Op. at 41.  Shortly thereafter,

the New York Court of Appeals confirmed *Hogan*'s rejection of the neutral report privilege and

has since then restated its rejection of the neutral report privilege.  *Weiner v. Doubleday & Co.*, 74

N.Y.2d 586, 594 (1989) (holding there is no "privilege to repeat the statements of third parties so

long as no endorsement was given");  *see also Dominion DE Action*, 2021 WL 5984265, at *23

nn. 224-225; Dominion DE Op. at 41 & notes 224-225.

 The Fox Defendants' argument that they cannot be held liable for broadcasting Defendant

Powell's statements because (distorting the record) they claim they were merely conveying

Defendant Powell's claims about Plaintiff without adopting or assuming responsibility for the

veracity of those claims is, accordingly, legally infirm.  As the New York Court in its recent

*Smartmatic* ruling underscored, rejecting this argument by the Fox Defendants:  "Fox News'

contention that the claims against it must be dismissed because plaintiffs failed to plead that the

network itself made any specific defamatory statements about [Smartmatic] is without merit.  This

is because one who 'repeats [a] defamatory statement is responsible for the resulting damages.'"

*Smartmatic* NY Op. at 40 (internal citations omitted).  Indeed, it runs afoul of blackletter New

York law, holding that "one who repeats or otherwise publishes defamatory matter is subject to

---

[48] *Edwards* involved a New York Times article that republished an allegedly defamatory statement by the National
 Audubon Society.  556 F.2d at 117.  The Second Circuit ultimately held that plaintiff's defamation claim against
 the Times failed, not because of the "neutral reportage" doctrine, but because "the evidence adduced at trial was
 manifestly insufficient to demonstrate 'actual malice' on the part of the Times."  *Id.* at 120.

liability as if he had originally published it."  Restatement (2d) Torts § 578 (1977); *see, e.g.*, *Terwillinger v. Wands*, 17 N.Y. 54, 57 (1858); *Weiner*, 74 N.Y.2d at 594.  Contrary to the Fox Defendants' distortions of New York law, media defendants, such as the Fox Defendants, that publish defamatory statements made by a third party can absolutely be liable for defamation, precisely the same as the third party who uttered the defamatory statement, even if the statements are properly attributed to the original publisher and not adopted.  *See, e.g.*, *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980) (finding that the New York Times could be liable for publication of an article "replete with defamatory statements of fact repeated from others"); *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 461 (S.D.N.Y. 2012) ("It is well settled that Defendants cannot escape liability simply because they are conveying someone else's defamatory statements without adopting those viewpoints as their own.").

Tellingly, the only New York authorities the Fox Defendants can cite to in support of their argument that the neutral report principle stated in *Edwards* applies here are cases that were decided *before* the New York Court of Appeals held, in *Hogan*, that New York law does not recognize this principle, and since they were pre-*Hogan*, they do not reflect current law in New York.  *See* ECF No. 20-29 (citing *Orr v. Lynch*, 60 A.D.2d 949, 950 (3d Dep't), *aff'd*, 45 N.Y.2d 903 (1978); *Campo Lindo for Dogs, Inc. v. N. Y. Post Corp.*, 65 A.D.2d 650, 650 (3d Dep't 1978)). The other New York authorities relied on by the Fox Defendants do not even address the neutral report privilege, but rather protections afforded to statements of opinion.  *See* ECF No. 20-23 (citing *Brian v. Richardson*, 87 N.Y.2d 46, 54 (1995) (affirming dismissal of defamation claim based on statement of author's opinion); *Duci v. Daily Gazette Co.*, 102 AD.2d 940, 941 (3d Dep't

1984) (finding that bystander's "views" of a situation were not susceptible to defamatory meaning)).[49]

In sum, the Fox Defendants' recitation of every instance in which Defendant Dobbs supposedly clarified during the Broadcast that the defamatory statements about the Plaintiff were Defendant Powell's claims and asked what her investigation and evidence had revealed (*see* ECF No. 26 at 22-24, 28-29), is legally irrelevant, and actually cuts against the Fox Defendants. *See, e.g.*, *Cianci*, 639 F.2d at 60-61; *Biro*, 883 F. Supp. 2d at 461. Even if, assuming *arguendo*, this attribution were legally significant—which, to be clear, it is not—as the New York Supreme Court observed in Smartmatic, such attributions actually highlight the Fox Defendants' liability. *See* Smartmatic NY Op. at 38 (noting that Fox's claim that "it repeatedly asked [Powell and Giuliani] for proof substantiating their accusations…and they failed to produce any…can also support plaintiffs' claim that Fox News had reason to suspect that what it was broadcasting was false"). The Fox Defendants, in any event, also directly made a series of defamatory statements concerning the Plaintiff that were *not attributed* to Defendant Powell: *e.g.*, the 4:56 p.m. pre-broadcast Tweet from the official @LouDobbs account, notably, did not identify nor reference Defendant Powell, but identified the Plaintiff by name as the "COO" of a "cyber Pearl Harbor" on the Election and made a number of other defamatory statements explicitly or impliedly regarding Plaintiff;[50] and during the *Lou Dobbs Tonight* Broadcast, Defendant Dobbs said, after displaying the Plaintiff's

---

[49] The Fox Defendants argue that the Sixth Circuit's decision in *Croce* is "illustrative" of the *Edwards* principle that should apply here. *See* ECF No. 26 at 20 (citing *Croce v. New York Times Co.*, 930 F.3d 787, 793-95 (6th Cir. 2019)). But Croce is not controlling or persuasive authority, as it is in direct conflict with the holdings of the New York Court of Appeals that there is no neutral report privilege under New York law. Moreover, the Sixth Circuit in Croce explicitly acknowledged that Ohio, like New York, had rejected the neutral report doctrine and ultimately held that "[o]f course, even with qualifying language, a defendant could still be liable for publishing statements with actual malice." 930 F.3d at 795-96.

[50] See **Exhibit W** to the Wissner-Gross Decl., summarizing the false statements made directly by the Fox Defendants in the 4:56 p.m. Tweet.

name multiple times, that "[w]e have tremendous evidence already of fraud in this election." *See*

Compl. at ¶¶ 89-92, 128-31, 140-44.  Such statements clearly would not fall within the inapplicable

neutral report doctrine for which the Fox Defendants purport to advocate.  *See* ECF No. 26 at 18-

19 (arguing that commentary on allegations by public officials is protected if it does not assume

responsibility for the veracity of those charges).[51]

### B.      The Fair Report Privilege Does Not Apply To The Fox Defendants' Statements

The Fox Defendants' attempt to rewrite the fair report privilege to cloak their defamatory

statements fairs no better, and has been rejected by both the New York Court in the Smartmatic

NY Action and the Delaware Superior Court in the Fox News action.[52]  As the Delaware Superior

Court succinctly held, Dominion's "well-pleaded allegations support the reasonable inference that

Fox's reporting (i) was not fair or true and (ii) did not concern an official proceeding."  *Dominion*

*DE Action*, 2021 WL 5984265, at *25-26;Dominion DE Op. at 45.  Here, where as discussed

above, Plaintiff, at a minimum, had no connection whatsoever to either Smartmatic or Dominion,

nor to the Election, and Plaintiff was never referenced in any of Powell's by-then dismissed

---

[51] It should be noted, in any event, that the "neutral report" doctrine, where adopted, has limits and can only be applied where, *inter alia*, the accusations being reported were made by "a responsible, prominent organization," "against a public figure," with "accurate and disinterested reporting" of the charges that does not "distort[] the[] statements to launch a personal attack of his own," and the publisher publishes the accused party's response to the accusations in the same article. *See Edwards*, 556 F.2d at 120-22. Moreover, whether a defendant meets these requirements is typically a question for the jury, *see Cianci*, 639 F.2d at 69; and here, a jury could reasonably find, as Plaintiff has alleged, that: Defendant Powell is not a "responsible, prominent" individual; the Fox Defendants did not engage in "disinterested reporting," as evidenced by the pre-broadcast Tweet and Defendant Dobbs' claim during the broadcast that there was "tremendous evidence" of the bogus claims Powell was peddling; and (this seems beyond dispute) the Fox Defendants did not publish any response by the Plaintiff to the false charges that he engaged in a massive effort to rig the Election. *See* Compl. at ¶¶ 71-77, 89-92, 128-31, 140-44; ECF No. 27-1 at 6.  Simply put, none of the defamatory statements the Fox Defendants made or broadcast concerning the Plaintiff are protected by the neutral reportage doctrine, even if it were recognized in New York (which it is not). *See Dominion DE Action*, 2021 WL 5984265, at *14-15, 22-24; DE Op. at 40-44 (finding that the neutral reportage doctrine did not protect defamatory statements made on December 10, 2020 *Lou Dobbs Tonight* Broadcast and related social media posts).

[52] *See* Smartmatic NY Op. at 25, 35-41, 43-46; *Dominion DE Action*, 2021 WL 5984265, at *24-26; Dominion DE Op. at 44-47.

lawsuits and none of her lawsuits were even referenced by the Fox Defendants or Powell on

December 10, 2020, it follows, *a fortiori*, that the fair report privilege has no conceivable

application here.

Contrary to the Fox Defendants' distortions, the fair report privilege, in both common law

and its various statutory formulations, is a narrowly drawn immunity that only applies to *fair and

accurate* reports of *defined judicial, legislative or executive proceedings*.  *See* Rodney Smolla, 2

Law Defamation § 8:3.  In New York, the fair report is statutory and provides:

> A civil action cannot be maintained against any person, firm or corporation, for the
> publication of a fair and true report of any judicial proceeding, legislative proceeding or
> other official proceeding . . . This section does not apply to a libel contained in any other
> matter added by any person concerned in the publication; or in the report of anything said
> or done at the time and place of such a proceeding which was not a part thereof.

N.Y. Civ. Rights Law § 74.  Thus, under New York law, as others, the fair report privilege applies

only to a "fair and true report," concerning an "official proceeding."  The defamatory statements

broadcast by the Fox Defendants plainly fail to satisfy either of these requirements.

Tellingly, the phrase "fair and true" is *nowhere* to be found in the Motion.  *See generally*

ECF No. 26.  The authorities the Fox Defendants rely upon, nonetheless confirm that only a

"substantially accurate" description of a proceeding is protected by Section 74 of New York's

Civil Rights Laws.  *See* ECF No. 26 at 29 (citing *Holy Spirit Ass'n for the Unification of World

Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67 (1979)).  Where, as here, even though the

defamatory statements by the Fox Defendants regarding Plaintiff did not involve any "official

proceeding," defendants claim to be reporting on allegations of a pleading filed in a covered

proceeding, the court compares the allegedly defamatory statements to the actual pleading and,

where any statement "does not clearly and directly fall within any of the allegations" therein,

assesses whether that statement constitutes "a separate and independently defamatory accusation."
*Ford v. Levinson*, 90 A.D.2d 464, 464-65 (1st Dep't 1982).

Accordingly, courts applying New York's fair report privilege routinely find the privilege
inapplicable when the allegedly defamatory statements go beyond or distort what has occurred in
the subject proceeding.  *See, e.g.*, *Karades v. Ackerly Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)
(declining to dismiss defamation claim on the basis of the fair report doctrine where "a reasonable
jury could conclude that the article suggest[ed] more serious conduct") (alteration in original);
*Corporate Training Unlimited, Inc. v. Nat'l Broad. Co.,* 868 F. Supp. 501, 509 (E.D.N.Y. 1994)
(fair report privilege not applicable to television broadcast that cited to foreign court proceedings
because that story was told in a "stylized," "narrative fashion" that "belies the notion that NBC
was even attempting to provide a fair and true report"); *Stone v. Bloomberg L.P.*, 163 A.D.3d 1028,
1030 (2d Dep't 2018) (fair report privilege not applicable where challenged statements did not
"provide a substantially accurate reporting of the two police investigations"); *Greenberg v. Spitzer*,
155 A.D.3d 27, 47-50 (2d Dep't 2017) (finding fair report privilege did not apply to statements
that inaccurately implied that fraud charges against plaintiff had already been established and
"went beyond merely summarizing or restating" the proceedings); *Rivera v. Greenberg*, 243
A.D.2d 697, 698 (2d Dep't 1997) (holding that lawyer's statements at press conference were not
privileged because they were not fair and true reports of a judicial proceeding).

Of course, the requirement of a "fair and true" report necessarily assumes the second
requirement for application of the fair report privilege:  that there is a covered proceeding to
describe.  *See, e.g.*, *D'Annuzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 220 (E.D.N.Y. 2012) (finding
fair report privilege protected "substantially accurate descriptions and characterizations of the
Complaint" in a judicial proceeding); *Ford*, 90 A.D.2d at 465 (finding fair report privilege covered

statements concerning misconduct attributed to plaintiff in defendant's complaint in a judicial proceeding).  To satisfy the second requirement for application of the fair report doctrine, however, there must not only be an official proceeding, but also the allegedly defamatory statements must be *explicitly attributed* to that proceeding.  *See* David Elder, *Defamation:  A lawyer's Guide* § 3:3 (2003) ("case law requires that defendant reasonably identify its source as a precondition or 'major hurdle' to reliance on the fair report privilege"); Rodney Smolla, *Law of Defamation* § 8:67.50 ("To be covered by the fair report privilege, the publisher must attribute the material to the official proceeding that is being reported upon."); *see also Bufalino v. Associated Press*, 692 F.2d 266, 271 (2d Cir. 1982) (the fair report privilege "should not be interpreted to protect unattributed, defamatory statements").  New York's fair report privilege, accordingly, has no application where "the allegedly libelous matter is not on its face confined to describing and characterizing actions occurring during any judicial or official proceeding."  *Ramos v. El Diario Publ. Co.*, 16 A.D.2d 915, 916 (1st Dep't 1962); *see also Corporate Training Unlimited*, 868 F. Supp. at 509 (finding defendant was not protected by New York's fair report privilege where the challenged report referenced the foreign court proceeding "mostly in passing," such that an "ordinary viewer of the Broadcast would not have been under the impression that he was being presented with a report of the Icelandic judicial proceedings").

Although the Fox Defendants' argument for application of the fair report privilege seems intentionally vague and enmeshed with their arguments concerning the neutral report doctrine, it appears that the Fox Defendants rely upon certain unspecified "ongoing litigation surrounding the President's allegations of fraud in the 2020 election" (*see* ECF No. 26 at 22) – *i.e.*, the frivolous lawsuits Defendant Powell initiated and, as alleged by Plaintiff, had all been dismissed by the time the Fox Defendants made the defamatory statements concerning the Plaintiff on December 10,

2020.  *See* Compl. at ¶ 12.  As the transcript of Powell's appearance on Dobbs' December 10, 2020 show reflects, Powell at no point references any of such lawsuits.[53]   The Fox Defendants nonetheless quibble that appeals certain "proceedings" carried on for several months beyond December 10, 2020 (*see* ECF No. 26 at 22, n.17), but the existence of these undoubtedly frivolous appeals does not change the calculus one iota with respect to the Fox Defendants' inability to claim entitlement to the fair report privilege.   The defamatory statements broadcast by the Fox Defendants are not protected by the fair report privilege because, regardless of whether the election-related lawsuits were pending or dismissed, the challenged statements were not a "fair and true" report of those lawsuits, were not accompanied by any statement identify those (or any other) lawsuits as the source of the challenged statements, and as noted, Plaintiff is nowhere even referenced in any of Powell's by-then dismissed lawsuits.

*First*, the Fox Defendants' defamatory statements concerning the Plaintiff cannot possibly be a "fair and true" report of any of the frivolous lawsuits challenging the Election results because Plaintiff's name is not mentioned, let alone alleged to have participating in any Election "rigging" or "vote flipping," in any of the operative pleadings from these suits.[54]   *See Dominion DE Action*, 2021 WL 5984265, at *26; Dominion DE Op. at 44-47 (declining to dismiss defamation claim based on fair report privilege where allegations of complaint demonstrated "substantial deviation" between report and underlying proceedings); *see also, e.g.*, *Karedes*, 423 F.3d at 119 (declining to

---

[53] A true and correct transcript of the December 10, 2020 broadcast of *Lou Dobs Tonight* has been submitted in support of Defendants Fox's and Dobbs' Motion to Dismiss, as Exhibit 1 [ECF No. 27-1] of the Declaration of Devin S. Anderson [ECF No. 27].

[54] *See King v. Whitmer*, Case No. 2:20-cv-13134 (E.D. Mich. Aug. 25, 2021) [ECF No. 6]; *Bowyer v. Ducey*, No. 2:20-cv-02321 (D. Az. Dec. 2, 2020) ("*Bowyer*") [ECF No. 1]; *Feehan v. Wisconsin Elections Comm'n*, No. 2:20-cv-1771 (E.D. Wis. Dec. 3, 2020) ("*Feehan*") [ECF No. 9]; *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga. Nov. 25, 2020) ("*Pearson*") [ECF No. 1]; *see also Trump v. Wisconsin Elections Commission*, No. 20-cv-1785 (E.D. Wis. Dec. 2, 2020) ("*Trump*") [ECF No. 1].  The Court may take judicial notice of the fact that Plaintiff is not identified in any of the operative pleadings in the foregoing lawsuits challenging the Election results.  *See* Fed. R. Evid. 201(b); *Williams v. New York City Housing Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

dismiss defamation claim on basis of fair report privilege where a reasonable juror could find that article suggested more serious conduct than alleged in the covered proceeding); *Conti v. Doe*, 535 F. Supp. 3d 257, 281 (S.D.N.Y. 2021) (declining to dismiss defamation claim based on absolute litigation privilege where defendant disclosed extraneous information not material or pertinent to his claims).

 *Second*, the fair report privilege does not apply to the Fox Defendants' defamatory statements concerning the Plaintiff because neither the December 10, 2020 *Lou Dobbs Tonight* broadcast interview with Powell nor the 4:56 p.m. Tweet nor the post-Broadcast Postings even mention, let alone attribute the defamatory claims regarding Plaintiff to, the "ongoing litigation surrounding the President's allegations of fraud in the 2020 election" relied upon by the Fox Defendants. *See* Compl. at ¶¶ 88-91, 128-31, 140-44, 153-56, 165-68; ECF No. 27-1 at 3-7; *Dominion DE Action*, 2021 WL 5984265, at *26; Dominion DE Op. at 44-47 (declining to dismiss defamation claim based on fair report privilege where reporting was such that there was "ambiguity, from the viewer's perspective, as to whether Fox was reporting on those [election fraud] proceedings"); *Corporate Training Unlimited*, 868 F. Supp. at 509 (finding fair report privilege did not apply where the challenged report referenced the foreign court proceeding "mostly in passing," such that an "ordinary viewer of the Broadcast would not have been under the impression he was being presented with a report of the Icelandic judicial proceedings").[55] Ironically, the only "proceeding" referenced during the relevant portion of the Broadcast is a

---

[55] By contrast, the challenged statements in the authorities relied upon by the Fox Defendants on their face described, or purported to describe, specifically-identified official proceedings. *See Holy Spirit Ass'n for the Unification of World Christianity*, 49 N.Y.2d at 66-67 (plaintiff claimed defendant "fail[ed] to characterize proper[ly] the nature of" government intelligence reports); *Cholowski v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009) (publication "explicitly stated that they were describing the criminal proceedings"); *Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006) (challenged statements filed the day after malpractice suit commenced was affair and true report of malpractice action).

lawsuit supposedly initiated by the head of the cyber intelligence unit of Homeland Security against people who claimed his report, which stated the Election was the "most secure" in history, was "nonsense."  *See* ECF No. 27-1 at 5.[56]  Clearly this is not a "proceeding" the Fox Defendants were purportedly covering when they broadcast claims that Plaintiff rigged the Election through a massive cyber attack.

Thus, to borrow the Fox Defendants' own parlance, the defamatory statements at issue in this case "come[] nowhere close" (*see* ECF No. 26 at 32) to falling under the fair report privilege. Particularly because this case is only at the pleading stage, the Court should reject the Fox Defendants' attempts to dispose of Plaintiff's defamation claims on this basis.  *See Long v. Marubeni America Corp.*, 406 F. Supp. 2d 285, 294-95 (S.D.N.Y. 2005) (declining to dismiss defamation claim based on fair report privilege at pleading stage).[57]

## C. The Fox Defendants Statements Are Actionable Statements of Fact, Not Opinions

The Fox Defendants' misguided assertion that certain of the statements Plaintiff claims to be defamatory are somehow nonactionable opinions is a convoluted, frivolous argument.  As the New York Court held in *Smartmatic*, after providing a detailed recitation of the statements broadcast by the Fox Defendants, including some of the precise statements made on December 10,

---

[56] Another "lawsuit" that is discussed on the Broadcast – not during Dobbs' interview with Powell – is the lawsuit filed by Texas (on December 7, 2020) in the United States Supreme Court, wherein Texas sought permission to sue four swing states on issues involving the selection of the swing states' electors and in which President Trump (on December 9th), through counsel other than Powell, sought to intervene. ECF No. 27-1 at 7. Powell had nothing to do with the Texas lawsuit, Plaintiff is not mentioned in the Texas lawsuit and, it was not referenced during Powell's interview with Dobbs.  The Texas "lawsuit," in short, is irrelevant to this action, and cannot trigger invocation of the fair report privilege.

[57] The Fox Defendants also fail to clarify that the fair report privilege is a qualified privilege which can be defeated by a showing that the defendants acted with actual malice.  *See Long*, 406 F. Supp. 2d at 293.  Thus, even if the statements broadcast by the Fox Defendants did fall within the fair report privilege (which, to be clear, they do not), the fair report privilege would still provide no basis for dismissing Plaintiff's claims because Plaintiff has, as described in Section III.A, *infra*, alleged that the Fox Defendants published the challenged statements with actual malice.

2020, there is no basis to this argument.  *See, e.g.*, Smartmatic NY Op. at 3-13.  The New York Court in particular underscored this point regarding Dobbs.  Smartmatic NY Op. at 46 ("Since these were statements of fact by Dobbs, which clearly implied that he knew of certain other information, unknown to his audience, which supported what he said, and the statements were detrimental to plaintiffs, they were not protected opinions").  Although their argument is far from clear, the Fox Defendants *do not* appear to be arguing that Defendant Powell's statements on the December 10, 2020 *Lou Dobbs Tonight* broadcast are non-actionable opinions; the Fox Defendants seem to be relying, instead, solely on the debunked neutral report doctrine to disclaim liability for broadcasting these statements, which, for the reasons stated in Section II.A, *supra*, flies in the face of well-established New York and constitutional law.  *See generally* ECF No. 26 at 18-30.  Curiously, though, the Fox Defendants, ignoring, *inter alia*, that the 4:56 p.m. Tweet was made by the Fox Defendants alone and that Dobbs made his own affirmative statements during and after the Broadcast, incorrectly argue that the "general tenor" of the December 10 broadcast would underscore that Dobbs was presenting his opinion, not Powell's allegations as fact.  *See, e.g.*, ECF No. 26 at 24-26.  In stark contrast to the Fox Defendants' vexatious arguments, however, New York law is quite clear that the statements Plaintiff claims to be defamatory are actionable statements of fact.  And, as noted, the New York Court has rejected this precise argument by the Fox Defendants.

Courts applying New York law consider the following three factors when evaluating the different between pure opinion and a statement of fact: (1) whether the specific language at issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal

to readers or listeners that what is being published is likely to be opinion or fact. *See Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993); *see also Dominion DE Action*, 2021 WL 5984265, at *26-27; Dominion DE Op. at 47-50.  Tellingly, the Fox Defendants do not even attempt to argue (as they cannot), that any of the statements concerning the Plaintiff that they broadcast and disseminated on social media do not have a precise meaning that is capable of being proven false. *See generally* ECF No. 26 at 18-30.  They argue only that the context in which the statements were made signaled to viewers and readers that they were receiving only opinions.  *See id.* at 24-26. Not so.  All three factors considered by New York courts in evaluating whether a statement is actionable for defamation support a finding that the statements concerning the Plaintiff are, indeed, actionable statements of fact.

The statements that Plaintiff contends are defamatory  include, *inter alia*,  affirmatively stating and/or implying that Plaintiff: was the "effective 'COO'" of an "electoral 9-11," rigging the Election by "design[ing] and develop[ing] the Smartmatic and Dominion programs and machines, that included a controller module that allows people to log in an manipulate the vote . . . for the benefit of Venezuela and Hugo Chávez;" conspiring with Smartmatic and Dominion to rig the Election,  and there is "tremendous" and "stunning" evidence of this "massive cyber attack" in the Election, including "reams and reams of actual documents" demonstrating "the architecture of [the] relationship among these four individuals [including Plaintiff]" and "their involvement in it."  Compl. at ¶¶ 89-91, 128-31, 140-44, 153-56, 165-68.[58]  These statements, as well as the other alleged defamatory statements identified in the Complaint, plainly satisfy the first two factors New York courts consider in evaluating whether a statement is actionable because they have a precise

---

[58] The Court is respectfully referred to the Complaint for a full recitation of all the defamatory statements made by the Fox Defendants regards Plaintiff.  *See also* Exhibit W to the Wissner-Gross Decl. for a breakdown of false statements by the Fox Defendants made in the 4:56 p.m. Tweet.

meaning that is readily understood that can be disproven.  The precise meaning is that Plaintiff led and executed a massive cyber attack the rig the Election for the benefit of a foreign sovereign, in cahoots with Smartmatic and Dominion.  This premise can be proven true or false:  Plaintiff either led the effort, as "COO," to rig the Election, or he didn't; he either conspired with Smartmatic and Dominion to rig the Election or he didn't; he either participated in the design and development of Smartmatic and Dominion's programs and machines, or he didn't; Plaintiff either included a "controller module" that allowed for the manipulation of votes in these programs or machines, or he didn't; Plaintiff either acted on behalf of Venezuela and Hugo Chávez (though he was deceased prior to 2020) and Maduro to fix the Election, or he didn't; Plaintiff was either a "political leader" or he was not; there was either a massive cyber attack that compromised the Election results, or there wasn't; the Defendants either have massive amounts of documentary evidence of foreign interference in the Election, or they don't; etc.  Just as three courts have each separately held that these and similar statements are capable of being objectively determined to be true or false, each of the alleged defamatory statements regarding Plaintiff can be objectively determined to be true, or as Plaintiff maintains, false.  As Judge Nichols held, in denying Powell's motion to dismiss on this ground, "[t]he question, then, is whether a reasonable juror could conclude that Powell's statements expressed or implied a verifiably false fact about Dominion.  *Mikovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990).  **This is not a close call**."  *Dominion DC Action,* 2021 WL 3550974, at *7-8; Dominion DC Op. at 16 (emphasis supplied).  The same applies here with respect to Plaintiff's claims against the Fox Defendants.  *See also Dominion DC Action*, 2021 WL 3550974, at *7-9; Dominion DC Op. at 16-17 (finding statements accusing Dominion of "flipping"

votes the Election for Venezuela and Hugo Chávez to be actionable statements of fact), and at \*8;
Smartmatic NY Op. at 45-46.

The third factor considered by New York courts also supports a finding that the statements
Plaintiff claims to be defamatory are actionable statements of fact.   Contrary to the Fox
Defendants' apparent position (*see* ECF No. 26 at 26-27), New York law does not give them
license to broadcast defamatory falsehoods even on a claimed "opinion show" (Plaintiff vigorously
disputes that Dobbs' show was an "opinion show") just because they are allegedly "newsworthy;"
and, even if it did, that is not what happened here.   Here, an on-air host of a massive self-described
"news" organization, affirmatively stated, promoted, endorsed, and broadcast the false claim that,
after a thorough investigation, there was "tremendous" evidence that Plaintiff was actively
involved in a coordinated effort to rig the Election and even claimed that Plaintiff was the "COO"
of such election conspiracy, operating in cahoots with Smartmatic and Dominion.   Moreover, as
alleged in the Complaint, "Dobbs presented himself to readers and views as a provider of factual
information – **not** opinion," and Fox described his show, *Lou Dobbs Tonight*, as the 'the #1
program on any business network among total viewers."   Compl. ¶ 11.   *See also* Compl. ¶¶ 12, 89,
95-101, 107, 129, 141, 153-56, 165-68;   ECF No. 27-1 at 3-4.   That Defendant Dobbs would
inquire about the evidence Defendant Powell had gathered to support these bogus claims does not,
as the Fox Defendants argue (*see* ECF no. 26 at 23-27), contextualize these lies as opinions.   To
the contrary, it signals to the audience that this is a fact-finding endeavor grounded in evidence.
*See Dominion DE Action*, 2021 WL 5984265, at \*14-15, 27-28;   Dominion DE Op. at 47-50
(finding that Fox's allegations of election fraud, including those associated with the December 10th
*Lou Dobbs Tonight* Broadcast, were actionable statements of fact or mixed opinion because the
issue was repeatedly framed as "truth seeking" purportedly grounded in evidence which was

undisclosed to the audience); *see also Gross*, 82 N.Y.2d. at 155-56 (finding that defendant's assertion that plaintiff was "corrupt . . . cannot be treated as a mere rhetorical flourish or the speculative accusation of an angry but ill-informed citizen made during the course of a heated debate," because the accusation was made "in the course of a lengthy, copiously documented newspaper series that was written only after what purported to be a thorough investigation"). Moreover, as noted, the statements made by the Fox Defendants in the pre-Broadcast 4:56 p.m. Tweet and post-Broadcast Tweet and Facebook Posts contained a series of further affirmative factual misstatements by the Fox Defendants.

Indeed, even if, *arguendo*, some of the statements concerning the Plaintiff's involvement in a massive election fraud were couched as opinions, and they were not, "mixed" opinions are nonetheless actionable under New York law, as the New York Supreme Court recently held in Smartmatic. *See* Smartmatic NY Op. at 45 ("When a 'statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and it is actionable."), at 46 ("Since these were statements of fact by Dobbs which clearly implied that he know of certain other information, unknown to his audience, which supported what he said, and the statements were detrimental to plaintiffs, they were not protected opinions (*See Steinhilber v. Alphonse*, 68 NT2d at 290.)"). The Delaware Superior Court and DC Court reached the same conclusion. *See Dominion DE Action,* 2021 WL 5984265, at *26-28; Dominion DE Op. at 48-50 ("[T]he Court finds it reasonably conceivable that Fox and its personnel broadcasted mixed opinions that were based on either false or incomplete facts unknown to the reasonable viewer" and concluded that "the Complaint supports the reasonable inference that Fox made unprotected statements of fact that defamed Dominion."); *Dominion DC Action*, 2021 WL 3550974, at *7; Dominion DC Op. at 15 ("[W]hile statements of opinion regarding matters of

46

public concern cannot be defamatory if they do *not* contain or imply a provably false fact, they are actionable if they imply a provably false fact or rely upon stated facts that are provably false") (citing *Mikovich*, 497 U.S. at 20).

Conveniently omitted from the Fox Defendants' Motion is the fact, underscored by the New York Court in *Smartmatic*, the Delaware Court in *Fox News* and the DC Court in *Powell*, that courts applying New York law "continue to recognize and utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener . . . and a statement of opinion that is accompanies by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts." *See Gross*, 82 N.Y.2d at 153-54. "The former are actionable not because they convey 'false opinions' but rather because a reasonable listener or reader would infer that the 'speaker knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person" who is the subject of the communication." *Id.* at 153-54 (alteration in original). Even in the latter scenario, a viable claim for defamation can rest upon a "statement of opinion that is accompanied by a recitation of facts" where the complaint alleges those facts are false. *See id.* at 153; *Silsdorf v. Levine*, 59 N.Y.2d 8, 15 (1983). These types of statements are actionable because "the validity of the opinions expressed [in the publication], as viewed by the average reader, could be affected by whether the facts as stated by the defendants or those now alleged by the plaintiff were before the reader." *Silsdorf*, 59 N.Y.2d at 15-16 (finding that plaintiff could recover damages for defamatory opinions if he is able to demonstrate the falsity of the statements of fact upon which the defamatory opinion was based).[59]

---

[59] Again, the very authorities the Fox Defendants rely upon recognize this well-established principle of New York law.  *See, e.g.*, ECF No. 26 at 29-30 (citing *Rapaport v. Barstool Sports, Inc.*, 18 Civ. 8783 (NRB), 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021)).

Here, even if the Court were to find that some of the Fox Defendants' statements could be considered opinion or "rhetorical hyperbole" (*see* ECF No. 26 at 29), any such statements are nonetheless actionable because they "implie[d] a basis in fact [for the statements] which are not disclosed to the reader or listener," namely the "tremendous evidence [they] already [have] of fraud in this election." *See Gross*, 82 N.Y.2d at 153; *see, e.g.*, Compl. at ¶¶ 129-30, 141-42, 154-55, 166-67; ECF No. 27-1 at 6.  Additionally, to the extent that any "facts" underpinning the supposed "opinion" that Plaintiff rigged the Election were recited in the 4:56 p.m. Tweet, on the December 10 *Lou Dobbs Tonight* broadcast, or in the post-Broadcast Tweets and Facebook Post, Plaintiff alleges these facts to be untrue and so any "opinion" based on these facts is still actionable. *See, e.g.*, Compl. at ¶¶ 129-31, 141-44, 154-56, 166-67; *Silsdorf*, 59 N.Y.2d at 15-16 (finding that plaintiff could recover damages for defamatory opinions if he is able to demonstrate the falsity of the statements of fact upon which the defamatory opinion was based).  Indeed, Plaintiff has alleged that the "tremendous evidence" Defendants claimed to have supporting their bogus election fraud claims never existed (*see id.* at ¶¶ 101-02, 107); and the courts which presided over and dismissed Powell's spurious litigations challenging the Election results found as much.  *See, e.g.*, *King v. Whitmer*, 505 F. Supp.3d 720, 738-39 (E.D. Mich. 2020) [ECF No. 62 at 32-34] (finding plaintiffs offered "nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden"); *King v. Whitmer*, No. 20-13134, 2021 WL 3771875, at *1 (E.D. Mich. Aug. 25, 2021) [ECF No. 172 at 2-3] (finding that plaintiffs' attorneys, including Powell, failed to conduct any "due diligence before presenting allegations [of election fraud] as truth"); *Bowyer* [ECF No. 84 at 28] (finding plaintiffs' fraud claims were "rendered implausible by the multiple inadmissible affidavits, declarations, and expert reports upon which their Complaint relies").

The authorities the Fox Defendants cite in support of their "opinion" argument, in any event, are readily distinguishable from the circumstances here.  In *Brian*, the New York Court of Appeals found that the fact that allegedly defamatory article "was rife with rumor, speculation, and seemingly tenuous inferences, furnished clues to the reasonable reader that [the article] was something less than serious, objective reportage."  *See Brian*, 87 N.Y.2d at 53.  Here, by contrast, the December 10 broadcast and related social media posts framed the coverage as a summarizing of the "evidence" supporting Defendants' claims of election fraud that had been compiled to date, and affirmative false statement made by the Fox Defendants themselves.  *See* Compl. ¶¶ 12, 89, 95-101, 107, 129, 141, 153-56, 165-68. [60]  The Fox Defendants also cite to *McDougal* and *Herring* for the proposition that the "general tenor" of *Lou Dobbs Tonight* would signal to viewers that what they are hearing is opinion, not fact.  *See* ECF No. 26 at 26.  But, these cases do not hold, as the Fox Defendants seem to suggest, that any statements by a television host that is claimed to be known to provide partisan commentary are protected opinions.  Each of the numerous statements made must be analyzed, and if defamatory, the Fox Defendants must be held liable accordingly. The principle advocated by the Fox Defendants has been rejected as well by the DC, Delaware and New York Courts in their rulings discussed herein.  Nor do the Fox Defendants get a free pass even if, they argue, the statements they were broadcasting related to a claimed public debate about the Election.  As Judge Nichols held in rejecting similar arguments, "there is no blanket immunity for statements that are 'political' in nature: as the [DC] Court of Appeals [in *Weyrich,* 235 F.3d at 626] has put it, the fact that statements were made in a "political 'context' does not indiscriminately immunize every statement contained therein….[I]it is simply not the law that provably false

---

[60] The relevant context at issue in *Mr. Chow of N.Y.*, also cited by the Fox Defendants, is even more disparate from the present circumstances: there, the allegedly defamatory statements were restaurant reviews, the very "natural function of [which] is to convey the critic's opinion of the restaurant reviewed."  *See Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 227-28 (2d Cir. 1985).

statements cannot be actionable if made in the context of an election." *Dominion DC Action*, 2021 WL 3550974, at *7; Dominion DC Op. at 15.

The context surrounding the statements in *McDougal* could not be more different than what occurred on the December 10 broadcast of *Lou Dobbs Tonight*.  The decision in *McDougal* turned on the meaning of the word "extortion" in the context of Fox's *Tucker Carlson Tonight*.  The court found that Carlson's charge of "extortion" was mere rhetorical hyperbole because it was "not accompanied by additional specifics of the actions purportedly constituting the crime."  *See McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182 (S.D.N.Y. 2020).  On the December 10 *Lou Dobbs Tonight* broadcast, by contrast, the Defendants charged Plaintiff with committing a "Pearl Harbor-style cyber attack" on the Election and then provided "additional specifics of the actions purportedly constituting the crime," including, *inter alia*: (i) "design[ing] and develop[ing] the Smartmatic and Dominion programs and machines, that include a controller module that allows people to log in and manipulate the vote;" (ii) acting "for the benefit of Venezuela and Hugo Chávez to rig elections;" (iii) exporting the election-rigging system " to other countries . . . [to] essentially sell to the highest bidder."  *See, e.g.*, Compl. at ¶¶ 140-44; *see generally* ECF No. 27-1.  Furthermore, unlike the December 10 *Lou Dobbs Tonight broadcast*, Carlson opened his monologue with a *disclaimer* that he would be assuming the facts reported by Michael Cohen as true "for the sake of argument" and then stated that those facts "sound[ed] like a classic case of extortion."  *See McDougal*, 489 F. Supp. 3d at 184.  The Defendants, here, made no such disclaimer; quite to the contrary, they represented time and time again that there was "tremendous," "overwhelming," and "stunning" evidence to support their false claims of election fraud.  *See, e.g.*, Compl. at ¶¶ 140-44; *see generally* ECF No. 27-1.  The 4:56 p.m. Tweet, moreover, contained no disclaimer by the Fox Defendants that any of the false statements in that

Tweet were subject to any caveats, nor did the Fox Defendants even attribute any of the statements in such Tweet to Powell – the statements, all falsely directly alleging or implying, *inter alia*, Plaintiff's role in the nonexistent conspiracy to fix the Election, were issued directly by the Fox Defendants.[61]

In sum, neither the "context" nor the other factors considered by courts, including the three court that have already reviewed the Fox Defendants' underlying defamatory statements, applying New York law support a finding that any of the Fox Defendants' defamatory statements concerning the Plaintiff are nonactionable "pure opinions."  These statements are, under well-established law, actionable for defamation.

### III.   Plaintiff's Defamation Claims Against the Fox Defendants Are Not Subject to Dismissal For Failure To Allege Actual Malice

#### A.   *Plaintiff More Than Sufficiently Alleges Fox Defendants Acted With Actual Malice*

Even if, *arguendo*, New York's anti-SLAPP statute applies to the Fox Defendants' false statements concerning the Plaintiff, the anti-SLAPP statute does not bar Plaintiff's defamation claims again Powell because Plaintiff has more than adequately alleged the Fox Defendants acted with actual malice.  Plaintiff recognizes that the New York Court in *Smartmatic* has held that the anti-SLAPP statute applies to the claims in the Smartmatic NY Action and that the Delaware Superior Court, while not ruling on whether the anti-SLAPP statute applies, has held that Dominions' claims against Fox News satisfy the anti-SLAPP standard, even if it applies.[62]  As the

---

[61] The Fox Defendants' reliance on *Herring Networks, Inc v. Maddow*, 8 F. 4th 1148 (9th Cir. 2021) is misplaced. With respect to Herring, the Ninth Circuit's decision that Maddow's statements on her show would be perceived as opinions, not simply because her show "is more than just stating the news," but because Maddow "disclose[d] all relevant facts" underlying her "colorful, hyperbolic language."  *See Herring Networks, Inc, supra*, 8 F. 4th at 1157-59.  Here, to the extent, *arguendo*, any of the challenged statements from the December 10 *Lou Dobbs Tonight* Broadcast are rhetoric hyperbole, they are still actionable because, unlike Maddow, the Defendants implied but did not "disclose all relevant facts" underpinning these statements.  *See Gross*, 82 N.Y.2d at 153-54.

[62] *See* Smartmatic NY Op. at 32-35; *Dominion DE Action*, 2021 WL 5984265, at *29; Dominion DE Op. at 52.

courts have held in the Smartmatic NY Action, the Dominion DE Action, and the Dominion DC Action, in and their discussion of the allegations therein, including the statements made on December 10, 2020, actual malice has been adequately alleged in each such action, and *a fortiori*, has been adequately alleged by Plaintiff as well.  Plaintiff submits that three rulings, by three separate courts, all reaching the same conclusion on actual malice with respect to the same conduct at issue here, are strongly persuasive authority, and should be followed by this Court.[63]

In arguing that Plaintiff's Complaint should be dismissed for failure to allege actual malice, the Fox Defendants, as they must, ignore the vast majority of the allegations in the Complaint and rewrite well-established authority on the standard for pleading actual malice.  *See* ECF No. 26 at 32-36.  *See id.* at 32-33.[64]  With respect the actual defamatory charges Plaintiff seeks to hold Defendants liable for – the false claim that Plaintiff participated in a scheme to rig the Election – the Complaint alleges that the Fox Defendants broadcast these claims without *any* factual basis and in the face of mountains of reliable, accessible evidence showing there was *no interference* in the Election at all.  Because Plaintiff has alleged the Fox Defendants made the defamatory statements with knowing, or at least, reckless disregard of their falsity, his defamation claims

---

[63] While Plaintiff respectfully submits, as explained *infra*, that the anti-SLAPP statute should not apply to Plaintiff's claims for the reasons set forth here, Plaintiff assumes, for purposes of this part of his argument, that the anti-SLAPP statute does apply and hence, that the actual malice standard applies as well.

[64] It appears that the Fox Defendants have disregarded the portions of the Complaint that do not fit their argument, in the same way that they ignored the two judicial decisions already rejecting arguments they advance issued before the filing of the Motion, and the wealth of publicly-available reports and statements which did not fit their preconceived narrative of massive election fraud.  The Fox Defendants claim that Plaintiff's theory that, because they knew the claims that Smartmatic and Dominion rigged the Election were false, they must have known the allegations that Plaintiff participated in this scheme were false, "is irrelevant to the bulk of the statements Khalil challenges, which have nothing to do with the 2020 election."  ECF No. 26 at 33.  This is a gross misrepresentation of the Complaint.  If the Fox Defendants had bothered to parse the four Counts of the Complaint, it should be crystal clear that Plaintiff challenges as defamatory a series of fabricated statements that accuse him of participating (as "COO") in a scheme with Smartmatic and Dominion to rig the Election.  *See* Compl. at ¶¶ 129, 142, 154, 166.  Indeed, all the false statements about Plaintiff at issue in the Counts of the Complaint falsely seek to implicate Plaintiff in a non-existent conspiracy between senior Venezuelan government officials and Smartmatic and Dominion to rig the Election, a bogus claim that had been debunked prior to December 10, 2020, as the Fox Defendants well knew.  He is not a "political leader," had no connection in any respect to Dominion or Smartmatic in connection with the Election, and indeed had no connection whatsoever to the Election, etc.

against the Fox Defendants are, accordingly, not subject to dismissal for failure to allege actual malice, assuming that standard applies.  This conclusion was reached by the three courts already rejecting the argument advanced here by Defendants that actual malice is not adequately alleged in this action.  *See Dominion DE Action*, 2021 WL 5984265, at *28-29; Dominion DE Op. at 50-52 (denying Fox's motion to dismiss defamation claim based on, *inter alia*, statements on statements on the December 10 *Lou Dobbs Tonight* broadcast and related social media posts for failure to allege actual malice); Smartmatic NY Op. at 35-41, 43-46 (rejecting Fox Defendants' arguments that actual malice had not been adequately alleged, including regarding the statements made on December 10, 2020).  *See also Dominion DC Action*, 2021 WL 3550974, at *9-11; Dominion DC Op. at 19-24 (rejecting Powell's argument that actual malice had not been adequately alleged, including regarding the statements made on December 10, 2020).

As the Fox Defendants acknowledge (ECF No. 26 at 32-33), the Complaint alleges that Defendants' defamatory claim that Plaintiff spearheaded a cyber attack on the Election sits atop a "pyramid of verifiably false claims," chief among which is the claim that there was any type of attack or interference in the Election at all.  Compl. at ¶ 42.  Plaintiff, citing the same underlying facts already held to satisfy the actual malice standard by three other courts, alleges that the Fox Defendants acted with actual malice when they accused Plaintiff of participating in the non-existent Election interference, *inter alia*, by:

- Knowingly disregarding a wealth of publicly-available evidence from reliable sources debunking any systematic fraud in the Election, which were cited to over 90 Fox personnel, including anchors, reporters, producers, content managers, and executives involved in the production of the December 10th defamatory statements concerning the Plaintiff.  *See, e.g.*, Compl. at ¶¶ 1-2, 12, 36-37, 42-52, 60-69, 74-75, 82, 102-04.[65]

---

[65] Among these public, reliable, and official statements were: (i) a November 12, 2020 announcement by the Trump Administration's own Cybersecurity & Infrastructure Security Agency that there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised" (*id.* at ¶ 45); (ii) statements on the Michigan Secretary of State and Georgia Secretary of State websites confirming the accuracy of the Election

- Broadcasting and republishing the demonstrably false and inherently improbably claims of facially unreliable sources, such as Defendant Powell, even though the Fox Defendants had reasons to doubt the veracity of those sources and their claims. *See, e.g.*, *id.* at ¶¶ 40, 45-50, 73-75, 104, 128-132, 140-45, 153-157, 165-69.

- Promoting a false and preconceived storyline that the Election was stolen from President Trump through a massive cyber attack to lure back Fox viewers who had abandoned Fox for other media outlets giving airtime to this lie and increase profits. *See, e.g.*, *id.* at ¶¶ 25-29, 120-26.

These and other allegations in the Complaint are more than sufficient to raise a plausible inference that the Fox Defendants acted with actual malice, as both the Delaware Superior Court (regarding Fox News) and the New York Supreme Court (regarding the Fox Defendants) have already held.  The fact that the Fox Defendants, despite having received multiple reliable, official sources stating there was *no interference* in the Election *by anyone*, in addition to having received direct communications from Dominion and Smartmatic detailing why the claims of Election fraud (and the charges against Dominion and Smartmatic, including any claimed connection to Venezuelan political officials in connection with the Election) were bogus, nonetheless issued the 4:56 p.m. Tweet and invited Powell back to *Lou Dobbs Tonight* and falsely broadcast claims on December 10 that there *was interference* in the Election *by the Plaintiff as an alleged lead Venezuelan co-conspirator with Smartmatic and Dominion in rigging the Election (and in the Tweet identifying Plaintiff as the COO of such nonexistent conspiracy)*, raises a strong inference that Fox Defendants knew this claim was false or, at the very least, recklessly disregarded ample evidence of the claim's falsity.  *See Crime Victims Ctr., Inc. v. Logue*, 181 A.D.3d 556, 557 (2d Dep't 2020) (affirming denial of motion to dismiss defamation claim, where complaint alleged

---

results that were available at least as of November 12, 2020 (*id.* at ¶ 46); (iii) a statement by EAC Commissioner and Trump appointee Ben Hovland on or around November 14, 2020 that the Election "was the most secure election we've ever had" (*id.* at ¶ 48); (iv) the results of the 100% hand audit recount of all the ballots cast in Georgia in the Election on November 19, 2020 and the subsequent report of Georgia's Secretary of State that the audit reaffirmed the accuracy of the Election results (*id.* at ¶ 65); and (v) a December 1, 2020 statement by the then-U.S. Attorney General William Barr that there was no evidence to substantiate a systemic fraud in the Election (*id.* at ¶ 82).

defendant made challenged statements with "knowledge of their falsity, or knowing that he had no reliable evidence or information supporting the statements"); *Dominion DE Action*, 2021 WL 5984265, at *28; Dominion DE Op. at 51 (finding Dominion adequately alleged Fox News acted with actual malice with respect to the statements on the December 10th *Lou Dobbs Tonight* broadcast and related social media posts, because Dominion alleged Fox "possessed countervailing evidence of election fraud" from government agencies and election experts); Smartmatic NY Op. at 35-41, 43-46 (finding actual malice adequately plead where the Fox Defendants either knew "the information was false" or "had reason to doubt the veracity of the same since it was unsupported by any facts and was refuted by election specialists and officials," and further holding that "[e]ven assuming that Fox News did not intentionally allow this false narrative to be broadcasted, there is a substantial basis for plaintiffs' claim that, at a minimum, Fox News turned a blind eye to a litany of outrageous claims about plaintiffs, unprecedented in the history of American elections, so inherently improbable that it evinced a reckless disregard for the truth"); *see also Dominion DC Action*, 2021 WL 3550974, at *10-11; Dominion DC Op. at 10-11 (finding Dominion adequately alleged Powell made charges of election fraud with actual malice by alleging Powell relied on inherently unreliable sources, misrepresented the existence of supporting evidence, and had a financial motive to lie); *Bruno v. New York Daily News Co.*, 89 A.D.2d 260, 268 (3d Dep't 1982) (finding raised a triable issue of malice where defendant failed to identify any sources for the challenged statements and had access to documents with express findings contradicting these statements).  As the New York Court held in *Smartmatic*, "in determining actual malice, a court may consider, *inter alia*, whether a story is fabricated or based on an

unverified, anonymous source and whether there are obvious reasons to doubt the truthfulness of the defendant's source."  Smartmatic NY Op. at 38.[66]

    Moreover, once the Fox Defendants were on notice that there was no evidence supporting the claims of election fraud, they had an affirmative duty to make further attempts to verify the claims prior to continuing to broadcast them (which clearly did not occur).  *See Mahoney v. State of New York*, 236 A.D.2d 37, 40-41 (3d Dep't 1997); *Partridge v. State*, 173 A.D. 3d 86, 96-97 (3d Dep't 2019).  Yet, and this seems beyond dispute, no one ever reached out to Plaintiff to try to verify any of the claims they were making about him.  *See* Compl. at ¶ 109.  More fundamentally, as other courts have already held, the Fox Defendants had been repeatedly put on notice, prior to December 10, 2020, that all their underlying allegations regarding Smartmatic and Dominion and the claimed connections to Venezuela of the so-called Election plot, and alleged tampering with Election hardware and software were utterly and completely false. In other words, the Fox Defendants knew that there was no "cyber Pearl Harbor" and no involvement by Smartmatic, Dominion, nor any Venezuelan government official in any such non-existence foreign plot to fix the Election **prior to** the defamatory effort to tie Plaintiff on December 10 as the Venezuelan COO of such fabricated Election plot.  The Fox Defendants had a duty to verify all of these underlying claims of Election fraud, which they did not do, prior to December 10.  The suggestion by the Fox

---

[66] For example, in the case of Dobbs, the New York Court noted that when Dobbs claimed to have heard information about Smartmatic software allegedly having been used to "change votes" in a 2013 Venezuelan election, "[g]iven the questionable sources of much of this information, as well as the gravity and unprecedented nature of the claims against [Smartmatic], a jury could determine that these claims were fabricated or, at the very least, that there were reasons to doubt the sources of this information."  Smartmatic NY Op. at 39.  The New York Court also cited the November 16, 2020 statement of "a group of security specialists" "saying that there was no credible evidence of fraud in the November election; that there was no evidence that the election had been rigged; and that such claims were unsubstantiated or technically incoherent."  Smartmatic NY Op. at 39.  The same security specialists' report is cited in Plaintiff's Complaint.  See Complaint ¶ 60.  As the New York Court held, "this, alone, was enough to put any reputable new organization on notice that the claims against [Smartmatic] could be dubious."  Smartmatic NY Op. at 39.  Similarly, Plaintiff's Complaint alleges Smartmatic's notification of the Fox Defendants regarding a November 12, 2020 government statement, a subject covered by the New York Court as well, holding that "there is a substantial basis for plaintiffs' claim that Fox News actually had information undermining any claim that the election was rigged and willfully disregarded the same."  Smartmatic NY Op. at 39.  *See* Compl. ¶ 62.

Defendants, that "[a]t most, [the Complaint] alleges negligent failure to investigate Powell's allegations in advance" (Motion at 3), could not be further mistaken as a factual matter and disregards the relevant legal standards, and in any event, fails to take into account that on December 10, 2020 the Fox Defendants broadcast many of the same debunked lies about a conspiracy to rig the Election, and added Plaintiff's name to the top of the list though they knew, or at least had been repeatedly warned, that the entire underlying premise of the claimed plot to rig the Election was bogus. Further, as noted, the Fox Defendants elected to make a number of their own false statements regarding Plaintiff, such as those during the 4:56 p.m. Tweet, which made no reference whatsoever to Powell.

The Fox Defendants argue that Plaintiff has not sufficiently alleged actual malice because he "must bring the required state of mind home to 'the individual responsible for publication of a statement'" – in this case the Fox Defendants. *See* ECF No. 26 at 36 (quoting *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013)). This principle, however, is foreclosed by the Supreme Court's decision in *New York Times v. Sullivan*, which established that when, as here, more than one person in an organization is involved in publishing a defamatory statement, the actual malice inquiry is not limited to a single person, but involves the state of mind of all persons involved in the publication. 376 U.S. 254, 287 (1964). Here, Plaintiff alleges that dozens of Fox personnel, including anchors, reporters, producers, content managers and executives, including those who oversaw and managed *Lou Dobbs Tonight*, and even senior executives such as Fox's CEO and President and Fox News' general counsel, received the reports and statements, often directly from Dominion or Smartmatic, described above rebutting the claims that there was any interference in the Election, let alone interference orchestrated by Smartmatic and Dominion in

conspiracy with foreign governments such as Venezuela.[67]   The Fox Defendants complain that Plaintiff is trying to "spin" coverage of the election lies, but this is just further projection and obfuscation.  It is the Fox Defendants who are mischaracterizing the evidence available to them as only "self-serving denials," when the rebuttal evidence was, in actuality, public reports from government officials (many Republican) and experts.  *See* ECF No. 26 at 34.  Again, as noted, both the Delaware and New York Courts have rejected the same argument advanced here by the Fox Defendants.

Plaintiff's allegation that the Fox Defendants continued to broadcast lies about the Election even while certain Fox hosts were questioning the claims of election fraud the Fox Defendants were peddling on *Lou Dobbs Tonight* and echoing reports that there was no evidence of election fraud (*see* Compl. at ¶¶ 132, 145, 157, 169) only bolsters the inference that the Fox Defendants recklessly disregarded the probable falsity of the claims they were broadcasting, as both the Delaware and New York Courts have held.  *See Dominion DE Action*, 2021 WL 5984265, at *28; Dominion DE Op. at 51 ("The nearby presence of dissenting colleagues thus further suggests Fox, through personnel like Mr. Dobbs, was knowing or reckless in reporting the claims [of election fraud].");  Smartmatic NY Op. at 40 ("[T]here are sufficient allegations that Fox News knew, or should have known, that Powell's claim was false, and purposefully ignored the efforts of its most prominent anchor to obtain substantiation of claims of wrongdoing by [Smartmatic]");  *see also Gilmore v. Jones*, 370 F. Supp. 3d 630, 672-80 (W.D. Va. 2019) (holding that plaintiff sufficiently alleged actual malice where complaint alleged defendant relied on and failed to verify disreputable sources, previously published similar stories, and failed to reach out to plaintiff about the claims before publication).  In light of the allegations that many Fox personnel received and accepted the

---

[67] The reports, including retraction demand letters, sent by Dominion and Smartmatic to the Fox Defendants were extensive.  *See, e.g.*, Compl. ¶¶ 46-47, 52, 58-60, 62, 67, 74, 76, 79, 83 and 87.

ample, reliable evidence that there was no systematic fraud in the Election, and the procedural posture of the case which dictates all reasonable inferences be drawn in Plaintiff's favor, the Court should not accept the Fox Defendant's own self-serving assertion that Dobbs' call for further investigation demonstrates his genuine lack of relevant knowledge. *See* ECF No. 26 at 33. This assertion, however, raises a question of fact to be decided by the jury, not an issue of law to be resolved at the pleading stage. *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9 (1979) (finding that, because "proof of 'actual malice' calls a defendant's state of mind into question," this element "does not readily lend itself to summary disposition"). As the New York Court held with respect to Dobbs in particular, commenting on Dobbs' statement on December 10, 2020 that "Powell had revealed 'groundbreaking new evidence indicating that [the election] came under massive cyber attack orchestrated with the help of Dominion, [Smartmatic], and foreign adversaries, one the precise statements that Plaintiff also has alleged in his Complaint was defamatory (since Plaintiff had been specifically identified on December 10 as one of the such alleged "foreign adversaries"), such "statement[], if false [i]s' defamatory per se…." Smartmatic NY Op. at 43-44.

Further bolstering an inference that the Fox Defendants acted with actual malice are Plaintiff's allegations that the Fox Defendants had a financial motive to peddle sensational lies about the integrity of the Election. *See* Compl. at ¶¶ 25-29, 120-26. Specifically, Plaintiff alleges the election lies were good for business, luring back lost Fox viewers and, thereby, increasing profits. *See id.* While the Fox Defendants contend that allegations of financial motive, standing alone, cannot satisfy the actual malice standard (*see* ECF No. 26 at 36), the Fox Defendants' financial motive to lie is directly relevant to and supportive of an inference of actual malice. *See Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 664-68 (1989); *Dominion DC Action*,

2021 WL 3550974, at *11; Dominion DC Op. at 23-24 (finding allegations that Powell had a financial and personal motive to peddle sensational lies about a non-existent election fraud supportive of inference that she acted with actual malice). *See also* Smartmatic NY Op. at 1 ("[P]laintiffs alleged that, in an attempt to boost rating…defendants Fox Corporation and Fox News Network LLC…fabricated a story that the election was stolen."), 15 (plaintiff alleged that "the Fox defendants violated accepted standards of journalism in order to make a profit.").

The Fox Defendants are, quite simply, incorrect as, a matter of law, that the "complaint comes nowhere close to meeting the actual malice standard." *Cf.* ECF No. 26 at 32. Plaintiff has more than met his burden, at the pleading stage, of alleging sufficient facts which, if true, demonstrate that the Fox Defendants broadcast defamatory statements "with knowledge of [their] falsity or with reckless disregard of whether it was false." *See Dominion DC Action*, 2021 WL 3550974, at *11; Dominion DC Op. at 24 (finding Dominion "has proffered much more" than is necessary to support a finding that Powell acted with actual malice when she falsely claimed election fraud); *Dominion DE Action*, 2021 WL 5984265, at *28; Dominion DE Op. at 51 (finding plaintiff adequately alleged Fox News acted with actual malice where they alleged defendant "possessed countervailing evidence of election fraud" from government agencies and election experts); *Crime Victims Ctr., Inc.*, 181 A.D.3d at 557 (finding plaintiff's allegations that defendant made the challenged statement with knowledge of its falsity or knowing of reliable contradictory evidence were "sufficient at this [pleading] stage of the proceeding"); Smartmatic NY Op. at 35-41, 43-46 (denying Fox Defendants' motion to dismiss).

**B.**     ***Plaintiff Is Neither a Public Figure, Nor a Limited Purpose Public Figure***

In the event the Court concludes that New York's anti-SLAPP statute applies, the "actual malice" standard will control.[68]  In the event the Court, alternatively, concludes that, as to Plaintiff, the anti-SLAPP statute does not apply, it will need to determine if Plaintiff is a public figure or a limited purpose public figure, which if either applies, will separately trigger the "actual malice" standard.[69]  Plaintiff respectfully submits that he is neither a public figure nor a limited purposes public figure.

1.     Plaintiff Is Not A Public Figure

In the event the Court concludes that the anti-SLAPP statute applies, it is unnecessary for the Court to reach the question of whether Plaintiff is a public figure or a limited purpose public figure, which he is not.  If the Court reaches the public figure issue, without any factual support or legal analysis, the Fox Defendants incorrectly claim that "Khalil is a public figure."  ECF No. 26 at 31.  Recognizing the distinction between a general public figure and a limited-purpose public figure, the Fox Defendants make the conclusory assertion that Plaintiff fits the description of a general public figure "to a tee," but that, "[a]t the very least, Khalil is a limited-purpose public figure."  *Id.*  Of course, the Fox Defendants simply stating as such does not make it true.  As established herein, Plaintiff is a private citizen that, without his consent, *Fox, Dobbs, and Powell* involuntarily thrust into the global spotlight with respect to their bogus Election claims, which does not fit the criteria of either a general or limited-purpose public figure.

*First*, the Fox Defendants explicitly acknowledged on the December 10, 2020 *Lou Dobbs Tonight* Broadcast that Plaintiff is not a general public figure.  "A person can only be a general-purpose public figure if 'he [or she] is a 'celebrity'; his [or her] name a 'household word' whose

---

[68] *Crime Victims Ctr., Inc.*, 181 A.D.3d at 557.
[69] *Biro*, 963 F. Supp. 2d at 270; *Gottwald*, 193 A.D.3d at 576.

ideas and actions the public in fact follows with great interest and 'invites attention and comment.''" *Gottwald*, 193 A.D.3d at 576 (alterations in original) (internal citations omitted); *see also Gertz*, 418 U.S. at 351-52.  "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life."  *Id.*  On the December 10 broadcast, Dobbs specifically stated that: "we're going to put up on the screen [a graphic including Plaintiff's name among four named individuals] so people can follow the conversation here *because these are names that most of us are not familiar with*." ECF No. 27-1 at 4 (emphasis added).  This, alone, belies any argument that Plaintiff is a general-purpose public figure.

To the extent the Fox Defendants are claiming, incorrectly, that sporadic prior news reports, mostly by Spanish language outlets that cover South America, that Plaintiff is "a prominent [foreign] businessman" (ECF No. 26 at 31)[70] is evidence that he is a general public

---

[70] The Fox Defendants' efforts to cut and paste from isolated prior "articles," several translated from Spanish, that have referenced Plaintiff, is a further unfortunate example of the Fox Defendants having no shame.  The Fox Defendants submitted several documents to the Court that are not incorporated by reference or otherwise referred to in the Complaint, claiming they are somehow relevant to the determination of whether Plaintiff is a public figure in an effort to circumvent the general rule that bars consideration on a motion to dismiss of such hearsay documents not incorporated by reference in the Complaint, and as to which judicial notice is inappropriate.  Since these articles are not cited in the Complaint, nor are they part of the alleged defamatory statements at issue, they are not appropriate to consider the "context" of Defendants' defamatory statements, which focuses on the actual defamatory statements themselves.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 812-13 (2d Cir. 2019) (rejecting as reversable error consideration on a Rule 12(b)(6) motion evidentiary matters not incorporated within the defamation Complaint).  At most, they may be considered in determining whether a plaintiff is a public figure, but not for the truth of the matter contained in such documents, as the Fox Defendants' own authority establishes.  *Biro*, 963 F. Supp. 2d at 271 n.9 (cited by Fox Defendants).  The Fox Defendants' repeated invocation of these irrelevant articles, which they distort and which are materially inaccurate themselves, is a flagrant abuse by the Fox Defendants of proper procedure on a Rule 12(b)(6) motion.  While Plaintiff disputes their relevance even to the Fox Defendants' superficial public figure claim, the apparent reason for inclusion of such articles is to improperly inject a false image of Plaintiff having nothing to do with the specific defamation claims at issue and promote the Fox Defendants' diversionary and disingenuous counter-narrative.  Plaintiff urges the Court to not take the Fox Defendants' bait. In the event the Court determines that the anti-SLAPP statute applies, the public figure issue need not be reached, since the actual malice standard would apply, and such articles should be completely disregarded on the Motion.  With that reservation of rights, Plaintiff notes that none of such articles reference any connection by Plaintiff to Smartmatic, Dominion or the Election.  They reflect, at best, sporadic reference to Plaintiff mainly in Spanish outlets, and while the references to Plaintiff in the articles are incorrect, they hardly provide any basis to determine Plaintiff to be a public figure, and the Fox Defendants make no serious effort to advance the public figure argument.  They also contain blatantly false statements regarding Plaintiff that it appears the Fox Defendants want to inject post-hoc in an improper effort to blame the victim.  If the Court

figure, that is plainly insufficient.  *See Gottwald*, 193 A.D.3d at 577-79 (general success in business

is not enough to bring an individual into the realm of a general-purpose public figure, even if he is

known to the general public or has associations with famous persons or other household names);

*see also Biro*, 963 F. Supp. 2d at 270 (cited by Fox) ("'The fame required for an individual to be

a public figure for all purposes, as opposed to a limited purpose public figure, is very great; the

individual must be a 'household name' on a national scale.'" (quoting *Lluberes v. Uncommon*

considers such articles, Plaintiff notes as follows:  While the statement, as translated from one article that Plaintiff is a "frontman" for Jorge Rodriguez (Plaintiff notes that there are alternative translations for the same Spanish word used in such article) is patently false (which Plaintiff is fully prepared to establish at trial), a review of the Counts in Plaintiff's Complaint confirms that whether Plaintiff has ever met Mr. Rodriguez is not among the myriad of defamatory statements regarding Plaintiffs for which damages are sought from the Fox Defendants. However, the bogus allegations that Plaintiff allegedly was associated with Mr. Rodriguez and the CEO of Smartmatic in a nonexistent plot to fix the Election, the bogus allegation that Plaintiff is a "political leader," and the bogus allegation that Plaintiff was the "COO" of the nonexistent plot to fix the Election, are among the many defamatory statements for which relief is sought.  The Fox Defendants mischaracterize and distort the contents of other articles as well, and fail to demonstrate how they bear on the public figure issue in connection with the Election issues at play, if the Court reaches the public figure issue.  For example, the Fox Defendants cite a 2007 article, that in passing makes a hearsay statement that Plaintiff and his brother, in 2003 had to stop making certain "computer exports."  *See* Anderson Decl., Ex. 24.  Another article, apparently translated from Spanish, cited by the Fox Defendants, refers to nephews of *the wife* of Maduro and incorrectly suggests that they flew on a plane owned by a Venezuelan company created in 1980 (Plaintiff was 10 years old in 1980!), *see* Anderson Decl., Ex. 27, that the article claimed was "run" by Plaintiff and his brother.  Incredibly, the Fox Defendants cite this article as "confirm[ing] Plaintiff's ties to President Maduro," when the article does not do so, and the suggested connection of the plane to Plaintiff is inaccurate.  See Motion Br. at 11 n.8.  Yet, another article cited by the Fox Defendants alleges, albeit falsely, in passing that an unspecified "close [Lebanese] relative" of Plaintiff and his brother had been recently sanctioned by OFAC for "material support for Hezbollah."  Anderson Decl., Ex. 25.  In another article cited by the Defendants, apparently translated from Spanish, a letter from counsel to Plaintiff written in 2015 is attached, which explicitly states that any suggestion that Plaintiff and his brother had any ties to "terrorists" or had ever been associated with "Islamic fundamentalism" were utterly false.  Anderson Decl., Ex. 28.  And perhaps most cynically, the Fox Defendants cite an article that was published on August 19, 2021 – seven months *after* the Fox Defendants' defamatory December 10, 2020 statements – that in passing incorrectly referred to Plaintiff as "the alleged frontman of Jorge Rodriguez."  Anderson Decl., Ex. 26.  Such article appeared after the Fox Defendants themselves had falsely described Plaintiff, without even using the conditional phrase "alleged" on December 10, 2020 as the "right hand and business frontman of Jorge Rodriguez."  As noted *supra*, the Fox Defendants fail to put the issue in the relevant legal context (e.g., did Plaintiff conspire with Jorge Rodriquez to rig the Election and has Plaintiff at any point been a "political leader" – the answer is "no" and none of the article address such issues), though as a factual matter, Plaintiff is not now nor has ever been a "frontman" for Mr. Rodriguez.  The Fox Defendants certainly cannot rely on a publication made after December 10, 2020, which merely repeated part of the Fox Defendants' bogus claims against Plaintiff, to justify their unjustifiable conduct.  To the extent the Court considers them, Plaintiff notes that, while Plaintiff is a very successful businessman and has been materially damaged by the Defendants' conduct, the articles cited by the Fox Defendants contain objectively inaccurate statements regarding Plaintiff, or in at least one case, may have been the by-product of the Fox Defendants' own defamatory conduct, and none provide any basis for a determination that Plaintiff was a "public figure" on December 10, 2020.  To be sure, none of the articles bear on any issue in this case relating to the defamatory statements for which relief is sought in the Counts in the Complaint.

*Prod., LLC*, 663 F.3d 6, 20 n.14 (1st Cir. 2011))).  If such sporadic and general "news reports," mainly in Spanish outlets cover South America, now relied on by the Fox Defendants constituted "clear evidence of general fame or notoriety in the community," then Dobbs would not have professed that neither he nor Fox's audience were unfamiliar with Plaintiff prior to the December 10 broadcast.  The Fox Defendants' lawyer-created litigation position that Plaintiff is a public figure cannot be reconciled with the Fox Defendants' clear acknowledgement that Plaintiff *was not* a household name at the time of the December 10th broadcast.

> 2.   Plaintiff is not a limited-purpose public figure

Plaintiff also plainly does not meet the definition of a limited-purpose public figure.  A limited-public figure is one who has "thrust themsel[f] to the forefront of particular public controversies in order to influence the resolution of the issues involved."  *Gertz*, 418 U.S. at 345. The Second Circuit has articulated a four-part test to determine what constitutes a "limited purpose public figure" for a defamation claim.  *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984).  The defendant must show that the plaintiff has:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

*Id.*; *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 288 (S.D.N.Y. 2016).  None of these elements are satisfied here. Tellingly, the Fox Defendants do not even articulate this standard, let alone analyze these factors or how they apply to Plaintiff.  For the avoidance of doubt, however, neither the allegations in the Complaint nor the generalized articles

the Fox Defendants improperly cite on the Motion to Dismiss,[71] support a finding, especially at this stage of the case, that Plaintiff is a limited-purpose public figure.  *See Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 299 (finding that at the motion to dismiss stage, the court could not determine on the pleadings that the plaintiff was a limited-purpose public figure).

To be clear, the Fox Defendants do not argue, nor can they, that Plaintiff: (1) "invited public attention to his views in an effort to include others *prior to*" the December 10 broadcast of Defendants' false claims of election fraud; (2) "*voluntarily injected himself*" into the discourse about the integrity of the Election; (3) "assumed a position of prominence" in the controversy surrounding the Election; or (4) "maintained regular and continuing access to the media."  The fact that Plaintiff's name was not even referenced in any publication in connection with the Election prior to December 10 underscores this point.  To the contrary, *the only reason* Plaintiff became on December 10, 2020, in any way associated with bogus claims of fraud in connection with the Election was because of Defendants' own actions.  A hallmark element of an individual being considered a limited purpose public figure is "voluntary" actions by the individual to become part of the conversation.  *See Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 289-90 ("To the contrary, '[i]t [may] be more accurate to say that [ESG] was dragged unwillingly into the controversy." (quoting *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 166 (1979) (alterations in original)); *see also Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 22 F. Supp. 3d 240, 252 (S.D.N.Y. 2014) (plaintiff's actions "[fell] short of meeting the requirements for a limited

---

[71] Notably, the articles the Fox Defendants improperly rely upon *are not* articles about Plaintiff's purported involvement in claim of any connection to Dominion, Smartmatic or the Election; instead, they are generalized articles, none solicited by Plaintiff, which have referenced Plaintiff.  While the Fox Defendants make reference to a Venezuelan election campaign by Maduro's *wife and the conduct of her nephews*, even that irrelevant reference has nothing to do with the Election, nor with Dominion or Smartmatic.  As such, they do not provide any support that Plaintiff was a limited-purpose public figure as it relates to Defendants' manufactured claims that Plaintiff was tied to a nonexistent plot by Dominion and Smartmatic to fix the 2020 US Presidential election.

purpose public figure under *Gertz* and the line of cases that consistently require 'affirmative steps,' 'purposeful activity,' 'voluntary' injection, or 'invit[ing] public attention.'") (second alteration in original).  Plaintiff clearly did nothing of the sort.  To the extent the Fox Defendants rely on (and the Court considers) any sporadic prior coverage of Plaintiff on matters unrelated to the Election, Smartmatic or Dominion, such coverage suggests, if anything, the exact opposite of a private party seeking to "invite public attention" to his views.

It simply cannot be that the Defendants can thrust Plaintiff without his consent into the spotlight on their specious election fraud claims, and then attempt to insulate themselves from liability because they falsely placed Plaintiff at the center of a manufactured controversy. Requiring Plaintiff to plead a higher level of *mens rea* because of Powell's and Fox's own defamatory statements is not supported by any of the case law.  *See Gottwald*, 193 A.D.3d at 577 ("A person may generally not be made a public figure through the unilateral acts of another.").

### C.      *The New York Anti-SLAPP Statute Does Not Apply*

The Fox Defendants make the conclusory assertion that New York's anti-SLAPP statute applies to Plaintiff's defamation claims, without demonstrating that the statute applies to the type of fabricated accusations at issue here.  *See* ECF No. 26 at 30-31.  While Plaintiff recognizes that the New York Court, in its recent ruling, has held that the anti-SLAPP statute applies to the Smartmatic NY Action, Plaintiff respectfully urges this Court to consider whether, given the nature of the statements regarding Plaintiff and the fact that, unlike Smartmatic or Dominion,  there had been no prior reference to Plaintiff in any of Powell's by-then dismissed actions or in any other Election-related litigation or in any other prior reporting regarding the Election, the anti-SLAPP statute should not apply here.  New York's anti-SLAPP statute is limited to claims that are based on a defendant's "lawful conduct," *see* N.Y. CIV. RIGHTS LAW § 76-a(2), thereby expressly excluding application to conduct that is unlawful, such as deliberately spreading falsehoods.  *See*

*Nat'l Coalition on Black Civic Participation*, 512 F. Supp. at 518 (rejecting application of New York's anti-SLAPP statute where plaintiff plausibly alleged unlawful conduct by defendant, which neither "receive[s] First Amendment protection" nor protection under New York's anti-SLAPP statute); *see also World Wrestling Fed'n Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 520 (S.D.N.Y. 2001) ("The First Amendment does not protect statements that are false and defamatory even if they are made in the context of a public debate about issues of general concern."); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382 (1977) ("No First Amendment protection enfolds false charges of criminal behavior.").

The Fox Defendants failed to demonstrate, let alone argue, that their publication of fabricated claims concerning the Plaintiff, a private,[72] foreign businessman with no connections to Smartmatic, Dominion, or the Election, were in connection with an "issue of public concern." Though New York law now defines "public interest" broadly, the Fox Defendants fail to cite any authority holding that publicly creating false criminal accusations against a private individual are statements of "of public interest" entitled to anti-SLAPP protection.  *See* ECF No. 26 at 30-31. While courts have recognized a "public interest" in cases involving actual arrest and criminal charges, Plaintiff was not named, nor even referenced, in any of the frivolous and now-dismissed lawsuits challenging the Election results,[73] let alone formally investigated for or charged with any election fraud.  Moreover, as set forth *supra*, it was the Fox Defendants themselves, in their 4:56 p.m. Tweet, prior to the December 10, 2020 *Lou Dobbs Tonight* broadcast, who issued a litany of false and defamatory statements regarding Plaintiff and created the bogus claim that Plaintiff was the "COO" of "the election project," which the Fox Defendants in the 4:56 p.m. Tweet falsely

---

[72] *See* Section III.A.2, *supra.*

[73] *See* n.33, 37*, supra*.

identified as a "cyber Pearl Harbor."  While none of the Fox Defendants' statements regarding Plaintiff should be subject to the anti-SLAPP statute, at a minimum, the Fox Defendants' statements in the 4:56 p.m. Tweet should not be subject to anti-SLAPP statute.

The falsity of the Fox Defendants' defamatory claim that Plaintiff participated in rigging the Election.  In any event, is fatal to their attempt to invoke New York's anti-SLAPP statute.  If the Fox Defendants' interpretation of New York's anti-SLAPP statute is taken to its logical end, any defamation defendant could essentially create an "issue of public interest" by fabricating, without any evidence whatsoever, a bogus claim that such an issue exists to attempt to insulate the statements under anti-SLAPP statutes, which is precisely what the Fox Defendants are attempting here.  Any private individual, such as Plaintiff, having no objective ties to a US election can be falsely accused out of the blue as participating in a plot – or even worse, as here, falsely being accused of serving as the COO of the nonexistent plot – to rig, fix, or steal a US election, and be subject to a boilerplate defense that since the patent lie is tied to a US election, it *per* se must involve an "issue of public interest."  This cannot be the law.

Indeed, while there is a dearth of authority addressing how false claims of criminal conduct are treated under New York's newly-expanded anti-SLAPP statute, California courts have, with instructive reasoning, considered and rejected the applicability of the California anti-SLAPP statute where the defendant is alleged to have fabricated criminal accusations:

> Simply stated, causes of actions arising out of false allegations of criminal conduct made under circumstances like those alleged in this case are not subject to the anti-SLAPP statute.  Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made – a result that would be inconsistent with the purpose of the anti-SLAPP statute and would unduly undermine the protection accorded by [California law].

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1136 (Cal. App. Ct. 2003) (rejecting application of anti-SLAPP statute where plaintiff was a private figure and defendant published accusations that he had committed crimes).  New York's anti-SLAPP statute does not apply to the Fox Defendants' defamatory statements concerning the Plaintiff.  At a minimum, the Court should hold that the Fox Defendants' statements regarding Plaintiff in the 4:56 p.m. Tweet should not be subject to the anti-SLAPP statute.[74]

## IV.   Plaintiff Adequately Alleges Fox Corporation Participated in Defamation

### A.      *Fox Corporation is Directly Liable for the Defamatory Statements Made Against Plaintiff*

As a preliminary matter, Plaintiff notes that Fox Corporation sought dismissal of the claims asserted against it in the Smartmatic NY Action, and the New York Court has denied the motion to dismiss by Fox Corporation.  The same result should occur here.[75]

In seeking dismissal of Defendant Fox Corporation, the Fox Defendants ignore the well-pleaded allegations of the Complaint regarding the defamatory statements made on air by Fox hosts and in Tweets published by Fox.  On a motion to dismiss, Plaintiff is merely required to plead facts sufficient to provide the opposing party with "sufficient notice of the communications complained of to enable [them] to defend [themselves]."  *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 699 (S.D.N.Y. 2018) (quoting *Biro*, 883 F. Supp. 2d at 456); *Mansfield Heliflight, Inc. v.*

---

[74] Assuming the anti-SLAPP statute does not apply and Plaintiff is not a general or limited public figure (*see* Section III, *supra*), then Plaintiff is required to show "that 'the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.'"  *Enigma Software Grp. USA, LLC*, 194 F. Supp. 3d at 287; *Gottwald*, 193 A.D.3d at 580-81.  As established in Section III.A., *supra*, the allegations supporting actual malice necessarily are plainly more than sufficient to establish that the Fox Defendants, as well, acted in a grossly irresponsible matter without due consideration for the standard followed by responsible parties.

[75] Plaintiff is aware that Dominion has filed a separate lawsuit in Delaware Superior Court against Fox Corporation and that a motion to dismiss filed by Fox Corporation in such Delaware Superior Court action has been fully briefed.  Plaintiff reserves the right to supplement his arguments on this issue based on further developments in the Fox Corporation Delaware action, to the extent applicable to this action.

*Freestream Aircraft USA, Ltd.*, No. 2:16-cv-28, 2017 WL 3393819, at *7 (D.Vt. Aug. 4, 2017).

Collective allegations that an individual and an agent of an entity made the alleged defamatory

statements are sufficient, at the pleading stage to state a claim.  *See Mansfield Heliflight, Inc.*, 2017

WL 3393819, at *7-8 (refusing to dismiss a defamation counterclaim where the

defendants/counterclaim plaintiffs alleged that the plaintiffs/counterclaim defendants, collectively,

made defamatory statements, stating "If Mr. Chase claims he did not make the statements in

question, he may so indicate in his Answer.  If Mansfield claims no officer or agent made the

statements on its behalf, it may include this denial in its Answer.").

Plaintiff alleges that Defendant Fox News Network LLC is a Delaware corporation that is

wholly owned by Defendant Fox Corporation.  Compl. ¶ 10.  Together, these defendants are

referred to as "Fox" throughout the Complaint.  *See id.* ¶ 10 (defining Fox News Network LLC

and Fox Corporation as "Fox").  The specific allegations against Fox in the Complaint regarding

the defamatory statements include, in summary, and are not limited to:

- "Fox aired false statements about Dominion, Smartmatic and Mr. Khalil on *Lou Dobbs Tonight*." ¶ 11.

- "Fox operated and exercised control over" the Twitter, Facebook and Instagram accounts that published defamatory statements about Mr. Khalil. *Id.*

- "Fox frequently republished shows and segments from *Lou Dobbs Tonight*" on Twitter, Facebook and Instagram accounts that Fox operated.  *Id.*

- "Fox already had been warned (and put on express notice) in great detail that the entire underlying hypothesis about Venezuela and Venezuelans being involved in an effort to overturn the 2020 U.S. Presidential election was pure fiction, disinformation and propaganda, as were all the other elements of this election fraud hox advanced by Defendants."

The Complaint also alleges that "[a]t all relevant times, Dobbs also has been an agent for

Fox, and even after Fox cancelled *Lou Dobbs Tonight* on February 5, 2021, Dobbs remained under

contract with Fox." ¶ 11.  Fox does not challenge this allegation of Dobbs' agency.

70

These statements are then supported with specific factual statements throughout the remainder of the Complaint.  *See, e.g.*, ¶¶ 86-109 (discussing the pre-show Tweets and Defendant Powell's appearance on December 10, 2020); ¶ 88 ("At approximately 4:56 p.m. on December 10, 2020, *Fox*, through the @LouDobbs account, tweeted a detailed promotion for the December 10 *Lou Dobbs Tonight* show later that evening." (emphasis added)); ¶ 94 ("Dobbs opened his on-air show on December 10, 2020, which *Fox* broadcast live on television and satellite radio from New York on the Fox Business Channel, by announcing that he would have Powell on the show . . . ." (emphasis added)).  To the extent Fox Corporation disagrees that it or its agent published the defamatory statements, that will be the subject of discovery, but is not an appropriate basis for dismissal.[76]

### B.     *Fox Corporation is Liable for the acts of Dobbs and Fox News as Agents of Fox Corporation.*

It is axiomatic that "if an agent is guilty of defamation, the principal is liable so long as the agent was apparently authorized to make the defamatory statement."  *See Am. Society of Mech. Engineers, Inc. v. Hydro Level Corp.*, 456 U.S. 556, 566 (1982).

Fox conflates this straight-forward analysis of agency liability with veil piercing and claims that Plaintiff has failed to allege any facts to support that this Court should pierce the corporate veil to hold Fox Corporation liable as the parent of Fox News.  Plaintiff has made no claims that the corporate veil *should* be pierced at this stage; instead, Plaintiff has direct claims that Dobbs was, at all times, an "agent for Fox."  *See* Compl. ¶ 11.

---

[76] Fox's reliance on *Stern v. News Corp.* does not alter this analysis.  *See* Mot. at 37 (citing *Stern v. News Corp.*, No. 1:08-cv-7624, 2010 WL 5158635, at *4 (S.D.N.Y. Oct. 14, 2010), *adopted*, 2010 WL 5158637 (S.D.N.Y. Dec. 16, 2010)).  In *Stern*, the Court determined *on a motion for summary judgment* after discovery into the question, that the plaintiff had not adduced sufficient to evidence to determine that the party making the defamatory statement was the agent of the additional corporate defendant.

Piercing the corporate veil and agency liability are "quite different[.]" *Royal Indus. Ltd. v. Kraft Foods, Inc.*, 926 F. Supp. 407, 412 (S.D.N.Y. 1996). Veil-piercing requires a showing that the parent completely dominated the subsidiary, while agency liability "is premised on the view that the subsidiary had authority to act, and was in fact acting, on the parent's behalf—that is, in the *name* of the parent." *Id.*; *Khan v. Laninver USA, Inc.*, No. 18-cv-561-JLS-LGF, 2021 WL 1740293, at *5 (W.D.N.Y. Mar. 31, 2021) ("Whether [the defendant's] subsidiaries are alter egos of Defendant is beside the point; the relevant question is whether they were acting as Defendant's agents."). Under New York law, an agency relationship exists "when there is agreement between the principal and the agent that the agent will act for the principal and the principal retains a degree of control over the agent." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 290 (S.D.N.Y. 2005). Alleging that the principal controlled the conduct at issue is generally sufficient to establish the elements of agency. *See Salomon v. Burr Manor Ests., Inc.*, 769 F. Supp. 2d 83, 89-90 (E.D.N.Y. 2011) ("This simple act could arguably satisfy all three elements of agency—a request by a principal, an agreement to act by the agent, and an understanding that the principal's direction governs the agent's acts."); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 436 (S.D.N.Y. 2010) (allegations that the principal and agent acted "as one integrated entity" that the principal "controlled" were sufficient to establish manifestation, acceptance, and control).

On a motion to dismiss, "a plaintiff need only 'raise[] a sufficient inference that some sort of agency relationship existed between the purported principal and agent." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344 (S.D.N.Y. 2010) (internal citations and quotations omitted) (alteration in original). Conduct that supports an agency relationship at the pleading stage includes:

- The principal installing executives to manage the subsidiary *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 274 (S.D.N.Y. 2009);

- The principal owning a controlling share of the subsidiary, *see id.*;

- The principal making personnel decisions for the subsidiary, *Parmalat I*, 375 F. Supp. 2d at 294-95; and

- The principal intervening and directing the subsidiary's actions, *STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 539 (E.D.N.Y. 2011).

Plaintiff has alleged a multitude of facts to support an agency relationship between Fox Corporation, Fox News and Dobbs, including, but certainly not limited to: the Murdochs instructed Fox News to spread baseless claims about the Big Lie for Fox Corporation's own benefit; Fox Corporation instructed Fox News to spread baseless claims about election fraud, including the claims about Plaintiff, to win back viewers and reverse Fox Corporation's falling stock price; Fox News is Fox Corporation's biggest source of revenue by far; and, Rupert Murdoch stepped in "to call the shots" directly after Fox's ratings dipped after the election.  Compl. ¶¶ 43, 120-126.  Fox News accepted its role as Fox Corporation's agent by broadcasting the defamatory statements and Fox Corporation continued to exert control over Fox News through Rupert Murdoch and Lachlan Murdoch.

On this Motion to Dismiss, Plaintiff's allegations are sufficient to plead an agency relationship between Fox Corporation and Fox News and Dobbs.[77]

---

[77] In the event the Court determines it requires additional factual allegations to support the finding of an agency relationship, Plaintiff is prepared to amend his Complaint to include additional allegations in support of the relationship between Fox News and Fox Corporation.  For example, as noted *supra*, Dominion has filed a separate action against Fox Corporation, in Delaware Superior Court, where Dominion has cited to further evidence in support of the agency theory, which Plaintiff, if necessary, would adopt in any further amended pleading.  *See US Dominion, Inc. et al. v. Fox Corp., et al.,* C. A. No. N21C-11-082-EMD (Del. Super. Ct. Nov. 8, 2021).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Fox Defendants' Motion in its entirety. To the extent any aspect of the Fox Defendants' Motion is granted, Plaintiff respectfully requests leave to replead under Fed. R. Civ. P. 15(a).

Dated: March 18, 2022

**BROWN RUDNICK LLP**

/s/ Sigmund S. Wissner-Gross
Sigmund S. Wissner-Gross, Esq.
Chelsea Mullarney, Esq.
Jessica N. Meyers, Esq.
7 Times Square
New York, New York 10036
Tel.  (212) 209-4800
swissner-gross@brownrudnick.com
cmullarney@brownrudnick.com
jmeyers@brownrudnick.com

Benjamin G. Chew, Esq. (*pro hac vice* pending)
601 Thirteenth Street NW
Washington, D.C. 20005
Tel.  (202) 536-1785
bchew@brownrudnick.com

Camille Vasquez (*pro hac vice* forthcoming)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Tel. (949) 752-7100
cvasquez@brownrudnick.com

*Attorneys for Plaintiff*