UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAJED KHALIL,

                Plaintiff,

      v.

FOX CORPORATION, FOX NEWS
NETWORK, LLC, LOU DOBBS and
SIDNEY POWELL

Case No. 1:21-cv-10248-LLS

## PLAINTIFF MAJED KHALIL'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT SIDNEY POWELL'S MOTION TO DISMISS

**BROWN RUDNICK LLP**

Sigmund S. Wissner-Gross, Esq.
Chelsea E. Mullarney, Esq.
Jessica N. Meyers, Esq.
7 Times Square
New York, New York 10036
Tel.  (212) 209-4800
swissner-gross@brownrudnick.com
jmeyers@brownrudnick.com
cmullarney@brownrudnick.com

Benjamin G. Chew, Esq. (*pro hac vice*
pending)
601 Thirteenth Street NW
Washington, D.C. 20005
Tel.  (202) 536-1785
bchew@brownrudnick.com

Camille Vasquez (*pro hac vice* forthcoming)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Tel. (949) 752-7100
cvasquez@brownrudnick.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND .............................................................................................................. 4

ARGUMENT .................................................................................................................. 16

I.   Legal Elements for Defamation under New York Law ........................................ 16

II.  Powell's Defamatory Statements Concerning the Plaintiff Are Actionable .......... 17

    A.   Powell's Defamatory Statements Are Statements of Fact, Not Mere Opinions .......... 18

    B.   Powell's Defamatory Statements Are Not Protected or Privileged Speech ................ 26

III. New York's Anti-SLAPP Statute Does Not Bar Plaintiff's Defamation Claims .................. 29

    A.   Plaintiff Sufficiently Alleges Powell Acted With Actual Malice ................................ 29

    B.   Powell Has Failed to Establish New York's Anti-SLAPP Statute Applies ................ 35

IV.  The Court Should, at a Minimum, Permit Jurisdictional Discovery ...................... 39

    A.   Plaintiff Has Alleged Facts Sufficient to Permit Jurisdictional Discovery .................. 40

    B.   This Court Has Personal Jurisdiction Over Powell ...................................................... 42

        1.   Powell Transacted Business in New York ........................................................ 45

        2.   The Claims Arise From Powell's Transacting of Business .............................. 48

        3.   The Exercise of Jurisdiction Over Powell Comports with Due Process .......... 49

    C.   Alternatively, the Court Can Sever and Transfer the Claims Against Powell, or
        Condition any Dismissal of the Claims Against Powell on Powell Consenting
        to Jurisdiction in the District of Columbia, where two Related Actions against
        her are Pending .......................................................................................................... 50

CONCLUSION ................................................................................................................ 56

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014)............................................................................25

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013)..............................................................16

*Biro v. Conde Nast*,
    Civ. No. 11 Civ. 4442 (JPO), 2012 WL 3262770 (S.D.N.Y. Aug. 10, 2012) ........................45

*Bowyer v. Ducey*,
    No. 2:20-cv-02321 (D. Az. Dec. 2, 2020) .......................................................26, 37

*Bruno v. New York Daily News Co.*,
    89 A.D.2d 260 (3d Dep't 1982)........................................................................32

*BYD Co. v. VICE Media LLC*,
    531 F. Supp. 3d 810 (S.D.N.Y. 2021).........................................................16, 17

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014)............................................................................24

*Conti v. Doe*,
    535 F. Supp. 3d 257 (S.D.N.Y. 2021)..............................................................28

*Corke v. Sameiet M.S. Song of Norway*,
    572 F.2d 77 (2d Cir. 1978)..............................................................................54

*Corporate Campaign Inc. v. Local 7837, United Paperworkers Int'l Union*,
    265 A.D.2d 274 (1st Dep't 1999) .....................................................................43

*Crime Victims Ctr., Inc. v. Logue*,
    181 A.D.3d 556 (2d Dep't 2020)..........................................................31, 34, 35

*D'Annunzio v. Ayken, Inc.*,
    876 F. Supp. 2d 211 (E.D.N.Y. 2012) ..............................................................27

*Daniel v. Am. Bd. Of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005).............................................................................54

*Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*,
    7 N.Y.3d 65 (2006) .........................................................................................42

*DiStefano v. Carozzi N. Am., Inc.*,
    286 F.3d 81 (2d Cir. 2001)..................................................................................39, 42

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016)...........................................................................38

*Fedak v. YIMBY, Inc.*,
    No. 17 Civ. 8825 (KPF), 2018 WL 6697963 (S.D.N.Y. Dec. 20, 2018)..............................25

*Feehan v. Wisconsin Elections Comm'n*,
    No. 2:20-cv-1771 (E.D. Wis. Dec. 3, 2020) .................................................................37

*Fischbarg v. Doucet*,
    38 A.D.3d 270 (1st Dep't 2007) .................................................................................42

*Fischer v. Stiglitz*,
    No. 15-cv-6266 (AJN), 2016 U.S. Dist. LEXIS 74842 (S.D.N.Y. June 8,
    2016) ......................................................................................................................42

*Fox News Network, LLC v. US Dominion, Inc.*,
    C.A. No.: N21C-03-257-EMD, 2022 WL 274235 (Del. Jan. 31, 2022) ..............................3

*Front, Inc. v. Khalil*,
    24 N.Y.3d 713 (2015) ...........................................................................................27, 28

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)...................................................................................................22

*Gibbons v. Brisol-Myers Squibb Co.*,
    919 F.3d 699 (2d Cir. 2019)........................................................................................4

*Gibbons v. Fronton*,
    661 F. Supp. 2d 429 (S.D.N.Y. 2009)......................................................................53, 54

*In re Giuliani*,
    197 A.D.3d 1 (1st Dep't 2021). .............................................................................21, 37

*Goldfarb v. Channel One Russia*,
    442 F.Supp.3d 649 (S.D.N.Y. 2020)............................................................................40

*Goldfarb v. Channel One Russia*,
    No. 18 CIV. 8128 (JPC), 2021 WL 1392850 (S.D.N.Y. Apr. 13, 2021)..........................44, 45

*Goldlawr, Inc. v. Heiman*,
    396 U.S. 463 (1962)...........................................................................................53, 54

*Gottwald v. Sebert*,
    148 N.Y.S. 3d 37 (1st Dep't 2021) ..............................................................................39

*Grayson v. Ressler & Ressler*,
  No. 15 Civ. 8740, 2018 WL 3611951 (S.D.N.Y. July 27, 2018) ............................................27

*Gross v. New York Times Co.*,
  281 A.D.2d 299 (1st Dep't 2001) ............................................................................................35

*Gross v. New York Times Co.*,
  82 N.Y.2d 146 (1993) ...................................................................................18, 23, 24, 26

*Harte-Hanks Commc'n's, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ...........................................................................................................29, 34

*Hayashi v. Ozawa*,
  No. 12-cv-2558 (AJN), 2019 WL 1409389 (S.D.N.Y. Mar. 29, 2019)....................................25

*Henderson v. I.N.S.*,
  157 F.3d 106 (2d Cir. 1998)..................................................................................................42

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945)..............................................................................................................49

*James v. IFinex, Inc.*,
  185 A.D.3d 22 (1st Dep't 2020) ...........................................................................................49

*Jota v. Texaco, Inc.*,
  157 F. 3d 153 (2d Cir. 1998)..................................................................................................56

*Khan v. New York Times Co.*,
  269 A.D.2d 74 (1st Dep't 2000) ...........................................................................................34

*Kim v. Dvorak*,
  230 A.D.2d 286 (3d Dep't 1997) ..........................................................................................46

*King v. Whitmer*,
  505 F. Supp.3d 720 (E.D. Mich. 2020)............................................................................26, 37

*King v. Whitmer*,
  Case No. 2:20-cv-13134, 2021 WL 3771875 (E.D. Mich. Aug. 25, 2021).................... *passim*

*Kosmdes v. Sinc*,
  No. 151683/2018, 2020 WL 1987833, 2020 N.Y. Slip Op. 31057 (Sup. Ct.
  N.Y. Cnty. Apr. 27, 2020) .....................................................................................................12

*Licci v. Lebanese Canadian Bank, SAL*,
  20 N.Y.3d 327 (2012).............................................................................................................48

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)....................................................................................................42

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
 732 F.3d 161 (2d Cir. 2013) ................................................................... 39

*Long v. Marubeni Am. Corp.*,
 406 F. Supp. 2d 285 (S.D.N.Y. 2005) ................................................ 28, 29

*Mahoney v. State of New York*,
 236 A.D.2d 37 (3d Dep't 1997) ............................................................. 32

*Nat'l Academy of Television Arts & Sciences, Inc. v. Multimedia Sys. Design, Inc.*,
 No. 20-cv-7269 (VEC), 2021 WL 3271829 (S.D.N.Y. July 30, 2021) ............................ 16, 38

*Nat'l Coalition on Black Civic Participation v. Wohl*,
 512 F. Supp.3d 500 (S.D.N.Y. 2021) ...................................................... 36

*Oram v. SoulCycle LLC*,
 979 F. Supp. 2d 498 (S.D.N.Y. 2013) ..................................................... 53

*Partridge v. State*,
 173 A.D.3d 86 (3d Dep't 2019) ............................................................. 32

*Pearson v. Kemp*,
 No. 1:20-cv-4809 (N.D. Ga. Nov. 25, 2020) ............................................... 37

*Pontarelli v. Shapero*,
 231 A.D.2d 407 (1st Dep't 1996) ......................................................... 46

*Rapaport v. Barstool Sports, Inc.*,
 18 Civ. 8783 (NRB), 2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) .................................. 24

*Ratajack v. Brewster Fire Dep't, Inc.*,
 No. 14 Civ. 7 (KMK), 178 F. Supp.3d 118 (S.D.N.Y. 2016) ..................................... 38

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
 42 N.Y.2d 369 (1977) ...................................................................... 36

*Rudersdal, EEOD v. Harris*,
 No. 1:18-CV-11072-GHW, 2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020) .......................... 55, 56

*Rushaid v. Pictet & Cie*,
 28 N.Y.3d 316 (2016) ................................................................... 42, 49

*Shamoun v. Mushlin*,
 No. 12-cv-3541 (AJN), 2014 WL 12776779 (S.D.N.Y. Mar. 26, 2014) .............................. 45

*Silsdorf v. Levine*,
 59 N.Y.2d 8 (1983) ..................................................................... 24, 26

*Small Business Bodyguard, Inc. v. House of Moxie, Inc.*,
   230 F. Supp. 3d 290 (S.D.N.Y. 2017)...................................................................25

*Smartmatic USA Corp., et al. v. Fox Corp., et al.*,
   Index No. 151136/2021 (Sup. Ct. N.Y. Cnty.) ........................................................2

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)...........................................................................................34, 35

*State of N.Y. v. Hendrickson Bros., Inc.*,
   840 F.2d 1065 (2d Cir. 1988)..................................................................................53

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (1986)..............................................................................................23

*Strelsin v. Barrett*,
   36 A.D.2d 923 (1st Dep't 1971)..........................................................................46, 47

*Tese-Milner v. De Beers Centenary A.G.*,
   613 F. Supp. 2d 404 (S.D.N.Y. 2009)......................................................................40

*Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*,
   31 F. App'x 738 (2d Cir. 2002) ...............................................................................40

*TLD Am. Corp. v. Mazuma Cap. Corp.*,
   No. 3:15-CV-39 (SRU), 2015 WL 5116768 (D. Conn. Aug. 28, 2015)..................54

*Torain v. Lui*,
   06 Civ. 5851 (GBD), 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279
   F. App'x 46 (2d Cir. 2008) ................................................................................24, 25

*US Dominion, Inc. v. Fox News Network, LLC*,
   C.A. No.: N21C-03-257-EMD, 2021 WL 5984265 (Del. Super. Ct. Dec. 16,
   2021) ................................................................................................................. *passim*

*US Dominion, Inc. v. Fox News Network, LLC*,
   C.A. No.: N21C-03-257-EMD, 2022 WL 100820 (Del. Super. Ct. Jan. 10,
   2022) ..........................................................................................................................3

*US Dominion, Inc. v. Powell*,
   No. 1:21-cv-00040 (CJN), 2021 WL 3550974 (D.D.C. Aug. 11, 2021) ....... *passim*

*Wave Studio, LLC v. General Hotel Management Ltd.*,
   Civ. No., 2017 WL 972117 (S.D.N.Y. Mar. 10, 2017) ...........................................53

*Weinberg v. Feisel*,
   110 Cal. App. 4th 1122 (Cal. App. Ct. 2003) .........................................................38

*Westvaco Corp. v. Viva Mgmt. Ltd.*,
No. 00 CIV. 9399(LTS)(KNF), 2003 WL 21136729 (S.D.N.Y. May 15, 2003) ..................53

*Weyrich v. New Republic, Inc.*,
235 F.3d 617 (D.D.C. 2001) ...................................................................................................22

*Williams v. New York City Housing Auth.*,
816 F. App'x 532 (2d Cir. 2020) ............................................................................................37

*World Wrestling Fed'n Entert., Inc. v. Bozell*,
142 F. Supp. 2d 514 (S.D.N.Y. 2001)................................................................................ *passim*

*Youmans v. Smith*,
153 N.Y. 214 (1897) ........................................................................................................27, 28

*Yukos Capital S.A.R.L. v. Feldman*,
No. 15-cv-4964, 2016 WL 4940200 (S.D.N.Y. Sept. 14, 2016) ............................................27

*Zervos v. Trump*,
171 A.D.3d 110 (1st Dep't 2019) ..........................................................................................22

**Statutes**

28 U.S.C. § 1406.......................................................................................................................53, 57

28 U.S.C. § 1406(a) .............................................................................................................3, 53, 54

28 U.S.C. § 1441(b)(2) ....................................................................................................................4

N.Y. Civ. Rights Law § 76-a(2)................................................................................................34, 36

Va. Stat. 8.01-229 ..........................................................................................................................56

**Other Authorities**

CPLR 3211(g)................................................................................................................................16

CPLR 3211(g)(1) ...........................................................................................................................38

CPLR § 302(a) ...............................................................................................................................42

CPLR §302(a)(1).......................................................................................................................42, 48

Fed. R. Civ. P. 12(b)(6)..................................................................................................................16

Fed. R. Civ. P. 15(a) ......................................................................................................................57

Fed. R. Civ. P. 21 .....................................................................................................................52, 53

Fed. R. Evid. 201(b)....................................................................................................................37

Plaintiff Majed Khalil ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion to Dismiss ("Motion") of Defendant Sidney Powell ("Powell") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Complaint (ECF No. 1-1) (the "Complaint" or "Compl.") sets forth a compelling, and troubling portrait of an alleged con artist – Powell – who worked closely with the other Defendants (Fox Corporation, Fox News Network LLC and Lou Dobbs, collectively "Fox Defendants") to spin an entirely fabricated and false narrative of election fraud purportedly engineered by two reputable election companies (Smartmatic and Dominion), in supposed collusion with certain Venezuelan government officials.  As was falsely claimed on December 10, 2020, this imagined "cyber Pearl Harbor" was supposedly perpetrated with the active assistance of Plaintiff as a key co-conspirator.  Of course, as numerous courts throughout the country have uniformly concluded, there was no "cyber Pearl Harbor" and no election fraud.  Defendants' claims of election fraud were entirely bogus, and ultimately included naming Plaintiff, a foreign businessman with absolutely no connection to Smartmatic, Dominion, or in any respect to the 2020 U.S. Presidential Election (the "Election"), as a central architect of a non-existent foreign-led scheme to rig the Election.   There must be consequences for this reckless and malicious mudslinging.

Indeed, as the Honorable Linda V. Parker, United States District Court Judge in the Eastern District of Michigan stated in her 110-page memorandum opinion imposing sanctions against Powell and other attorneys for what Judge Parker described as a "historic and profound abuse of the judicial process:"

> *[T]his case was never about fraud—it was about undermining the People's faith in our democracy and debasing the judicial process to do so.[1]*

In seeking dismissal of Plaintiff's defamation claims against her, Powell almost entirely ignores the actual allegations in the Complaint and glosses over what she falsely stated on the Fox Defendants' December 10, 2020 *Lou Dobbs Tonight* news broadcast regarding the Plaintiff's alleged involvement in the nonexistent conspiracy to fix the Election.  Powell, instead claims that she is not subject to the Court's personal jurisdiction.  Plaintiff recognizes that the New York Supreme Court in the related Smartmatic case against the same Defendants, recently determined that, while all of Smartmatic's defamation claims against the Fox Defendants are more than viable, it does not have personal jurisdiction over Powell for claims brought by Smartmatic.  As discussed herein, Plaintiff respectfully submits that Plaintiff has sufficiently alleged personal jurisdiction at this stage, or, alternatively, he has pleaded enough to merit jurisdictional discovery.[2]

Powell's incorrect merits-based arguments for dismissal, based on the nature and circumstances of her false statements on December 10, 2020 concerning the Plaintiff, are particularly frivolous in light of the fact that such arguments have already been squarely rejected *by two courts* presiding over defamation claims brought by Dominion (one against Powell herself, where she is represented by the same counsel) addressing many of the exact same underlying false statements at issue in this case, which Defendants and others (sued by Dominion and/or

---

[1] *See* Opinion and Order at 1-3, *King v. Whitmer*, Case No. 2:20-cv-13134, 2021 WL 3771875, at *1 (E.D. Mich. Aug. 25, 2021) ("*King*") (italics in original) [ECF No. 172].  Judge Parker subsequently issued monetary sanctions against Powell and others, and in, her August 25, 2021, referred Powell to bar disciplinary authorities for potential "suspension or disbarment."  *King*, 2021 WL 3771875, at *41.  Powell, it appears, has appealed the sanctions ruling.

[2] Smartmatic's lawsuit is captioned *Smartmatic USA Corp., et al. v. Fox Corp., et al.*, Index No. 151136/2021 (Sup. Ct. N.Y. Cnty.) (Cohen, J.) ("Smartmatic NY Action").  The ruling by the New York Supreme Court was issued on March 8, 2022, after having been *sub judice* since August 17, 2021.  A copy of the New York Court's ruling (the "Smartmatic NY Op.") is attached as **Exhibit A** to the March 18, 2022 Declaration of Sigmund S. Wissner-Gross ("Wissner-Gross Decl."), in response to the Fox Defendants' and Sidney Powell's motions to dismiss.

Smartmatic) spread concerning the integrity of the Election.[3]  Moreover, while the New York Supreme Court accepted Powell's jurisdictional argument, it is apparent from the ruling that the New York Supreme Court rejected the merits-based arguments Powell has advanced here.[4]

In the event, *arguendo,* the Court adopts the reasoning of the New York Supreme Court on *in personam* jurisdiction as to Powell, and does not, at a minimum, permit Plaintiff the jurisdictional discovery sought herein (which Plaintiff submits is warranted) or grant Plaintiff leave to replead as to Powell, as discussed in Section IV(C) below, the Court should not simply dismiss for lack of personal jurisdiction the extremely meritorious, indeed compelling defamation claims against Powell. Rather, in such event, the Court can either sever the claims against Powell and transfer them pursuant to 28 U.S.C. § 1406(a) to the District of Columbia (where two related cases against Powell are pending) or expressly condition a jurisdictional dismissal of the claims against Powell on Powell consenting to jurisdiction in the United States District Court for the District of Columbia (and waiving any statute of limitations defense for the period after

---

[3] Dominion's lawsuits are captioned: *US Dominion, Inc. v. Fox News Network, LLC*, C.A. No.: N21C-03-257-EMD (Del. Super. Ct.) ("Dominion DE Action") and *US Dominion, Inc. v. Powell*, No. 1:21-cv-00040 (CJN) (D.D.C) ("Dominion DC Action").  Copies of the Complaints in the Dominion DE Action and Dominion DC Action are annexed as **Exhibits G** and **H** to the foregoing Wissner-Gross Decl.  Both of these actions are proceeding to discovery, after motions to dismiss by Defendants were denied.  In the Dominion DE Action, Fox's efforts to secure leave to take an interlocutory appeal of the Superior Court's denial of Fox's motion to dismiss were denied by both the Superior Court and the Delaware Supreme Court.  *See* Order at 10, *US Dominion, Inc.  v. Fox News Network, LLC*, C.A. No.: N21C-03-257-EMD, 2022 WL 100820, at *3-4 (Del. Super. Ct. Jan. 10, 2022) (noting that Dominion's Complaint "stated a defamation claim under any pleading standard, including New York's anti-SLAPP clear and convincing evidence standard"); Order at 4, *Fox News Network, LLC v. US Dominion, Inc.*, C.A. No.: N21C-03-257-EMD, 2022 WL 274235, at *2 (Del. Jan. 31, 2022) (agreeing with Superior Court that "interlocutory review is not warranted in this case.").  Copies of the rulings denying the Defendants' motions to dismiss in the Dominion DE Action and Dominion DC Action are annexed as **Exhibits B** and **E** to the Wissner-Gross Decl. Copies of the denial of Fox News Network, LLC's motion for interlocutory review in Delaware by the Delaware Superior Court and Supreme Court are annexed as **Exhibits C** and **D** to the Wissner-Gross Decl.

[4] *See* Decision and Order, Smartmatic NY Action [NYSCEF No. 856].  Attached as **Exhibit A** to the Wissner-Gross Decl.

commencement of this action).[5]  The Court plainly has authority to do so, in the event, *arguendo*, the Court concurs with Powell's jurisdictional argument.

## BACKGROUND

Plaintiff filed this action on December 1, 2021 in New York State Court, New York County.  Plaintiff filed this action in New York based on the good faith belief that the New York Court had personal jurisdiction over all the defendants.  On December 2, 2021, just prior to service being effected on Defendants Fox Corporation and Fox News Network, LLC (collectively, "Fox"), Fox removed this case to the Southern District of New York, in a transparent efforts to forum shop and avoid this case being assigned to New York Supreme Court Justice David Cohen, to whom the Smartmatic action against Fox and Powell had been assigned.[6]  While, at the time of the filing of the Complaint, motions to dismiss by the Defendants were pending and *sub judice* in the Smartmatic's New York action, Smartmatic had opposed Powell's jurisdictional challenge to its claims against her, and Plaintiff similarly had determined that New York was a proper forum in which jurisdiction over all the defendants could be secured.[7]

As more fully discussed in Plaintiff's response to the Fox Defendants' motion to dismiss, Plaintiff's action is one of several related defamation lawsuits against Defendants and others concerning the outrageous "election lies" that were peddled in the months following the Election.  In fact, the defamatory statements Defendants made on December 10, 2020 are quoted and/or

---

[5] In the case of the Fox Defendants, none of whom have interposed a jurisdictional objection to Plaintiff's Complaint, Plaintiffs intends to proceed to trial in this District.  As discussed more fully in Plaintiff's response to the Fox Defendants' motion to dismiss, the Fox Defendants are all named defendants in Smartmatic's pending New York Action, and both Fox News and Fox Corporation (but not Dobbs) are named defendants in separate lawsuits by Dominion in Delaware state court.  It does not appear that either Dominion or Smartmatic have sued any of the Fox Defendants in the District of Columbia.

[6] Fox removed the case pursuant to recent Second Circuit authority holding that 28 U.S.C. § 1441(b)(2) permits a "forum defendant" to remove a case to federal court on the basis of diversity jurisdiction before such defendant has been served.  *See* ECF No. 1 (citing *Gibbons v. Brisol-Myers Squibb Co.*, 919 F.3d 699, 704-07 (2d Cir. 2019)).

[7] As noted, the Fox Defendants have not contested this Court's jurisdiction over them.

discussed, at times at length, in the Complaints in the Dominion DE Action, the Dominion DC Action (both of which are proceeding to discovery), and the Smartmatic NY Action.[8]   The defamatory statements regarding Plaintiff made on December 10, 2020 are even specifically addressed in the Court's ruling denying Fox News Network's motion to dismiss in the Dominion DE Action and the New York Court's ruling denying the Fox Defendants' motions to dismiss.[9] As set forth below, Powell's defamatory statements on December 10, 2020, are best understood by reviewing her course of conduct after the Election and, in particular, how Powell utilized Fox and Fox's New York presence to peddle false conspiracy lies of a non-existent Venezuelan "plot" to somehow steal the Election and raise funds for her election-lie business. Indeed, in light of the close relationship in the allegations of Plaintiff's, Smartmatic's and Dominion's defamation suits (all of which include the defamatory statements made by Powell on December 10, 2020), and to provide further background for Powell's post-election defamatory statements made in particular on Defendant Dobbs' show, Plaintiff has incorporated by reference the Complaints (and exhibits thereto, which include the statements made on December 10) submitted in these three related actions to the extent not "otherwise alleged" in this action.  *See* Compl. at n.13.

As for the allegations in Plaintiff's Complaint, Powell concedes that she appeared on Lou Dobbs' television show on December 10, 2020, and purports to summarize the allegations against her as follows:  "The Complaint alleges that during a December 10, 2020 appearance as a guest on

---

[8] *See* Dominion DC Action [ECF No. 1 at ¶¶ 84, 85, 181(z)] (discussing December 10, 2020 statements on *Lou Dobbs Tonight*); Dominion DE Action, Complaint at ¶¶ 179(p), (q)) (r) (same); *see also Dominion DE Action*, 2021 WL 5984265, at *26-27; Dominion DE Op. at 26–28 (quoting, at length, Powell's defamatory statements on the December 10, 2020 *Lou Dobbs Tonight* broadcast).  In its New York Action, Smartmatic similarly quotes the defamatory statements made on December 10, 2020 at length as part of its Complaint.  See Smartmatic NY Action [NYSCEF No. 1 at ¶¶ 133 (ll)-(pp), (qq), 142(n)-(u)].  The Court is referred to Plaintiff's response to the Fox Defendants' motion to dismiss for a more fulsome discussion of these other rulings, and the strong overlap of the allegations regarding the Defendants, including regarding Powell, in this action and the operative Complaints in the Dominion DC Action, the Dominion DE Action, and the Smartmatic NY Action.

[9] *Id.*

defendant Lou Dobbs' television show on the Fox Business network, Powell disparaged Plaintiff in connection with her discussion of alleged voting irregularities and fraud arising from the use of electronic voting platforms marketed and operated by Dominion . . . and Smartmatic . . . . The Complaint alleges that Powell disparaged Plaintiff by falsely connecting him to Dominion and Smartmatic, as well as to their programs and machines, and by falsely alleging his involvement in a scheme to rig the Election." ECF No. 30 at 2.

Plaintiff's Complaint, in fact, sets forth in far greater detail the fraudulent scheme spearheaded by Powell and the Fox Defendants, utilizing Fox as a convenient, and prominent vehicle by Powell to raise millions of dollars of money by, *inter alia*, appearing on Defendant Dobbs' show on Fox from mid-November 2020 until December 10, 2020, to present fabricated statements regarding Smartmatic, Dominion, and finally Plaintiff. *See, e.g.*, Compl. at ¶¶ 1-8, 10-12, 16, 41. Tellingly, Powell concedes that she had filed, prior to December 10, 2020, several unsuccessful lawsuits challenging the Election results (*see* Powell's Motion, ECF No. 30 at 2) and does not dispute Plaintiff's allegation that all such spurious cases had been summarily dismissed by federal judges by December 9, 2020, prior to her defamatory statements regarding Plaintiff on December 10, 2020. *See* Compl. at ¶ 12. One of the federal judges presiding over these cases has even sanctioned Powell for having filed the case in bad faith and for an improper purpose, and of relevance to this action, commented that "Powell is profiting from the filing of this and other frivolous election-challenge lawsuits." *King*, 2021 WL 3771875, at *41 n. 85 [ECF No. 172 at 108 n.85]; Compl. at ¶ 12 n.12. As detailed below, and as set forth in greater detail in Plaintiff's Complaint, the statements by Powell (and the other Defendants) about a claimed conspiracy to rig the Election, and more specifically, regarding the alleged role of Venezuela and Venezuelans such as Plaintiff, was pure fiction, disinformation and propaganda. Compl. at ¶ 11. These claims were

also repeatedly debunked by Dominion, Smartmatic, and a host of reputable election experts, government officials, and even by others at Fox, prior to the outrageous defamatory statements regarding Plaintiff on December 10, 2020.  *See, e.g.*, *id.* at ¶¶ 1-2, 12, 36-37, 42-52, 60-69, 82, 102-04.

As alleged in the Complaint, Powell began to peddle her false conspiracy theories during an appearance on Fox on November 8, 2020, when she declared that there was "a massive and coordinated efforts to steal this election . . . to delegitimize and destroy votes for Donald Trump, to manufacture votes for Joe Biden." *Id.* at ¶ 37.  At this time, Powell already had begun to spin the "Big Lie," that Dominion was behind this non-existent election fraud, stating that the fraud somehow occurred in Dominion's software.  *Id.* at ¶ 38.  Over the ensuing weeks, in close coordination with the Fox Defendants, Powell would roll out new, equally audacious and false chapters of this Big Lie.

As with any alleged con artist, Powell kept embellishing her false story with new fabrications (claiming falsely each iteration as a "new development"), first by bringing in Smartmatic. Powell falsely claimed that Dominion was owned by Smartmatic (a bogus claim that was used by the Defendants to thereafter falsely claim that the election "conspiracy" originated in Venezuela), though the two companies in fact are competitors as confirmed by public records.  *See id.* at ¶ 42.  Powell also embellished her story to claim, falsely, that vote-flipping algorithms in Dominion machines had been created in Venezuela to rig elections for Hugo Chávez, using this expanded false narrative to drive her own fundraising efforts on Fox. *See id.* at ¶¶ 40-42.  On December 10, 2020, Powell and the Fox Defendants would try to put this completely bogus "vote-flipping" plot at the footsteps of Plaintiff, in effect, offering a false story (about Plaintiff) on top

of an already demonstrably bogus story about Dominion and Smartmatic and an alleged tie to other Venezuelans and a nonexistent plot to rig the Election.

The foregoing initial bogus claims by Powell and the Fox Defendants prompted a very public and swift response.  By November 12, 2020, Dominion began circulating an email titled "SETTING THE RECORD STRAIGHT: FACTS AND RUMORS," with links to independent sources disproving the false claims being made by Powell and the Fox Defendants about Dominion, with Dominion providing this detailed email to Fox reporters and producers, including those hosting Powell, on November 12, 13 and 14.  *See id.* at ¶¶ 46, 52.  Also at the same time, public officials were proclaiming there was no evidence that any voting system had been compromised in any respect, with one expert proclaiming:  "There is absolutely no evidence, none, that Dominion Voting Machines changed any votes in this election."  *Id.* at ¶¶ 45-49, 52-53.  Notwithstanding having been advised the claims they were broadcasting were false, Defendants Fox and Dobbs hosted a broadcast which falsely tied Smartmatic to Dominion, and falsely tied them both, via Smartmatic, to Venezuela and Venezuelan leaders Chávez and Maduro, fabricated claims that Powell would gleefully adopt and expand upon.  *See id.* at ¶¶ 50, 61.

Dominion and Smartmatic both tried, without success, to warn Fox, its reporters, and guests that it was purveying blatantly false claims. For example, Dominion reached out to Fox's CEO and President to address the false statements by Fox (and Powell) about Dominion, and a Dominion representative spoke to Fox's President on November 17 and informed Fox's President of the voluminous facts rebutting Fox's false claim.  *Id.* at ¶ 58.  Dominion also continued to send new and updated versions of the "SETTING THE RECORD STRAIGHT" emails to Fox, including to over 90 of its reporters, producers and anchors on November 16, 17, 19, and 20.  *Id.* at ¶ 59. Smartmatic, for its part, responded to Dobbs' coordinating producer on November 16 and

emphasized, among other things, that Smartmatic provided technology and software only to Los Angeles County ballot marketing devices.  *Id.* at ¶ 60.

Whenever Defendants were confronted with detailed evidence that their election conspiracy claims were entirely false and lacking in any factual basis, they would simply disregard such evidence and pivot to making new, false claims.  For example, when Georgia Republicans rebutted Powell's false claims attacking Georgia's election results, which Powell claimed had been tainted by Dominion's machines, as is common with an alleged con artist, Powell simply fabricated a new lie: falsely claiming that Dominion had bribed Georgia officials, giving kickbacks to Georgia's Governor Kemp and Secretary of State Raffensberger in exchange for a contract to provide voting machines to the state.  *Id.* at ¶ 56. Rather than rejecting Powell's spurious claims, Fox endorsed these false claims by Powell as well on a November 15 broadcast.  *Id.* Notwithstanding the repeated, specific, and sourced denials by Dominion and Smartmatic, and other public officials and election experts repeatedly confirming that there were no technical issues with election security, Powell again appeared on Dobbs' show on November 16 and falsely claimed that Smartmatic had been created in Venezuela for purposes of rigging elections for Chávez and that "Smartmatic owns Dominion." *Id.* at ¶ 61.  At this time, Powell falsely claimed to have a "witness" who was present when Smartmatic, allegedly at the direction of the late Chávez, had software and hardware "designed in a way . . . that the system could change the vote of each voter without being detected." *Id.*

On November 20, 2020, Dominion sent Fox a formal retraction demand letter. *Id.* at ¶ 67. The demand letter, among other things, identified Powell as a purveyor of false information (mainly on Dobbs' show), specifically noting the false allegations that Dominion was involved in changing votes in Venezuela, that Dominion was owned by Smartmatic, and other of the wildly

false claims that had been broadcast by the Fox Defendants, and underscored that Dominion was "an American company with no ties to Venezuela" and that Smartmatic had previously filed two lawsuits against Dominion, further demonstrating that the two companies were completely separate. *Id.* When there was no retraction or cessation of the false Election fraud claims, Dominion tried again, without success, to set the record straight: on November 24, 26, 29 and 30, and in early December 2020, Dominion sent emails to more than 90 Fox reporters, producers, anchors and other content managers with an updated "SETTING THE RECORD STRAIGHT" email with updated facts debunking any claims that Dominion (or anyone) was involved in election rigging. *Id.* at ¶¶ 74, 76, 79, 83. Finally, on December 10, 2020, shortly before Defendants made their defamatory statements regarding Plaintiff, Smartmatic's counsel sent a twenty-page demand letter to the general counsel of Fox News, reiterating, among other things, that Fox's "concerted disinformation campaign" was falsely claiming Smartmatic was a Venezuelan company, with a corporate relationship with Dominion, that conspired to fix the Election by inflating and deleting votes. *Id.* at ¶ 87. News reports continually confirmed the falsity of these statements. *See e.g.*, *id.* at ¶¶ 69, 71.

Powell, for her part, peddled her fabricated tales about election fraud, largely on Fox's New York-based platform and mainly on Dobbs' New York-based show, as a means to actively solicit money from individuals and corporations for her so-called "legal defense" fund and super PAC. *See id.* at ¶ 16. As the Complaint alleges, "Powell began asking for donations as early as November 10, 2020, a week after the election, telling viewers on *Lou Dobbs Tonight* that she had started a website called 'defendtherepublic,' where they could make donations." *See id.* at ¶ 41. These fundraising efforts, however, are alleged to be entirely illegitimate and have resulted in federal

investigations of Powell's "fundraising groups," which apparently were not formed until weeks after she started her fraudulent campaign. *See id.* at ¶ 41.

Thus, when Powell appeared on *Lou Dobbs Tonight* on December 10, 2020 to spew lies concerning the Plaintiff's supposed involvement in a nonexistent scheme to rig the Election, she did so with a transparent financial motive, in the face of mountains of objective, undisputed evidence from Dominion and Smartmatic, and public, undisputed reports from government officials and election experts, and with all her frivolous legal challenges to the election results dismissed as such by federal judges.

Shortly prior to the *Lou Dobbs Tonight* broadcast, on December 10, the Fox Defendants, through the @LouDobbs twitter account, falsely tweeted at 4:56pm: "The 2020 Election is a cyber Pearl Harbor" and falsely identified Plaintiff as a "political leader," the "effective 'COO' of the election project, under Chávez and Maduro," "a liaison with Hezbollah," "right hand man and business front man of Jorge Rodriquez," and having ties to Smartmatic and Dominion in connection with a conspiracy to rig the Election, among other blatantly false statements. *Id.* at ¶¶ 88-92. By this Tweet, which included an embedded type-written two-page document, the Fox Defendants stated, endorsed and broadcast to millions of viewers the same basic bogus factual claims that would be made by Powell (and again by the Fox Defendants) on Dobbs' show soon thereafter, including that Plaintiff had engaged in a Venezuelan-led plot, in cohoots with Smartmatic and Dominion, to attack the U.S. democratic system by manipulating the Election results. *See id.* While the Tweet was issued by the Fox Defendants, and the Fox Defendants are clearly liable for its content, Plaintiff believes that, at a minimum, Powell actively participated in the preparation of the content of the Tweet (including the embedded two-page document) in close coordination with the Fox Defendants, and is jointly liable with the Fox Defendants for the

defamatory content of this pre-broadcast Tweet, a subject that will be further explored in discovery.[10]

The December 10, 2020 broadcast on Dobbs' show was the culmination of Defendants' fraudulent campaign to fabricate the story of a Venezuelan scheme to rig the Election.  Prior to December 10, Defendants built the "Big Lie" on a pyramid of falsehoods which had been rebutted multiple times by numerous respected government officials and election experts (both within the Trump administration and outside of government) who had repeatedly and categorically, and without evidentiary dispute, demonstrated that there was no evidence the Election had been compromised in any way.  *See id.* at ¶ 42.  Dobbs opened his December 10, 2020 show, which Fox broadcast live on television and satellite radio from New York on the Fox Business Channel, by announcing that Powell was on the show to address what was referred to as a "Pearl Harbor style cyber-attack on the 2020 Presidential election."  *Id.* at ¶ 94.[11]  Dobbs then put up a graphic entitled "Four Names You Need to Know According to Sidney Powell," which included, as to Plaintiff, the following statement:  "Khalil Majid Majzoub:  Rodriquez Frontman."  *Id.* at ¶ 94.

---

[10] Plaintiff intends to take discovery of Powell's role in the creation and publication of this Tweet, including her email and other communications with the Fox Defendants and Dobbs' producer(s) and assistant(s) prior to the issuance of the Tweet.  While Plaintiff submits that Powell is jointly liable with the Fox Defendants for this Tweet (see Count I of the Complaint), alternatively, in the event it is determined that the Fox Defendants are primarily liable for this Tweet since they issued it, Powell, alternatively, can be held liable under New York law for aiding and abetting the Fox Defendants in publishing this Tweet and Plaintiff reserves the right to amend the Complaint to add such claim, among other further potential claims.  *See Kosmdes v. Sinc*, No. 151683/2018, 2020 WL 1987833, 2020 N.Y. Slip Op. 31057, at *4 (Sup. Ct. N.Y. Cnty. Apr. 27, 2020) (Nook, J.) (New York recognizes a "cause of action for aiding and abetting defamation…and there is no requirement that the offender actually publish the defamatory statement to be liable under this cause of action.").

[11] A true and correct transcript of the December 10, 2020 broadcast of *Lou Dobs Tonight* has been submitted in support of Defendants Fox's and Dobbs' Motion to Dismiss, as Exhibit 1 [ECF No. 27-1] of the Declaration of Devin S. Anderson [ECF No. 27].  A copy of the video recording of Dobbs' show itself, which indicates, as alleged in the Complaint, when the Fox Defendants put up Plaintiff's name on the screen during the Broadcast to focus viewers on Plaintiff's name, is annexed as Exhibit 30 to the Anderson Declaration [ECF No. 27-30].  It appears, as discussed further below and as both Dominion and Smartmatic maintain, Powell was interviewed on December 10, 2020 while sitting in a hotel room in the District of Columbia, most likely at the Trump International Hotel in DC.

Having introduced Powell as a "distinguished attorney," but not referencing any of Powell's recently-dismissed litigations, nor suggesting that Powell was in any way acting as counsel for Trump (she was not),[12] Dobbs asked Powell to explain how these "four individuals [including Plaintiff] led the effort to rig this election." *Id.* at ¶ 95.  Powell responded, falsely accusing the four individuals, including Plaintiff, of having "designed and developed the Smartmatic and Dominion programs and machines that include a controller module that allows people to log in and manipulate the vote even as it's happening." *Id.*  Powell then proceeded to claim, falsely, that "[w]e're finding more and more evidence of this.  We now have reams and reams of actual documents from Smartmatic and Dominion, including evidence that they planned and executed all of this." *Id.* at ¶ 96.  Later, Dobbs again asked Powell about evidence that she had "compiled:" "How have you constructed the architecture of this relationship among these four individuals [which included Plaintiff]?" *Id.* at ¶ 98.  Powell responded, falsely, that they were still reviewing a "massive amount of documents" that consist of "communications between them and um all different kinds of messages that indicate their involvement in it," at which point, right on cue, Fox and Dobbs again displayed the graphic showing the "Four Names You Need to Know According to Sidney Powell," including Plaintiff's name, was displayed. *Id.*  Powell then claimed that "we will be producing more and more [evidence] it will be coming out more by the day." *Id.*

With the "Four Names You Need to Know" graphic still on the screen, Dobbs asked Powell, with respect to Rodriguez, whom Dobbs falsely described as the "ringleader" or "CEO of

---

[12] On Sunday, November 22, 2020, the Trump Campaign issued a press release, stating that "Sidney Powell is practicing law on her own," and further stating that "She is not a member of the Trump legal team.  She is also not a lawyer for the president in his personal capacity." *See* Compl. at ¶¶ 72 & n.85.  As of December 10, 2020, the Trump Campaign had not issued any further statements regarding Powell's status since November 22, 2020.  Accordingly, Powell was not acting as counsel for Trump or the Trump Campaign on December 10, 2020, and none of the by-then-dismissed cases brought by Powell challenging the Election results were discussed during her appearance on *Lou Dobbs Tonight* on December 10, 2020.

the enterprise:"  "What is the evidence that this former [Venezuelan] Communications Minister could reach in to the U.S. elector system and raise the havoc and commit the fraud that obviously we have witnessed in 2020?"  *Id.* at ¶ 99.  Powell, in response, falsely claimed that "we've known from early on in our independent investigation that the entire system was created for the benefit of Venezuela and Hugo Chávez to rig elections to make sure he continued winning.  And then it was passed on to Mr. Maduro to do the same.  And we know it was exported to other countries by virtue of some of the Dominion executives that proceeded to go about and essentially sell election to the highest bidder."  *Id.*  She then described Rodriquez as "one of the leaders of the whole election stealing project" and described the alleged conduct of the four individuals (including Plaintiff), together with the alleged conduct of Dominion and Smartmatic, as an "illegal web of conduct…focused on rigging the election in this country" and claimed that the evidence of this alleged misconduct was "overwhelming" and "troubling."  *Id.*

After a short break, it was more of the same.  Dobbs himself embellished upon Powell's false story, underscoring that "it's important as we look at these four names [which included Plaintiff], we're talking about very large, a very large foreign intrusion and interference in the, in the election of 2020."  *Id.* at ¶ 101.  In response to Dobbs' invitation to put forth Powell's supposedly "tremendous evidence" on his show, Powell then promised to get Dobbs that "stunning" evidence that same night.  *Id.*  Of course, Powell never produced any such evidence, because, as multiple officials and experts had already confirmed, there was no evidence of any "foreign intrusion" into the Election.  *Id.* at ¶ 102.  Powell's claim that she had evidence was, like her claims concerning Plaintiff's relationship to Smartmatic and Dominion and their supposed efforts to rig the Election through a massive cyberattack, false.  *Id.* at ¶¶ 102-105.

The foregoing December 10, 2020 show was rebroadcast on the Fox Business Channel, and republished on fox.com, foxbusiness.com, Fox Nation and the Twitter account @loudobbs, the "Lou Dobbs" Facebook account, and the Instagram account @loudobbstonight. *Id.* at ¶ 107. Each of these additional postings include additional false statements claiming evidence of a cyberattack on the Election by "foreign adversaries," including the Plaintiff. *Id.* at ¶¶ 107-08.

At no point prior to, during, or after December 10, 2020 did *any* of the Defendants, including Powell, contact Plaintiff to inquire about or confirm any of the false claims that were ultimately broadcast to millions of people. *Id.* at ¶ 109. Had any of the Defendants inquired, whether Plaintiff was a "political figure" or "frontman" for Jorge Rodriquez, whether he had ever had any contact or association with either Smartmatic or Dominion, whether he had any involvement in the Election, whether he had any involvement with the design of election machinery, or whether he was a "liaison with Hezbollah," he would have confirmed that the answer to all of the foregoing was "no." *Id.*

While Fox did subsequently air a three-minute pre-recorded statement on some of its shows featuring, *inter alia*, a guest stating that it was "his" understanding that Dominion and Smartmatic were two separate companies and that Smartmatic did not send U.S. votes to be tabulated in foreign countries, Fox's on-air talent did not adopt this guest's statements as their own nor retract any of the statements Defendants had made on December 10. *Id.* at ¶ 110. As to Plaintiff, Fox's on-air talent were completely silent. *Id.* In early January 2021, though, Dobbs finally admitted that he and Fox had not found any "verifiable tangible support" of election fraud. *Id.* at ¶ 112. Defendants, including Powell, had, however, known since the beginning of their disinformation campaign, based, among other things, the official reports and statements available to the public, that there

was no objective, reliable evidence of election fraud and that the entire claim of a Venezuelan-led

plot in cohoots with Smartmatic and Dominion to rig the Election was entirely bogus.  *Id.*

## ARGUMENT

## I.    LEGAL ELEMENTS FOR DEFAMATION UNDER NEW YORK LAW

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the Court

accepts the complaint's factual allegations as true and draws inferences only in the plaintiff's

favor."  *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 264 (S.D.N.Y. 2013); *Nat'l Academy of*

*Television Arts & Sciences, Inc. v. Multimedia Sys. Design, Inc.*, No. 20-cv-7269 (VEC), 2021 WL

3271829, at *13 (S.D.N.Y. July 30, 2021).  This standard is not supplanted by CPLR 3211(g) in

federal court.  *Nat'l Academy of Television Arts & Sciences, Inc.*, 2021 WL 3271829, at *13.[13]

As the New York Court in the Smartmatic NY Action held, "[i]n order to state a claim for

defamation, a plaintiff must allege (1) a false statement that is (2) published to a third party without

privilege or authorization (3) constituting fault as judged by, at a minimum, a negligence standard

and that (4) causes special harm, unless the statement constitutes defamation per se, in which case

damages are presumed."  Smartmatic NY Op. at 31.  While the statement must be "of or

concerning" the plaintiff, (*BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 820–21 (S.D.N.Y.

2021)) here the defamatory statements actually reference Plaintiff by name and otherwise in

context falsely identify Plaintiff as a central figure in the alleged plot to fix the Election, easily

---

[13] As noted in Plaintiff's response to the motion to dismiss by the Fox Defendants, documents incorporated by
reference in a Complaint can be appropriately considered by a Court, given their being integral to the Complaint,
on a motion to dismiss.  *See* Plaintiff's response to Fox Defendants' motion to dismiss at n.6. Here, the Complaint
does reference and incorporate a number of documents, such as the Complaints in several other related actions,
and information demonstrating the notice that Defendants had prior to December 10, 2020 of the falsity of the
basic claims of fraud in connection with the Election and debunking the basic claims advanced by Defendants,
including by Powell, prior to December 10, 2020, *inter alia*, that there was a plot by Venezuelans governmental
officials in conspiracy with Smartmatic and Dominion to rig the Election.

satisfying such standard.  *Id.* (citing cases for the proposition that headlines that directly name defamation plaintiffs are sufficiently "of and concerning" the plaintiff).

Powell seeks dismissal of the defamation claims with two primary merits-based arguments: (1) the blatantly false statements by Powell are somehow protected or given immunity, a claim not supported by the law, and already rejected by other courts reviewing the same conduct at issue here; and (2) Plaintiff was required to allege actual malice on the part of Powell.  As established herein, and more fully addressed in Plaintiff's response to the Fox Defendants' motion to dismiss, for the same reasons set forth in the Dominion DC ruling (against Powell), the Dominion DE ruling (against Fox News) and even the Smartmatic NY Action (against the Fox Defendants, Powell and others), Powell's defamatory statements against Plaintiff all are plainly actionable and no such "immunity" defenses are available to Powell (nor to any of the other Defendants).  Moreover, Plaintiff submits that as to Plaintiff's claims, the New York anti-SLAPP statute should not apply, and that, as to Powell, the "negligence" standard applies since Plaintiff is neither a public figure nor a limited purpose public figure, but in any event, assuming, *arguendo*, the New York anti-SLAPP statute applies, Plaintiff's claims easily satisfy the "actual malice" standard as already recognized by these same three courts.

## II.    POWELL'S DEFAMATORY STATEMENTS CONCERNING THE PLAINTIFF ARE ACTIONABLE

Powell's attempt to dismiss Plaintiff's defamation claims against her on the basis that the defamatory statements are "protected and not actionable" is entirely without merit, and in fact, frivolous.  *First*, Judge Davis of the Superior Court of Delaware, applying New York law, has already held that the *precise statements made on Defendants Fox and Dobbs' December 10, 2020 show* which are the subject of Plaintiff's defamation claims against Powell *are actionable* (*see Dominion DE Action*, 2021 WL 5984265, at *14-15, 25-28; Dominion DE Op. at 12, 25-27, 47-

51).  *Second*, United States District Court Judge Nichols similarly held that statements by Powell,
*including the December 10, 2020 statements on Lou Dobbs Tonight*, were actionable statements
of fact (*see US Dominion, Inc. v. Powell,* No. 1:21-cv-00040 (CJN), 2021 WL 3550974, at *7-9
(D.D.C. Aug. 11, 2021) ("Dominion DC Op."); Dominion DC Op. at 20-24.).  *Third*, since the
filing of her Motion, the New York Supreme Court similarly held that statements by Powell,
including the December 10, 2020 statements on *Lou Dobbs Tonight*, are actionable statements of
fact.  *See* Smartmatic NY Op., at 35-41, 43-46.[14]  Powell, nonetheless, argues that her defamatory
statements are not actionable because (a) they are statements of opinion, not fact and (b) they are
Constitutionally protected speech.  As addressed below, and as set forth in Plaintiff's response to
the Fox Defendants' motion to dismiss, both arguments are, like Powell's defamatory statements,
devoid of any valid basis.

A.      **Powell's Defamatory Statements Are Statements of Fact, Not Mere Opinions**

The parties agree that, in evaluating whether a statement is an actionable statement of fact
or a non-actionable statement of opinion, courts applying New York law consider the following
three factors: (1) whether the specific language at issue has a precise meaning which is readily
understood; (2) whether the statements are capable of being proven true or false; and (3) whether
either the full context of the communication in which the statement appears or the broader social
context and surrounding circumstances are such as to signal to readers or listeners that what is
being published is likely to be opinion or fact.  *Compare* ECF No. 30 at 13-14 *with Gross v. New*

---

[14] While the New York Court focused on Powell's jurisdictional argument, the entire ruling, read in context, makes
clear that had the Court concluded it had personal jurisdiction over Powell, it would have denied the balance of her
motion to dismiss.  For example, in footnote 20 of the New York Court ruling, it observed that regardless of its finding
on jurisdiction as to Powell, the Fox Defendants could be held liable "for republication of a defamatory statement by
an individual, such as Powell…."  *See also* Smartmatic NY Op. at 5, 6-7 & n.5, 8, 12, 35-41, and 43-46, where the
Court recites in some detail a series of defamatory statements made by Powell in holding that the Fox Defendants'
publication of such statements while, *inter alia,* on notice of their falsity, underscored the viability of Smartmatic's
defamation claims against the Fox Defendants.

*York Times Co.*, 82 N.Y.2d 146, 153 (1993).  Tellingly, while Powell recites this three-factor standard, she then ignores the first two factors and hangs her hat on a distorted application of the third factor.  *See* ECF No. 30 at 13-17.  Powell does not even attempt to argue (as she cannot) that her statements concerning the Plaintiff do not have a precise meaning that is capable of being proven false.  *See id.*  Rather, Powell argues only that, because she made the defamatory statements in the context of the Election, which she claims was a "bitter and controversial matter of public concern," the statements are and can only be understood to be opinions.  *See* ECF No. 30 at 13-17.[15]  This is not the law.

All three factors considered by New York courts in evaluating whether a statement is actionable for defamation support a finding that Powell's statements concerning the Plaintiff are all actionable.  The statements for which Powell (and the Fox Defendants) are liable include, *inter alia*, affirmatively stating and/or implying:  that Plaintiff "led the effort to rig [the Election]" by "design[ing] and develop[ing] the Smartmatic and Dominion programs and machines, that included a controller module that allows people to log in and manipulate the vote . . . for the benefit of Venezuela and Hugo Chávez;" and there is "tremendous" and "stunning" evidence of this "massive cyber attack" on the Election, including "reams and reams of actual documents" demonstrating "the architecture of [the] relationship among these four individuals [including

---

[15] Powell bizarrely comments that it is "curious" that while Plaintiff claims to not have a business relationship with Smartmatic or Dominion, Plaintiff "spends a great deal of time detailing as fact the claimed *bona fides* of both those companies."  *See* ECF No. 30 at 15 (citing Compl. at ¶¶ 18-22, 40-42, 45-57).  Since Powell falsely tied Plaintiff to a non-existent plot by Smartmatic and Dominion to rig the Election, it should not be at all "curious" that Plaintiff would demonstrate in painstaking detail that the entire underlying claim of Election fraud by Powell, which focused on the background and conduct of Smartmatic and Dominion, was bogus.  Powell's arguments also ignore the vast majority of Plaintiff's allegations of actual malice, assuming, *arguendo*, such standard applies.  Plaintiff has set forth the reliable, public information concerning these companies that contradicted Powell's conspiracy theories concerning a massive election fraud perpetrated by these companies, all public and well-established prior to December 10, 2020.  As set forth above, Plaintiff alleges that Powell's defamatory claims concerning the Plaintiff rest atop the "pyramid of verifiably false claims" about Smartmatic and Dominion (*see* Compl. at ¶ 42); so, logically, if Powell knew her claims about Smartmatic and Dominion were false, *a fortiori*, she knew her claims about Plaintiff's alleged ties to a non-existent conspiracy involving Smartmatic and Dominion to fix the Election were also false.

Plaintiff]" and "their involvement in [the alleged conspiracy to rig to the Election]."  Compl. at ¶¶ 129-30, 141-42, 154-55, 166-67.

These statements satisfy the first two factors New York courts consider in evaluating whether a statement is actionable because they have a precise meaning that is readily understood that can be disproven.  The precise meaning is that Plaintiff led and executed, in conspiracy with three other individuals and with Smartmatic and Dominion, a massive cyberattack to rig the Election for the benefit of a foreign sovereign.  This premise can be proven true or false:  Plaintiff either participated in the design and development of Smartmatic and Dominion's programs and machines, or he didn't; Plaintiff either included a "controller module" that allowed for the manipulation of votes in these programs or machines, or he didn't; Plaintiff either acted on behalf of Venezuela and the deceased Hugo Chávez, or its current leader to rig the Election, or he didn't; there was either a massive cyberattack that compromised the Election results, or there wasn't; Powell was either in possession of massive amounts of documentary evidence of foreign interference in the Election, or she was not; etc.  This is a basic rule of law cited by Judge Nichols (in the Dominion DC Action), Judge Davis (in the Dominion DE Action), and Justice Cohen in his recently issued ruling (in the Smartmatic NY Action).  *See Dominion DC Action*, 2021 WL 3550974, at *8; Dominion DC Op. at 21-22 (finding Powell's statement, *inter alia*, that she had evidence showing Dominion "flipped" voting results in Venezuela for Hugo Chávez to be actionable for defamation);  *Dominion DE Action*, 2021 WL 5984265, at *27; Dominion DE Op. at 48 ("Here, the Complaint supports the reasonable inference that Fox was reporting on a fact, *i.e.*, that Dominion aided or caused election fraud."); Smartmatic NY Op. at 5 (discussing Powell's false statements on November 14, 2020), 6-7 & n.5  (discussing Powell's false statements on November 15, 2020), 8 (discussing Powell's false statements on November 16, 2020, 9-10

(discussing Powell's false statements on November 19, 2020), 12 (discussing Powell's false statements on December 10, 2020, including quoting from several of Powell's defamatory statements made during the December 10 *Lou Dobbs Tonight* broadcast), and 35-41 and 43-46 (finding actual malice adequately plead as to the Fox Defendants based on their own statements and for repeating defamatory statements by Powell and others).

The third factor considered by New York courts also supports a finding that Powell's statements concerning the Plaintiff are actionable for defamation. Powell argues that the claimed context of her bogus statements about the Plaintiff – the aftermath of a controversial and contentious Election – and her status as an "attorney-advocate" who filed multiple unsuccessful frivolous litigations challenging the Election results somehow renders her statements non-actionable opinions, even though she nowhere references her prior filed cases on December 10, such prior by-then dismissed cases did not reference Plaintiff, the Trump Campaign had publicly disassociated itself from Powell prior to December 10, and Powell provided no basis for any claimed connection of Plaintiff to any aspect of the Election. *See* ECF No. 30 at 15-16. This argument, in any event, has been rejected by the DC Court, the Dominion DE Court, and the Smartmatic NY Court, and as recently noted by the New York Appellate Division, in suspending Rudolph Giuliani from the practice of law for advancing similar misstatements about the Election, a New York-licensed lawyer disseminating false information regarding the Election is actually grounds for suspension from the practice of law in New York.[16]   Contrary to Powell's protestations, moreover, New York law does not give anyone, let alone an officer of the court who has been sanctioned for filing false claims of election fraud (and may be subject to a pending bar disciplinary proceeding for such conduct), license to spread defamatory falsehoods just because

---

[16] *See In re Giuliani,* 197 A.D.3d 1 (1st Dep't 2021).

they claim they are speaking, albeit falsely, on a "bitter and controversial matter of public concern." *See Dominion DC Action*, 2021 WL 3550974, at *7; Dominion DC Op. at 15 (rejecting Powell's argument that her statements are protected statements of opinion because they concerned the "bitter and controversial" Election, finding "there is no blanket immunity for statements that are 'political' in nature") (quoting *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 626 (D.D.C. 2001)); Smartmatic NY Op. at 55 n.50 (in denying Giuliani's motion to dismiss, noting that Giuliani had been suspended by the Appellate Division from the practice of law as a result of "uncontroverted evidence" that he had "communicated demonstrably false and misleading statements to courts, lawmakers and the public at large" regarding the Election); *see also Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) ("That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution."); *Zervos v. Trump*, 171 A.D.3d 110, 112 (1st Dep't 2019) ("[C]laims for defamation may arise out of acrimonious political battles.").  The very authorities cited by Powell in support of her meritless position make this clear. *See, e.g.*, ECF No. 30 at 14-15 (citing *Garrison*, 379 U.S. at 75 (finding that a "lie, knowingly and deliberately published about a public official" should not be immune from liability)).  In protesting that "the over-all context" of the Election somehow protectively cloaks her statements from liability for defamation (*id.* at 14), a proposition already rejected by several courts with respect to statements made by Powell, Powell disregards the more particular context in which her false statements about the Plaintiff were made: she made the statements on a news program, framed as a truth-seeking endeavor based in evidence, where she was identified as an attorney, while claiming to have "overwhelming" and "stunning," yet unspecified and undisclosed, evidence to support her claims. *See* Compl. ¶¶ 12, 89, 95-101, 107, 129, 141, 153-56, 165-68.  It is *this* context that renders all of Powell's statements actionable for defamation. *See Dominion DE Action*, 2021

WL 5984265, at 14-15, 27-28; Dominion DE Op. at 47-50 (finding that Powell's accusations of election fraud were actionable statements of fact or mixed opinion because the issue was repeatedly framed as "truth seeking" purportedly grounded in evidence which was undisclosed to the audience); *see also Gross*, 82 N.Y.2d. at 155-56 (finding that defendant's assertion that plaintiff was "corrupt . . . cannot be treated as a mere rhetorical flourish or the speculative accusation of an angry but ill-informed citizen made during the course of a heated debate," because the accusation was made "in the course of a lengthy, copiously documented newspaper series that was written only after what purported to be a thorough investigation").

Indeed, even if, *arguendo*, some of Powell's statements had been couched as opinions—they were not—"mixed" opinions, as the Dominion DC Court, the Dominion DE Court and the Smartmatic NY Court have held,  are nonetheless actionable under New York law.[17]  Conveniently omitted from Powell's recitation of New York defamation law, as is well-settled, is the fact that courts applying New York law "continue to recognize and utilize the important distinction between a statement of opinion that implies a basis in facts which are not disclosed to the reader or listener . . . and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts."  *See Gross*, 82 N.Y.2d at 153.  "The former are actionable not because they convey 'false opinions' but rather because a reasonable listener or reader would infer that 'the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]."  *Id.* at 153-54 (alterations in original) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986)).  Even in the latter scenario, a viable claim for defamation can rest upon a "statement of opinion that is accompanied by a recitation of facts" where the

---

[17] *See* notes 2-3 *supra*.

complaint alleges those facts are false.  *See id.* at 153; *Silsdorf v. Levine*, 59 N.Y.2d 8, 15 (1983).

These types of statements are actionable because "the validity of the opinions expressed [in the

publication], as viewed by the average reader, could be affected by whether the facts as stated by

defendants or those now alleged by the plaintiff were before the reader."  *Silsdorf*, 59 N.Y.2d at

15-16 (finding that plaintiff could recover damages for defamatory opinions if he is able to

demonstrate the falsity of the statements of fact upon which the defamatory opinion was based).[18]

Here, even if the Court, *arguendo*, were to find that some aspect of Powell's statements could be

considered opinion, all of her statements are actionable because she "implie[d] a basis in fact [for

her statements] which are not disclosed to the reader or listener," namely the "stunning" "reams"

of evidence she claimed to possess supporting her theory of massive election fraud perpetrated by

Plaintiff and others.  *See Gross*, 82 N.Y.2d at 153; *see, e.g.*, Compl. at ¶¶ 129-30, 141-42, 154-55,

166-67.[19]

Powell cites a number of authorities in support of her argument that accusations of criminal

conduct, like her statements concerning the Plaintiff, can be non-actionable statements of opinion.

*See* ECF No. 30 at 16-17.  All of these authorities, however, are plainly distinguishable and none

supports a holding that Powell's false statements concerning the Plaintiff are not actionable

defamation.  Most of the cases Powell relies upon involve statements that, standing alone could be

understood to be accusations of criminal conduct, but, in context, are just epithets or insults that

do not accuse the plaintiff of any specific criminal activity.  *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118,

129 (2d Cir. 2014) (finding epithets such as "sucker," "fool," "frontman," and "crooks" to be

---

[18] Again, the very authorities Powell relies upon recognize this well-established principle of New York law.  *See, e.g.*, ECF No. 30 at 16-17 (citing *Rapaport v. Barstool Sports, Inc.*, 18 Civ. 8783 (NRB), 2021 WL 1178240, at *12 (S.D.N.Y. Mar. 29, 2021); *Torain v. Lui*, 06 Civ. 5851 (GBD), 2007 WL 2331073, at *3 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46 (2d Cir. 2008)).

[19] *See* Plaintiff's response to the Fox Defendants' motion to dismiss for a further discussion of this point.

hyperbolic speech that is a nonactionable opinion); *Hayashi v. Ozawa*, No. 12-cv-2558 (AJN), 2019 WL 1409389, at *3-4 (S.D.N.Y. Mar. 29, 2019) (finding imprecise and ambiguous statements in blog post accusing plaintiff of "perjury" not susceptible to readily understandable meaning); *Small Business Bodyguard, Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 311-12 (S.D.N.Y. 2017) (finding blog post concerning an experience of "extortion, manipulation, fraud, and deceit" not actionable because it was not "of and concerning plaintiff" and too vague and figurative to be actionable); *Torain*, 2007 WL 2331073, at *3-4 (statement that plaintiff was a "pedophile" not actionable, where comment made in a "war of words" and did not accuse plaintiff of actually engaging in a pedophilic act).  Powell's statements about the Plaintiff, by contrast, were not mere insults or epithets, made in a blog post or in a "war of words;" Powell, an attorney purportedly investigating and pursuing claimed (but non-existent) election fraud, accused Plaintiff of specific criminal conduct – *e.g.*, designing voting machines to rig the Election for the benefit of Venezuela – on a national news program.  *See, e.g.*, Compl. at ¶¶ 141-42.  Nor were Powell's accusations of a Venezuelan-led plot to rig the Election made in isolation, as the Complaint alleges (as discussed above) that Powell had made other bogus allegations about a non-existent Venezuelan role in fixing the Election over the prior month.

The other cases cited by Powell involved situations where the defendant characterized the plaintiff as a criminal, but then disclosed the facts upon which that statement was based.  *See, e.g.*, *Adelson v. Harris*, 774 F.3d 803, 807 (2d Cir. 2014) (finding that characterizations of plaintiff's money as "dirty" and "tainted" was a nonactionable opinion because the grounds for the opinion were fully disclosed); *Fedak v. YIMBY, Inc.*, No. 17 Civ. 8825 (KPF), 2018 WL 6697963, at *6 (S.D.N.Y. Dec. 20, 2018) (finding statement that plaintiff was "a fraud," accompanied by recitation of facts on which it was based to a nonactionable opinion).   By contrast, Powell's

25

statements concerning the Plaintiff, to the extent they can, *arguendo*, be considered opinions, are accompanied, not by a recitation of the factual underpinnings of that opinion, but rather an implication that Powell's "opinion" was based on (nonexistent) "evidence" to which the reader or listener is not privy.[20]   Accordingly, to the extent any aspect of Powell's false statements concerning the Plaintiff are held to be opinions, they are actionable mixed opinions. *See Gross*, 82 N.Y.2d at 153-54.  To borrow Powell's own words, her false statements concerning the Plaintiff are "nowhere close" to nonactionable "pure opinions."

> ### B.   Powell's Defamatory Statements Are Not Protected or Privileged Speech

Powell also purports to invoke some sort of unspecified First Amendment privilege as a basis to dismiss Plaintiff's defamation claims against her.  *See* ECF No. 30 at 16-19. Relying on cherry-picked language from inapposite cases, Powell appears to argue that her defamatory statements concerning the Plaintiff are privileged or immune from defamation liability because they "were made in the context of pending and impending litigation."  *See id.* at 17-19.  This argument is both factually and legally inaccurate.

There is no recognized privilege or immunity that protects Powell's defamatory statements concerning the Plaintiff.  While there are absolute and qualified litigation privileges[21] that cover

---

[20] Any "facts" that Powell recited as the purported basis for her "opinion" that Plaintiff rigged the Election are objectively and verifiably untrue and, thus, Powell's "opinion" is still actionable. *See, e.g.*, Compl. at ¶¶ 129-31, 141-44, 154-56, 166-67; *Silsdorf*, 59 N.Y.2d at 15-16 (finding that plaintiff could recover damages for defamatory opinions if he is able to demonstrate the falsity of the statements of fact upon which the defamatory opinion was based).  Indeed, Plaintiff has alleged that "stunning evidence" that Powell claimed to have never existed (*see id.* at ¶¶ 101-02, 107); and the courts which presided over and dismissed Powell's spurious litigations challenging the Election results found as much.  *See, e.g.*, *King v. Whitmer*, 505 F. Supp.3d 720, 738-39 (E.D. Mich. 2020) [ECF No. 62 at 32-34] (finding plaintiffs offered "nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden"); *King*, 2021 WL 3771875, at *1 [ECF No. 172 at 2-3] (finding that plaintiffs' attorneys, including Powell, failed to conduct any "due diligence before presenting allegations [of election fraud] as truth"); *Bowyer v. Ducey*, No. 2:20-cv-02321 (D. Az. Dec. 2, 2020) ("*Bowyer*") [ECF No. 84 at 28] (finding plaintiffs' fraud claims were rendered implausible by the multiple inadmissible affidavits, declarations, and expert reports upon which their Complaint relies").

[21] It is unclear from Powell's briefing whether she is invoking the absolute litigation privilege or the qualified "fair report" privilege, or some other unspecified First Amendment protection.  *See* ECF No. 30 at 17-19. Regardless, there

statements by "attorneys in connection with a judicial proceeding," neither apply to Powell's statements for at least the following three reasons: *First*, in order for the privilege to apply the statements must be made by an attorney "in connection with a proceeding before a court" or "pertinent to a good faith anticipated litigation." *See Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718-20 (2015) (citing *Youmans v. Smith*, 153 N.Y. 214, 214 (1897)); *see also Yukos Capital S.A.R.L. v. Feldman*, No. 15-cv-4964, 2016 WL 4940200, at *4 n.37 (S.D.N.Y. Sept. 14, 2016) (noting that statements made "after the conclusion of litigation may result in liability" for defamation); Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related Problems*, §§ 8.2.1.4 at 8-14 (2004) (explaining that litigation privilege applies only to "defamatory statements made prior to, in the institution of, or during the course of a, a proceeding). Here, Plaintiff alleges that *all* of Powell's frivolous cases challenging the Election results that Powell filed had been *dismissed by the time Powell made the defamatory statements concerning the Plaintiff* on December 10, 2020, and Powell did not even refer to any of such dismissed lawsuits on December 10, 2020. *See* Compl. at ¶¶ 12, 128, 140, 153. *See also* ECF No. 27-1. Thus, the factual predicate for the application of a litigation privilege – that there was pending or impending litigation – is not present.

*Second*, while the litigation privilege can extend to out-of-court statements made during the course of a judicial proceeding,[22] it does not apply "to out-of-court statements made to persons not related to the litigation," such as statements to the press. *See D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 218-20 (E.D.N.Y. 2012) (finding statements made during press conference

---

is no privilege or protection that immunizes Powell's statements from liability. A more fulsome discussion of the lack of applicability of the fair report privilege is set forth in Plaintiff's response to the Fox Defendants' motion to dismiss.

[22] Powell cites *Grayson* for the proposition that the litigation privilege applies to statements "irrespective of . . . whether they were made in court or out of court." *See* ECF No. 30 at 18 (citing *Grayson v. Ressler & Ressler*, No. 15 Civ. 8740, 2018 WL 3611951 (S.D.N.Y. July 27, 2018)). *Grayson*, however, does not stand for the proposition that Powell's out-of-court statements concerning the Plaintiff fall under the litigation privilege. In contrast to Powell's public statements on a national news program, *Grayson* involved statements purportedly made amongst counsel, who viewed their discussions as covered by a joint prosecution agreement, concerning their co-counsel in an active litigation. *See Grayson*, 2018 WL 3611951, at *3, 7.

announcing filing of litigation were not privileged); *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 294 (S.D.N.Y. 2005) ("[W]hile this privilege covers communications adjunct or preparatory to legal proceedings such as communications to an attorney, 'during the course of the proceeding' does *not* mean . . . that the privilege extends to any statement made in any forum while a proceeding is pending that relates to the same subject matter as the proceeding."); *World Wrestling Fed'n Entert., Inc. v. Bozell*, 142 F. Supp. 2d 514, 534 (S.D.N.Y. 2001) (finding that the litigation privilege did not cover statements made on radio and television programs).  Accordingly, the fact that Powell made the defamatory statements concerning Plaintiff on Fox News to Lou Dobbs and millions of viewers had no conceivable relation to Powell's dismissed, sham litigations, which nowhere referenced Plaintiff, and precludes application of the litigation privilege to her statements, even if Powell had discussed such litigations on December 10, 2020 (which she did not). *See, e.g.*, Compl. at ¶¶ 9-11.

*Third*, the litigation privilege only covers statements that are "material and pertinent to the questions involved" in the underlying litigation.  *See Front*, 24 N.Y.3d at 718 (citing *Youmans*, 153 N.Y. at 214); *see also Conti v. Doe*, 535 F. Supp. 3d 257, 281 (S.D.N.Y. 2021) (finding that a reasonable juror could find that statements exceeded scope of the litigation privilege because they disclosed information that was not relevant to claims in underlying litigation).  Powell's statements concerning the Plaintiff are decidedly not "material and pertinent to the questions involved" in the frivolous litigations Powell initiated, all of which had been dismissed prior to December 10, 2020: Plaintiff's name is not mentioned, let alone alleged to have participated in any "rigging" or "vote flipping," in any of the operative pleadings.[23]  Thus, the litigation privilege cannot shield Powell's

---

[23] *See* p.21, *supra*.

statements concerning the Plaintiff from liability.[24]

## III.   NEW YORK'S ANTI-SLAPP STATUTE DOES NOT BAR PLAINTIFF'S DEFAMATION CLAIMS

### A.   Plaintiff Sufficiently Alleges Powell Acted With Actual Malice

Even if, *arguendo,* New York's anti-SLAPP statute applies to Powell's false statements concerning the Plaintiff, the anti-SLAPP statute does not bar Plaintiff's defamation claims again Powell because Plaintiff has more than adequately alleged Powell acted with actual malice.[25]

In arguing that Plaintiff's Complaint should be dismissed for failure to allege actual malice, Powell ignores, as she must, the vast majority of the allegations in the Complaint and rewrites well-established authority on the standard for pleading actual malice. *See* ECF No. 30 at 9-13. If, however, Powell's statements do, as she argues, pertain to a matter of public concern (they do not, as discussed below and in Plaintiff's response to the Fox Defendants' motion to dismiss), the fact that she made these false statements in reckless (and likely knowing) disregard of numerous reliable sources objectively confirming the truth makes her conduct all the more egregious. As

---

[24] For the same reason, Powell's defamatory statements concerning the Plaintiff are not covered by the qualified privilege applicable only to out-of-court statements which are "a fair and true report of a judicial proceedings." *Long*, 406 F. Supp. 2d at 293-95 (declining to dismiss defamation claim based on qualified privilege for fair reporting of underlying judicial proceeding at pleading stage). This argument was already rejected as well, when advanced by Fox News in the Dominion DE Action. See *Dominion DE Action*, 2021 WL 5984265, at *26; Dominion DE Op. at 47 (declining to dismiss defamation claim based on fair report privilege where allegations of complaint demonstrated "substantial deviation" between report and underlying proceedings). The Smartmatic New York Court also rejected this argument, advanced by the Fox Defendants, as discussed in Plaintiff's response to the Fox Defendants' motion to dismiss. Powell's statement concerning the Plaintiff cannot be a "fair report" of dismissed litigations that do not pertain to or even mention the Plaintiff. Moreover, even if, *arguendo*, Powell's statements were fair reports of her dismissed litigations (to be clear, they are "nowhere close," to borrow Powell's own words, *see* ECF No. 30 at 13), the fair report privilege would not warrant dismissal of Plaintiff's defamation claims because the privilege can be rendered inapplicable with a showing of actual malice and, as set forth in Section III.B, *infra*, Plaintiff has adequately alleged Powell acted with actual malice when making the defamatory statements concerning the Plaintiff, assuming the actual malice standard applies to Powell's statements.

[25] *See also* Plaintiff's response to the Fox Defendants, for a further discussion of why the actual malice standard has been satisfied here. Of further note, Powell does not contend that Plaintiff is a public figure, so if the Court finds that New York's anti-SLAPP statute *does not* apply, Plaintiff does not need to ultimately demonstrate that Powell acted with actual malice; rather, Plaintiff would only need to satisfy the lower standard applicable to private defamation plaintiffs. See *Harte-Hanks Commc'n's, Inc. v. Connaughton*, 491 U.S. 657, 664-66 (1989). Plainly, Plaintiff easily satisfies such lower standard. *See* Section III.A., herein.

alleged throughout the Complaint, Powell made defamatory statements accusing Plaintiff of leading a cyber-attack on the Election in conspiracy with Smartmatic and Dominion without *any* factual basis and in the face of mountains of reliable, accessible evidence showing there was *no interference* in the Election at all.  Because Plaintiff has alleged Powell made the defamatory statements with knowing, or at least, reckless disregard of their falsity, his defamation claims against her are, accordingly, not subject to dismissal even if the actual malice standard applies. *See Dominion DC Action*, 2021 WL 3550974, at *10-11; Dominion DC Op. at 20-24 (holding that Dominion adequately alleged Powell acted with actual malice where it alleged Powell deliberately ignored the truth in favor of facially unreliable sources and intentionally lied about fabricated evidence); *Dominion DE Action,* 2021 WL 5984265, at *28; Dominion DE Op. at 50-51 (denying Fox News' motion to dismiss defamation claim for failure to allege actual malice).

The Complaint alleges that Powell's defamatory claim that Plaintiff spearheaded a cyber-attack on the Election sits atop a "pyramid of verifiably false claims," chief among which is the claim that there was any type of attack or interference in the Election at all.  Compl. at ¶ 42. Plaintiff alleges, not only that Powell had no support for the "base" claim of election fraud perpetrated by Dominion and Smartmatic, but that, by the time that Powell made the defamatory statements concerning the Plaintiff's supposed involvement in this claimed fraud on December 10, 2020, there were multiple detailed reliable, public and, in some instances, official statements and reports debunking any claim of systemic fraud in the Election.  *See id.* at ¶¶ 1-2, 12, 36-37, 42-52, 60-69, 82, 102-04.  Among these reliable, public, and official statements were: (i) a November 12, 2020 announcement by the Trump Administration's own Cybersecurity & Infrastructure Security Agency that there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised" (*id.* at ¶ 45); (ii) statements on the Michigan Secretary of State

and Georgia Secretary of State websites confirming the accuracy of the Election results that were available at least as of November 12, 2020 (*id.* at ¶ 46); (iii) a statement by EAC Commissioner and Trump appointee Ben Hovland on or around November 14, 2020 that the Election "was the most secure election we've ever had" (*id.* at ¶ 48); (iv) the results of the 100% hand audit recount of all the ballots cast in Georgia in the Election on November 19, 2020 and the subsequent report of Georgia's Secretary of State that the audit reaffirmed the accuracy of the Election results (*id.* at ¶ 65); and (v) a December 1, 2020 statement by the then-U.S. Attorney General William Barr that there was no evidence to substantiate a systemic fraud in the Election (*id.* at ¶ 82).

These allegations are more than sufficient to raise a plausible inference that Powell acted with actual malice.

Plaintiff is not, as Powell argues, only claiming that Powell's statements are unsupported by the evidence (*see* ECF No. 30 at 13), but rather that Powell made the defamatory statements after contradictory evidence was plainly available to, and actually already possessed by or presented to, her.[26]  The fact that, despite not having any reliable evidence of election fraud and access to (and public notice of, and actual knowledge of) the foregoing evidence that there was *no interference* in the Election *by anyone*, Powell nonetheless stated on December 10, 2020 that there *was interference* in the Election *by the Plaintiff*, as part of a conspiracy with Smartmatic and Dominion to rig the Election, raises a strong inference that Powell knew at the time she made this claim that it was entirely false or, at the very least, recklessly disregarded the foregoing evidence of the claim's falsity.  *See Crime Victims Ctr., Inc. v. Logue*, 181 A.D.3d 556, 557 (2d Dep't 2020)

---

[26] Powell in several well-documented examples responded to evidence provided to her or made public in response to her false attacks by manufacturing new bogus claims.  In one instance cited in the Complaint, Powell actually fabricated new fictitious charges – *i.e.*, that Dominion had allegedly bribed Georgia officials in exchange for a contract to provide voting machines in the state – in response to a public rebuttal by Georgia Republicans to Powell's false claims attacking Georgia's election results. *See* Compl. at ¶ 56.

(affirming denial of motion to dismiss defamation claim, where complaint alleged defendant made challenged statements with "knowledge of their falsity, or knowing that he had no reliable evidence or information supporting the statements"); *see also Bruno v. New York Daily News Co.*, 89 A.D.2d 260, 268 (3d Dep't 1982) (finding raised a triable issue of malice where defendant failed to identify any sources for the challenged statements and had access to documents with express findings contradicting these statements).   Indeed, the very same basic statements as alleged herein have already been held to constitute actual malice by the courts in the Dominion DC Action, the Dominion DE Action, and the Smartmatic NY Action.   *See Dominion DC Action*, 2021 WL 3550974, at *10-11; Dominion DC Op. at 22-23 (finding Dominion adequately alleged actual malice where it alleged Powell ignored reports that there was "no credible evidence" of election fraud and never proffered the "evidence" of election fraud she claimed to have);   *Dominion DE Action*, 2021 WL 5984265, at *28; Dominion DE Op. at 51 (finding Dominion adequately alleged actual malice where it alleged defendant "possessed countervailing evidence of election fraud" from government agencies and election experts); Smartmatic Op. at 37 (finding Smartmatic adequately alleged actual malice where it alleged defendants "broadcast[ed] information proffered by Powell, Giuliani, and the Fox anchor defendants which it knew was false and that, even if Fox News did not know the information was false, it had reason to doubt the veracity of the same since it was unsupported by any facts and was [publicly] refuted by election specialists and officials.").

Once Powell was on notice that there was no factual basis for her claims of election fraud, which, at a minimum, the aforementioned public statements and reports provided, she had a duty to make further attempts to verify her basic claims prior to publishing them yet again (which "verification" clearly did not occur).   *See Mahoney v. State of New York*, 236 A.D.2d 37, 40-41 (3d Dep't 1997); *see also Partridge v. State*, 173 A.D.3d 86, 96-97 (3d Dep't 2019).   The fact that

32

Powell was, as alleged by Plaintiff, an attorney who actually pursued frivolous litigation challenging the results of the Election, all of which were dismissed by December 9, 2020, renders any feigned ignorance by Powell of the vast array of available evidence of Election integrity highly implausible and her reckless disregard of such evidence a virtual certainty.  *See* Compl. at ¶ 12. Plaintiff's allegation that some Fox hosts were challenging Powell's claims of election fraud and echoing that there was no evidence of election fraud (*see id.* at ¶¶ 132, 157) – tellingly, the only allegation of actual malice in the Complaint that Powell even addresses in her Motion (*see* ECF No. 30 at 12-13) – only bolsters the compelling inference that Powell recklessly disregarded the probable falsity of her claims, and was cited by the New York Court in Smartmatic as evidence of actual malice with regard to the Fox Defendants, an analysis that applies with equal force to Powell. *See* Smartmatic NY Op. at 35-41, 43-46.

Further bolstering an inference that Powell acted with actual malice are Plaintiff's allegations that Powell had a financial motive to peddle sensational lies about the integrity of the Election and embellish her Election conspiracies by claiming Plaintiff's involvement. *See* Compl. at ¶¶ 12, 41.  Specifically, Plaintiff alleges that Powell was advancing her debunked claims of election fraud on Fox News to solicit financial donations through her website.  *See id.*  According to published reports, Powell made millions of dollars fundraising off her "Big Lie" theory of election fraud.[27]  Indeed, a federal judge, in sanctioning Powell, expressed concern that she was profiting from peddling conspiracy theories about the Election in the courts and media.  *See* Compl. at ¶ 12.  While allegations of financial motive, alone, do not satisfy the actual malice standard, a

---

[27] *See, e.g.*, Emma Brown, Rosalind S. Helderman, Isaac Stanley-Becker and Josh Dawsey, *Sidney Powell group raised more than $14 million spreading election falsehoods*, Washington Post (Dec. 6, 2021), https://www.washingtonpost.com/investigations/sidney-powell-defending-republic-donations/2021/12/06/61bdb004-53ef-11ec-8769-2f4ecdf7a2ad_story.html, annexed as **Exhibit X** to the Wissner-Gross Decl.

financial motive, such as Powell's, is relevant to and supportive of a finding of actual malice. *See Harte-Hanks*, 491 U.S. at 664-68.

Powell is, quite simply, incorrect as, a matter of law, that "[t]he Complaint comes nowhere close to meeting" the actual malice standard. *Cf.* ECF No. 30 at 13. Plaintiff has more than met his burden, at the pleading stage, of alleging sufficient facts which, if true, demonstrate that Powell made the defamatory statements "with knowledge of [their] falsity or with reckless disregard of whether it was false." *See* N.Y. CIV. RIGHTS LAW § 76-a(2); *Dominion DC Action*, 2021 WL 3550974, at *10-11; Dominion DC Op. at 20-24; *Dominion DE Action*, 2021 WL 5984265, at *28; Dominion DE Op. at 50-51; *see also Crime Victims Ctr.*, 181 A.D.3d at 557 (finding plaintiff's allegations that defendant made the challenged statement with knowledge of its falsity or knowing of reliable contradictory evidence were "sufficient at this [pleading] stage of the proceeding"). Powell's conclusory and self-serving contention that she subjectively "believed the allegations then and she believes them now," an absurd retort which is contrary to extensive objective, undisputed evidence, does not change the calculus.[28] Ironically, the very case Powell cites for the proposition that this bare assertion is enough to thwart a showing of actual malice, states the exact opposite. *See* ECF No. 30 at 12-13 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).[29]

---

[28] Nor should this representation be countenanced as Powell has a demonstrable history of abusive litigation practices in service to her disinformation campaign concerning the Election, for which she has already been sanctioned by a federal court. *See King*, 2021 WL 3771875, at *1 [ECF No. 172 at 3] (finding plaintiffs' attorneys, including Powell, engaged in "litigation practices that are abusive and, in turn, sanctionable"). The self-serving claim of an alleged con artist such as Powell that she "believed" her fabricated story regarding Plaintiff and her claims regarding the Election and the alleged role of Smartmatic and Dominion and the alleged plot of Venezuelans to rig the Election, can never serve as a defense against liability, where, *inter alia*, objectively verifiable facts demonstrate the falsity of her entire bogus story.

[29] The other case cited by Powell in support of her contention that her bare protestations of good faith are somehow dispositive also does not stand for the proposition she claims. *See* ECF No. 30 at 13 (citing *Khan v. New York Times Co.*, 269 A.D.2d 74, 77 (1st Dep't 2000)). In *Kahn*, the court held it was an error to find actual malice based solely on the defendant's deviation from professional reporting standards. *See Kahn*, 269 A.D.2d at 76-77. Plaintiff, here, alleges considerably more than Powell's mere negligence in making the defamatory statements: Plaintiff alleges that Powell deliberately fabricated the false and defamatory claim that Plaintiff was party to a Venezuelan conspiracy to alter the results Election and broadcast this claim on Fox News after multiple reliable, official sources had publicly confirmed there was no evidence of any interference with the Election at all. *See, e.g.*, Compl. at ¶¶ 1-5, 45-48.

In *St. Amant*, the Supreme Court ruled that:  "Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous [source]."  390 U.S. at 732.  Here, Plaintiff alleges the precise scenarios in which Powell's disingenuous and self-serving "profession of good faith" should be summarily rejected: Plaintiff alleges Powell, *inter alia*, fabricated her claim that Plaintiff was actively involved with Smartmatic and Dominion in a cyberattack on the Election from whole cloth (*see* Compl. at ¶¶ 1-5, 103-04); and Plaintiff alleges that any "evidence" Powell purported to have supporting her defamatory claims was entirely implausible and verifiably false (*see id.* at ¶¶ 111, 132, 157).[30]  That is "sufficient at this stage of the proceeding."  *See Crime Victims Ctr.*, 181 A.D.3d at 557.[31]

### B.      Powell Has Failed to Establish New York's Anti-SLAPP Statute Applies

Powell makes the conclusory assertion that New York's anti-SLAPP statute applies to Plaintiff's defamation claims, without demonstrating why this is the case.  *See* ECF No. 30 at 9.  While Plaintiff recognizes that the New York Court, in its recent ruling, has held that the anti-SLAPP statute applies to the Smartmatic Action, Plaintiff respectfully urges this Court to consider whether, given the nature of the statements regarding Plaintiff and the fact that, unlike Smartmatic or Dominion, there had been no prior reference to Plaintiff in any of Powell's by-then dismissed

---

[30] Plaintiff has also alleged that, despite claiming to have "overwhelming" and "stunning" evidence of, *inter alia*, Plaintiff's participation in a cyberattack on the Election, Powell has never presented any such evidence, further supporting an inference that no such evidence exists and Powell just made up the spurious claim that there was Venezuelan interference in the Election.  *See* Compl. at ¶¶ 99-104.

[31] In a telling incongruity, Powell cites a case in which a defamation claim was dismissed *on summary judgment* for plaintiff's *failure to adduce* evidence sufficient to rise *a triable fact* as to actual malice in support of her argument that Plaintiff's defamation claims should be dismissed *at the pleading stage* for *failure to allege* sufficient facts raising an *plausible inference of actual malice*.  *See* ECF No. 30 at 13 (citing *Gross v. New York Times Co.*, 281 A.D.2d 299, 300 (1st Dep't 2001)).

actions or in any other Election-related litigation, or in any other prior reporting regarding the Election, the anti-SLAPP statute should not apply here.

New York's anti-SLAPP statute is limited to claims that are based on a defendant's "lawful conduct," *see* N.Y. CIV. RIGHTS LAW § 76-a(2), thereby expressly excluding application to conduct that is unlawful, such as deliberately spreading falsehoods. *See Nat'l Coalition on Black Civic Participation v. Wohl*, 512 F. Supp.3d 500, 518 (S.D.N.Y. 2021) (rejecting application of New York's anti-SLAPP statute where plaintiff plausibly alleged unlawful conduct by defendant, which neither "receive[s] First Amendment protection" nor protection under New York's anti-SLAPP statute); *see also Bozell*, 142 F. Supp. 2d at 520 ("The First Amendment does not protect statements that are false and defamatory even if they are made in the context of a public debate about issues of general concern."); *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369 (1977) ("No First Amendment protection enfolds false charges of criminal behavior.").

Powell failed to demonstrate that publication of fabricated claims concerning the Plaintiff, a private, foreign businessman with no connections to Smartmatic, Dominion, or the Election, were in connection with an "issue of public concern."[32]   Though New York law now defines "public interest" broadly, Powell has failed to cite any authority holding that publicly creating false criminal accusations against a private individual by an attorney are statements of "of public interest" entitled to anti-SLAPP protection. *See* ECF No. 30 at 9.  While courts have recognized a "public interest" in cases involving actual arrest and criminal charges, Plaintiff was not named, or even referenced, in any of Powell's frivolous and now-dismissed lawsuits challenging the Election results, let alone formally investigated for or charged with any of the conduct Powell

---

[32] Powell has not made any argument, nor is there a credible one, that Majed is a public figure or limited public figure. To the extent she attempts to do so in reply, that argument is neither proper nor factually correct, for the reasons stated in Plaintiff's response to the Fox Defendants' Motion to Dismiss filed concurrently herewith.

claims.[33]   Indeed, Powell did not even reference any of these then-dismissed lawsuits when she appeared on *Lou Dobbs Tonight* on December 10, 2020.

The falsity of Powell's defamatory claim that Plaintiff participated in rigging the Election is particularly harmful to Powell's attempt to invoke New York's anti-SLAPP statute. If Powell's interpretation of New York's anti-SLAPP statute is taken to its logical end, a defamation defendant could essentially manufacture an "issue of public interest" by fabricating, without any evidence whatsoever, a bogus claim that such an issue exists to attempt to insulate the statements under anti-SLAPP statutes, which is precisely what Powell is attempting here.  This should not be the law – especially where, as here, the Defendant has already brought her false claims (against others) to the courts and had those claims dismissed, in some cases with sanctions, as frivolous and unsupported.[34]   Indeed, as the New York Appellate Division observed in suspending, on an interim basis, Rudolph W. Giuliani from the practice of law in New York for making false claims regarding the election, "spreading false statements" regarding the Election actually "*threatens* the public interest."  *See In re Giuliani*, 197 A.D.3d 1, 4 (1st Dep't 2021) (per curium) (holding that there is "uncontroverted evidence that respondent communicated demonstrably false and misleading statements to courts, lawmakers and the public at large").

---

[33] *See King* [ECF No. 6]; *Bowyer v. Ducey*, No. 2:20-cv-02321 (D. Az. Dec. 2, 2020) [ECF No. 1]; *Feehan v. Wisconsin Elections Comm'n*, No. 2:20-cv-1771 (E.D. Wis. Dec. 3, 2020) ("*Feehan*") [ECF No. 9]; *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga. Nov. 25, 2020) ("*Pearson*") [ECF No. 1]. The Court may take judicial notice of the fact that Plaintiff is not identified in any of the operative pleadings in Powell's lawsuits challenging the Election results. *See* Fed. R. Evid. 201(b); *Williams v. New York City Housing Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020).

[34] *See, e.g.*, *King*, 505 F. Supp.3d at 737-39 [ECF No. 62 at 30-34] (dismissing claim for injunctive relief because plaintiffs failed to establish a likelihood of success on merits); *King*, 2021 WL 377185, at *1 [ECF No. 172 at 2-3] (granting sanctions where plaintiffs' attorneys, including Powell, failed to conduct any "due diligence before presenting allegations [of election fraud] as truth"); *Bowyer* [ECF No. 84 at 28] (finding plaintiffs could not establish likelihood of success on the merits on claims of election fraud because of their "insufficiently plead allegations of fraud, rendered implausible by the multiple inadmissible affidavits, declarations, and expert reports upon which their Complaint relies").

Indeed, while there is a dearth of authority addressing how false claims of criminal conduct are treated under New York's newly-expanded anti-SLAPP statute, California courts have, with instructive reasoning, considered and rejected the applicability of the California anti-SLAPP statute where the defendant is alleged to have fabricated criminal accusations:

> Simply stated, causes of actions arising out of false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute. Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made – a result that would be inconsistent with the purpose of the anti-SLAPP statute and would undermine the protection accorded by [California law].

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1136 (Cal. App. Ct. 2003) (rejecting application of anti-SLAPP statute where plaintiff was a private figure and defendant published accusations that he had committed crimes). In short, New York's anti-SLAPP statute should not apply to Powell's defamatory statements concerning the Plaintiff.[35]

Assuming the anti-SLAPP statute does not apply, since as demonstrated in Plaintiff's response to the Fox Defendants' motion to dismiss, Plaintiff is neither a public figure nor a limited purposes public figure, Plaintiff is required to show "only negligence or, 'where the content ... is arguably within the sphere of legitimate public concern,' that 'the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.'" *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016) (quoting *Ratajack v. Brewster Fire Dep't, Inc.*, No. 14 Civ. 7 (KMK), 178 F. Supp.3d 118, 160 (S.D.N.Y. 2016)). More recent

---

[35] Powell argues, only in a footnote, that in order to survive a motion to dismiss under New York's anti-SLAPP statute, Plaintiff must also meet the standard of CPLR 3211(g)(1), which requires a showing that the action "has a substantial basis in law or is supported by substantial argument for an extension, modification or reversal of existing law." *See* ECF No. 10 n.5. This is an incorrect statement of the law. This Court has already determined that, because "New York's anti-SLAPP law imposes a different, higher burden on the plaintiff at the pleading stage than the Federal Rules of Civil Procedure," the "substantial basis" standard is "inapplicable in federal court." *Nat'l Academy of Television Arts & Sciences, Inc.*, 2021 WL 3271829, at *13.

New York courts, however, have found that the "grossly irresponsible" standard applies only where the person making the statement is a "media publication, broadcaster or journalist" which Powell is certainly not. *Gottwald v. Sebert*, 148 N.Y.S. 3d 37, 46 (1st Dep't 2021).

As established in Section III.A., *supra*, the allegations supporting actual malice necessarily are more than sufficient to establish that Powell acted negligently.

## IV.   THE COURT SHOULD, AT A MINIMUM, PERMIT JURISDICTIONAL DISCOVERY

On a motion to dismiss for lack of personal jurisdiction, absent formal discovery and an evidentiary hearing, a plaintiff need make only a *prima facie* showing that the court has jurisdiction over defendants. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). It is axiomatic that in making this determination, the Court must construe all facts in the light most favorable to Plaintiff. *Id.*; *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir. 2013).

Plaintiff is mindful of the fact that the New York Court determined that it did not have jurisdiction over Powell for the purpose of determining the claims brought against her by Smartmatic. However, Plaintiff urges this Court to consider whether it has jurisdiction over the claims asserted by *Plaintiff* against Powell. At a minimum, Plaintiff requests permission to conduct limited jurisdictional discovery as to Powell, and leave to replead as to Powell to add further jurisdictional allegations based on such discovery. If the Court is not inclined to permit limited jurisdictional discovery, and adopts the ruling of the New York Court, Plaintiff respectfully submits that the Court, as discussed below, exercising its inherent powers, can sever the claims against Powell and transfer them to the District of Columbia, where two related cases against Powell are pending. Alternatively, the Court can direct that a grant of Powell's jurisdictional motion be conditioned on Powell consenting to the re-filing of claims against her in the United

States District Court for the District of Columbia (where, as noted, she is subject to two related lawsuits) and Powell waiving any statute of limitations defense for the period following filing of this action.

### A.   Plaintiff Has Alleged Facts Sufficient to Permit Jurisdictional Discovery

Plaintiff requests permission to conduct limited jurisdictional discovery regarding Powell's connections with New York related to her false and defamatory statements against Plaintiff. "A district court has broad discretion to permit the plaintiff to conduct jurisdictional discovery." *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417 (S.D.N.Y. 2009). Even if a plaintiff has not made a *prima facie* showing of jurisdiction, jurisdictional discovery is appropriate. *Id.* "As long as a 'plaintiff's jurisdictional allegations are neither sparse nor insufficiently specific,' but 'are simply insufficiently developed at this time to permit judgment as to whether personal jurisdiction is appropriate,' a district court is within its discretion to permit jurisdictional discovery. *Id.* (quoting *Texas Int'l Magnetics, Inc. v. BASF Aktiengesellschaft*, 31 F. App'x 738, 738-39 (2d Cir. 2002)). Here, Plaintiff has alleged substantial facts regarding Powell's extensive connection to New York, including her collusive conduct with the New-York-based Fox Defendants prior to December 10, 2020 to advance the false claims, including those concerning the Plaintiff, of election fraud. Further, Plaintiff has alleged that Powell used her New York connections to raise millions of dollars to finance her bogus election fraud theories. At a minimum, discovery regarding Powell's relationship with the Fox Defendants, whether she was paid for any of her appearances, how she orchestrated her appearances on Fox, her role in the creation and publication of the December 10, 2020 4:56 pm. pre-broadcast Tweet, and the process of creating the other defamatory statements, are all highly-relevant jurisdictional topics of further inquiry that bear on the jurisdictional question. *See Goldfarb v. Channel One Russia*, 442 F.Supp.3d 649, 664-65

(S.D.N.Y. 2020) (even where the plaintiff *did not* allege that the New York-based studio was used for the creation of the libelous statements, jurisdictional discovery was permitted in a defamation action).   Given Powell's alleged history of making up claimed facts, Plaintiff respectfully submits that Plaintiff should be permitted to test as well the accuracy of the statements in Powell's Declaration as to her personal contacts with New York.[36]

While the New York Court declined to permit Smartmatic to engage in jurisdictional discovery regarding Powell, it appears such decision, which rested in the discretion of the New York Court, was based at least in part, on the New York Court's understanding that Smartmatic had *already* sued Powell in the District of Columbia, in a matter that was stayed pending the outcome of the motions to dismiss in the Smartmatic NY Action. *See* Smartmatic NY Op. at 53, n.29 ("This Court notes that, on November 12, 2021, counsel for plaintiffs, apparently concerned about whether personal jurisdiction exists over Powell in New York, wrote to the undersigned to advice that plaintiffs had filed a '[p]recautionary [l]awsuit' against Powell in the United States District Court for the District of Columbia (1:21-cv-02995 [CNJ]).").   Hence, the need for jurisdictional discovery may have been viewed as less pressing by the New York Court.

Plaintiff respectfully submits that, in the exercise of judicial discretion, in this action, Plaintiff should be permitted to take limited jurisdictional discovery of Powell.

---

[36] While Powell has submitted a sworn Declaration in support of her jurisdictional motion, Powell's Declaration raises various credibility issues itself, and should be tested in jurisdictional discovery.  For example, Powell may have been subject to a pending Texas bar disciplinary proceeding for her false elections claims and false statements in court, not disclosed in her Declaration, when she simply states that she is a member of the Texas State Bar.  Moreover, Powell's conclusory claim, among her other jurisdictional claims, in her Declaration, that she did not "conduct any business in the state of New York in 2020 and 2021" should be tested in discovery.  And while she states in her Declaration that she does not "own real property" in New York, she does not address, in her Declaration, e.g., whether she used New York's banking or financial system in connection with her efforts, via Fox, to raise millions of dollars through her appearances on Fox during the period at issue in this action, nor does she address her contacts with the New York-based Fox Defendants to raise millions of dollars through her appearances on Fox during the period at issue.  These and other related topics, as addressed herein, *see* n.37, *infra*, warrant basic jurisdictional discovery of Powell.

B.    **This Court Has Personal Jurisdiction Over Powell.**

"In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits . . . ." *DiStefano*, 286 F.3d at 84.  In such a case, the court must first inquire if personal jurisdiction is authorized by the New York long-arm statute, and then determine whether the exercise of personal jurisdiction comports with constitutional due process principles.  *Fischer v. Stiglitz,* No. 15-cv-6266 (AJN), 2016 U.S. Dist. LEXIS 74842, at *3 (S.D.N.Y. June 8, 2016) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)).  New York's long-arm statute, as applicable to defamation cases, provides the court with personal jurisdiction over a non-resident where "the defamation complained of arises from or is connected with the transaction of business within the state." *Bozell*, 142 F. Supp. 2d at 515; *accord* CPLR § 302(a) ("a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:  1.  Transacts any business within the state . . . .").

The Court's inquiry under CPLR §302(a)(1) is two-fold. *First*, the Court must determine whether Plaintiff has alleged facts showing that Powell "transact[ed] any business" in New York. *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 7 N.Y.3d 65, 71 (2006).  All that is necessary to make such a showing is "some act by which the defendant purposefully avails [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg v. Doucet*, 38 A.D.3d 270, 278 (1st Dep't 2007). *Second*, the Court must determine whether Plaintiff has alleged facts showing that his claims "arise from the [business] transactions." *Rushaid v. Pictet & Cie,* 28 N.Y.3d 316, 323 (2016). "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson*

*v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998).  "Even one instance of purposeful activity directed at New York is sufficient to create jurisdiction, whether or not defendant was physically present in the State, as long as that activity bears a substantial relationship to the cause of action." *Corporate Campaign Inc. v. Local 7837, United Paperworkers Int'l Union*, 265 A.D.2d 274, 274-25 (1st Dep't 1999).

Plaintiff alleges facts that that tend to support this Court's exercise of jurisdiction over Powell for his defamation claim, including: (i) Powell made or participated in the making of the defamatory and disparaging statements knowing and intending for them to be broadcast (verbal) and published (written/posted) from New York, New York by Fox, a New York-based organization; (ii) Powell authorized and approved the broadcasting and publication of such statements to be made from New York through Fox, a New York-based news organization; (iii) Powell coordinated with New York based reporters and employees of Fox News regarding the disinformation campaign and her statements before appearing on the Fox News programs at issue in the Complaint; (iv) Powell used the disinformation campaign she operated through and with Fox and Dobbs to solicit money (apparently many millions of dollars) from individuals and corporations – including those located in New York, New York – for contributions to her so-called "legal defense" fund and Super PAC; and (v) Powell intentionally took advantage of New York's unique resources, including serving as the headquarters and publication center for Fox News, to disseminate the disinformation campaign and profit from the disinformation campaign. Compl. at ¶ 16.

In response, Powell submits, as noted, a barebones, conclusory Declaration[37] claiming that she is a resident of Texas and that she did not "conduct any business" in New York in "2020 and

---

[37] As alleged in the Complaint, Powell has an unfortunate history of making fabricated statements to support specious election claims in other lawsuits, and has been sanctioned for such conduct by at least one federal court, who also

2021."  Notably, Powell makes no reference, in her Declaration submitted in support of her Motion, to the defamatory statements made on Fox or her relationship with Fox, and *does not claim* that she did not receive funds or otherwise use the disinformation campaign as a means to collect money for her "legal defense" fund and Super PAC.  Instead, Powell relies on cases from more than 30 years ago (and an entirely different technological world as it relates to television, broadcasting, and internet usage), that completely ignore the allegations against her in this case, and more recent case law on the issue of jurisdiction.

While Plaintiff recognizes that the New York Supreme Court determined that similar facts did not form a basis for jurisdiction at this stage, Plaintiff contends that the questions regarding the veracity of her jurisdictional Declaration, Powell's role in the creation of the defamatory statements in the pre-show Tweet directly about Plaintiff, and the potential payment by New York-based Fox to Powell for her appearances, raise questions about Powell's transaction of business in New York, including with the New York-based Fox Defendants sufficient to, at least, grant jurisdictional discovery.  *See also Goldfarb v. Channel One Russia*, No. 18 CIV. 8128 (JPC), 2021 WL 1392850 (S.D.N.Y. Apr. 13, 2021).

---

referred her to authorities for possible suspension or disbarment. *See* n.33, *supra*. While Powell's conclusory and self-serving Declaration does not address any of the bases on which Plaintiff is asserting jurisdiction over Powell, as noted, the Court should nevertheless reject, or at a minimum view with great skepticism, her self-serving factual claims purportedly pertaining to jurisdiction. Powell's conduct in other litigation, including her serial penchant to make fabricated claims, raises substantial questions facially as to any fact averment she may made as to her contacts with New York.  As set forth herein, Plaintiff should be permitted, at a minimum, to explore through jurisdictional discovery Powell's actual connection to New York, including her coordinated effort with New York-based Defendants Fox and Dobbs to make the defamatory statements concerning Plaintiff and Powell's solicitation of fundraising of New York residents, her role in preparation and publication of the December 10, 2020 4:56 p.m. defamatory Tweet that included an embedded two-page typed document making a variety of defamatory statements regarding Plaintiff (some going even beyond the defamatory statements made regarding Plaintiff on the December 10 Dobbs' broadcast), and Powell's other contacts with New York.  And while she states she is a member of the Texas bar, she fails to disclose that, it appears, she is subject to a disciplinary proceeding by the same Texas bar, and fails to make other disclosures as discussed *supra*. *See* The Guardian, Dec. 2, 2021 "Revealed: how Sidney Powell could be disbarred for lying in court for Trump" (noting that the Texas bar held a closed-door hearing regarding the allegations regarding Powell on November 4, 2021).

1. ***Powell Transacted Business in New York.***

Powell transacted business in New York by uttering or participating in the creation and publication of the defamatory statements and using the defamatory statements as a thinly-veiled fundraising effort.

"Courts have typically found long-arm jurisdiction over defamation claims where the defendant engaged in some purposeful activity within New York that was directly related to the creation of the defamatory work." *Biro v. Conde Nast*, Civ. No. 11 Civ. 4442 (JPO), 2012 WL 3262770, at * 10 (S.D.N.Y. Aug. 10, 2012). Specifically, where activity central to the "creation of the allegedly defamatory work" occurred in New York, the Court can exercise jurisdiction. *See Shamoun v. Mushlin*, No. 12-cv-3541 (AJN), , 2014 WL 12776779, at *6 (S.D.N.Y. Mar. 26, 2014) (internal citations omitted). Such activities include "research, writing, printing, or broadcasting" the defamatory statement. *Id.*; *Goldfarb*, 2021 WL 1392850, at *5 (The requirement that the defendant do "something more" is satisfied when at least part of the defamatory content was created, researched, written, developed, or produced in New York.).

Moreover, "New York courts have held that a non-domiciliary that takes advantage of New York's unique resources in the entertainment industry has purposefully availed itself of the benefits of conducting business in the State, such that long-arm jurisdiction may be asserted where the cause of action arises out of the transaction." *Bozell*, 142 F. Supp. 2d at 533; *see also Goldfarb*, 2021 WL 1392850, at *5.

The same applies to Powell. Powell intentionally took advantage of New York's unique resources in the entertainment industry—particularly New York-based Fox and its broad audience interested in Powell's disinformation campaign—to distribute and profit from her defamatory statements, raising it appears millions of dollars that have resulted in Powell being subject to

federal investigation for such conduct. Compl. at ¶¶ 16, 41.  Fox's programs are broadcast nationwide with multi-million average viewers, with the largest market for those viewers in New York, 17 million.  *Id.* ¶ 14.  Powell knew of Fox's broadcasting reach and specifically used that reach in furtherance of her own platform.  Powell's appearance on Lou Dobbs' program ensured that millions of individuals would hear her statements through Fox's New York-based platforms.  Powell purposefully availed herself of the benefits of New York's unique resources in the media industry by enlisting and using Fox to disseminate her defamatory statement.

In addition, Powell authorized and approved the broadcasting and publication of her statements to be made from New York through New York-based Fox and coordinated with New York-based reporters, producers, and other employees of Fox News regarding her disinformation campaign before appearing on the Fox News programs outlined in the Complaint.  *Id.* at ¶ 16. Powell seeks to minimize her activities to passive distribution of her statements that somehow *ended up* in New York, an incorrect contention which has yet to be tested in discovery.  ECF No. 30 at 5-6.  Plaintiff believes that basic discovery will confirm that Powell was not passive in any respect in her coordinated efforts with the New-York-based Fox Defendants.

The cases that Powell then relies on are similarly inapposite.  In one, the statements at issue were private letters sent from outside of New York that the court determined were not commercial transactions of business (*see Kim v. Dvorak*, 230 A.D.2d 286 (3d Dep't 1997)); in another, the court exercised jurisdiction over a California organization for sending certain letters into New York, however declined to exercise jurisdiction over individual board members who were also immune from suit (*Pontarelli v. Shapero*, 231 A.D.2d 407, 410 (1st Dep't 1996)); and finally, in *Strelsin v. Barrett*, the defendant performed a routine in Los Angeles, which was recorded and distributed by an entirely different entity such that the defendant had no control or, in some cases,

knowledge over where the material was used or broadcast.  36 A.D.2d 923, 923 (1st Dep't 1971).[38]

Powell intentionally directed the statements into New York, using New York-based Fox, and commercialized such statements by using them as fundraising advertisements and directing audience members to her fundraising page.  Powell *chose* to avail herself of the privilege of using New York-based Fox, its programs, and its broadcasts to reach her desired and targeted audience, thus subjecting herself to this Court's jurisdiction.  The Court should, at a minimum, allow Plaintiff to take jurisdictional discovery to develop a full record on this issue.

In addition to creating and publishing the defamatory statements in New York, Powell used her disinformation campaign to solicit money from individuals and corporations—including those located in New York—for contributions to her so-called "legal defense" fund and Super PAC. (Compl. at ¶ 16.)  As alleged in the Complaint, Powell began asking for donations as early as November 10, 2020, a week after the election, telling viewers on *Lou Dobbs Tonight* that she had started a website called "defendingthrepublic," where they could make donations. *Id.* at ¶ 41. According to a recent report, Powell's organization, which apparently was not formed until weeks later and ultimately raised millions of dollars, may currently be under federal investigation.  *Id.*

Moreover, in the December 10, 2020 interview with Lou Dobbs where Powell specifically defamed Plaintiff, she again solicited traffic and visits to her website, which was a call for donations and to purchase merchandise.[39]  On the broadcast, Powell stated:

---

[38] Notably, *Strelsin* is a case in 1971, almost 50-years before Powell appeared on Fox.  Television broadcasts and the ability to use such broadcasts to drive internet behavior (*i.e.*, directing traffic to a website to provide donations) has completely evolved and changed during that time, such that the circumstance of *Strelsin*, while different, are also nearly impossible to use as a comparison for current practices, such as those engaged by Powell here. Moreover, as identified herein, even cases at that time observed a distinction between passive utterances in New York and creation and broadcasting of defamatory statements within the state.

[39] Using the internet archive website www.thewaybackmachine.com, numerous archives of "defendingtherepublic.org" captured on December 10, 2020 and December 11, 2020, show the homepage of the website, with the call for donations as follows:

for anybody who's willing to look at the real evidence, I've uploaded a ton of it on our website [unintelligible] defendingtherepublic.org and Twitter is even trying to destroy our new website kraken-wood.com where we're also trying to get the word out to the American people on what has been happening here and the truth and upload documents.  Twitter took our account down the first night.[40]

Powell then used her interactive websites to collect contributions and sell merchandise after promoting the sites on the Fox programs.  Powell's use of these websites, which were accessible to residents of New York, alone constitutes transacting business in New York sufficient to confer jurisdiction over her.  *Bozell*, 142 F. Supp. 2d at 533.

### 2.   *The Claims Arise From Powell's Transacting of Business*

The "arise-from" prong of CPLR § 302(a)(1) is a "relatively permissive" standard that generally requires that "in light of all of the circumstances, there must be an 'articulable nexus' or 'substantial relationship' between the business transaction and the claim asserted."  *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012) (citations omitted).  "[C]ausation is not required."  *Id.*  The Plaintiff must simply allege "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *Id.* at 328.

There is no question that the defamatory claims based on statements made by Powell during her appearances on Fox and, in particular, *Lou Dobbs Tonight*, and her profiting off of those statements, arise from such conduct.  Specifically, Plaintiff alleges that Powell defamed him through statements made and broadcast by New York-based Fox; Powell's transactions of business

---

Defending the Republic was established by Sidney Powell to defend and to protect the integrity of elections in the United States. Please contribute below, using our secure system. Your donation will support our mission and the welfare of the American Republic.
The website kraken-wood.com also appears to seek donations around the same time.
[40] *See* Compl. at ¶ 101, n.100 (Sidney Powell raises questions about security of voting machines, Fox Business (Dec. 10, 2020), https://video.foxbusiness.com/v/6215520845001/#sp=show-clips.

all involve those specific appearances and the use of those appearances to fundraise or direct traffic to her websites.  Clearly there is a "substantial relationship" and "articulable nexus" between the business transacted and the claims. Recognizing as such, Powell does not address this prong of the analysis at all.

### 3.  *The Exercise of Jurisdiction Over Powell Comports with Due Process.*

"Exercise of personal jurisdiction under the long-arm statute must comport with federal constitutional due process requirements." *Rushaid*, 28 N.Y.3d at 330.  For that reason, "[i]t is well established that a non-domiciliary must have 'certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 331.  (second alteration in original) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945))  "It is 'rare' for personal jurisdiction to be permitted under the long-arm statute and prohibited by due process considerations." *James v. IFinex, Inc.*, 185 A.D.3d 22, 29 (1st Dep't 2020) (quoting *Rushaid*, 28 N.Y.3d at 331).

Powell claims that "[n]othing in the Complaint suggests that Powell could reasonably have foreseen being haled into court in New York." ECF No. 30 at 8.  Not so.  Powell clearly misreads or misstates the allegations in the Complaint.  As alleged therein, Powell purposefully availed herself of the privilege of conducting activities in New York by: (1) creating and participating in the broadcasting of defamatory statements about Plaintiffs, broadcast from New York by a New York-based news organization; (2) taking advantage of New York's unique position as a leader in the television media industry, such that her defamatory statements would reach the broadest possible audiences; (3) creating and advertising interactive websites soliciting donations and sales from New York websites; and (4) promoting her interactive websites that specifically solicit donations on news programs broadcasted from a New York-based news organization.

Powell does not actually argue that jurisdiction over her would offend the notions of fair play and substantial justice.  ECF No. 30 at 7-8.  Nor could she plausibly do so.  Powell should have expected to answer for her misconduct in New York given its central role in the creation and dissemination of the defamatory content.  Neither law nor equity permits Powell to perpetrate a rhetorical smash and grab in New York, and then flee back to Texas, or Virginia (where she apparently has an office in property she directly or indirectly recently purchased just outside D.C.), to escape the devastating consequences of her tortious behavior.

### C. Alternatively, the Court Can Sever and Transfer the Claims Against Powell, or Condition any Dismissal of the Claims Against Powell on Powell Consenting to Jurisdiction in the District of Columbia, where two Related Actions against her are Pending

As noted above, there are two related actions against Powell pending in the United States District Court for the District of Columbia, one (by Dominion) where Powell's motion to dismiss for lack of personal jurisdiction and on the merits was denied by District Judge Nichols, and a second (by Smartmatic), also assigned to Judge Nichols, which had been stayed pending a ruling by the New York Supreme Court on Powell's motion to dismiss for lack of jurisdiction in Smartmatic.  *See* Smartmatic NY Op. at 48 n.26 (noting that Dominion had filed a defamation action against Powell in the DC District Court, which is moving to discovery, and Smartmatic filed a suit against Powell in the same Court, which was stayed pending a ruling by the New York Court).[41]  The New York Court observed that, in November 2021, Smartmatic filed a "[p]recautionary [l]awsuit against Powell in the United States District Court for the District of Columbia, to guard against the potential expiration of "any statute of limitations with respect to

---

[41] Judge Nichols has directed that Smartmatic and Powell provide a "status report" on the status of the New York Court's determination of Powell's motion to dismiss within fourteen days of such ruling. *See* Minute Order, *Smartmatic USA Corp. et al. v. Powell*, Case No. 1:21-cv-02995-CJN (D.D.C. Nov. 30, 2021). Since the New York Court issued its ruling on March 8, 2022, Plaintiff anticipates a "status update" being filed on March 22, 2022, and reserves the right to supplement this response once such "status update" in the DC Action has been filed.

[Powell] should this Court  [i.e., New York Supreme Court] find that it lacks personal jurisdiction over her." *Id*. n. 29 (citing NYSCEF No. 844).  The New York Supreme Court further noted that Smartmatic had advised the New York Court, on December 1, 2021 (the same day Plaintiff's lawsuit was filed), that Smartmatic had "successfully moved to stay the DC [Smartmatic] action pending the determination of Powell's instant motion to dismiss." *Id*. (*citing* NYSCEF No. 845). The reason, according to Smartmatic, for its "precautionary" lawsuit in DC was that unlike many jurisdictions, DC did not provide for tolling of the statute of limitations where a case is re-filed in another jurisdiction after a prior dismissal for lack of personal jurisdiction, noting that the District of Columbia was one "of a minority of jurisdictions that has not adopted a general equitable 'saving' statute to toll statutes of limitations." NYSCEF No. 845.  Given the one-year statute of limitations applicable in New York to defamation claims (which is the same statute of limitations in DC), it appears Smartmatic wanted to have a second lawsuit against Powell pending of record in the District of Columbia prior to the expiration of any claimed statute of limitations on its defamation claims against Powell, for a lawsuit filed against her in the District of Columbia.

Powell's DC contacts are fairly straightforward and extensive during the period at issue, and as the Dominion DC Court held, provide a clear basis for jurisdiction over Powell in the District of Columbia. In Dominion's DC Action against Powell, Dominion alleges that Powell conducted her interview with Dobbs on December 10 "from a hotel room at the Trump International Hotel in Washington DC." *See* Dominion DC Action  ¶ 181(z).  In Smartmatic's "precautionary" lawsuit against Powell filed in the District of Columbia, Smartmatic similarly alleges that "[o]n December 10, Mr. Dobbs and Ms. Powell returned for another round of disinformation on Lou Dobbs Tonight….Ms. Powell joined the program from a hotel room she rented in the Trump International Hotel in Washington, D.C."  Smartmatic DC Action, ¶ 109.

Judge Nichols, in rejecting Powell's jurisdictional motion, specifically noted that Powell "traveled to and rented hotel rooms here [in D.C.] while filming interviews in which she repeated her allegedly defamatory statements."  Dominion DC Op. at 30. Judge Nichols otherwise rejected Powell's arguments that she was not subject to long-arm jurisdiction in D.C., and further observed that "it is enough that she has 'purposefully engaged in some type of *commercial or business-related* activity directed at District residents.'" Dominion DC Op. at 31.[42]  Powell clearly is subject to personal jurisdiction in the District of Columbia, if this Court concludes that it lacks personal jurisdiction with respect to her, and does not grant Plaintiff leave to take limited jurisdictional discovery of Powell.[43]

Based on the pendency of the other claims against Powell in the United States District Court for the District of Columbia, in the event the Court determines to dismiss Powell from this case, this Court can sever Plaintiff's claims against Powell from those asserted against the Fox Defendants, and transfer Plaintiff's claims against Powell to the District of Columbia, and Plaintiff reserves all rights in such regard.

This Court has the power sever the claims against Powell pursuant to Federal Rule of Civil Procedure 21, and to transfer the claims to any district "in which it could have been brought"

---

[42] Judge Nichols rejected the balance of Powell's jurisdictional arguments, holding, for example, that personal jurisdiction over Powell in DC was proper under the Due Process Clause when "as here, the defendant is physically within the District when she took the alleged action." *Id.* note 15.  The Court also noted Powell other extensive contacts with DC, including her representation of Michael Flynn and her law firm  attorneys listing a DC business address on court filings. *Id.*  Further, both the Dominion and Smartmatic DC actions, as well as Plaintiff's lawsuit, reference Powell's infamous appearance press conference by Powell on November 19 (which occurred in DC), followed by her appearance on Dobbs' show.  See Complaint ¶ 64; Dominion DC Op. at 6 ("On November 19, Giuliani and Powell appeared together at a press conference at Republican National Committee headquarters in Washington, DC.").

[43] Plaintiff believes that Powell's Declaration and Affidavit, respectively, submitted to the DC Court and the NY Court, which mirror the one she has submitted here, may also have been less than forthright, suggesting the need to test even Powell's basic statements in her Declaration to limited jurisdictional discovery, a factor not squarely addressed by the New York Court in its ruling.  Powell Aff. (D.D.C. Mar. 22, 2021) [ECF No. 23-3]; Powell Aff. (Sup. Ct. N.Y. Cnty. Apr. 6, 2021) [NYSCEF No. 291].  That alone suggests that discovery into Powell's connections with New York is necessary.

pursuant to 28 U.S.C. § 1406.  *See Westvaco Corp. v. Viva Mgmt. Ltd.*, No. 00 CIV. 9399(LTS)(KNF), 2003 WL 21136729, at *3 (S.D.N.Y. May 15, 2003) (holding that the court lacked personal jurisdiction over several defendants, but severing those claims and transferring them to an appropriate district).

Rule 21 provides that "[a] court may . . . sever any claim against a party."  Fed. R. Civ. P. 21.  The decision to do so "is committed to the sound discretion of the trial court."  *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir. 1988).  While the courts in the Second Circuit will sever for numerous reasons, one such reason is "prejudice would be avoided if severance were granted . . . ."  *See Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 502-03 (S.D.N.Y. 2013).  Moreover, severance can be granted to facilitate a transfer.  *See Wave Studio, LLC v. General Hotel Management Ltd.*, Civ. No. , 2017 WL 972117, at *10 (S.D.N.Y. Mar. 10, 2017).

Here, where severance would facilitate the transfer of the claims against Powell to a jurisdiction that has already determined that it has jurisdiction over Powell on substantially similar claims, that would avoid any prejudice to Plaintiff due to the good faith belief that jurisdiction was proper in New York.

This Court has discretion "in the interest of justice" to transfer a case "to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  As noted, read in conjunction with Federal Rule of Civil Procedure 21, it is well-settled that such a transfer is appropriate as to a severed defendant over whom jurisdiction exists in the transferee forum.  Thus, claims against a defendant can be transferred to a district where the defendant is subject to personal jurisdiction.  *Gibbons v. Fronton*, 661 F. Supp. 2d 429, 434 (S.D.N.Y. 2009).  The Supreme Court has determined that a court may transfer, instead of dismiss, when the court has no personal jurisdiction over a defendant.  *Goldlawr, Inc. v. Heiman*, 396 U.S. 463, 465 (1962) ("Nothing in [the] language

[of 28 U.S.C. § 1406] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants."); *see also Gibbons*, 661 F. Supp. 2d at 434.

Courts have repeatedly determined that transfers under 28 U.S.C. § 1406(a) are in the interests of justice where the plaintiff's claims would otherwise be time-barred if they were outright dismissed. *See Daniel v. Am. Bd. Of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) ("A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be time-barred on refiling in the proper forum."); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (an important purpose of 28 U.S.C. § 1406(a) is to address where dismissal would result in the plaintiff being barred from refiling the case in the proper forum because of the statute of limitations); *see also Gibbons*, 661 F. Supp. 2d at 434.

The Court *does not* need to make a determination regarding personal jurisdiction to sever and transfer claims against a party to another forum in the interest of justice. *See Goldlawr, Inc.*, 369 U.S. at 465; *see also TLD Am. Corp. v. Mazuma Cap. Corp.*, No. 3:15-CV-39 (SRU), 2015 WL 5116768, at *3 (D. Conn. Aug. 28, 2015) ("A district court has the power to transfer a case to another judicial district under 28 U.S.C. §§ 1404(a) or 1406(a) if it is in the interests of justice to do so, even where it lacks personal jurisdiction over one or more defendants.").

As to Powell, in the event this Court determines that it does not have personal jurisdiction over her, this Court instead of dismissing the claims against Powell can sever Plaintiff's claims against Powell and transfer such claims to the United States District of Columbia.  Plaintiff had a good faith belief that there was jurisdiction over his claims against Powell in New York, given the relationship between Powell and Fox in connection with the defamatory statements.  It was not until after the filing of this case and the filing of Powell's motion to dismiss that the New York

54

Court recently reached a different conclusion.  If this Court were to outright dismiss Plaintiff's claims against Powell and Plaintiff re-filed his claims against her in the District of Columbia (where two related actions against Powell are pending), Powell would likely argue that the statute of limitations for Plaintiff's defamation claims against her expired after this action was commenced and while *this action* was ongoing.  While Plaintiff would certainly take the position that the pendency of this action tolled such claims, it is not clear that such a position would be accepted by the District of Columbia, thus, running the risk that Plaintiff's compelling defamation claims against Powell would be time-barred.  Thus, to avoid such an injustice, Plaintiff's claims against Powell can be transferred rather than outright dismissed, and Plaintiff reserves all rights in such regard.[44]

Alternatively, Plaintiff respectfully submits that this Court can condition any dismissal of Powell on Powell (i) consenting to Personal jurisdiction of the claims asserted against her herein being filed in the United States District Court for the District of Columbia, and (ii) waiving any claim that the statute of limitations expired during the pendency of this action.  Plaintiff reserves all rights in such regard as well.  In the case of Plaintiff, it is undisputed that Plaintiff timely filed his defamation lawsuit on December 1, 2021 within the one year statute of limitations for such claim (for defamatory statements made on December 10, 2020).  Thus, in the event, *arguendo*, the Court grants Powell's motion to dismiss on the grounds of lack of personal jurisdiction, and does not afford Plaintiff jurisdictional discovery and leave to replead, Plaintiff submits that this Court alternatively can condition any dismissal of the claims against Powell on the above conditions. This Court plainly has the authority to do so (*see Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-

---

[44] Per a prior Order of the District of Columbia, Smartmatic and Powell have to shortly provide the District of Columbia Court with an update on the status of the stay in that action against Powell, given the recent ruling by the New York Court in the Smartmatic NY Action. Plaintiff reserves the right to update the Court based on developments before the DC Court on this issue.

GHW, 2020 WL 5836517, at *14 (S.D.N.Y. Sept. 30, 2020)) and courts have expressly conditioned the dismissal of claims for lack of personal jurisdiction or for lack of *forum non conveniens*, on such waiver by the Plaintiff.  *Id.  Jota v. Texaco, Inc.*, 157 F. 3d 153, 159 (2d Cir. 1998).  While Plaintiff intends to pursue his claims against the Fox Defendants to trial before this Court (and Fox has not objected to the jurisdiction of this Court), in the event the Court determines that Powell is not subject to jurisdiction before this Court, the Court can direct as a condition of dismissal of claims against Powell that Powell consent to be subject to suit (and waive any statute of limitations defense) in the District of Columbia, where related litigation against Powell is pending before United States Judge Nichols.[45]

Accordingly, in the event the Court determines that it does not have jurisdiction over Powell and jurisdictional discovery is not appropriate, this Court can sever Plaintiff's claims against Powell and transfer those claims to the District of Columbia or condition any jurisdictional dismissal of Powell on her agreement to be sued in the District of Columbia (waiving both any personal jurisdiction and statute of limitations defenses there).[46]  Plaintiff respectfully reserve all rights on this issue.

## CONCLUSION

For all the foregoing reasons, Powell's Motion should be denied.  Alternatively, Plaintiff,

---

[45] Plaintiff recognizes that Powell may be subject to jurisdiction as well in Virginia state court (where tolling would be recognized) or in the Eastern District of Virginia.  *See* Va. Stat. 8.01-229 ("[i]f any action is commenced within the prescribed limitation period for any cause abate or is dismissed without determining the merits, the time such action is pending shall not be computed as part of the period within which such action may be brought, and another action may be brought within the remaining period.").  Powell, or an entity owned and operated by Powell, purchased a townhouse there and cannot credibly claim to lack jurisdictional contacts in Virginia, or in the Eastern District of Virginia, but given the pendency of related actions against her before Judge Nichols, it would be more efficient, if the claims against her are not pursued in this District to a ruling on jurisdiction as to Powell, to have claims against her pending before the same DC Judge who currently has two other related cases against her.

[46] Notably, while there are two cases pending against Powell in the District of Columbia, Smartmatic's claims against the Fox Defendants are proceeding in New York state court, and Dominion's claims against Fox News and Fox Corporation are proceeding in Delaware Superior Court.  Put another way, none of the related claims by Smartmatic or Dominion against the Fox Defendants are being pursued in the District of Columbia.

at a minimum, should be permitted to take jurisdictional discovery of Powell and to the extent any portion of Powell's Motion is granted, Plaintiff should be granted leave to replead pursuant to Federal Rule of Civil Procedure 15(a).  If the Court is not inclined to accord Plaintiff jurisdictional discovery or leave to amend to further address the jurisdictional issues, the Court can either sever the claims asserted against Powell and pursuant to 28 U.S.C. § 1406 transfer them to the District of Columbia or condition any jurisdictional dismissal on Powell consenting to jurisdiction in the United States District Court of the District of Columbia and waiving any defense based on the statute of limitations and personal jurisdiction.

Dated: March 18, 2022

**BROWN RUDNICK LLP**

/s/ Sigmund S. Wissner-Gross
Sigmund S. Wissner-Gross, Esq.
Chelsea Mullarney, Esq.
Jessica N. Meyers, Esq.
7 Times Square
New York, New York 10036
Tel.  (212) 209-4800
swissner-gross@brownrudnick.com
cmullarney@brownrudnick.com
jmeyers@brownrudnick.com

Benjamin G. Chew, Esq. (*pro hac vice*
pending)
601 Thirteenth Street NW
Washington, D.C. 20005
Tel.  (202) 536-1785
bchew@brownrudnick.com

Camille Vasquez (*pro hac vice* forthcoming)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Tel. (949) 752-7100
cvasquez@brownrudnick.com

*Attorneys for Plaintiff*