ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/26/22
```

MAJED KHALIL,

                              Plaintiff,

           - against -                          21 Civ. 10248 (LLS)

FOX CORPORATION, FOX NEWS NETWORK LLC,           OPINION & ORDER
and LOU DOBBS,

                              Defendants.

     Plaintiff brought this action against Defendants for four

counts of defamation per se. Defendants move to dismiss the

complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state

a claim upon which relief can be granted. For the following reasons,

the motion is denied.

### Background

     The plaintiff in this action is Majed Khalil, a Venezuelan

businessman. Dkt. No. 1 ("Compl.") at ¶ 8. During the course of

the events giving rise to this action, he was also referred to

as "Khalil Majed Mazoud." Id. Defendants in this case are Lou

Dobbs, Fox Corporation and Fox News Network, LLC. Defendant Lou

Dobbs is a Fox personality, who hosted the show *Lou Dobbs

Tonight*. Defendant Fox News Network, LLC is wholly owned by

Defendant Fox Corporation (together "Fox" and together with

Dobbs "Defendants"). Id. at ¶ 9. The Complaint alleges that Dobbs

was under contract with Fox during the time period when the

allegedly defamatory remarks were made. Id. The Complaint also

- 1 -

alleges that Fox controlled multiple social media accounts related to Lou Dobbs, including a Twitter account in Dobbs' name, which has millions of followers. Id.

The allegations in the Complaint stem from statements made by Lou Dobbs and Sidney Powell on *Lou Dobbs Tonight* and related Twitter posts following the 2020 election. During the show, the Complaint alleges that Dobbs held himself as a reporter of facts, not opinion. Id. at ¶ 11. Fox described his show as "the #1 program on any business network among total viewers." Id.

On November 7, 2020, Fox projected that President Trump lost the 2020 Presidential Election. Id. at ¶ 36. Almost immediately following the election, Fox news channels, which generally cater to a conservative audience, began to report on theories that the election was fraudulent. Id. at ¶ 40. One such theory of election fraud centered around two voting machine companies, Dominion Voting Systems ("Dominion") and Smartmatic Corporation ("Smartmatic"), which were allegedly formed by various individuals from Venezuela with the purpose of rigging elections. See generally id. at ¶ 36 -45.

Many of the accusations against Dominion and Smartmatic stemmed from Sidney Powell, who appeared repeatedly as a guest on Fox television programs, including *Lou Dobbs Tonight*. Id. Powell told Fox viewers that Dominion was using software to either flip votes from votes for then-President Trump to Joe

Biden or to simply add votes for Joe Biden. Id. at ¶ 40. However, many prominent politicians, organizations, and government agencies countered Powell's narrative of the 2020 election, referring to her theories as "insane," "a national embarrassment," "unhinged," and "crazy." Id. at ¶ 41. Even then-President Trump's campaign team distanced itself from her, stating, "Sidney Powell is practicing law on her own. She is not a member of the Trump Legal Team. She is also not a lawyer for the President in his personal capacity." Id. at ¶ 73.

Both Dominion and Smartmatic also took steps to clarify that they were not involved in an election-rigging scheme. As early as November 12, 2020, Dominion began circulating a series of emails entitled, "SETTING THE RECORD STRAIGHT: FACTS & RUMORS" that contained links to independent sources disproving the false claims about Dominion's alleged role in rigging the election. Id. at ¶ 46. These emails were sent to Fox reporters and producers. Id. A Dominion representative also spoke with Fox Executive Editor Jay Wallace about the false information being spread about Dominion. Id. at ¶ 58. Smartmatic emailed with Fox Business Network and informed Dobbs' coordinating producer that Smartmatic only provided software to support Los Angeles County in the election, and not—as Fox claimed—to the state of Georgia. Id. at ¶ 60.

Furthermore, several election experts in November publicly stated that there was no credible evidence that the 2020 election was compromised through a computer alteration scheme. Id. at ¶ 46.

Nonetheless, on December 10, 2020, the @LouDobbs account, run by Fox, tweeted, "the 2020 Election is a Cyber Pearl Harbor: The leftwing establishment have aligned their forces to overthrow the United States government #MAGA #AmericaFirst #Dobbs." Id. at ¶ 88-90.  In the tweet, the account posted a document, which refers to Khalil as one of "four names" "people need to get familiar with," and claims that Khalil is "a Venezuelan of Lebanese origin, who is the right hand and business front man of Jorge Rodriguez.  He has been the effective 'COO' of the election project, under Chavez and Maduro. Khalil is a liaison with Hezbollah." Id.

The document posted further stated, "We have a warning to the mainstream media: you have purposely sided with the forces that are trying to overthrow the US system. These four people and their collaborators executed an electoral 9-11 against the United States, with the cooperation and collusion of the media and the Democrat Party and China. It is a cyber Pearl Harbor. We have identities, roles, and background of Dominion. Smartmatic people. This will turn into a massive RICO filing. It is Smartmatic, Dominion Voting Systems, Sequoia, SGO … We have

- 4 -

technical presentations that prove there is an embedded controller in every Dominion machine… We have the architecture and systems, that show how the machines can be controlled from external sources, via the internet, in violation of voting standards, Federal law, state laws, and contracts." Id.

According to the Complaint, the document had no indication that it was authored or originated from a source other than the defendants. Id. at ¶ 90. The Complaint alleges that those statements regarding Khalil were all false. Id. at ¶ 91.

Later that day, Dobbs hosted Powell during his on-air show, telling viewers that Powell would discuss a "Pearl Harbor style cyber-attack on the 2020 election." Id. at ¶ 94. Dobbs then displayed a graphic with the title "Four Names You Need to Know According to Sidney Powell," which included Khalil's name and referred to him as a "Rodriguez front man." Id. Dobbs asked Powell, "you say these four individuals led the effort to rig this election. How did they do it?" Id. at ¶ 95. Powell responded by accusing Khalil, along with three other individuals, of having "designed and developed the Smartmatic and Dominion programs and machines that include a controller module that allows people to log in and manipulate the vote even as it's happening." Id.

Dobbs told Powell he would "like to put up this element from your investigation if we could have that full screen up so

that we could all go through that with the audience. Because
it's important as we look at these four names, we're talking
about very large, a very large foreign intrusion and
interference in the, in the election of 2020." Id. at ¶ 101. At
the end of the show, Dobbs informed Powell that he would "gladly
put forward your evidence that supports your claim that this was
a cyber Pearl Harbor, we have tremendous evidence already… of
fraud in this election but I will be glad to put forward on this
broadcast whatever evidence you have." Id.

After the show was broadcast, Fox and Dobbs posted videos
on Twitter with the caption that "@SidneyPowell1 reveals
groundbreaking new evidence indicating our Presidential election
came under massive cyber-attack orchestrated with the help of
Dominion, Smartmatic and foreign adversaries." Id. at ¶ 107. The
Complaint alleges that no such evidence was ever revealed and
never existed.

The Complaint alleges that none of the Defendants ever
approached Khalil to seek confirmation or denial of the claims
against him regarding election fraud. Id. at ¶ 109.

## Legal Standards

### I.  Motion to Dismiss
To survive a motion to dismiss under Federal Rule 12(b)(6), "a
complaint must contain sufficient factual matter, accepted as

- 6 -

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"When evaluating a motion to dismiss, the Court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am., 551 F. Supp. 3d 320, 325 (S.D.N.Y. 2021), aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am., No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).

## II.  Judicial Notice

Defendants ask the Court to take judicial notice of a number of articles constituting extrinsic evidence in reviewing their motion to dismiss. While a district court generally must limit itself to the facts stated in the complaint or in documents attached to or incorporated into the complaint, the Court has discretion to take judicial notice of certain extrinsic evidence. When determining whether a plaintiff is a public figure in defamation cases, courts "can take judicial notice of the existence of articles written by and about [the plaintiff], though not for the truth of the matter asserted in

the documents themselves." See, e.g., Biro v. Condé Nast, 963
F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013), aff'd, 807 F.3d 541
(2d Cir. 2015).

### III. Choice of Law

Although neither party briefs the issue, a brief choice of
law analysis is required. Federal courts sitting in diversity
apply the choice of law rules of the forum state. E.g., Lee v.
Bankers Tr. Co., 166 F.3d 540, 545 (2d Cir. 1999). In tort
cases, including defamation cases, "New York applies the law of
the state with the most significant interest in the litigation."
Id. (internal citations and quotations omitted). In weighing
interests, New York distinguishes between "conduct regulating"
and "loss allocating" rules. Id. "A rule that governs
defamatory or libelous conduct can be considered conduct-
regulating." Kinsey v. New York Times Co., 991 F.3d 171, 176-77
(2d Cir. 2021) (internal citations and quotations omitted). If
conduct regulating rules are in conflict, New York law usually
applies the law of the place of the tort ("*lex loci delicti*").
Id.

In light of Dobbs' and Fox Corporation's domicile in New
York, New York's interest in regulating the conduct of its
media, the allegation that the purportedly defamatory statements
emanated from New York, the diffuse effects of the harm
Defendants' conduct allegedly caused, and the lack of any

- 8 -

allegations as to Venezuela's interest in policing defamation claims, New York has a more significant interest in and relationship to the case. See Cabello-Rondon v. Dow Jones & Co., Inc., 2017 WL 3531551, at *3 (S.D.N.Y. Aug. 16, 2017), aff'd, 720 F. App'x 87 (2d Cir. 2018) (applying New York law to a defamation case involving a Venezuelan plaintiff). New York law applies to this dispute.

While New York law applies, the Court's decision is "subject to applicable first amendment requirements." L. Firm of Daniel P. Foster, P.C. v. Turner Broad. Sys., Inc., 844 F.2d 955, 961 (2d Cir. 1988).

## IV. Defamation

Under New York law, the elements of defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, that causes special harm or constitutes defamation per se. E.g., Dillon v. City of New York, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1999). Whether the statements are defamatory is a legal question for the Court. Biro v. Conde Nast, 883 F. Supp. 2d at 456-57. However, whether a plaintiff has actually been defamed by the statement is a question of fact to be determined by the jury. Id.

"In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context

- 9 -

of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." Dillon, 261 A.D.2d at 38.

"Under New York law, 'all who take part in the procurement, composition and publication of a libel are responsible in law and equally so.'" Restis v. Am. Coal. Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 717 (S.D.N.Y. 2014) (quoting Brown v. Mack, 185 Misc. 368, 56 N.Y.S.2d 910, 916 (N.Y.Sup.Ct., Kings Cnty. 1945)).

## Discussion

I.   **Falsity**

Throughout the Complaint, Khalil asserts that the statements made by defendants are false. In direct contradiction to the statements made by Dobbs and Powell, the Complaint alleges that Khalil did not lead the effort to rig the 2020 election, did not design and develop Smartmatic and Dominion programs and machines to manipulate votes, did not create an election system to benefit Venezuela and Hugo Chavez, and did not participate in a "cyber Pearl Harbor in the 2020 election." The Complaint alleges that Khalil was not a political figure, a "front man" for Rodriquez, in liaison with Hezbollah, a collaborator in the execution of a 9-11 attack against the

- 10 -

United States, nor a Smartmatic or Dominion employee.  The
Complaint further alleges that neither Fox, Dobbs, nor Powell
had "tremendous evidence" of Khalil's participation in rigging
the election in 2020."

The Complaint sufficiently alleges falsity.

## II.  Defamatory

The gravamen of a defamation action is an injury to
reputation. A defamatory statement is one that exposes an
individual "to public hatred, shame, obloquy, contumely, odium,
contempt, ridicule, aversion, ostracism, degradation, or
disgrace, or ... induce[s] an evil opinion of one in the minds
of right-thinking persons..." World Wrestling Fed'n Ent., Inc.
v. Bozell, 142 F. Supp. 2d 514, 527 (S.D.N.Y. 2001) (quoting
Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 177 (2d
Cir.2000)) (alteration in original).

The statements challenged in the Complaint regarding Khalil
are defamatory. They refer to him as the "COO" of the election
fraud and describe him as the "righthand and business front man
of Jorge Rodriguez," a "foreign adversary," and a "liaison with
Hezbollah."  Defendants also accused Khalil of executing "an
electoral 9-11 against the United States."

The context of the tweets and statements on Lou Dobbs
Tonight confirms the defamatory nature of these statements.
Defendants refer to the actions Khalil allegedly helped

- 11 -

orchestrate as a "Pearl Harbor style cyber-attack on the 2020 election."

The Complaint sufficiently alleges that the statements regarding Khalil are defamatory.

### III. Privileges

Defendants claim they are protected by privileges, which make the allegedly defamatory statements inactionable, including the Fair Report doctrine and the Neutral Report doctrine. Dkt. No. 26 ("Mot. to Dismiss"). The First Amendment's protection of the freedom of speech informs both doctrines. Edwards v. Nat'l Audubon Soc., Inc., 556 F.2d 113, 120 (2d Cir. 1977).

Neither of those doctrines protect the challenged statements in this case.

### A. Fair Report doctrine

The Fair Report doctrine is codified in New York law. Under Section 74 of the New York Civil Rights Law, "a civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74 (McKinney). Under Section 74, "a report of an official proceeding that is 'fair and true' is protected by an 'absolute privilege,' and this privilege is 'not defeated by the presence

of malice or bad faith.'" Id.; Ctr. for Med., 551 F. Supp. 3d at 328-29 (internal citations omitted). Section 74 covers any legislative proceeding, judicial proceeding, or other official proceeding. Id.

"The protections of Section 74 also extend to reports of judicial proceedings that are mixed with commentary or opinion," and "courts look to the context of the statements to determine whether a reasonable observer would find that they constitute reports of a proceeding." Id. Courts in New York broadly construe the meaning of "official proceeding." Id. The test for determining whether something is an official proceeding "is whether the report concerns actions taken by a person officially empowered to do so." Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc., 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009) (quoting Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York, 101 A.D.2d 175, 182 (N.Y.App. 1st Dep.1984)).

The privilege also "extends to the release of background material with regard to the case, so long as the statement is a substantially accurate description of the allegation," including "where the description of the case is offered by a party's legal counsel." Biro, 883 F. Supp. 2d at 478 (quoting Fishof v. Abady, 280 A.D.2d 417, 417 (2001)) (internal quotation marks omitted).

- 13 -

While Defendants argue that the challenged statements constitute a report on an "ongoing investigation into electoral fraud, seemingly at the President's behest," Dkt. No. 47 ("Opp. Mot. to Dismiss") at 19, this argument fails. Powell was not working on a case in an official capacity nor on behalf of a public agency during her investigation. In fact, on November 22, 2020, well before the December 10, 2020 statements, the Trump Campaign released a statement stating that "Sidney Powell is practicing law on her own. She is not a member of the Trump Legal Team. She is also not a lawyer for the President in his personal capacity." Compl. at ¶ 73.

More damning, however, is that at no point did Dobbs or Powell attribute the statements about Khalil to an official investigation or a judicial proceeding. A reasonable observer would have no grounds to believe that her statements constituted a report of an official proceeding.

### B. Neutral Report Doctrine

The parties dispute whether the Neutral Report doctrine will apply in this Court.[1] However, it is unnecessary to reach

---

[1] While New York courts have disagreed over the applicability of the Neutral Report doctrine, this Court "would not be bound by the expressions of New York courts concerning the issue of federal constitutional law, contrary to the rule concerning questions of state law in diversity cases." L. Firm 844 F.2d at 961, n. 12.

- 14 -

that issue because even assuming, arguendo, that the doctrine does apply, it does not protect the Defendants in this action.

Under the Neutral Report doctrine, "when a responsible, prominent organization makes serious charges *against* a public figure, the First Amendment protects the accurate and disinterested reporting of those charges, regardless of the reporter's private views regarding their validity." Edwards, 556 F.2d at 120. While the "Edwards opinion did not attempt precise definition" of the Neutral Report doctrine, the Second Circuit has provided other examples of when doctrine may apply, such as when "the public interest in being fully informed about such controversies that rage around sensitive issues demands that the press e afforded the freedom to report such charges without assuming responsibility for them." Cianci v. New Times Publishing Co., 639 F.2d 54, 68-69 (2d Cir. 1980). "It is equally clear, however that a publisher who in fact espouses or concurs in the charges made by others or who deliberately distorts these statements to launch a personal attack of his own on a public figure, cannot reply on a privilege of neutral reportage." Id.

The doctrine is inapplicable here. The charge on which Dobbs and Fox News Corp were reporting was not made by a "responsible, prominent organization," rendering this case distinct from Edwards. As alleged in the Complaint, Sidney

- 15 -

Powell was not a responsible source. Several election experts and government agencies had already debunked her theories of election fraud well before the challenged statements were made. Compl. at ¶ 46-47.

Even if Defendants could successfully show that their statements should be protected due to the public interest in being fully informed about "sensitive issues," they cannot avail themselves of the doctrine because the Complaint adequately alleges that Defendants espoused and concurred in the charges. Although the tweet was made in close proximity with the announcement of Sidney Powell as a guest on Dobbs' show to discuss the alleged election fraud, Dobbs' two-page document espouses and endorses the charges. The tweet continually adopts Powell's views. The document states, "we now have contracts, program details, incriminating information and history," "we have identities, roles, and background of Dominion, Smartmatic people," "we have a warning to the mainstream media: you have purposefully sided with the forces that are trying to overthrow the US system. These four people and their collaborators executed an electoral 9-11 against the United States, with the cooperation and collusion of the media and the Democrat party and China. It is a cyber Pearl Harbor." Compl. at ¶ 89. While the show displayed a graphic which stated "according to Sidney Powell," the tweet fails to attribute the two-page document to

Powell, and despite Defendant's argument that those who viewed
the tweet could have easily viewed the show with the displayed
graphic afterwards, the Court is not convinced that broadcast
negates the inference that Dobbs adopted Powell's claims given
in the tweet.

The Neutral Report Doctrine also requires that the
challenged statements be neutral and dispassionate.  See
Edwards, 556 F.2d at 120. The Complaint alleges facts which
support a reasonable inference that the Dobb's reporting was
neither accurate nor dispassionate.  Rhetoric such as "9-11" and
"Cyber Pearl Harbor" is impassioned advocacy, which makes this
privilege inapplicable.

Furthermore, as discussed below, Mr. Khalil is not a public
figure, rendering the neutral report doctrine inapplicable.
While defendants argue that Edwards should not be limited to its
facts, it would be an extension of Edwards to apply it to a
private figure.  The Second Circuit has resisted extending
Edwards to a private figure. L. Firm, 844 F.2d at 961 ("We later
construed Edwards, in Cianci v. New Times Publishing Co., 639
F.2d 54, 67 (2d Cir.1980), as applying this privilege to cases
involving public officials or figures. It would therefore be at
least arguably an extension of Edwards to apply it to litigation
brought by a private figure involved in a matter of public
concern, such as the Firm, and we should not address this

- 17 -

constitutional question where there is an independent state
ground on which the district court judgment may be sustained.").
The Court declines to extend Edwards here as well.

**IV.  Opinion**

Defendants also argue that the statements are inactionable
opinions. Whether a statement constitutes an opinion is a matter
of law. Celle v. Filipino Rep. Enterprises Inc., 209 F.3d 163,
178 (2d Cir. 2000).

Several factors aid courts in determining whether a
statement constitutes an opinion: "(1) whether the specific
language in issue has a precise meaning that is readily
understood: (2) whether the statements are capable of being
proven true or false; (3) an examination of the full context of
the communication in which the statement appears; (4) a
consideration of the broader social context or setting
surrounding the communication including the existence of any
applicable customs or conventions which might signal to readers
or listeners that what is being read or heard is likely to be
opinion, not fact." Id. The dispositive inquiry, under either
federal or New York law, is "whether a reasonable [reader] could
have concluded that [the articles were] conveying facts about
the plaintiff." Gross v. New York Times Co., 82 N.Y.2d 146, 152,
623 N.E.2d 1163 (1993) (alteration in the original).

- 18 -

Dobbs' tweets and statements used language that was precise and readily understood, and statements in the tweets such as "we have evidence" and "Khalil is a liaison with Hezbollah" are capable of being proven true or false.  Taking the allegations in the complaint as true, Dobbs was thought to be a reporter of facts—not opinions—and the continued discussion of evidence and affirmative statements would not indicate to a reader or listener that Dobbs or Powell were merely stating their opinions.

Even if the statements were to be classified as an opinion, they remain actionable because they constitute a mixed opinion. A mixed opinion is a statement of opinion that "implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it... The actionable element of a 'mixed opinion' is not the false opinion itself—it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking." Sorvillo v. St. Francis Preparatory Sch., 607 F. App'x 22, 24 (2d Cir. 2015) (quoting Steinhilber v Alphonse, 68 NY2d 283, 290 (1986)).

Here, Defendants repeatedly gave the impression, at the time of the December 10th tweets and statements, that they possessed unknown facts which supported their claims about Khalil. Defendants told viewers and twitter users that there was

- 19 -

"proof" and "evidence" of the claims against Khalil. Compl. at ¶ 88-90.   During his show, Dobbs told the audience that "we have tremendous evidence already… of fraud in this election." Id. at ¶ 101. After the show Defendants posted the video of the interview on twitter with the caption "@SidneyPowell reveals groundbreaking new evidence…" and "Evidence of Fraud…" Id. at 107.

Therefore, the challenged statements cannot be given the protection afforded to formed opinions.

### V.   Degree of Fault
Defendants also argue that Khalil must prove that the Defendants acted with actual malice in making the defamatory statements in order to succeed on his claims, due to his status as a public figure or limited public figure or the application of New York's Anti-SLAPP law.

### A. Public Figure
Public figures are those who, "by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classified as public figures." Gertz v. Robert Welch, Inc., 418 U.S. 323, 342, 94 S. Ct. 2997, 3008, 41 L. Ed. 2d 789 (1974). "Commonly, those classified as public figures have thrust themselves to the forefront of particular public controversies in order to

influence the resolution of the issues involved. In either event, they invite attention and comment." Id.

Khalil is a private Venezuelan citizen, who has not assumed a role of "especial prominence in the affairs of society," and his role as a businessman does not invite "attention and comment" that rises to the level of a public figure, despite Defendants' arguments to the contrary. While the Court takes judicial notice of the articles that reference Khalil, those articles only briefly discuss Khalil and do not give him a level of special prominence in the affairs of society.

Dobbs' own statements during his show and tweets confirm that Khalil is not a public figure. When introducing Khalil to his audience, Dobbs tweeted that Khalil's name was one that "[people] need to get familiar with." Compl. at ¶ 88 (alteration in original).

Neither can Khalil be considered a limited public figure. A limited public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." BYD Co. Ltd. v. VICE Media LLC, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), aff'd, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022). In the Second Circuit, in order to hold the plaintiff to be a limited-purpose public figure "a defendant must show the plaintiff has: (1) successfully invited public attention to his

views in an effort to influence others prior to the incident
that is the subject of litigation; (2) voluntarily injected
himself into a public controversy related to the subject of the
litigation; (3) assumed a position of prominence in the public
controversy; and (4) maintained regular and continuing access to
the media." Lerman v. Flynt Distrib. Co., 745 F.2d 123, 136-37
(2d Cir. 1984); Biro, 963 F. Supp. 2d at 270.

Khalil did not draw public attention to his views to
influence others regarding the election of 2020 nor insert
himself into a public controversy related to the defamatory
statements against him.  He only became involved in the
conversation because of the statements by Dobbs and Powell. He
has not maintained regular and continual access to the media.

He is not a limited public figure.

**B. New York Anti-SLAPP**
Under Section 76-a of the New York Civil Rights law, the
actual malice standard applies to a defamation claim based upon
a statement "in connection with an issue of public interest, or
in furtherance of the exercise of the constitutional right of
petition." N.Y. Civ. Rights Law §76-a(1)(a),(2) (McKinney).  The
"law further provides that 'public interest' 'shall be construed
broadly and shall mean any subject other than a purely private
matter.'" N.Y. Civ. Rights Law §76-a(1)(a); e.g., Aristocrat
Plastic Surgery, P.C. v. Silva, 206 A.D.3d 26, 29, 169 N.Y.S.3d

272, 274 (2022).  Plaintiff's claim that the Anti-SLAPP cannot
apply to defamation cases lacks support in the law.  Id.
(applying the Anti-SLAPP standard to defamation claims). The
election of 2020 was clearly a matter of public interest, and
the New York Anti-SLAPP law applies. Therefore, Khalil must show
actual malice.

### C. Actual Malice
To adequately pled actual malice, the plaintiff must show
that a false statement of fact was made "with the knowledge that
the statement was false or with reckless disregard to whether or
not it was true." Harte-Hanks Commc'ns, Inc. v. Connaughton, 491
U.S. 657, 667 (1989) (quoting Hustler Magazine, Inc. v. Falwell,
485 U.S. 46, 56, (1988)). To satisfy the "reckless disregard"
standard, a defendant must have made the false publication with
a "high degree of awareness of ... probable falsity," or must
have "entertained serious doubts as to the truth of his
publication." Id. (quoting Garrison v. Louisiana, 379 U.S. 64,
74 (1964)) (internal quotation marks omitted). While mere
allegations of negligence or "failure to investigate" are not
enough to meet the actual malice standard, "the purposeful
avoidance of the truth is in a different category." Harte-Hanks
Commc'ns, 491 U.S. at 692.

"The Supreme Court has provided several factors to consider
when determining whether a speaker acted with actual malice: (1)

- 23 -

whether a story is fabricated or is based wholly on an unverified, anonymous source, (2) whether the defendant's allegations are so inherently improbable that only a reckless person would have put them in circulation, or (3) whether there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." <u>Karedes v. Ackerley Grp., Inc.</u>, 423 F.3d 107, 114-15 (2d Cir. 2005); <u>Church of Scientology Int'l v. Behar</u>, 238 F.3d 168, 174 (2d Cir. 2001) (citing <u>St. Amant v. Thompson</u>, 390 U.S. 727, 732 (1968)). This analysis typically requires discovery. <u>Id.</u>

Here, Defendants repeatedly maintained their claims about Khalil long after Powell's election fraud theories were challenged. Numerous reports that declared the falsity of the claims against Dominion and Smartmatic and rejected Powell as an accurate source of information gave Defendants reasons to doubt Powell's veracity and the accuracy of her reports. While the complaint does not allege that the Khalil himself informed Defendants of the falsity of the claims against him, both Smartmatic and Dominion did so. Falsity of the claims against both companies would necessitate falsity of the claims against Plaintiff. Several government agencies stated that there was no evidence of fraud in the election, and even then-President Trump supporters rejected Powell's accusations.

- 24 -

While Defendant's failure to seek Khalil's comment on the statements standing alone is not enough to meet the actual malice requirement. However, the Complaint adequately alleges that the defendants purposefully avoided the truth, given the amount of public information regarding the lack of fraud in the election.

Plaintiffs have alleged enough facts in the complaint to survive a motion to dismiss and obtain discovery.

## VI.  Liability of Fox

Defendants argue that defamation claims against Fox must be dismissed because Fox is not liable for the statements made by Dobbs and Powell.  However, "a corporation may be held liable for defamatory utterances made by its officer or agent, acting within the scope of [her] authority." Mirage Ent., Inc. v. FEG Entretenimientos S.A., 326 F. Supp. 3d 26, 36 (S.D.N.Y. 2018)(alteration in the original); Unker v. Joseph Markovits, Inc., 643 F. Supp. 1043, 1049 (S.D.N.Y. 1986); see Genesis Int'l Holdings v. Northrop Grumman Corp., 238 F. App'x 799, 802 (3d Cir. 2007) ("Generally, an employer is liable for intentional torts, including defamation, committed by its employees within the scope of their employment.") The question of authority is a factual one.  Unker v. Joseph Markovits, Inc., 643 F. Supp. 1043, 1049 (S.D.N.Y. 1986).

And it is a familiar principle of law that one who "repeats a defamatory statement is responsible for the resulting damages." L. Firm, 844 F.2d at 960. Geraci v. Probst, 15 N.Y.3d 336, 342, 938 N.E.2d 917, 921 (2010).

Dobbs made the various statements regarding Khalil during the course of his employment at Fox News.  Taking the allegations in the Complaint as true, Fox also had control over the twitter accounts from which many of the statements were first made, in addition to posting the video clips tweets to a general Fox twitter account. Fox executives were on notice that the allegations against regarding election rigging by Dominion and Smartmatic were false after the receipt of several emails from Dominion and Smartmatic and conversations with Dominion.

The Complaint adequately alleges that Fox may be held liable for the defamatory claims.

### Conclusion

The motion to dismiss is denied.

So ordered.

Dated:     New York, New York
           September **26**, 2022

                              *Louis L. Stanton*
                         _____
                              LOUIS L. STANTON
                              U.S.D.J.

- 26 -