# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MAJED KHALIL, | |
| Plaintiff, | HON. LOUIS L. STANTON |
| v. | |
| FOX CORPORATION, *et al.*, | Case No. 1:21-cv-10248-LLC |
| Defendants. | |

## RESPONSE MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION TO DISMISS FOX DEFENDANTS' COUNTERCLAIMS

ROBERT W. ALLEN, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800
bob.allen@kirkland.com

K. WINN ALLEN, P.C.
DEVIN S. ANDERSON
ERIN E. CADY
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 389-5000

PAUL D. CLEMENT
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

MARK R. FILIP, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 826-2000

*Counsel for Defendants Fox Corporation, Fox News Network, LLC, and Lou Dobbs*

January 13, 2023

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

A.      Legal Framework ................................................................................................ 2

B.      Factual Background ............................................................................................ 4

C.      Procedural History ............................................................................................. 6

ARGUMENT ................................................................................................................. 7

I.      Section 70-a Creates A Substantive Cause Of Action—Not A Procedural Rule—
        That Federal Courts Sitting In Diversity Are Required To Apply ....................................... 8

II.     Khalil Has Forfeited All Other Potential Arguments ....................................................... 16

CONCLUSION.............................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Cases**

*600 West 115th St. Corp. v. Von Gutfeld*,
   603 N.E.2d 930 (N.Y. 1992) ................................................................................. 2

*Abbas v. Foreign Policy Group, Inc.*,
   783 F.3d 1328 (D.C. Cir. 2015)...........................................................................11

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014) ........................................................................10, 11

*Adelson v. Harris*,
   973 F.Supp.2d 467 (S.D.N.Y. 2013) ................................................................. 10

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975) ................................................................................... 9, 13

*Aristocrat Plastic Surgery, P.C. v. Silva*,
   206 A.D.3d 26 (N.Y. App. Div. 2022)................................................................. 2

*Brady v. NYP Holdings, Inc.*,
   2022 WL 992631 (S.D.N.Y. Mar. 31, 2022) ........................................................ 14

*Carbone v. Cable News Network, Inc.*,
   910 F.3d 1345 (11th Cir. 2018) ...........................................................................11

*Carroll v. Trump*,
   590 F.Supp.3d 575 (S.D.N.Y. 2022) ................................................................. 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).......................................................................................... 13

*Chambers v. Nasco, Inc.*,
   501 U.S. 32 (1991)...................................................................................... 9, 13

*Cohen v. Beneficial Industrial Loan Corp.*,
   337 U.S. 541 (1949)........................................................................................ 8, 9

*CoreCivic Inc. v. Candide Group LLC*,
   2021 WL 1267259 (N.D. Cal. Apr. 6, 2021)....................................................... 14

*Cotton v. Slone*,
   4 F.3d 176 (2d Cir. 1993) ................................................................................. 13

*Cruz v. Zucker*,
   116 F.Supp.3d 334 (S.D.N.Y. 2015) ................................................................. 16

*DoubleLine Capital LP v. Odebrecht Fin., Ltd.*,
    323 F.Supp.3d 393 (S.D.N.Y. 2018) ................................................. 16

*Egiazaryan v. Zalmayev*,
    2013 WL 6486258 (S.D.N.Y. Dec. 11, 2013) ........................................ 13

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ................................................................ 8

*Friedman v. Bloomberg, L.P.*,
    2022 WL 1004578 (D. Conn. Apr. 4, 2022)........................................... 15

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996) ............................................................... 8

*Ginx, Inc. v. Soho Alliance*,
    720 F.Supp.2d 342 (S.D.N.Y. 2010) ............................................... 14

*Godin v. Schencks*,
    629 F.3d 79 (1st Cir. 2010) ...................................................... 11

*Goldman v. Reddington*,
    2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ....................................10, 11, 12, 15

*Gross v. Rell*,
    585 F.3d 72 (2d Cir. 2009) ....................................................... 16

*Harris v. Am. Accounting Assoc.*,
    2021 WL 5505515 (N.D.N.Y. Nov. 24, 2021) ......................................... 9

*Johnson v. Priceline.com, Inc.*,
    711 F.3d 271 (2d Cir. 2013) ...................................................... 8

*Karaduman v. Newsday, Inc.*,
    416 N.E.2d 557 (N.Y. 1980) ....................................................... 2

*Kesner v. Buhl*,
    590 F.Supp.3d 680 (S.D.N.Y. 2022) ............................................... 15

*Klocke v. Watson*,
    936 F.3d 240 (5th Cir. 2019) ..................................................... 11

*La Liberte v. Reid*,
    966 F.3d 79 (2d Cir. 2020) ....................................................... 10

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
    885 F.3d 659 (10th Cir. 2018) ................................................... 14

*Mathis v. United States,*
  579 U.S. 500 (2016) .................................................................................... 9

*Nat'l Academy of Tele. Arts & Sciences Inc. v. Multimedia Sys. Design,*
  551 F.Supp.3d 408 (S.D.N.Y. 2021) ........................................................ 15

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010) .................................................................................. 14

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
  190 F.3d 963 (9th Cir. 1999) .................................................................... 11

*United States v. Van Smith,*
  530 F.3d 967 (D.C. Cir. 2008) .................................................................. 16

*Woods Servs., Inc. v. Disability Advocates, Inc.,*
  342 F.Supp.3d 592 (E.D. Pa. 2018) ......................................................... 12

**Statutes**

N.Y. Civ. Rights Law §70-a ...................................................................... *passim*

N.Y. Civ. Rights Law §76-a ...................................................................... 2, 3

Nev. Rev. Stat. §41.670 .............................................................................. 11

**Rules**

Fed. R. Civ. P. 56 ....................................................................................... 12

N.Y. Court R. §130-1.1 .............................................................................. 15

## INTRODUCTION

New York recognized long ago that meritless defamation suits pose a serious threat to First Amendment values.  To deter such suits, New York expanded its anti-SLAPP statute in 2020 to provide defendants with a private right of action for damages against those who file them and thereby chill the exercise of First Amendment rights on issues of public interest.  Plaintiff Majed Khalil's $250 million defamation suit is precisely the type of suit that the anti-SLAPP statute is designed to address.  Indeed, that suit seeks to silence reporting and opinion commentary on one of the most newsworthy events of our lifetime:  then-President Trump's attempt to overturn the results of the 2020 presidential election.  Although the Court previously held that Khalil's complaint may proceed past the motion-to-dismiss stage, further proceedings will expose Khalil's headline-seeking, quarter-billion-dollar lawsuit for what it is:  an assault on the free-speech and free-press values embodied in the First Amendment and New York's anti-SLAPP statute.  The Fox Defendants (Fox Corporation; Fox News Network, LLC; and Lou Dobbs) therefore counterclaimed for damages (attorney's fees and costs) under the anti-SLAPP statute.

According to Khalil, however, the Fox Defendants' counterclaim does not get off the ground because the section of the anti-SLAPP statute that gave rise to the counterclaim—New York Civil Rights Law §70-a—is "procedural" (not "substantive") in nature and conflicts not only with Federal Rules of Civil Procedure 12 and 56, but also with Rule 11.  That argument is fatally flawed.  Longstanding Supreme Court precedent makes clear that, when state law defines a cause of action, the elements of the cause of action are substantive rules that federal courts sitting in diversity must apply.  Section §70-a defines just such a cause of action.  Accordingly, because Khalil's asserted conflicts with the federal rules are illusory—and because he offers no other argument in support of his request to dismiss the Fox Defendants' counterclaim—the Court should deny his motion to dismiss.

## BACKGROUND

### A.   Legal Framework

New York recognized decades ago that the "threat of being put to the defense of a lawsuit ... may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself." *Karaduman v. Newsday, Inc.* 416 N.E.2d 557, 563 (N.Y. 1980).  In response to "rising concern about the use of civil litigation, primarily defamation suits, to intimidate or silence those who speak out," *600 West 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 933 n.1 (N.Y. 1992), New York enacted its first anti-SLAPP (short for "strategic lawsuits against public participation") statute in 1992 to discourage meritless and speech-chilling suits.  As originally enacted, the statute provided that, in certain circumstances, a "defendant in an action involving public petition and participation … may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees."  N.Y. Civ. Rights Law §70-a(1) (1992).  But that statute had its deficiencies.  For instance, it incorporated an exceptionally narrow definition of "public petition and participation."  *See id.* §76-a (defining "action involving public petition and participation" as suits "brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission").  And when a defendant invoked the §70-a cause of action, all damages were entirely discretionary.  *See, e.g.*, *id.* §70-a(1)(a) ("[C]osts and attorney's fees *may* be recovered …." (emphasis added)).

Recognizing that the original version of the anti-SLAPP statute "failed to provide 'the utmost protection for the free exercise of speech, petition, and associational rights, particularly where such rights are exercised in a public forum with respect to issues of public concern,'" New York amended the statute in 2020 "to broaden the scope of the law and afford greater protections for citizens." *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 28-29 (N.Y. App. Div. 2022).

Among other things, the amendments expanded the definition of "action involving public petition and participation" to include "a claim based upon" any "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law §76-a(1)(a).  The amendments also defined "public interest" to "mean any subject other than a purely private matter."  *Id.* §76-a(1)(d).

As particularly relevant here, the amendments altered §70-a's cause of action for damages in two notable ways.  First, the amendments made an award of damages (in the form attorneys' fees and costs) mandatory by stating that such damages "shall be recovered" (instead of "may be recovered") if the plaintiff "commenced or continued" an action involving public petition and participation "without a substantial basis in fact and law" and if the action "could not be supported by a substantial argument for the extension, modification or reversal of existing law."  *Id.* §76-a(1).  Second, the amendments made clear that a defamation defendant may (but by no means must) use certain New York procedures—namely, the special motion to dismiss under §3211(g) of the New York Civil Practice Law and Rules (CPLR) and the special motion for summary judgment under CPLR §3212(h)—to demonstrate that the underlying defamation claim lacked a substantial basis in fact and law.  *Id.*  The amended version of §70-a thus provides in full:

> 1. A defendant in an action involving public petition and participation, as defined in paragraph (a) of subdivision one of section seventy-six-a of this article, may maintain an action, claim, cross claim, or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that:
>
> (a) costs and attorney's fees ***shall*** be recovered upon a demonstration, ***including an adjudication pursuant to subdivision (g) of rule thirty-two hundred eleven or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules***, that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law;
>
> (b) other compensatory damages may only be recovered upon an additional demonstration that the action involving public petition and participation

was commenced or continued for the purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights; and

(c) punitive damages may only be recovered upon an additional demonstration that the action involving public petition and participation was commenced or continued for the sole purpose of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights.

2. The right to bring an action under this section can be waived only if it is waived specifically.

3. Nothing in this section shall affect or preclude the right of any party to any recovery otherwise authorized by common law, or by statute, law or rule.

*Id.* (emphases added).

## B.    Factual Background

In the months leading up to the 2020 U.S. presidential election, President Trump and many others expressed concern about potential voting fraud, due partly to unusual measures implemented in response to COVID-19.  The President indicated that he would challenge the election results if he suspected that fraud had tainted the outcome.  As forecasted, President Trump and his allies—including lawyers Rudy Giuliani and Sidney Powell—called foul after the election.  A legal team led by Giuliani and Powell filed lawsuits in multiple states challenging the results.  And the U.S. Departments of Justice and Homeland Security investigated the software mechanics of certain voting machines.

Given the unquestionable newsworthiness of a sitting President's effort to challenge the result of a presidential election, Fox News and virtually every other media outlet nationwide covered the President's accusations, the federal and state investigations, and the spate of ensuing lawsuits.  Lou Dobbs, a political commentator who at the time hosted a Fox Business Network show called *Lou Dobbs Tonight*, contributed to the coverage.  In the weeks after the 2020 election, Dobbs invited Giuliani, Powell, and others onto his program so that viewers could hear—straight

from the sources—about the allegations and the litigation surrounding them.   During those interviews, Giuliani and Powell alleged, among other things, that Smartmatic and Dominion, two voting-technology companies that had provided services in various U.S. jurisdictions, had a corrupt relationship with the Venezuelan government and had helped facilitate manipulation and fraud in the 2020 election.   In response, Dobbs pressed Giuliani and Powell to provide evidence to prove their claims in court before the mid-December 2020 deadline for certifying the election. Dobbs also told his viewers that Smartmatic and Dominion had denied some allegations against them and that government agencies, government officials, and security experts had expressed skepticism of the claims as well.   And as one might expect from an opinion show devoted to addressing issues of public concern in a Nation committed to the First Amendment, Dobbs provided his own opinion and commentary on the election and its legitimacy.

Khalil made only the briefest of cameos in this weeks-long national drama.   Khalil is a Lebanese-Venezuelan businessman who, according to many press reports from outlets throughout the world spanning almost two decades, has amassed an empire in Venezuela in the shadows of the Chávez and Maduro regimes.   Counterclaim¶12.   Press reports have described Khalil as the "front man" for Jorge Jesús Rodríguez Gómez, a close ally of Chávez and Maduro. Counterclaim¶13.   Other reports have raised many questions about Khalil's business empire. Counterclaim¶14.   And still other reports have connected Khalil to international drug trafficking. Counterclaim¶13.

In the sea of Fox News' election coverage, Khalil's name surfaced for a few fleeting moments on a single day.   On December 10, 2020, Dobbs hosted Powell on *Lou Dobbs Tonight* to discuss what Powell called "a cyber Pearl Harbor."   MTD.Op.4.   Minutes before the regularly scheduled broadcast, the @LouDobbs Twitter account issued a series of tweets promoting the

upcoming show.  The first tweet promoted the guests that Dobbs would host that evening to discuss (among other things) the ongoing election-fraud litigation.[1]  A few minutes later, the account published a second tweet highlighting Powell in particular and noting that she would "share new information" on the upcoming show.[2]

One minute later, the account published a third tweet pulling language from a document reproduced in the tweet via screenshot that outlined that new information.  The screenshotted document said (among many other things) that "people need to get familiar" with "four names," including Khalil Majid Mazoub.  MTD.Op.4.  The document also stated:  He is "a Venezuelan of Lebanese origin, who is the right hand and business front man of Jorge Rodriguez.  He has been the effective 'COO' of the election project, under Chavez and Maduro.  Khalil is a liaison with Hezbollah."  *Id.*

A few minutes later, *Lou Dobbs Tonight* and Dobbs' live interview with Powell began.  At the outset, Dobbs explained there are four names that Powell highlights, and he then displayed a graphic on-screen titled "FOUR NAMES YOU NEED TO KNOW ACCORDING TO SIDNEY POWELL," listing among them "Khalil Majid Majzoub: Rodriguez Frontman."  MTD.Op.5.  The only reference to Khalil throughout the broadcast consisted of Dobbs reading this graphic aloud.  The graphic appeared on-screen for less than two minutes, and the direct mention of Khalil lasted for only four seconds.

## C.   Procedural History

On December 1, 2021, Khalil sued the Fox Defendants alleging that they published defamatory and disparaging statements based on the brief references to him on December 10, 2020,

---

[1] Lou Dobbs (@LouDobbs), Twitter (Dec. 10, 2020, 4:47 pm), https://bit.ly/3IXF9rb.

[2] Lou Dobbs (@LouDobbs), Twitter (Dec. 10, 2020, 4:55 pm), https://bit.ly/3g8F3k5.

all of which allegedly caused "injury to his reputation, harm to his ability to carry on his profession, embarrassment, humiliation, and emotional distress." Khalil.Compl.¶137. Khalil says that the Fox Defendants made these statements with actual malice and asks for, among other things, "no[] less than $250 million" in punitive damages. Khalil.Compl.83. The next day, Dobbs, Fox News, and Fox Corporation removed this action to the Southern District of New York, and promptly moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The Court denied the motion to dismiss. The Court held that Khalil had plausibly alleged that Dobbs' coverage of Powell's allegations defamed Khalil. MTD.Op.10-20. The Court also held, however, that Khalil needed to plead and prove actual malice under New York's anti-SLAPP statute because the "election of 2020 was clearly a matter of public interest" and "the actual malice standard applies to a defamation claim based upon a statement 'in connection with an issue of public interest.'" MTD.Op.22-23. But the Court held that Khalil adequately alleged actual malice to survive a motion to dismiss under Rule 12(b)(6). MTD.Op.25.

While the Court held that Khalil's complaint may proceed past the motion-to-dismiss stage, the Fox Defendants are confident that further proceedings in this case will demonstrate that Khalil's defamation suit is divorced from law and fact and is designed instead to chill the exercise of First Amendment rights. Indeed, Khalil's request for "not less than" a quarter-billion dollars in damages for a fleeting mention of his less-than-sterling name on a single broadcast covering the most newsworthy event of the decade is a profound threat to First Amendment values. The Fox Defendants thus counterclaimed seeking damages (costs and attorney's fees) under §70-a of New York's anti-SLAPP statute. Counterclaim¶36.

## ARGUMENT

When a federal court resolves a motion to dismiss, it ordinarily assesses whether the complaint has "allege[d] sufficient facts, taken as true, to state a plausible claim for relief."

*Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013).  Khalil does not ask this Court to conduct that traditional analysis.  Instead, Khalil's entire argument is that the statute underlying the Fox Defendants' counterclaim (New York Civil Rights Law §70-a) does not apply in federal court because it creates a "procedural" rule that conflicts with the Federal Rules of Civil Procedure.  Controlling precedent squarely forecloses that argument.  In reality, §70-a creates a *substantive* cause of action that federal courts are obligated to apply.

I.     **Section 70-a Creates A Substantive Cause Of Action—Not A Procedural Rule—That Federal Courts Sitting In Diversity Are Required To Apply.**

1.     Federal courts sitting in diversity must apply state substantive law and federal procedural law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  While "[c]lassification of a law as 'substantive' or 'procedural' … is sometimes a challenging endeavor," *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)), the inquiry is straightforward here.  That is because the U.S. Supreme Court made clear long ago that the elements of an underlying state law cause of action are quintessentially substantive.

The Supreme Court's decision in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), is particularly instructive.  There, the Court considered whether a federal court exercising diversity jurisdiction over a stockholder's derivative action must apply a state law that "makes the plaintiff, if unsuccessful, liable for all expenses, including attorney's fees, of the defense."  *Id.* at 543.  The plaintiff argued that the state statute did not apply in federal court because its provisions constituted "mere rules of procedure rather than rules of substantive law."  *Id.* at 555.  The Court emphatically rejected that argument:  By making "a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants[] if he does not make good on his claims," the statute "creates a new liability where none existed before."  *Id.*  Such a law, the Court continued, "clearly" fell on the "substantive" side of the ledger—a point

underscored by the fact that, "[w]ith it or without it," the plaintiff's suit (*i.e.*, "the main action") "takes the same course." *Id.*

That reasoning applies with full force here and suffices to dispose of Khalil's motion to dismiss. Just as the state statute in *Cohen* sought to limit meritless shareholder derivative suits by forcing plaintiffs who bring such suits to pay the defendant's attorney's fees and costs, New York's anti-SLAPP statute seeks to accomplish a similar objective when First Amendment rights are at stake. To that end, §70-a creates a state-law "right to bring an action" "to recover damages, including costs and attorney's fees." N.Y. Civ. Rights Law §70-a(1), (2). And the statute details all of the elements that an anti-SLAPP counterclaimant must establish: "[C]osts and attorney's fees shall be recovered *upon a demonstration*" that the plaintiff (1) commenced or continued an "action involving public petition and participation," and (2) did so "without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." *Id.* §70-a. Accordingly, there is no question that §70-a creates "liability where none existed before." *Cohen*, 337 U.S. at 555; *see also Chambers v. Nasco, Inc.*, 501 U.S. 32, 52 (1991) (explaining that "fee-shifting rules" are "substantive"); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (state law "right" to attorney's fees "reflects a substantial policy of the state [and] should be followed"); *see also Mathis v. United States*, 579 U.S. 500, 519 (2016) (explaining that the "elements" of a cause of action are the things that the plaintiff "must prove"). Meanwhile, "the main action" here—Khalil's defamation suit— "takes the same course" regardless of the counterclaim. *Cohen*, 337 U.S. at 555. There is thus no denying that the Fox Defendants' counterclaim invokes substantive law that this Court must apply, as other federal courts have not hesitated to do in comparable circumstances. *See, e.g.*, *Harris v. Am. Accounting Assoc.*, 2021 WL 5505515, *13-*15 (N.D.N.Y. Nov. 24, 2021); *Goldman v.*

*Reddington*, 2021 WL 4099462, *3-*4 (E.D.N.Y. Sept. 9, 2021); *cf. Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (applying similar aspects of Nevada's anti-SLAPP fee-shifting statute).

2.      Khalil breezily asserts that the Fox Defendants' counterclaim seeks to recover attorney's fees and costs under "the *procedural provisions* of New York's anti-SLAPP statute," MTD.1 (emphasis added), which purportedly conflict Rules 12 and 56, as well as Rule 11.  He is wrong in both his premise and his conclusion.

The basic problem with Khalil's argument is that he fails to appreciate the difference between a state-law mechanism that allows a defamation defendant to obtain quicker or easier pretrial dismissal or resolution of a defamation suit and a state-law mechanism that gives a defamation defendant a separate state-law cause of action to obtain independent monetary damages.  Section 70-a falls into the latter camp, not the former.  *Cf. Adelson v. Harris*, 973 F.Supp.2d 467, 493 n.21 (S.D.N.Y. 2013) (applying similar provisions of Nevada's anti-SLAPP law and distinguishing opinions declining to apply California's anti-SLAPP law because "California's anti-SLAPP statute … unlike Nevada's … does not provide defendants *with a separate cause of action*" (emphasis added)); *aff'd*, 774 F.3d 803 (2d Cir. 2014).  That alone suffices to distinguish all of the circuit court decisions Khalil invokes.  *See* MTD.5-6.  After all, in each one, the state law at issue created a "special" procedure—*e.g.*, an expedited motion—to *dismiss or strike the plaintiff's defamation action* that imposed standards above and beyond what the federal rules required for a plaintiff to maintain an action.

For instance, in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), the Second Circuit declined to apply California's "special motion to strike" because it required a defamation plaintiff to establish a probability of success on his claims at the motion-to-dismiss stage—a requirement that exceeded Rule 12's plausibility standard.  *Id.* at 86-87.  Similarly, in *Klocke v. Watson*, 936 F.3d

240 (5th Cir. 2019), the Fifth Circuit held that a provision of Texas's anti-SLAPP statute did not apply in federal court because it "impose[d] additional requirements" on a plaintiff to maintain a defamation claim. *Id.* at 246. In *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018), the Eleventh Circuit likewise held that a special "motion-to-strike procedure" under Georgia law conflicted with federal rules because it required the plaintiff seeking to survive a motion to dismiss to establish that success is not merely plausible but probable. *Id.* at 1349-50. And in *Abbas v. Foreign Policy Group, Inc.*, 783 F.3d 1328 (D.C. Cir. 2015), the D.C. Circuit declined to apply a "special motion to dismiss provision" under D.C. law that essentially "set[] up an additional hurdle a plaintiff must jump over to get to trial." *Id.* at 1333-34.[3]

Whatever the merits of those decisions, they are largely irrelevant here. To be sure, the amended version of New York's anti-SLAPP statute provides special procedural devices under CPLR §3211(g) and §3212(h) that make it easier for a defamation defendant to seek dismissal or summary judgment. *See* N.Y. Civ. Rights Law §70-a(1)(a). But the Fox Defendants' anti-SLAPP counterclaim does not invoke those *procedural* devices.[4] It invokes the separate *substantive* cause

---

[3] Other circuit court decisions, which Khalil nowhere acknowledges, have parted ways with those decisions and applied state anti-SLAPP laws in their entirety in federal diversity actions. *See, e.g.*, *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010) (applying Maine law); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) (applying California law). And while Khalil claims that a "wealth of Second Circuit authority" forecloses the Fox Defendants' position, MTD.1, he primarily relies on district court opinions, which do not bind this Court (and point in both directions in all events), *see* MTD.7-9 & n.8. Ultimately, far more relevant is the Second Circuit's binding decision in *Adelson*, which found similar provisions of Nevada's anti-SLAPP statute—including its mandatory fee-shifting provision—"unproblematic." 774 F.3d at 809 (citing Nev. Rev. Stat. §41.670); *see* Nev. Rev. Stat. §41.670 ("The court shall award reasonable costs and attorney's fees" if "the court grants a special motion to dismiss[.]").

[4] Nor does anything in the anti-SLAPP statute require the Fox Defendants to do so. To the contrary, "the provision … makes clear that an anti-SLAPP litigant may obtain costs and attorney's fees *without* using those procedures." *Goldman*, 2021 WL 4099462 at *5 (emphasis in original). That is because it says that "costs and attorney's fees shall be recovered upon a demonstration,

of action that New York has established for defamation defendants who can prove that a plaintiff "commenced or continued" an action "without a substantial basis in fact and law." N.Y. Civ. Rights Law §70-a(1)(a). Nothing about that counterclaim requires this Court to revisit the decision it has already made to deny the Fox Defendants' motion to dismiss under the ordinary Rule 12(b)(6) plausibility standard. Nor would it have required this Court to apply anything other than the ordinary plausibility standard had Khalil moved to dismiss the counterclaim under Rule 12(b)(6) (which he declined to do). The Court would simply have asked whether the Fox Defendants plausibly alleged that Khalil "commenced or continued" his suit "without a substantial basis in fact and law." N.Y. Civ. Rights Law §70-a(1)(a). That is precisely how Judge Kovner approached the analysis in *Goldman v. Reddington*, allowing the defamation defendant to amend her pleadings to add an anti-SLAPP counterclaim because the proposed counterclaim "adequately pleaded" under Rule 12(b)(6) that the plaintiff's "claims of defamation and tortious interference lacked a substantial basis in fact and law." *Goldman*, 2021 WL 4099462, at *4; *see also Woods Servs., Inc. v. Disability Advocates, Inc.*, 342 F.Supp.3d 592, 608-10 (E.D. Pa. 2018) (applying Rule 12(b)(6) standard to counterclaim under pre-2020 version of New York's anti-SLAPP law). Khalil thus fails to identify any respect in which the counterclaim conflicts with Rule 12.

Khalil likewise fails to identify any respect in which the Fox Defendants' anti-SLAPP counterclaim conflicts with Rule 56. Under Rule 56, a party is entitled to summary judgment if it shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Conversely, to avoid summary judgment, the

---

*including* an adjudication pursuant to subdivision (g) of rule thirty-two eleven hundred or subdivision (h) of rule thirty-two hundred twelve of the civil practice law and rules, that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law §70-a(1)(a) (emphasis added)).

non-movant must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).  The anti-SLAPP counterclaim here does not impose a conflicting standard.  After discovery, the Court will apply the familiar federal standard to Khalil's defamation claim and assess whether there is a genuine dispute over whether Khalil can prove his claims.  And the Court will apply the same standard to the counterclaim and assess whether there is a genuine dispute over whether Khalil commenced or continued his defamation suit without a substantial basis in law—which is exactly how federal courts applied the Rule 56 standard to counterclaims brought under the pre-2020 version of New York's anti-SLAPP law.  *See, e.g.*, *Egiazaryan v. Zalmayev*, 2013 WL 6486258, at *5-*11 (S.D.N.Y. Dec. 11, 2013).  To be sure, New York's anti-SLAPP statute may impact what evidence the parties must produce to meet their respective burdens.  But that is a product of the law's *substantive* requirements to establish liability, not of any change in the *procedural* rules that this Court must apply to determine whether the parties have done so.

Khalil's suggestion that the Fox Defendant's anti-SLAPP counterclaim conflicts with Rule 11 fares no better.  As explained, the anti-SLAPP statute provides a cause of action for damages, which includes attorney's fees and costs.  Both the Supreme Court and the Second Circuit have long recognized that, in "an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of the court, and it usually will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."  *Chambers*, 501 U.S. at 52; *see also Alyeska Pipeline*, 421 U.S. at 259 n.31 (same); *Cotton v. Slone*, 4 F.3d 176, 180 (2d Cir. 1993) ("Attorney's fees mandated by state statute are available when a federal court sits in diversity.").  Indeed, the Second Circuit has squarely held that federal courts must apply similar provisions of Nevada's anti-SLAPP statute, *Adelson*, 774

F.3d at 809, which provides that a "court shall award reasonable costs and attorney's fees to the person against whom the action was brought" upon dismissal of the plaintiff's claim, Nev. Stat. §§41.660, 670. And as other courts have recognized, "once a state attorney's fees provision is deemed *substantive*, not procedural, there is no conflict with Rule 11." *CoreCivic Inc. v. Candide Group LLC*, 2021 WL 1267259, at *6 (N.D. Cal. Apr. 6, 2021).[5]

Khalil does not engage with any of that precedent. Instead, he contends (in all of one page) that §70-a must yield to Rule 11 because both address the same question—"namely, sanctions for court filings." MTD.10. Khalil is wrong. Unlike Rule 11, which provides for sanctions as punishment for attorneys who file frivolous complaints (whatever the subject), §70-a provides defamation defendants who face meritless lawsuits for exercising their First Amendment rights a substantive cause of action for compensatory damages. N.Y. Civ. Rights Law §70-a(1) (providing counterclaim "to recover damages, *including costs and attorney's fees*"). While the damages available under the anti-SLAPP statute happen to include costs and attorney's fees, the fact that §70-a and Rule 11 happen to provide the same *remedy* in some cases does not mean that §70-a and Rule 11 address the "same *question*." *See, e.g., Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 401-02 (2010) (emphasis added). Indeed, if Khalil's theory were right, it would mean that *all* state-law fee-shifting statutes premised on the plaintiff's failure to

---

[5] Khalil's contrary authority is unpersuasive. The New Mexico statute at issue in *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659 (10th Cir. 2018), did not create a separate cause of action for compensatory damages, but made it easier for the defendants to dismiss the plaintiff's lawsuit through a special motion to dismiss. *Id.* at 663. *Ginx, Inc. v. Soho Alliance*, 720 F.Supp.2d 342 (S.D.N.Y. 2010), did not hold that anti-SLAPP counterclaims conflict with Rule 11; it held that the anti-SLAPP law does not apply to federal law (as opposed to state law) claims brought in federal court. *Id.* at 366. *Brady v. NYP Holdings, Inc.*, 2022 WL 992631 (S.D.N.Y. Mar. 31, 2022), is likewise inapposite, as it contravenes *Adelson* and did not even involve an anti-SLAPP counterclaim. *Id.* at *11

succeed on his claim would conflict with Rule 11.  And it would mean that §70-a is entirely redundant even in New York state court, as New York includes its own sanctions provisions too. *See* N.Y. Court R. §130-1.1.  Khalil's argument proves too much.

In sum, the Fox Defendants are not trying to prove their counterclaim through a special motion to dismiss under CPLR §3211(g).  Nor do the Fox Defendants have any intention of seeking summary judgment under CPLR §3212(h).  The Fox Defendants agree that this counterclaim is governed by Rule 12 and that Rule 56 will apply to any future summary-judgment motion.  This case is therefore quite unlike the district court decisions on which Khalil relies, *see* MTD.7-9, most of which concluded only that the special procedures set forth in CPLR §3211(g) and §3212(h) do not trump Rules 12 and 56.  *See, e.g.*, *Nat'l Academy of Tele. Arts & Sciences Inc. v. Multimedia Sys. Design*, 551 F.Supp.3d 408, 430-32 & n.18 (S.D.N.Y. 2021) (explaining that the "special motion to dismiss pursuant to CPLR 3211(g)" and the summary-judgment standard in CPLR 3212(h) conflict with Rules 12 and 56); *Carroll v. Trump*, 590 F.Supp.3d 575, 584 (S.D.N.Y. 2022) (explaining that "Subdivisions 1 and 2 of CPLR 3211(g) … are inapplicable in federal court"); *Kesner v. Buhl*, 590 F.Supp.3d 680, 700 (S.D.N.Y. 2022) (similar).[6]  Because there is no conflict at all—let alone any "direct" one, MTD.9—between the Fox Defendants' anti-SLAPP counterclaim and Rules 11, 12, or 56, Khalil identifies no basis to dismiss it.

---

[6] To extent that any cases (briefly) suggest that counterclaims brought under §70-a are unavailable in federal court *regardless* of whether the counterclaimant seeks to prove his claims through a §3211(g) or §3212(h) motion, *see Carroll*, 590 F.Supp.3d at 575; *Kesner*, 590 F.Supp.3d at 701; *Friedman v. Bloomberg, L.P.*, 2022 WL 1004578, at *1 (D. Conn. Apr. 4, 2022), their analysis makes no sense, *see Goldman*, 2021 WL 4099462, at *5.  To take an example, if state law relaxed the motion-to-dismiss standard for a malicious-prosecution plaintiff, federal courts could decline to apply that relaxed standard and instead apply Rule 12, but they could not logically dismiss the malicious-prosecution claim outright.

## II. Khalil Has Forfeited All Other Potential Arguments.

As the foregoing demonstrates, Khalil's contention that the Court must dismiss the Fox Defendants' counterclaim because §70-a is a "procedural" rule that conflicts with Rules 11, 12, and 56 is flawed from start to finish.  Significantly, that is Khalil's *only* argument.  Khalil nowhere argues that, taking §70-a's substantive right on its face, the Fox Defendants have failed under Rule 12 to adequately plead their claim for relief.  Nor can Khalil attempt to mitigate that problem at this late stage.  After all, "[a] reply brief is for replying," not making new arguments.  *United States v. Van Smith*, 530 F.3d 967, 973 (D.C. Cir. 2008); *see also, e.g.*, *DoubleLine Capital LP v. Odebrecht Fin., Ltd.*, 323 F.Supp.3d 393, 450 (S.D.N.Y. 2018) (defendants forfeited additional arguments in support of motion to dismiss "raised in their reply" brief); *Cruz v. Zucker*, 116 F.Supp.3d 334, 349 n.10 (S.D.N.Y. 2015) (plaintiff forfeited additional arguments in opposition to motion to dismiss not raised in response brief); *cf. Gross v. Rell*, 585 F.3d 72, 94 (2d Cir. 2009) (similar).

## CONCLUSION

For the foregoing reasons, this Court should deny Khalil's motion to dismiss the Fox Defendants' counterclaim.

Respectfully submitted,

*/s/ Erin E. Murphy*

ROBERT W. ALLEN, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Ave.
New York, NY 10022
(212) 446-4800
bob.allen@kirkland.com


K. WINN ALLEN, P.C.
DEVIN S. ANDERSON
ERIN E. CADY

PAUL D. CLEMENT
ERIN E. MURPHY
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com


MARK R. FILIP, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle

KIRKLAND & ELLIS LLP                          Chicago, IL 60654
1301 Pennsylvania Ave., N.W.                   (312) 826-2000
Washington, D.C. 20004
(202) 389-5000

*Counsel for Defendants Fox Corporation, Fox News Network, LLC, and Lou Dobbs*

January 13, 2023

## CERTIFICATE OF SERVICE

The foregoing Response Memorandum in Opposition to Plaintiff's Motion to Dismiss Fox Defendants' Counterclaims was served electronically on all counsel of record in this matter via the Court's ECF system.

*/s/ Erin E. Murphy*
Erin E. Murphy